**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and J.P. MORGAN SECURITIES LLC | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-03447 |
| v. | ) ) ) | |
| BERNARD S. BLACK, individually and as trustee, SAMUEL BLACK, individually and as trustee, ANTHONY DAIN, individually and as trustee, KATHERINE LITVAK, OLGA DAL, and JEANNETTE GOODWIN, as court appointed Conservator, and JOANNE BLACK, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS ANTHONY DAIN AND JEANETTE GOODWIN'S
ANSWER AND COUNTERCLAIM TO COMPLAINT FOR
INTERPLEADER AND DECLARATORY RELIEF**

Defendants Anthony Dain ("Dain"), individually and as trustee, and Jeannette Goodwin ("Goodwin") as court-appointed Conservator for Joanne Black, (together, "Defendants"), by their undersigned attorneys, for their Answer and Counterclaim, state as follows:

**ANSWER TO COMPLAINT**

1.     This case involves competing claims, and conflicting court orders and arbitration awards, relating to ownership and/or control over approximately $4 million in bank and brokerage accounts maintained at Chase Bank and JPMS LLC by two trusts (the "Property").

**ANSWER:**     Admitted.

2.     The assets in these accounts originated from Renata Black, mother of Bernard Black and Joanne Black, who established two trusts before she passed away in 2012; one for the benefit of Bernard Black and his children ("Issue Trust" or "IT"), and one for the benefit of Joanne Black ("Supplemental Needs Trusts" or "SNT"). The Supplemental Needs Trust was intended to provide for Joanne's supplemental needs because she is disabled. Each Trust maintains bank and brokerage accounts at JPMS LLC and Chase Bank.

**ANSWER:**     Admitted.

3.      Ownership and control of the Trusts' accounts has been and continues to be bitterly contested, litigated and arbitrated by Defendants in Colorado, New York and Illinois, with claims being asserted by three groups.

**ANSWER:**      Admitted.

4.      The three competing groups are as follows:

| GROUP I | GROUP II | GROUP III |
|---|---|---|
| Joanne Black | Bernard Black | Kate Litvak |
| Anthony Dain | Samuel Black | Olga Dal |
| Jeannette Goodwin | | |

**ANSWER:**      Paragraph 4 contains legal conclusions as to which no response is required.

Answering further, Defendants state that Group II and Group III are not "competing" with each other,

but rather are colluding in an effort to avoid the effect of various court orders.

5.      In one group are Joanne Black (disabled beneficiary), Jeannette Goodwin (Joanne's conservator), and Anthony Dain (Joanne's first cousin and co-trustee of the Supplemental Needs Trust). They claim an interest in the Property owned by both Trusts because it consists of assets that were intended for Joanne's benefit and were misdirected from the Colorado conservatorship.

**ANSWER:**      Admitted.

6.      In the second group are Bernard and Samuel Black (co-trustees of both Trusts). They claim an interest in the Property owned by both Trusts because they are a majority of the co-trustees of both Trusts and beneficiaries of the Issue Trust.

**ANSWER:**      Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 6. Answering further, the DPC has suspended Bernard and

Samuel's authority to act on behalf of the SNT.

7.      In the third group are Kate Litvak (Bernard's wife and judgment creditor of both Trusts) and Olga Dal (Litvak's cousin and judgment creditor of both Trusts). They assert an interest in the Property owned by both Trusts because they are judgment creditors of both Trusts.

**ANSWER:**      Admitted. Answering further, Litvak and Dal have entered into a fraudulent

scheme with Bernard and Samuel in which they collusively obtained agreed judgments on purported

2

"loans" made by Litvak and Dal to the Trusts. Defendants have moved to vacate these agreed judgments.

8.      Each group has obtained one or more various orders and awards in its favor issued by different courts and/or arbitration panels. These three orders directly conflict with each other. JPMS LLC's and Chase's compliance with one order – either directly, secondarily, or otherwise – puts them at risk of disobeying one of the other orders.

**ANSWER:**   Defendants admit the allegations in the first sentence of Paragraph 8. The second sentence of Paragraph 8 consists of legal conclusions to which no answer is required. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 8.

9.      Group I's Order: **April 27, 2018 Order by the Denver Probate Court.** The DPC Order states that the Property "shall be immediately returned and placed into the Registry of the Denver Probate Court pending further proceedings regarding disposition of said funds." (*In re Joanne Black,* Denver Probate Court Case No. 12 PR 1772). (Attached as **Exhibit 1**).

**ANSWER:**   Admitted. Answering further, the Colorado Court of Appeals denied a motion by Bernard to stay enforcement of this order of the DPC on June 29, 2018.

10.     Group II's Order: **March 23, 2018 FINRA Arbitration Award.** The FINRA award states that "JPMS LLC is directed and ordered to freeze assets in the IT or the SNT… until final order of pending litigation in the Colorado Courts, or unless and until Trustees of the [Trusts] in writing to JPMS LLC mutually agree to withdrawals from the [Trusts], which agreement(s) shall be honored by JPMS LLC." (*Bernard S. Black and Samuel H. Black, as Trustees v. J.P. Morgan Securities LLC,* FINRA Cases Nos. 16-02822 and 16-03146). (Attached as **Exhibit 2**).

**ANSWER:**   Admitted.

11.     Group III's Order: **Illinois Citations to Discover Assets to Third Party Respondents.** The Citations state that JPMS LLC and Chase are "prohibited from making or allowing any transfer … of any property … belonging to the [Trusts] … WARNING: [JPMS LLC's and Chase's] failure to comply with the citation proceeding may result in a judgment being entered against [JPMS LLC and Chase] for the unsatisfied amount of this judgment." (*Dal v. Bernard and Samuel Black,* Circuit Court of Cook County Case No. 2017-L9744; *Litvak v. Bernard and Samuel Black,* Circuit Court of Cook County Case No. 2017-L-9743). (Attached as **Exhibit 3**).

**ANSWER:**   Admitted.

12.     JPMS LLC and Chase Bank have no stake or interest in the Property, but they have been and continue to be placed in the middle of conflicting claims and instruction with regard to the Property and have been made a party to various court and arbitration proceedings. JPMS LLC and Chase have not been found to have engaged in any wrongdoing by any court or tribunal in any of these proceedings. JPMS LLC and Chase have expended significant ongoing efforts to encourage all interested parties to resolve these differences and submit a single joint written instruction concerning the Property but the interested parties have not been able to reach agreement. A copy of JPMS LLC and Chase Bank's most recent letter, dated May 2, 2018 to the parties asking them to submit unified, joint instructions is attached as **Exhibit 4**.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of Paragraph 12. Defendants admit the allegations in the third and fourth sentences of Paragraph 12.

13.     Plaintiff JP Morgan Chase Bank, National Association ("Chase Bank") is a national banking association with its main office located in Columbus, Ohio. For purposes of determining diversity jurisdiction, Chase Bank is a citizen of the State of Ohio.

**ANSWER:**     Admitted.

14.     Plaintiff J.P. Morgan Securities LLC ("JPMS LLC") is a limited liability company formed under the laws of the State of Delaware, whose sole member is J.P. Morgan Broker-Dealer Holdings Inc. J.P. Morgan Broker Dealer Holdings Inc. is incorporated in the State of Delaware and its principal place of business is at 383 Madison Avenue, New York, N.Y. For purposes of determining diversity jurisdiction. JPMS LLC is a citizen of the States of Delaware and New York.

**ANSWER:**     Admitted.

15.     On information and belief, Defendant Bernard Black ("Bernard") is a citizen of the State of Illinois. He is a co-trustee of the Irrevocable Trust for the benefit of the Issue of Renata Black ("IT") and a co-trustee of the Supplemental Needs Trust for the benefit of Joanne Black ("SNT"). The settlor of the IT and SNT, Renata Black, is deceased. The primary beneficiaries of the IT are Bernard and his children. The primary beneficiary of the SNT is Joanne Black ("Joanne"), the sister of Bernard.

**ANSWER:**     Admitted.

16.     On information and belief, the Defendant Samuel Black ("Samuel") is a citizen of the State of Maryland. He is a co-trustee of the IT. Samuel contends he is also a co-trustee of the SNT.

**ANSWER:**     Defendants admit the allegations in the first two sentences of Paragraph 16.

Defendants admit that Samuel contends he is a co-trustee of the SNT but deny that he actually is a trustee thereof and deny the third sentence of Paragraph 16 to that extent. Answering further, on or about early 2013, while Bernard was continuing to portray himself as complying with his fiduciary duties and protecting his sister Joanne's best interests, Bernard prepared and requested Dain sign an amendment to the SNT adding Samuel as a "backup trustee."

17.     On information and belief, Defendant Anthony Dain ("Dain") is a citizen of the State of California. He is a co-trustee of the SNT. He may also be a co-trustee of the IT.

**ANSWER:**     Defendants admit the allegations in the first two sentences of Paragraph 17. The third sentence of Paragraph 17 contains legal conclusions to which no response is required. Answering further, Dain states that he sent an email resigning as co-trustee of the Issue Trust, but is unsure as to the legal effect of that email on his status as trustee.

18.     On information and belief, Defendant Katherine Litvak ("Litvak") is a citizen of the State of Illinois.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.     On information and belief, Defendant Olga Dal ("Dal") is a citizen of the State of Washington.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.

20.     On information and belief, Defendant Jeannette Goodwin ("Goodwin") is a citizen of the State of Colorado.  She was appointed successor conservator for Joanne Black by the probate court for Denver County, Colorado.

**ANSWER:**     Admitted.

21.     On information and belief, Defendant Joanne Black ("Joanne") is a citizen of the State of New York.

**ANSWER:**    Admitted.

22.    This Court has subject matter jurisdiction because this is an interpleader action brought under 28 U.S.C. § 1335. Plaintiffs Chase Bank and JPMS LLC have in their possession or custody money and/or property of a value in excess of $500, consisting of cash and marketable securities valued in excess of $4 million as of April 2018.  The value of the Property changes daily. There are more than two Defendants of diverse citizenship claiming, or that may claim, to be entitled to the Property that is the subject matter of this action.

**ANSWER:**    Admitted.

23.    Simultaneous with the filing of this Complaint for Interpleader and Declaratory Relief, Plaintiff Chase Bank and JPMS LLC have filed a Motion to Post Bond in Lieu of Depositing Interpleader Assets, which requests leave to post a bond payable to the Clerk of the Circuit Court in an amount deeded proper by this Court in lieu of depositing the Property in the Court registry.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 23.

24.    Venue is proper under 28 U.S.C. § 1397 because at least one Defendant (claimant) resides in Cook County, Illinois, which is located in this Court's judicial district.

**ANSWER:**    Admitted.

25.    The IT's and SNT's JPMS accounts are serviced by Plaintiffs' representatives in their Wilmette, Illinois, branch office. The IT and SNT are administered in this Court's judicial district because Bernard resides therein and is a co-trustee of both trusts.

**ANSWER:**    Admitted.

26.    Renata Black ("Renata") was the mother of Bernard and Joanne. Bernard has five children from his marriage that ended in a divorce, and two children from his second marriage to current wife, Litvak.  On information and belief, Joanne has suffered from mental illness throughout her life. She has never been married nor has she had any children.

**ANSWER:**    Admitted.

27.    While living, Renata established two trusts.  The beneficiaries of the IT are Bernard Black and his children. The current trustees of the IT are Bernard and Samuel Black. Dain may also be a co-trustee of the IT. The beneficiaries of the SNT are Joanne Black for her life and the IT is the remainder beneficiary. The current trustees of the SNT are Bernard and Dain. Samuel also contends he is a co-trustee of the SNT.

**ANSWER:** Defendants admit the allegations in the first two sentences of Paragraph 27. Defendants admit the third sentence of Paragraph 27, in that Dain is unclear of his status as trustee of the IT following an email he sent in which he stated his desire to resign. Defendants admit the allegations in the fourth and fifth sentences of Paragraph 27, except that Defendants deny that Samuel is in fact a co-trustee of the SNT.

28.     Renata passed away on May 1, 2012. Bernard was appointed the executor of Renata's estate. Renata's last will and testament provided that one-third of her estate would go to the IT and two-thirds of her estate would go to the SNT.

**ANSWER:**     Admitted.

29.     When she passed away, Renata owned brokerage accounts at Vanguard and Fidelity Investments worth approximately $3.5 million.  Unbeknownst to Defendants, Renata had executed payable-on-death ("POD") beneficiary designations for the Vanguard and Fidelity accounts directing that almost all of the proceeds of the accounts pass outside her estate directly to Joanne, not in trust.

**ANSWER:**     Admitted. Answering further, Renata designated Joanne as the direct recipient of 95% of the Vanguard and Fidelity accounts.

30.     On information and belief, at or about the time of Renata's death in 2012, Joanne was living in Colorado. Accordingly, on October 16, 2012, Bernard learned of the POD designations, he petitioned the Denver Probate Court for an order to appoint himself as his sister's conservator, the equivalent of a guardian of her property. The Denver Probate Court granted the Bernard's petition and appointed him conservator for Joanne with the authority to disclaim the POD proceeds on her behalf. Shortly thereafter, by disclaiming receipt of the POD assets on Joanne's behalf, Bernard directed the deposit of approximately $1.5 million of the POD proceeds into accounts at Chase Bank and JPMS LLC that were owned by the IT.  Bernard also directed the deposit of approximately $1.5 million of the POD proceeds into accounts at Chase Bank and JPMS LLC that were owned by the IT. Bernard also directed the deposit of approximately $2 million of the POD proceeds into accounts at Chase Bank and JPMS LLC owned by the SNT. The $3.5 million in proceeds of the POD accounts that were deposited to the IT's and SNT's accounts at Chase Bank and JPMS LLC are the Property that is the subject of this action.

**ANSWER:**     Admitted, except that the allegation that a conservator is the equivalent of a guardian of property is a legal conclusion to which no answer is required. Answering further, as part of Bernard's petition for appointment as conservator of Joanne's property, he represented to the court

that Joanne was schizophrenic and homeless in Denver, that Joanne had directly inherited the POD assets from Renata, and the POD assets would pass outright to Joanne, and not into the SNT. Bernard stated to the DPC his intention to transfer all of Joanne's POD assets into the SNT for her benefit. On or about early 2013, while Bernard was continuing to portray himself as complying with his fiduciary duties and protecting his sister Joanne's best interests, Bernard prepared and requested Dain sign an amendment to the SNT adding Samuel as a "backup trustee" in the event of an urgency in the future where either Bernard or Dain was unavailable to act. Around the same time, upon obtaining control of Joanne's property from the DPC and contrary to his representations to the DPC, Bernard disclaimed Joanne's rights to the POD assets; transferred Joanne's POD assets to Renata's NY Probate Court estate; caused one-third of Joanne's POD assets (approximately $1.5 million) to be conveyed to the Issue Trust for himself and his descendants; placed just two-thirds of Joanne's POD assets into the SNT and 2013 Trust; and directed other assets belonging to Joanne into the SNT and 2013 Trust over which he exerted control. The DPC has subsequently vacated its order authorizing the disclaimers made by Bernard.

31.     Subsequently, in 2015, proceedings were initiated in the Denver Probate Court to determine whether Bernard had committed civil theft and breached his fiduciary duties by depositing the $1.5 million of the POD proceeds to the IT's accounts at Chase Bank and JPMS LLC, instead of to the SNT's accounts. On September 28, 2015, the Denver Probate Court found that Bernard had committed civil theft and breached a fiduciary duty. The Denver Probate Court expressly found that the Property deposited in the IT's accounts at Chase Bank and JPMS LLC was intended for the benefit of Joanne. The Denver Probate Court surcharged Bernard in the amount of $1,511,356 and assessed treble damages against him in the amount of $4,534,068. The disclaimer transaction was not reversed and the $1.5 million remains in the Chase Bank and JPMS LLC accounts owned by the IT. A copy of the Denver Probate Court's findings is attached as **Exhibit 5**.

**ANSWER:**     Admitted. Answering further, Defendants state that Bernard was suspended as conservator in April 2015. The DPC held 4 days of evidentiary hearings and in addition to finding that Bernard had committed civil theft and breached a fiduciary duty as Joanne's conservator, the DPC entered a judgment against Bernard in favor of Joanne for $4,534,068, appointed a new

conservator for Joanne, and enjoined Bernard from using Joanne's funds to pay his attorney or other

fees.

32.     In subsequent orders, the Denver Probate Court appointed Goodwin as a successor conservator for Joanne. The Denver Probate Court also authorized Dain to act as a sole trustee of the SNT and to make withdrawals for litigation expenses arising from services rendered by various professionals who had represented or acted on behalf of Joanne in litigation in Colorado, Illinois and New York. From September 2015 to January 4, 2017, $413,424 was withdrawn by Dain, as Trustee, from the SNT. A copy of the Probate Court's Orders is attached as **Exhibit 6**.

**ANSWER:**     Admitted.

33.     On January 25, 2018, the Colorado Court of Appeals ("CCA") issued a published decision affirming the Probate Court's surcharge and assessment of treble damages. It also affirmed the election of the Denver Probate Court not to reverse the disclaimer transaction. In a separate unpublished decision the CCA vacated orders of the Probate Court relating to the SNT, including the orders authorizing Dain to withdraw part of the Property for litigation expenses, and remanded for the Probate Court to make express findings as to its jurisdiction over the SNT and over conservatorship assets including the Property now in the custody of Chase bank and JPMS LLC. A copy of the CCA's published opinion is attached as Exhibit 7.

**ANSWER:**     Admitted.

34.     On April 27, 2018, the Denver Probate Court entered an Order finding that it had jurisdiction of Bernard Black, Anthony Dain, and the assets held in the SNT and Issue Trust accounts at Chase Bank and JPMS LLC. The Order further vacated its prior order authorizing Bernard to disclaim Joanne's interest in the POD assets. Finally, the Order states that "[a]ll funds disclaimed pursuant to this Order shall be immediately returned and placed into the Registry of the Denver Probate Court pending further proceedings regarding disposition of said funds." That includes the assets currently in the IT and SNT accounts held at Chase Bank and JPMS LLC. A copy of the DPC's opinion is attached as Exhibit 1.

**ANSWER:**     Admitted.

35.     In September 2017, Litvak filed a complaint in the Circuit Court of Cook County, Illinois, Case No. 2017-L-9743, naming Bernard and Samuel as co-trustees of the IT and SNT as defendants. Litvak alleged that Bernard and Samuel as trustees were indebted to her in the amount of $408,566.93, as a result of funds allegedly advanced pursuant to a promissory note executed by the co-trustees on behalf of the IT and SNT that had not been repaid.

**ANSWER:**     Admitted.

36.     Litvak contends that Bernard and Samuel as co-trustees executed an agreed judgment in the amount of $415,433.77, which was entered by the Circuit Court on October 25, 2017. A copy of the Judgment is attached as Exhibit 8.

**ANSWER:**     Admitted.

37.     On November 10, 2017, Litvak served Citations to Discover Assets to Bernard and Samuel as co-trustees on Chase Bank and JPMS LLC, pursuant to 735 5/2-1402 and Ill. S. Ct. Rule 277. As a result, statutory liens in the amount of $803,867.54 were imposed on the IT's JPMS LLC and Chase Bank accounts, and liens in the same amount were imposed on the SNT's JPMS LLC and Chase Bank accounts. Copies of those Citations are attached as Exhibit 3.

**ANSWER:**     Admitted.

38.     On November 27, 2017, Dain moved to vacate the agreed judgments and quash the Citations. Goodwin filed motions to intervene and to join Dain's motions, which were granted.

**ANSWER:**     Admitted. Answering further, Defendants state that the judgment was a product of collusion between Litvak and Bernard as part of fraudulent and collusive scheme to convert Joanne's assets to their own use, and to prevent Joanne from collecting the Colorado judgment against Bernard.

39.     On December 6, 2017, the Circuit Court entered an order that "all pending citations are stayed pending ruling on the motion to vacate."

**ANSWER:**     Admitted.

40.     On February 16, 2018, the Circuit Court vacated the agreed judgment against the SNT but not against the IT. The liens on the IT's accounts remain in force. A jury trial on the motion to vacate the judgment against the IT is set for July 23, 2018.

**ANSWER:**     Defendants admit the allegations of the first two sentences of Paragraph 40. Defendants deny the allegations in the last sentence of Paragraph 40. Answering further, Defendants state that the July 23 trial date has been stricken and trial has been re-set for January 14, 2019.

41.     On March 21, 2018, Bernard and Samuel appeared in that action through their attorneys.

**ANSWER:**     Admitted.

42.     In September 2017, Dal filed a complaint in the Circuit Court of Cook County, Illinois, Case No. 2017-L-9744, naming Bernard and Samuel as co-trustees of the IT and SNT as defendants. Dal alleged that Bernard and Samuel as trustees were indebted to her in the amount of $342,538.81, as a result of funds allegedly advanced pursuant to a promissory note executed by the co-trustees on behalf of the IT and SNT that had not been repaid.

**ANSWER:**    Defendants admit the allegations in the first sentence of Paragraph 42.

Defendants admit that Dal makes the allegations described in the second sentence of Paragraph 42,

but deny the legal conclusions made in Dal's complaint.


43.     Dal contends that Bernard and Samuel as co-trustees executed an agreed judgment in the amount of $348,936.93, which was entered by the Circuit Court on October 12, 2017. A copy of the Judgment is attached as **Exhibit 9**.

**ANSWER:**    Defendants admit that Exhibit 9 is a copy of the Judgment of the Circuit Court

on October 12, 2017 which speaks for itself. Answering further, the judgment was part of a fraudulent

and collusive scheme Dal, Bernard, Samuel, and Litvak entered into to convert Joanne's assets to

their own use, and to prevent Joanne from collecting the Colorado judgment against Bernard.


44.     On November 2017, Dal served Citations to Discover Assets of Bernard and Samuel as co-trustees on Chase Bank and JPMS LLC, pursuant to 735 ILCS 5/2-1402 and Ill. S. Ct. Rule 277. As a result, statutory liens in the amount of $697,873.86 were imposed on the IT's JPMS LLC and Chase Bank account, and lien in the same amount were imposed on the SNT's JPMS LLC and Chase Bank accounts. These statutory liens are still effective. Copies of those Citations are attached as **Exhibit 3**.

**ANSWER:**    Defendants admit the allegations in the first sentence of Paragraph 44. The

second and third sentences of Paragraph 44 contain legal conclusions to which no answer is required.

Defendants admit that copies of the Citations are attached as Exhibit 3, which speak for themselves.


45.     On November 30, 2017, Dain filed a petition to vacate the agreed judgments and quash the Citations in this action. Goodwin filed motions to intervene and to join Dain's motions, which were granted. The case is set for status hearing on May 8, 2018.

**ANSWER:**    Defendants admit the allegations in the first and second sentences of Paragraph

45. Defendants admit that the case was set for status hearing on May 8, 2018, but deny that such a

hearing actually occurred.

46.    On February 21, 2018, the Circuit Court entered an order that "the third party citations and the liens arising therefrom shall remain pending further order of Court." A copy of this Order is attached as **Exhibit 10**.

**ANSWER:**    Admitted.

47.    On March 26, 2018, Bernard and Samuel have appeared in that action through their attorneys.

**ANSWER:**    Admitted.

48.    In September 2017, Goodwin, as conservator for Joanne Black, filed a petition to register a foreign judgment against Bernard Black in the Circuit Court of Cook County, Illinois, Case No. 2017-L-063055. Goodwin states that she is a judgment creditor arising from the Joanne Black conservatorship proceeding before the Probate Court in which Bernard was surcharged $4,305,819.69.

**ANSWER:**    Admitted, except that the case number of the referenced action is 2017-L-062055, not 2017-L-063055.

49.    On February 22, 2018, Goodwin served a Citation to Discover Assets of Bernard on Chase Bank and JPMS LLC, pursuant to 735 ILCS 5/2-1402 and Ill. S. Ct. Rule 277. As a result, statutory liens in the amount of $8,611,639.38 were imposed on JPMS LLC and Chase Bank accounts associated with Bernard. These statutory liens are still effective. A copy of the Citation is attached as Exhibit 11.

**ANSWER:**    Admitted.

50.    Bernard has appeared in that action and filed a motion to vacate registration of the Colorado judgment. The motion is set for argument on May 3, 2018.

**ANSWER:**    Defendants admit the allegations in the first sentence of Paragraph 50. Defendants admit that the motion was set for argument on May 3, 2018. Answering further, Defendants state that the Circuit Court issued a written order on June 12, 2013 denying Bernard's motion to vacate registration of the Colorado judgment, and Bernard has filed a notice of appeal from that order.

51.     Bernard is associated with accounts at JPMS LLC and Chase Bank as an individual owner, as a joint owner, as trustee, and as custodian for minors. On February 28, 2018, JPMS LLC and Chase Bank filed an application for instruction with the Circuit Court to determine on which accounts the liens attach.

**ANSWER:**     Admitted.

52.     On March 8, 2018, the Circuit Court entered an Agreed Order, to which Bernard consented, that "all accounts with which Bernard S. Black is associated shall remain frozen until further order of Court." A copy of this Agreed Order is attached as Exhibit 12.

**ANSWER:**     Admitted.

53.     On September 23, 2016, Bernard and Samuel filed a demand for arbitration with the Financial Industry Regulatory Authority office of Dispute Resolution ("FINRA") alleging conversion, breach of fiduciary duty and breach of contract against JPMS LLC as to the IT, FINRA Case No. 16-02822.

**ANSWER:**     Admitted. Answering further, Defendants state that neither Bernard nor Samuel notified Joanne, Dain or Goodwin of this FINRA proceeding or their efforts to access Joanne's assets.

54.     On October 26, 2016, Bernard and Samuel filed a similar demand for arbitration with FINRA against JPMS LLC as to the SNT, FINRA Case No. 16-03146. The two arbitrations were consolidated.

**ANSWER:**     Admitted. Answering further, Defendants state that neither Bernard nor Samuel notified Joanne, Dain or Goodwin of this FINRA proceeding or their efforts to access Joanne's assets.

55.     A four-day evidentiary hearing was held in Chicago, Illinois, on February 12-15, 2018, before a Panel of three arbitrators. On March 23, 2018, the parties were served with the Arbitration Award. A copy of the Arbitration Award is attached as Exhibit 2. The Panel made 13 express Findings and issued 6 Orders. Finding #5 determined that all allegations of wrongdoing against JPMS LLC "are without merit." Order #6 "dismissed" these claims and "denied" Bernard and Samuel's request for attorneys' fees.

**ANSWER:**     Admitted.

56.     Finding #7, d) reflects that JPMS LLC "requested that the freeze on [the IT's and

13

SNT's JPMS LLC accounts] continued until final order of the Colorado courts on jurisdictional matters, final turn-over orders from Illinois courts, or until the Trustees otherwise agree in writing."

**ANSWER:**    Admitted.

57.    Order #3 "direct[s] and order[s JMPS LLC] upon request by SNT Trustee(s) … to expend SNT assets for the benefit of Joanne Black, including <u>her</u> personal needs, clothing food, living arrangements, travel and entertainment."

**ANSWER:**    Admitted.

58.    Order #4 "direct[s] and order[s JMPS LLC] upon request by IT Trustee(s) … to expend IT assets for the benefit of Bernard S. Black's trust beneficiary children, for purposes of the beneficiary children's educational expenses."

**ANSWER:**    Admitted.

59.    On April 25, 2018, counsel for Bernard and Samuel Black sent counsel for JPMS LLC and Chase Bank a letter stating that "we will hold Chase Bank responsible for any actions it takes or implements regarding the SNT's accounts, including an order from the Denver Probate Court authorizing or directing a transfer, spending or any other account activity from the SNT account." A copy of the letter is attached as Exhibit 13.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 59.

60.    The instructions in the April 25 letter from Bernard and Samuel Black are adverse to the April 27, 2018 DPC Order.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 60.

61.    On May 1, 2018, counsel for JPMS LLC and Chase Bank sent a letter to counsel for all parties (Goodwin, Dain, Bernard Black, Samuel Black, Joanne Black, Litvak and Dal) asking them to a joint instruction to JPMS LLC and Chase Bank regarding how to proceed given the numerous conflicting Court Orders that exist.  A copy of the JMPS LLC and Chase Bank letter is attached as Exhibit 4.

**ANSWER:**    Admitted.

62.    As a result of the foregoing, there are multiple adverse claims to the Property in

Plaintiffs' custody and held in the IT's and SNT's accounts.

**ANSWER:** The introductory portion of Paragraph 62 is a legal conclusion to which no answer is required.

    A. Goodwin's Claim as judgment creditor: Conservator Goodwin claims all Property in the IT's and SNT's accounts based on the Colorado judgment and her Illinois liens.

**ANSWER:** Admitted.

        i. Goodwin's claims are adverse to Bernard's and Samuel's claim as co-trustees and beneficiaries of the IT. Bernard and Samuel oppose Goodwin's claim because they allege Joanne has no relationship to the IT. Bernard and Samuel have moved to vacate registration in Illinois of the Colorado judgment and Goodwin's liens.

**ANSWER:** The first sentence of Paragraph 62(A)(i) contains legal conclusions to which no answer is required. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 60(A)(i). Defendants deny that Samuel has moved to vacate registration in Illinois of the Colorado judgment and Goodwin's liens, but admit that Bernard has done so. Answering further, Defendants state that Bernard's motion to vacate was denied on June 12, 2018, and Bernard has filed a Notice of Appeal of that denial.

        ii. Goodwin's claims are adverse to Dal's and Litvak's claims as judgment creditors based on the Illinois judgments and their Illinois liens.

**ANSWER:** Admitted.

    B. Litvak's Claims as judgment creditor: Litvak claims some of the Property in the IT's and SNT's accounts based on the Illinois judgments agreed to by Bernard and Samuel, and her Illinois liens.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 60(B).

        i. Litvak's claims/liens based on the Illinois judgments are adverse to Goodwin's claims/liens based on the Colorado judgment.

**ANSWER:**    Admitted.

ii. Litvak's claims/liens based on the Illinois judgments are adverse to Dain's claim as co-trustee of the SNT. Goodwin and Dain have moved to vacate the agreed judgments and to void Litvak's Illinois judgments alleging they are fraudulent.

**ANSWER:**    Admitted. Answering further, Dain's motion to vacate was denied, but Goodwin's was granted as to the SNT and denied in part.

C. Dal's Claims as judgment creditor: Dal claims some of the Property in the IT's and SNT's accounts based on the Illinois judgments agreed to by Bernard and Samuel, and her Illinois liens.

**ANSWER:**    Admitted.

i. Dal's claims/liens based on the Illinois judgments are adverse to Goodwin's claims/lien based on the Colorado judgments.

**ANSWER:**    Admitted.

ii. Dal's claims/liens based on the Illinois judgments are adverse to Dain's claim as co-trustee of the SNT. Goodwin and Dain have moved to vacate the agreed judgments and to void Dal's liens alleging they are fraudulent.

**ANSWER:**    Admitted.

D. Dain's Claims to the IT as co-trustee of the SNT: Dain claims all Property in the IT's accounts because the Colorado courts found the Property was intended for Joanne's benefit and should have been deposited in the SNT's accounts.

**ANSWER:**    Admitted. Answering further, for the sake of clarity, Dain claims the Property in his capacity as trustee, and not individually. The DPC has ordered that all assets in the IT and SNT be deposited with the DPC Registry for further proceedings.

i. Dain's claim based on the Colorado judgment is adverse to Bernard's and Samuel's claim as co-trustees and beneficiaries of the IT. Bernard and Samuel oppose Dain's claim because they allege he is not a co-trustee of the IT and Joanne is not a beneficiary of the IT.

**ANSWER:**    Admitted.

16

ii. Dain's claim based on the Colorado judgment is adverse to Dal's and Litvak's claims based on their Illinois judgments and Illinois liens.

**ANSWER:** Admitted.

E. Dain's Claims to the SNT as co-trustee of the SNT: Dain claims he is authorized to deposit the SNT's Property with the registry of the Denver Probate Court.

**ANSWER:** Admitted.

i. Dain's claim based on the April 27, 2018 order of the Denver Probate Court is adverse to Bernard's and Samuel's claim as co-trustees based on the Arbitration Award that prohibits the Property from being removed from the JPMS and Chase accounts until all appeals from the Denver Probate Court's order are exhausted.

**ANSWER:** Admitted.

ii. Dain's claim based on the April 27, 2018 order of the Denver Probate Court is adverse to Dal's and Litvak's claims based on their Illinois judgments and their Illinois liens.

**ANSWER:** Admitted.

F. Bernard and Samuel's Claims as co-trustees of the IT: Bernard and Samuel claim all Property in the IT's accounts because they are the only co-trustees and beneficiaries of the IT. Bernard and Samuel also claim the immediate right to withdraw some Property in the IT's account because the arbitration Award authorizes them to make withdrawals from the IT for educational expenses.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the first and second sentences in Paragraph 62(F). Answering further, Defendants state that the DPC has ordered that all assets of the Issue Trust be deposited with the DPC's Registry.

i. Bernard's and Samuel's claims are adverse to Goodwin's claim based on the Colorado judgment and Illinois liens.

**ANSWER:** Admitted.

ii. Bernard's and Samuel's claim is adverse to Dain's claim that he is authorized to

deposit the Property in the registry of the Denver Probate Court based on the April 27, 2018 order.

**ANSWER:**   Admitted.

63.    Each Defendant has made and continues to make demands on Plaintiff that some or all of the Property in the IT's and SNT's accounts be distributed to him or her.  Each Defendant has objected and continues to object to distributing some or all of the Property in the IT's and SNT's accounts to one or more of the other Defendants.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations of the first sentence of Paragraph 63. Defendants admit the allegations of the

second sentence of Paragraph 63.

64.    Any withdrawals from the IT's and SNT's accounts by Bernard, Samuel and/or Dain as authorized by the Arbitration Award may be inconsistent with (1) the Illinois statutory liens of Litvak, Dal and Goodwin, (2) the Denver Probate Court's April 27, 2018 Order, (3) and/or other orders.

**ANSWER:**   Admitted.

65.    Plaintiffs Chase Bank and JPMS LLC have no claim to the Property and have no stake or interest as to which Defendant receives the Property and/or in what amounts. Plaintiffs have engaged in significant and reasonable efforts in encouraging Defendants to reach agreement and submit joint written instructions concerning distribution of the Property, but such agreement has not occurred. Thus, despite Plaintiffs' efforts, there are multiple, actual and potential conflicting court orders, judgments, and claims regarding ownership and control of the Property.

**ANSWER:**   Admitted.

66.    As a result, Plaintiffs Chase Bank and JPMS LLC are in great doubt as to which Defendant is legally entitled to the Property.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 66.

67.    Further, if JPMS LLC does not comply with the Arbitration Award, it may be exposed to sanctions, discipline and/or claims by its regulator FINRA.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 67.

68.     For all these reasons, Plaintiffs cannot determine which claims are valid without exposing themselves no further duplicative litigation and/or liability.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 68.

## CROSSCLAIMS AND COUNTERCLAIM

Counter-plaintiffs Anthony Dain ("Dain"), as trustee of the SNT, and Jeanette Goodwin ("Goodwin"), as court-appointed successor conservator for Joanne Black, for their Counterclaim against JPMorgan Chase Bank, National Association ("Chase Bank") and J.P. Morgan Securities LLC ("JPMS LLC"), Bernard Black, Samuel Black, Katherine Litvak, and Olga Dal, allege as follows:

1.     Counter-plaintiff Jeannette Goodwin is the successor conservator for Joanne Black ("Conservator"), as appointed by the Denver Probate Court, Denver County, Colorado ("DPC"), In the matter of Joanne Black, Case No. D201PR001772 (Hon. Elizabeth D. Leith). Conservator is an individual citizen of Colorado.

2.     Counter-plaintiff Anthony Dain is Renata's nephew and Bernard's and Joanne's cousin. Anthony was an original trustee (co-trustee with Renata) of the Supplemental Needs Trust for the Benefit of Joanne Black under agreement dated December 19, 1997 ("SNT"), the Joanne Black 2013 Trust Agreement executed on March 22, 2013 ("2013 Trust"), and the Trust for the Benefit of the Issue of Renata Black ("Issue Trust"). (Collectively, the foregoing trusts are referred to herein as the "Trusts.")

3.     Joanne Black ("Joanne") is an individual citizen of the State of New York. Joanne is Bernard's sister, Samuel's aunt, and Litvak's sister-in-law.

4.     Bernard Steven Black ("Bernard"), is an individual citizen of Illinois, residing in Cook

19

County. Bernard is Joanne's sister, Renata's son, Litvak's husband, and Samuel's father.

5. Katherine Litvak Black, also known as Katherine Valerie Litwak, Katherine Valerie Litvak, and Yekaterina Valerie Litvak, ("Litvak") is an individual citizen of Illinois, residing in Cook County. Litvak is the current wife of Bernard and stepmother of Sam.

6. Litvak and Bernard are both licensed (non-Illinois) attorneys and are professors at Northwestern University Pritzker School of Law ("Northwestern").

7. The POD assets are held by JPMorgan Chase Bank, N.A. ("Chase Bank"), J.P. Morgan Securities LLC ("JPMS LLC"), and/or their affiliates (collectively, "Chase").

8. Upon information and belief, Defendant, Olga Dal ("Dal") is an individual citizen of the State of Washington. Upon information and belief, Dal is Litvak's cousin.

9. Upon information and belief, Defendant, Samuel H. Black ("Sam") is an individual citizen of Maryland. Samuel is Bernard's son, Litvak's stepson, and Joanne's nephew.

10. Renata Black ("Renata") now deceased, was Bernard's and Joanne's mother, Samuel's grandmother, and Litvak's mother-in-law. Renata passed away on May 1, 2012.

**The Trusts**

11. On December 19, 1997, Renata as Settlor established the SNT for Joanne's benefit.

12. Pursuant to the SNT, there were two Trustees of the SNT: Renata and Dain.

13. After Renata's death, Bernard became the successor trustee to Renata for the SNT.

14. Dain is and always has been a Trustee of the SNT.

15. During Joanne's lifetime, she is the sole beneficiary of the SNT.

16. On December 19, 1997, Renata as Settlor established the Issue Trust for the benefit of the Bernard and his descendants.

17. Before her death, Renata established Roth IRA and other accounts at Vanguard and Fidelity, which accounts by the time of Renata's death had a combined value exceeding $3.5 million.

20

18.     Renata designated Joanne as the direct recipient of 95% of those accounts to be payable or transferable on death to Joanne (the "POD assets"), such assets valued at approximately $3.5 million in marketable securities.

19.     The POD assets are held by Chase Bank and JPMS LLC, and/or their affiliates (collectively, "Chase").

20.     Following her death, Bernard initiated the probate process for Renata's estate by filing a petition in the Surrogate's Court of the State of New York, County of Westchester ("NY Probate Court"), Probate Proceeding, *Will of Renata Black*, Case No. 2012-1209. Pursuant to will Bernard submitted, Bernard was appointed Executor.

21.     Because they were payable on death to Joanne, the POD assets were not part of Renata's Estate, but instead were the property of Joanne, individually, upon Renata's death.

22.     Pursuant to the terms of the will Bernard submitted to NY Probate Court, assets in Renata's estate would pass one-third to the Issue Trust for the benefit of Bernard and his descendants and two-thirds to the SNT for Joanne's benefit.

23.     Bernard knew the POD assets had transferred to Joanne directly upon Renata's death and belonged to Joanne.

24.     Bernard knew that, if he was able to obtain control of Joanne's POD assets, he would funnel Joanne's POD assets through Renata's estate of which he was the Executor and direct one-third of Joanne's POD assets into the Issue Trust for his and his children's benefit.

25.     On October 16, 2012, Bernard initiated a suit in Denver, Colorado, where Joanne then resided, petitioning for appointment as Joanne's conservator, *In re Application of Bernie Black*, Case No. 2012 PR 1772 ("Colorado Case").

26.     Bernard represented to the DPC that he needed to safeguard Joanne's assets, including the $3.5 million POD assets which passed directly to Joanne, for Joanne's benefit.

27.     In pursuit of his appointment as conservator, Bernard represented that Joanne was schizophrenic and homeless in Denver; that Joanne had directly inherited the POD assets from Renata; and the POD assets would pass outright to Joanne, and not into the SNT.

28.     As part of his petition for appointment as conservator of Joanne's property Bernard stated to the DPC his intention transfer all of Joanne's POD assets into the SNT for her benefit.

29.     Understanding that Bernard would disclaim on behalf of Joanne the entirety of the POD assets and that Bernard would move all of the POD assets into the SNT for Joanne's sole benefit, the DPC granted Bernard's petition and appointed him conservator.

30.     In or about early 2013, while Bernard was continuing to portray himself as complying with his fiduciary duties and protecting his sister Joanne's best interests, Bernard prepared and requested Dain sign an amendment to the SNT adding Samuel as a "backup trustee" in the event of an urgency in the future where either Bernard or Dain was unavailable to act.

31.     In or about early 2013, upon obtaining control of Joanne's property from the DPC and contrary to his representations to the DPC, Bernard disclaimed Joanne's rights to the POD assets; transferred Joanne's POD assets to Renata's NY Probate Court estate; caused one-third of Joanne's POD assets (approximately $1.5 million) to be conveyed to the Issue Trust for himself and his descendants; placed just two-thirds of Joanne's POD assets into the SNT and 2013 Trust; and directed other assets belonging to Joanne into the SNT and 2013 Trust over which he exerted control.

32.     In February 2013, as part of his scheme to steal from Joanne and control her assets, Bernard created the Joanne Black 2013 Trust Agreement (2013 Trust).

33.     Bernard and Samuel appointed themselves, together with Dain, as co-trustees.

34.     Bernard convinced Dain it was beneficial to include Samuel as a third trustee "just for backup for the future," in the event Dain was traveling overseas for work or unavailable at a time when Joanne may have an immediate need for care.

35.     Contrary to the representation to Dain, by establishing themselves as co-trustees, Bernard and Samuel sought to assure their ability to act as the majority without Dain's agreement or knowledge, in order to access and convert Joanne's assets to their own use.

36.     Among others of Joanne's assets, Bernard transferred into the 2013 Trust the Fidelity funds accounts Joanne obtained before Bernard persuaded the DPC to appoint him as Joanne's conservator.

### Bernard's Theft and Self-Dealing

37.     At a time when he was required by DPC order to place assets belonging to Joanne into the SNT for Joanne's benefit as beneficiary of the SNT and while he was trustee of the SNT, Bernard converted to his own use and benefit $1.5 million of the assets which should have gone to the SNT.

38.     Acting as a fiduciary relative to Joanne, Bernard disclaimed her $3.5 million POD inheritance from their mother; funneled Joanne's assets through accounts Bernard created in Renata's probate estate where he also owed fiduciary duties to Joanne; through this mechanism, converted one-third of Joanne's assets; and removed such assets to the Issue Trust for his and his children's benefit.

39.     Bernard created a new trust purportedly for Joanne's benefit, the 2013 Trust, appointing himself, Samuel, and Dain as co-trustees such that Bernard and Samuel could control the 2013 Trust.

40.     Bernard and Samuel used the 2013 Trust to manipulate funds to Joanne's detriment and to engage in transactions with Joanne's 2013 Trust to cause Joanne and the 2013 Trust to bear the brunt of the tax burdens incurred relating to Renata's probate estate, transferring the tax benefits to himself and his children.

41.     Bernard charged to Joanne the significant attorneys' fees and costs of creating the 2013 Trust.

42.     Certain of Bernard's self-dealing was discovered and presented to the DPC, and on April 2, 2015, the DPC suspended Bernard's authority as conservator over Joanne's property.

43.     The DPC held 4 days of evidentiary hearings and (1) concluded Bernard had stolen approximately $1.5 million from Joanne; (2) found Bernard had breached his fiduciary duties as Joanne's conservator; (3) entered a judgment against Bernard in favor of Joanne; (4) appointed a new conservator for Joanne; and (5) enjoined Bernard from using Joanne's funds to pay his attorney or other fees.

**Bernard's and Samuel's Self-Dealing and Litigation Against Joanne's Interests**

44.     Bernard and Samuel instituted multiple suits and repeatedly litigated against Joanne's interest.

45.     In their positions as trustees of the SNT and 2013 Trust, Bernard and Samuel, in combination with Litvak and Dal, used and attempted to use Joanne's assets held in SNT and 2013 Trust to pay the attorneys' fees incurred while litigating against Joanne's interests.

46.     Bernard, Samuel, Litvak, and Dal did not make any effort to mitigate the amounts incurred in the litigation relating to Joanne, the SNT, the 2013 Trust, or Joanne's other interests, but instead significantly increased the cost to Joanne

47.     Significant expenses were incurred at Joanne's expense during the litigation before the DPC as a result of Bernard's misconduct.

48.     The DPC found:

> Mr. Black transferred funds into an excessive number of different accounts, which can only be likened to a shell game. It took an extraordinary effort by Ms. Kerr [the forensic accountant] to trace where funds were placed and the expenses paid by the funds... 25 different accounts were created to hold funds related to this case, encompassing Renata Black's original accounts at Vanguard and Fidelity and accounts opened by Mr. Black as Executor, Trustee and conservator. The Court finds 15 of these accounts appear to be completely unnecessary.

The Court finds Bernie Black has breached his fiduciary duties and has defended this action in bad faith for the reasons discussed above. The Court finds Bernie Black should personally bear the cost for these proceedings ...

All costs, fees and attorney fees incurred to prosecute this matter shall be paid by and chargeable to Bernie Black, including GAL fees and fees for Pamela Kerr's accounting and services. Any such fees and costs, including attorney fees paid by Joanne Black or her estate shall be reimbursed by Bernie Black with interest.

49.     The DPC recommended Bernard not be appointed as a fiduciary for Joanne in any capacity – especially not in any capacity involving Joanne's assets.

50.     The DPC entered judgment for treble the amount Bernard had stolen, awarding a total in excess of $4.5 million in favor of Joanne and against Bernard, personally.

51.     The DPC summarized its September 28, 2015 findings:

Bernie Black transferred funds from his deceased mother's accounts designated payable on death ("POD") to Joanne Black and his five eldest children to fund the Issue Trust ... Mr. Black perpetrated a scheme whereby he obtained an order from this Court to disclaim those POD funds and rather than place the funds into the SNT as he represented his intentions to be, he placed two-thirds of the disclaimed funds into the SNT and one-third into the Issue Trust, all without fully disclosing his intentions to this court. Mr. Black therefore has no rights to any of the funds contained within the Issue Trust that were transferred or derived from Renata Black's POD accounts and the amount surcharged to him speaks to this.

52.     With respect to Bernard and Litvak, the DPC also found:

Bernie Black and his current wife [Kate Litvak] both testified before this Court that they are law professors at Northwestern University in Chicago, Illinois. As such, each of these individuals has an enhanced duty for full and complete candor to the Court and to conduct themselves and this matter with dignity becoming judicial officers and professors. The taking of his sister's funds, the multiple suits initiated by Mr. Black against his family members, the inaccuracies in his pleadings before this Court and his apparent refusal to accept the changes his mother made to her estate plan are absolutely appalling and are not in keeping with his status as a law professor.

53.     In its September 28, 2015 Order, the DPC held:

This Court remains extremely concerned that its orders and intentions will be misrepresented by Bernie Black and Counsel appearing on his behalf to New York

Courts as has apparently been done previously. This Court hopes that any questions which may arise as a result of this Order or any clarifications deemed necessary will be quickly brought to this Court's attention for resolution.

54.     Dal conspired with Bernard to ensure her two children with Bernard obtained a share of Renata's assets.

55.     By March 2016, Bernard had used his fiduciary authority to spend at least $115,000 of Joanne's money to pay the lawyers he engaged to further his efforts to steal from Joanne and defend his actions in doing so.

56.     Bernard told the DPC, Joanne, and Dain that he had repaid Joanne the $115,000 using his own personal funds, which was false.

57.     In fact, Bernard caused the $115,000 spent on the lawyers he used to defend his theft from Joanne before the DPC to be deducted from assets belonging to Joanne.

58.     When Bernard's misconduct was discovered, Bernard told the DPC he had taken funds belonging to Joanne from the 2013 Trust and SNT (via Renata's probate estate) to pay the $115,000 to his lawyers.

59.     On March 17, 2016, the DPC entered its final order following its September 28, 2015 Hearing Order rendering its final judgment for Joanne against Bernard for over $4.5 million (the "Colorado Judgment").

60.     The March 17, 2016 order was subsequently upheld by the Colorado Court of Appeals on January 25, 2018. *In re the Interest of Black*, 2018 COA 07 (Col. Ct. of App.).

**November 2017 Colorado Injunction**

61.     On November 3, 2017, the DPC ordered another injunction against Bernard, enjoining Bernard "from removing or moving any monies or other assets in which Joanne Black has any interest from their present locations"; ordering Bernard to "return all monies which were in the Supplemental Needs Trust on September 28, 2015"; and "specifically enjoin[ing Bernard] from transferring any

funds he controls which were in the Supplemental Needs Trust on September 28, 2015, except to return them to the Supplemental Needs Trust."

62.     On November 3, 2017, the DPC found:

[A]n emergency exists because there is imminent risk of substantial harm to the financial interests of this estate ... based on the allegations that Bernie Black has removed funds from the 1997 Supplemental Needs Trust without Court authorization; funds that were removed from the conservatorship and placed into the Supplemental Needs Trust; ... appropriate action is necessary in the form of the following ORDERS pending hearing, as the actions described in this Motion and Bernie Black's prior actions as adduced after hearing and described in this Court's previous Findings and Orders all shock the conscience of the Court.

63.     On January 4, 2018, the DPC held a hearing at which Bernard, through counsel, agreed to abide by the injunctions entered by the DPC on November 3, 2017.

## January 2018 Colorado Injunction

64.     At the January 4, 2018 hearing, with respect to Bernard, Litvak, Dal, and Samuel, the DPC found their actions "reprehensible" and:

The Court finds the actions of Bernard Black are shocking to the conscience of the Court, especially given Mr. Black's position as a professor of law at a respected law school in this country. Similarly, the Court finds the actions of Mr. Black's wife, also a law professor, are shocking as together their actions only serve to dramatically increase attorney fees and costs and otherwise reduce or eliminate the funds that are due to Joanne Black apparently for no reason ...

The Court finds it is unable to adequately express how shocking these actions taken by Joanne Black's brother and his family are to the conscience of the Court. The Court finds Bernard Black's apparent agreement to the entry of significant money judgments in favor of his wife and her family against the SNT is, if true, a flagrant breach of his fiduciary duties and his duty of loyalty to the beneficiary. Bernard Black has disregarded the Orders of this Court in both fact and in spirit.

65.     The DPC ordered another injunction against Bernard and an injunction against Sam:

1.  Bernard Black and Samuel Black are hereby SUSPENDED as co- trustees of the SNT and any other trusts which benefit Joanne Black, pending the removal proceedings referenced in the State of Illinois.

2.  Neither Bernard Black nor Samuel Black shall have any authority or take any actions with respect to trust funds or funds that are

ultimately meant for or to benefit Joanne Black. Similarly,
neither Bernard Black nor Samuel Black shall make any
decisions regarding the use or placement of trust funds or
property. Both Bernard Black and Samuel Black are ordered to
identify any and all trust documents, funds, or accounts to which
they have access and which are meant to benefit Joanne Black,
and to provide that information directly to Anthony Dain and to
Joanne Black's attorney Lisa DiPonio.

### Defendants' "Loans" and Self-Dealing

66.     By January 2016, Bernard was enjoined by two separate courts from accessing any of

Joanne's assets, regardless of where her assets were located, including that Bernard was specifically

enjoined from using those assets to pay attorneys' fees.

67.     Further, the DPC had specifically ordered Bernard, personally and solely, to repay the

attorneys' fees he had caused to be paid by the SNT and other trusts or entities over which Bernard

had control in a fiduciary capacity relating to Joanne.

68.     Chase was aware of the orders enjoining Bernard and litigation involving Bernard,

Joanne, and the Trusts, and implemented measures to prevent release of Trust assets to Bernard.

69.     In or about March 2016, pursuant to an order of the DPC, more than $250,000 was

made available to agents and representatives at the time in an account Chase held on behalf of the

SNT for the specific purpose of paying Joanne's legal expenses.

70.     Bernard discovered the money was in Joanne's SNT account at Chase and transferred

that money out of Joanne's SNT account for the benefit of him and Litvak.

71.     Bernard transferred approximately $9,000 of Joanne's money to one or more of the

attorneys representing him in litigating against Joanne's interests.

72.     Bernard transferred the remainder of Joanne's money to pay down a home equity line

of credit ("HELOC") held jointly by Bernard and Litvak.

73.     Litvak was aware of and intended for Bernard to make the foregoing transfers.

28

**Defendants' Use of the Courts to Facilitate Theft, Fraudulent Transfers and Other Self-Dealing**

74. Bernard, Samuel, Litvak, and Dal conspired to convert Joanne's assets to their own use, and to prevent Joanne from collecting the Colorado Judgment against Bernard.

75. In furtherance of their scheme, Bernard, Samuel, Litvak, and Dal conspired to and did file at least eight (8) lawsuits against Joanne's interest and sought to have Joanne foot the bill via the SNT and other vehicles.

**Bernard's Northern District of Illinois Lawsuit Against Joanne**

76. On January 29, 2016, Bernard and Samuel filed suit against Joanne in the Northern District of Illinois, *Black v. Black*, Case No. 1:16-cv-01763 (Hon. Virginia M. Kendall)("Black NDIL Lawsuit").

77. In the Black NDIL Lawsuit, Bernard and Samuel sought a declaration from the Northern District of Illinois that the orders imposed by the Colorado and New York courts did not restrain them from using Joanne's assets to pay, among other things, their attorneys' fees.

78. Joanne had to hire attorneys to defend herself against Bernard's and Samuel's NDIL lawsuit against her.

79. On July 13, 2016, Judge Kendall dismissed with prejudice Bernard and Samuel's NDIL Lawsuit against Joanne, because the Court did not have personal jurisdiction over Joanne.

**Cook County Suits to Collect Collusive "Loans"**

80. Following the Colorado Judgment, Bernard, Samuel, Litvak, and Dal knew Joanne would seek to collect her Colorado Judgment from Bernard.

81. Bernard, Samuel, Litvak, and Dal concocted a scheme whereby they created alleged "loans" to Bernard, Samuel, the SNT, 2013 Trust, and Issue Trust; caused Bernard, Samuel, the SNT, 2013 Trust, and Issue Trust to default on every "loan;" filed complaints to collect on the "loans";

entered into agreed judgments against Bernard, the SNT, 2013 Trust, and Issue Trust; issued citations against Bernard, Chase Bank, and JPMS LLC to collect; and instituted garnishments of Bernard's wages to collect the money for their own benefit before Joanne could reach Bernard's wages to collect her judgment for Bernard's theft.

82.    Although they knew Dain was a trustee of the SNT, none of Bernard, Samuel, Litvak, and Dal notified Joanne, her conservator, or co-trustee Dain of any alleged "loan" between or among Bernard, Samuel, Litvak, Dal, the SNT, 2013 Trust, or Issue Trust.

83.    None of Bernard, Samuel, Litvak, and Dal named Joanne, her conservator, or co-trustee Dain of any of their lawsuits based on alleged "loans" between or among Bernard, Samuel, Litvak, Dal, the SNT, 2013 Trust, or Issue Trust, nor even notified Joanne, her conservator, or co-trustee Dain of the lawsuits.

**Dal's First Lawsuit**

84.    On May 5, 2016, to obstruct Joanne's ability to collect her judgment against Bernard, Dal filed a lawsuit against Bernard, personally, based on an alleged "loan" alleged to be secured by Bernard's wages, *Dal v. Black,* Cook County Case No. 2016-L- 004367 (Hon. Patrick J. Sherlock), ("Dal's First Lawsuit").

85.    In Dal's First Lawsuit, filed in May 2016, Dal alleged that she and her father Eugene Mark Dal executed a "Secured Loan Agreement" purporting to be "Dated as of 15 May 2002."

86.    Dal alleged that pursuant to the "Secured Loan Agreement," she and her father were "willing to lend [$150,000 to Bernard], provided she receives a security interest in [Bernard's] income and financial assets."

87.    Dal does not allege when she and Bernard executed this alleged "Secured Loan Agreement."

88.    In Dal's First Lawsuit, Dal alleged: "As of April 30, 2016, there was principal of

$150,000 and interest of $274,694.02 due and owing under the Note," for a total balance due from Bernard to Dal of $424,694.02, plus $91.33 per diem after April 30, 2016 – not including expenses, costs, charges and fees.

89.     On May 2, 2016, the same day Dal filed Dal's First Lawsuit, Bernard agreed to a judgment against himself in the amount of $425,150.68, including payment of Dal's legal fees and costs.

90.     On May 3, 2016, Dal filed a Verified Emergency Motion for Entry of Agreed Judgment, in which she stated that other judgment creditors may initiate post-judgment proceedings against Bernard that may impair Dal's ability to collect the judgment Bernard had agreed to in favor of Dal.

91.     Neither Dal nor Bernard notified Joanne, her conservator, or Dain of Dal's First Lawsuit, Bernard's consent to a judgment in favor of Dal, or Dal's efforts to collect from Bernard.

92.     Three days after filing Dal's First Lawsuit, Bernard had agreed to and the court had entered judgment in the amount of $425,150.68, issued a citation to discover assets, and filed an affidavit for wage deduction against Bernard on May 5, 2016.

93.     By June 7, 2016, Dal had obtained a judgment against garnishee, Bernard, and his employer, Northwestern University.

**Bernard's and Samuel's Issue Trust FINRA Proceeding**

94.     On September 23, 2016, to drain the Issue Trust of the money Bernard stole from Joanne, to pay their legal fees in litigating against Joanne's interests, and otherwise use the funds for their benefit, Bernard and Samuel initiated a claim with the Financial Industry Regulatory Authority ("FINRA") against Chase Bank and JPMS LLC to gain access to Joanne's assets in the *Issue Trust, Black v. JPMorgan Chase Bank, NA.*, *et al.* ("Issue Trust FINRA Proceeding").

95.     In the Issue Trust FINRA Proceeding, Bernard and Samuel alleged Chase was liable

for conversion, breach of contract, and breach of fiduciary duties owed to Bernard and Samuel because Chase would not permit them access to the money held in the Issue Trust and sought to force Chase to allow them unfettered access to the Issue Trust accounts.

96.     In sum, Bernard and Samuel alleged that Chase could not consider the Colorado and New York orders enjoining Bernard from accessing the trusts' accounts or the Colorado judgment finding Bernard breached his conservatorship fiduciary duties to Joanne and stole $1.5 million from Joanne.

97.     Neither Bernard nor Samuel notified Joanne, her conservator, or Dain of their Issue Trust FINRA Proceeding or their efforts to access Joanne's assets.

98.     Bernard and Samuel actually complain in the Issue Trust FINRA Proceeding that Chase violated fiduciary duties because Chase notified co-trustee Dain of Bernard's and Samuel's efforts to obtain the money, which, per the Colorado court, belonged to Joanne.

### Bernard's SNT FINRA Proceeding

99.     On October 26, 2016, to access to Joanne's funds to pay their legal fees in litigating against her interests, Bernard and Samuel, in their capacity as trustees of the SNT, filed another claim and initiated a proceeding with the FINRA against Chase Bank and JPMS LLC to gain access to Joanne's assets in the SNT to pay Bernard's attorneys' fees, *Black v. JPMorgan Chase Bank, NA.*, *et al.* ("SNT FINRA Proceeding").

100.    In Bernard's and Samuel's SNT FINRA Proceeding, they alleged Chase was liable for conversion, breach of contract, and breach of fiduciary duties owed to Bernard and Samuel because Chase would not give them access to use the money held in accounts of the SNT.

101.    In Bernard's and Samuel's SNT FINRA Proceeding, Bernard and Samuel seek to force Chase to unfreeze the SNT accounts to allow them access to Joanne assets to pay their attorneys' fees and otherwise for their own benefit.

32

102. In sum, Bernard and Samuel alleged that Chase could not consider the Colorado and New York orders enjoining Bernard from accessing the trusts' accounts or the Colorado judgment finding Bernard breached his conservatorship fiduciary duties to Joanne and stole $1.5 million from Joanne.

103. Neither Bernard nor Samuel notified Joanne, her conservator, or Dain of their SNT FINRA Proceeding or their efforts to access Joanne's assets.

**Dal's Second Lawsuit**

104. On December 7, 2016, Dal filed a second lawsuit against Bernard personally based on alleged "loans" alleged to be secured by Bernard's wages, *Dal v. Black*, Cook County Case No. 2016-L-011947 (Hon. Margaret Ann Brennan), ("Dal's Second Lawsuit").

105. In Dal's Second Lawsuit, Dal alleged that Bernard executed a "Promissory Note (Secured)" and a "Loan and Security Agreement" as of April 26, 2016, that is, after the Colorado Judgment against Bernard for stealing $1.5 million from Joanne.

106. Pursuant to the "Loan and Security Agreement," at the time Dal and Bernard dated "as of the 26th day of April, 2016," Bernard already was in default of another loan agreement with Dal "dated as of May 15, 2002" and owed Dal $453,891.03 on the earlier dated loan.

107. In addition, Bernard had purportedly borrowed over $600,000 from his wife and Dal's cousin, Litvak, "to pay legal and accounting expenses for litigation in Colorado, New York, and perhaps elsewhere related to [Bernard's] sister Joanne Black" pursuant to a "Senior Secured Credit Agreement" "Dated as of 20 August 2015" and executed on some unidentified date, which indebtedness was "senior to all other indebtedness of Bernard Black, other than any mortgage on [Litvak's and Bernard's] family house located at 2829 Sheridan Place, Evanston IL 60201."

108. Nonetheless, Dal allegedly loaned Bernard another $250,000 to pay Bernard's legal fees relating to litigation against Joanne's interests.

109.    Among the provisions contained in the "Loan and Security Agreement":

a.    Bernard borrowed more money from Dal "to pay for certain of his needed expenses and/or obligations including, without limitation, legal and accounting expenses for litigation that relates to his sister, Joanne Black, and/or his other relatives, Anthony Dain and/or Cherie Wrigley."

b.    Bernard's debt to Dal was secured by, among other things, "all Commercial Tort Claims, including [litigation relating to Joanne and the Trusts]."

c.    Bernard told Dal of recent judgment entered against Bernard in the litigation relating to Joanne which constitutes a default under the loan agreement with Dal "dated as of May 15, 2002" and that he had "no unencumbered nonexempt assets to satisfy his obligations."

d.    Bernard agreed that he would consent to entry of and execute an agreed judgment in favor of Dal on the loan agreement with Dal "dated as of May 15, 2002."

e.    The events that could constitute a default on the "Loan and Security Agreement" excluded any then-existing events of default on the loan agreement with Dal "dated as of May 15, 2002."

110.    In Dal's Second Lawsuit, Dal alleged: "there was principal of $210,483.60 and interest of $2,606.97, and at least $2,500 of legal fees and costs, due and owing under the Note," for a total balance due from Bernard to Dal of $215,590.57, plus $69.20 per diem after November 30, 2016 - not including expenses, costs, charges and fees she also sought to collect by garnishing Bernard's wages.

111.    Dal further alleged Bernard was in default on this purported "loan" because a foreign judgment (the Colorado Judgment) entered against Bernard exceeding $4.3 million was registered in Cook County, Illinois on September 28, 2016.

112.    On December 9, 2016, two days after Dal's Second Lawsuit was filed, Bernard agreed to a judgment against him in the amount of $216,905.37, and Dal filed a Motion for Entry of Agreed Judgment.

113.    Neither Dal nor Bernard notified Joanne, her conservator, or Dain of Dal's Second Lawsuit, Bernard's agreement to a judgment in favor of Dal, or Dal's efforts to collect from Bernard.

114.     Two weeks after filing Dal's Second Lawsuit, Bernard had agreed to and the court had entered judgment in the amount of $216,905.37, including payment of Dal's legal fees and costs.

115.     By December 21, 2016, Dal had filed an affidavit for wage deduction summons directed to Northwestern University.

116.     Dal received her Agreed Wage Deduction Turnover Order by January 26, 2017 garnishing Bernard's wages from Northwestern University.

**Litvak's First Lawsuit**

117.     On December 7, 2016, the same day Dal's Second Lawsuit was filed, and through the same counsel as Dal's, Litvak filed a lawsuit against her husband Bernard based on alleged "loans" alleged to be secured by Bernard's wages, *Litvak v. Black*, Cook County Case No. 20161-011948 (Hon. Raymond W. Mitchell), ("Litvak's First Lawsuit").

118.     In Litvak's First Lawsuit, Litvak alleged that Bernard executed a "Secured Promissory Note" and a "Senior Secured Credit Agreement" which was "dated as of August 20, 2015", pursuant to which Bernard borrowed "up to $500,000" from his wife "to pay legal and accounting expenses for litigation in Colorado, New York, and perhaps elsewhere related to his sister Joanne Black," pursuant to the "Senior Secured Credit Agreement."

119.     Among the provisions contained in the "Senior Secured Credit Agreement":

     a.     Bernard's debt to his wife purported to be "senior to all other indebtedness of Bernard Black, other than any mortgage on [Litvak's and Bernard's] family house located at 2829 Sheridan Place, Evanston IL 60201.

     b.     the debt was also secured by "all current and future wages and bonuses from Northwestern University or any other employer;" " all consulting income;" "payments for any use of his assets, including rent;" and "interest payments on any loans that he makes."

     c.     Bernard's debt to Litvak was also secured by Litvak's own financial assets and "items located inside and around [Litvak's and Bernard's] house located at 2829 Sheridan Place, Evanston IL 60201, including the house, garage, yards, and driveway."

     d.     Litvak purportedly "has the right to enforce her demand for payment, including early repayment, ... [by] requiring [her husband] to change the location for direct

deposit of his paycheck from Northwestern University to an account solely in the name of [Litvak];" "requiring Bernard ... to receive his paycheck in physical form, and then to promptly endorse the check to [Litvak];" and "establishing a garnishment order on the wages of Bernard."

e.    Bernard agreed his wife could confess judgment against him by, upon any event of default, Litvak appearing in court and confessing judgment against Bernard for an unpaid amount evidenced by an affidavit signed by Litvak.

f.    Bernard would have defaulted by "[a]ny attempt by any other party, whether or not successful, to challenge any transfer of assets from an account held jointly by Bernard Black and [his wife, Litvak] to an account held solely by [Litvak]."

120.    In Litvak's First Lawsuit, Litvak alleged she made a demand for repayment on February 26, 2016.

121.    Despite demanding repayment, Litvak specifically noted in her in her "Demand for Repayment" that she "retains the discretion to provide further loans to [Bernard] under the [Senior Secured Credit Agreement]."

122.    In Litvak's First Lawsuit, Litvak alleged: "there was principal of $313,511.89, interest of $48,169.65, and at least $27,824.00 of legal fees and costs, due and owing under the Note," for a total balance due from Bernard to Litvak of $389,505.54, plus $118.91 per diem after November 30, 2016 - not including expenses, costs, charges and fees she also sought to collect by garnishing Bernard's wages.

123.    On December 9, 2016, two days after Litvak's First Lawsuit was filed, Bernard agreed to a judgment against him in the amount of $394,631.74, and Litvak filed a Motion for Entry of Agreed Judgment.

124.    Neither Litvak nor Bernard notified Joanne, her conservator, or Dain of Litvak's First Lawsuit, Bernard's agreement to a judgment in favor of Litvak, or Litvak's garnishment of Bernard's wages and other efforts to collect from Bernard.

125.    Less than 2 weeks after filing Litvak's First Lawsuit, Bernard had agreed to and the court had entered judgment in the amount of $394,631.74, including payment of Litvak's legal fees

and costs.

126.     By December 21, 2016, Litvak had filed an affidavit for wage deduction summons directed to Northwestern University.

127.     Litvak received her Agreed Wage Deduction Turnover Order by January 26, 2017 garnishing Bernard's wages from Northwestern University.

<strong>Litvak's Second Lawsuit</strong>

128.     On September 26, 2017, Litvak filed a lawsuit against Bernard and Samuel as co-trustees of the SNT, 2013 Trust, and Issue Trust, *Litvak v. Black*, Cook County Case No. 2017-L-009743 (Hon. James E. Snyder), ("Litvak's Second Lawsuit").

129.     In Litvak's Second Lawsuit, Litvak alleged that, by October 1, 2016, Bernard and Samuel, on behalf of the SNT, 2013 Trust, and Issue Trust, jointly and severally, executed a Note in favor of Litvak in the amount of $601,321.00 to pay Bernard's, Samuel's and Litvak's attorneys' fees litigating against Joanne's interest.

130.     Litvak alleged that pursuant to a "Loan and Security Agreement," before October 1, 2016, the Trusts had borrowed from Litvak $101,321.00, that amount was due and owing, but the Trusts had not repaid Litvak.

131.     Nonetheless, Litvak agreed to "loan" the Trusts an additional $500,000 as of October 1, 2016.

132.     Pursuant to that "Loan and Security Agreement," Bernard and Samuel pledged to Litvak as security on behalf of the Trusts, among other things, the accounts and assets of the Trusts, and all tort and arbitration claims the Trusts, Bernard, and Samuel may have against court-appointed conservators, court-appointed guardian ad litem, and court-appointed legal counsel for Joanne, Dain, Chase, and others.

133.     The amounts which Litvak identified in Litvak's Second Lawsuit as amounts

allegedly made on behalf of and "loaned" to the Trusts jointly and severally by Litvak were not for the benefit of the SNT, 2013 Trust, or Joanne.

134.    For example, Litvak claims she "loaned" money to the Trusts jointly and severally by way of a payment she made on June 25, 2016 in the amount of $20,000 to attorneys Halling Cayo from "HELOC1001" for "Pinto-Wrigley and Dain suits"; a payment on July 3, 2016 in the amount of $11,131.00 to attorneys Barnes and Thornburgh to "unfreeze Issue Trust"; a payment on July 17, 2016 in the amount of $15,000 to attorneys Halling Cayo for "Pinto-Wrigley and  Dain suits"; a payment on September 2, 2016 in the amount of $1,275.00 to attorneys Barnes and Thornburgh to "unfreeze Issue Trust"; a payment on September 3, 2016 in the amount of $20,000 to New York attorney Sharan Abraham for "Pinto Wrigley and Dain suits."

135.    The "First Amendment to Demand Note (Secured) and Loan and Security Agreement" attached to Litvak's complaint claims she "loaned" money to the Trusts jointly and severally made in the amount of $5,000.00 on November 24, 2016 to Attorney Arden Besunder; in the amount of $42,000.00 on August 8, 2016 and $33,056.89.00 on September 4, 2016 to attorneys Davis Graham; in the amount of $24,364.42 on August 8, 2016 to attorneys HarperHofer; in the amount of $3,650.00 on September 20, 2016 and $9,232.00 on November  16, 2016 to attorneys Adelman Gettleman.

136.    None of the foregoing payments were made for Joanne's benefit, but were for attorneys' fees incurred for litigation either unrelated to or directly contrary to Joanne's interest.

137.    In Litvak's Second Lawsuit, she alleged the SNT, 2013 Trust, and Issue Trust "are currently indebted, jointly and severally," to her pursuant to the "certain Demand Note (Secured) dated October 1, 2016" as amended by another purported "Demand Note Secured and Loan and Security Agreement dated as of December 21, 2016."

138.    Litvak alleged the SNT, 2013 Trust, and Issue Trust "are and have been in default," and that she "has made demand for payment under the terms of the Note, as is reflected in the demand

email that is attached" to her complaint.

139.   The September 25, 2017 "demand email" attached to Litvak's complaint, was sent fewer than 24 hours before Litvak filed Litvak's Second Lawsuit, was sent by counsel with a copy to Litvak and her cousin, Dal.

140.   Neither Litvak nor Bernard or Samuel sent demand or other notice to Joanne, her conservator, or co-trustee Dain.

141.   Litvak sought an alleged $376,464.88 in principal, $18,431 in interest, and continuing interest.

142.   Litvak also sought "at least $13,671.05" in attorneys' fees and costs she claims to have spent by September 25, 2017, as well as those she incurred thereafter in obtaining the Agreed Judgment from her husband Bernard and his son Samuel against the Trusts.

143.   By September 27, 2017 the day after she filed her complaint against Bernard and Samuel, Bernard had executed an Acknowledgement of Receipt of Summons and Complaint.

144.   Bernard and Samuel both signed an Agreed Judgment on October 2, 2017, only a week after filing her complaint, Litvak, filed a Motion for Entry of Agreed Judgment on October 3, 2017.

145.   On October 25, 2017, with no counsel appearing for the defendant trusts, the Court entered the Agreed Judgment.

146.   Having wrongfully obtained the Agreed Judgment from the court, Bernard, Samuel and Litvak are using the Agreed Judgment to take the same assets (Joanne's) from the same sources (the SNT, 2013 Trust, and Issue Trust) which Bernard is prohibited from doing by orders of the DPC and in breach of their duties to Joanne.

147.   What remains of Joanne's POD assets and other inheritance that Bernard, Samuel, Litvak, and Dal have not yet been able to divert and convert to their own uses are currently held by

Chase.

148.    On November 8, 2017, Litvak served on Chase Bank and JPMS LLC citation notices as supplemental proceedings to collect the judgment in the Litvak's Second Lawsuit.

149.    By obtaining an Agreed Judgment against the Trusts and issuing citations, Litvak, Bernard, and Samuel seek to force Chase, by Court order in favor of Litvak (rather than Bernard), to allow them to access the same funds in the Trusts which orders of other courts prohibited  Bernard from accessing and in breach of fiduciary duties owed to Joanne, and which Chase may have considered in refusing to allow Bernard and Samuel to access the funds in the Trusts.

**Dal's Third Lawsuit**

150.    On September 26, 2017, Dal filed a third lawsuit against Bernard and Samuel as trustees of the SNT, 2013 Trust, and the Issue Trust, based on alleged "loans" made to pay Bernard's attorneys' fees, *Dal v. Black*, Cook County Case No. 2017-L-009744 (Hon. Thomas R. Mulroy) ("Dal's Third Lawsuit").

151.    155.    Dal did not name as a defendant or otherwise give notice of her lawsuit to Joanne, her conservator, or co-trustee Dain, nor had she given them notice of any alleged loan she entered into with Bernard and Samuel purporting to bind the Trusts.

152.    No attorney entered an appearance on behalf of the Trusts in Dal's Third Lawsuit.

153.    The complaint in Dal's Third Lawsuit is nearly identical to the complaint in Litvak's Second Lawsuit, filed by the same lawyers and relying on the same "demand" email to Bernard, Samuel, Litvak, and Dal.

154.    Both Litvak's and Dal's complaints were based on nearly identical "loans" they alleged to have made to Bernard and Samuel as trustees of the Trusts to pay the attorneys' fees Bernard, Samuel, and Litvak incurred in repeatedly litigating against Joanne's interests, as well as Litvak's and Dal's fees in suing the Trusts to use Joanne's money to pay for Bernard's, Samuel's,

40

and Litvak's attorneys' fees.

155.   Both Litvak and Dal alleged that they had each, separately loaned money to the Trusts, which acted through Bernard and Samuel, to pay Bernard's, Samuel's and Litvak's attorneys' fees between May 11, 2016 and December 3, 2016, and each, separately alleged the Trusts "are currently indebted, jointly and severally, to the Plaintiff pursuant to that certain Demand Note (Secured) dated October 1, 2016," as amended by another purported "Demand Note Secured and Loan and Security Agreement dated as of December 21, 2016."

156.   Dal alleged that, by October 1, 2016, Bernard and Samuel, on behalf of the SNT, 2013 Trust, and Issue Trust, jointly and severally, executed a Note in favor of Dal in the amount of $572,228.00 to pay Bernard's, Samuel's and Dal's attorneys' fees.

157.   The "Loan and Security Agreement," recites that before October 1, 2016, the Trusts had borrowed from Dal $72,228.00, that amount was due and owing, the Trusts had not repaid Dal, but nonetheless Dal agreed to "loan" the Trusts an additional $500,000 as of October 1, 2016.

158.   Pursuant to that "Loan and Security Agreement," Bernard and Samuel pledged to Dal as security on behalf of the Trusts, among other things, the accounts and assets of the Trusts and all tort and arbitration claims the Trusts, Bernard, and Samuel may have against court-appointed conservators, court-appointed guardian ad litem, and court-appointed legal counsel for Joanne, Dain, Chase, and others.

159.   The amounts which Dal identified in Dal's Third Lawsuit as amounts allegedly made on behalf of and "loaned" to the Trusts jointly and severally by Dal were not for the benefit of the SNT, 2013 Trust, or Joanne.

160.   For example, Dal claims she "loaned" money to the Trusts jointly and severally by way of payments she made to attorneys Halling Cayo on August 8, 2016 in the amount of $4,000, September 21, 2016 in the amount of $1,478.00, and September 22, 2016 in the amount of

$25,000.00; and further that she "loaned" money to the Trusts jointly and severally by way of payments she made to attorney Sharan Abraham on May 11, 2016 in the amount of $17,000, June 26, 2016 in the amount of $17,000.00, August 13, 2016 in the amount of $8,000.00, and November 5, 2016 in the amount of $20,000.00.

161.    Halling Cayo and Sharan Abraham are some of a number of lawyers and law firms representing Litvak in her lawsuit pending in the Northern District of Illinois, *Katherine Black v. Wrigley*, et. al, NDIL Case No. 1:17-cv 00101 (Hon. Matthew F. Kennelly).

162.    Halling Cayo and Sharan Abraham also represent Samuel, Sarah, Daniel, and Jacob Black in their ongoing lawsuit against Dain and others, *Samuel H Black, et. al v. Dain*, et al., U.S. Dist. Court for the Eastern Dist. of New York, Case No. 16-cv-01238 (Hon. Carol Bagley Amon).

163.    Dal further claims in Dal's Third Lawsuit that she "loaned" money to the Trusts jointly and severally by way of payments she made to attorneys HarperHofer on May 11, 2016 in the amount of $15,880.95 and a double payment on May 11, 2016 in the amount of$15,880.95.

164.    HarperHofer represented Bernard during the forensic accounting of his breach of fiduciary duties in the conservatorship suit he initiated in the DPC, which resulted in the Colorado Judgment against Bernard.

165.    Dal's complaint claims she "loaned" money to the Trusts jointly and severally by way of payments she made to attorneys Davis Graham in the amount of $50,965.29 on May 11, 2016, a double payment of $51,000.00 on June 26, 2016, in the amount of $70,000.00 on October 24, 2016, in the amount of $40,000.00 on November 5, 2016, and in the amount of $25,000.00 on November 24, 2016.

166.    Davis Graham also represented Bernard in the conservatorship suit he initiated in the DPC, which resulted in the Colorado Judgment.

167.    Dal's complaint claims she "loaned" money to the Trusts jointly and severally by way

of payments she made in the amount of $8,601.55.00 on May 11, 2016 and $722.50 on September 21, 2016 to attorneys Barnes and Thornburg.

168. Barnes and Thornburgh represented Bernard and Samuel in their lawsuit against Joanne, *Black v. Black*, Case No. 1:16-cv-01763 (Hon. Virginia M. Kendall).

169. Dal's complaint claims she "loaned" money to the Trusts jointly and severally by way of payments she made in the amount of $516.75 on August 13, 2016 and $8,000.00 on October 16, 2016 to attorneys Arden Besunder.

170. Arden Besunder represents Bernard in his accounting lawsuit in New York, *In re Black*, Surrogate's Court of the State of New York County of Westchester File No. 20012/1209/A (Hon. Thomas P. Aliotta).

171. Dal's complaint claims the Trusts are jointly and severally for payment she made in the amount of $8,089.80 on November 11, 2017 to attorneys Adelman Gettleman.

172. Adelman Gettleman represents Litvak and Dal in their Cook County lawsuits against Bernard, personally, and against the Trusts, and in Litvak's lawsuit against Cherie and others pending in this District, *Katherine Black v. Wrigley*, et al., Case No. 1:l 7-cv-00101.

173. In Dal's Third Lawsuit, Dal sought an alleged $322,709.84 in principal, $13,160.98 in interest, and continuing interest.

174. Dal also sought "at least $6,658.00" in attorneys' fees and costs she claims to have spent by September 25, 2017, as well as those she incurred thereafter in obtaining the Agreed Judgment from her husband Bernard and his son Samuel against the Trusts.

175. By September 27, 2017 the day after Litvak and Dal filed their complaints against Bernard and Samuel as trustees of the Trusts, Bernard had executed an Acknowledgement of Receipt of Summons and Complaint on behalf of the Trusts.

176. Once Samuel executed an Acknowledgement of Receipt of Summons and Complaint

on behalf of the Trusts and Bernard and Samuel both signed an Agreed Judgment on behalf of the Trusts on October 2, 2017, only a week after filing the complaint, Litvak and Dal each filed a Motion for Entry of Agreed Judgment on October 3, 2017.

177.    On October 12, 2017, pursuant to Bernard's and Samuel's written agreement on behalf of the Trusts, the Court entered an Agreed Judgment against the Trusts in the amount of $348,936.93, plus accruing interest, in favor of Dal in Dal's Third Lawsuit.

178.    Having wrongfully obtained the Agreed Judgment from the court, Bernard, Samuel Litvak, and Dal are using the Agreed Judgment to take the same assets (Joanne's) from the same sources (the SNT, 2013 Trust, and Issue Trust) Bernard is prohibited from doing by orders of the DPC and in breach of their duties to Joanne.

179.    What remains of Joanne's POD assets and other inheritance that Bernard, Samuel, Litvak, and Dal have not yet been able to divert and convert to their own uses are currently held by Chase.

180.    On November 8, 2017, Dal and Litvak each served on Chase Bank and JPMS LLC citation notices as supplemental proceedings to collect the judgment in the instant lawsuit.

181.    By obtaining an Agreed Judgment against the Trusts and issuing citations, Dal, Litvak, Bernard, and Samuel seek to force Chase, by Court order in favor of Dal (rather than Bernard), to allow them to access the same funds in the Trusts which orders of other courts prohibited Bernard from accessing and in breach of fiduciary duties owed to Joanne, and which Chase may have considered in refusing to allow Bernard and Samuel to access the funds in the Trusts.

### Subsequent Colorado Developments

182.    The March 17, 2016 judgment against Bernard was subsequently upheld by the Colorado Court of Appeals on January 25, 2018. *In re the Interest of Black*, 2018 COA 07 (Col. Ct. of App.).  Separate unpublished orders directed the DPC to make certain additional findings on

remand.

183.    On the same day, the Denver Probate Court entered an Order finding that it had jurisdiction of Bernard Black, Anthony Dain, and the assets held in the SNT and Issue Trust accounts at Chase Bank and JPMS LLC. The Order further vacated its prior order authorizing Bernard to disclaim Joanne's interest in the POD assets. Finally, the DPC ordered that "[a]ll funds disclaimed pursuant to this Order shall be immediately returned and placed into the Registry of the Denver Probate Court pending further proceedings regarding disposition of said funds." That includes the assets currently in the IT and SNT accounts held at Chase Bank and JPMS LLC.

184.    On June 29, 2018, a unanimous panel of the Colorado Court of Appeals issued an Order denying Bernard's Motion to Stay the April 27, 2018 Order of the Denver Probate Court.

## Request for Relief

WHEREFORE, Defendants Dain and Goodwin respectfully ask this court to

a.  Declare that Bernard and Samuel must comply, individually and as trustees, with the valid and enforceable orders entered by the DPC;

b.  Declare that the funds in the IT are available to pay the judgment that the DPC entered against Bernard, and that Joanne, via her Conservator, has an interest in the assets in the IT;

c.  Declare that Dain alone has the right to access or control over the funds in the SNT, pursuant to the DPC's orders.

d.  Declare that Goodwin is a proper representative of Joanne and that Goodwin has authority to act on behalf of Joanne;

e.  Order Bernard and Samuel (or Chase Bank and JPMS LLC) to deliver the assets of the SNT and IT to the Denver Probate Court's Registry for further proceedings, pursuant to the DPC's orders.

f.  Declare that the judgments obtained by Litvak and Dal against Bernard and Samuel are void and must be vacated.

g.  Restrain Bernard, Samuel, Dal, and Litvak from initiating or prosecuting any further litigation regarding the Property.

h.  Restrain Dal and Litvak from obtaining or enforcing any citation stemming from the judgments obtained against Bernard and Samuel.

i. Order Bernard and Samuel to request the FINRA Panel modify its Order to allow funds of the SNT and IT to be transferred to the DPC's Registry.

j. Award Dain, individually and as trustee, and Goodwin, as Conservator, such other and further relief as may be just and appropriate.

Dated August 17, 2018

ANTHONY DAIN, individually and as trustee, and JEANETTE GOODWIN as court-appointed Conservator for Joanne Black.

By: /s/Peter Stasiewicz
    One of Their Attorneys

Peter Stasiewicz (ARDC # 6290832)
ARCTURUS LAW FIRM
211 West Wacker Drive Suite 323
Chicago, IL 60606
(312) 957-6194 (tel)
(312) 489-8307 (fax)
pete@arcturuslaw.com

**CERTIFICATE OF SERVICE**

I, Peter Stasiewicz, an attorney, hereby certify that on August 17, 2018, I served the foregoing Defendants Anthony Dain and Jeanette Goodwin's Answer, Crossclaims and Counterclaims to Complaint for Interpleader and Declaratory Relief electronically via Electronic Case Filing (ECF).

By: /s/ Peter Stasiewicz