**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A. et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 18-cv-03447 |
| v. | ) | |
| | ) | Hon. Andrea R. Wood |
| BERNARD S. BLACK, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS AND COUNTER-PLAINTIFFS BERNARD S. BLACK
AND SAMUEL BLACK'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF**

Defendants and Counter-Plaintiffs, Bernard S. Black ("Bernard") and Samuel Black ("Samuel"), individually and as trustees of certain trusts, by their undersigned attorneys, move this Court for the entry of emergency injunctive relief, including a preliminary injunction, against defendants Anthony Dain ("Dain"), Jeanette Goodwin ("Goodwin"), and Joanne Black ("Joanne"): (a) directing Dain, Goodwin and Joanne to discontinue their efforts to have Bernard held in contempt in the Denver Probate Court in Colorado for not turning over the assets that are the subject of this interpleader action; (b) directing Dain, Goodwin and Joanne to take such actions as are reasonable to have the bench warrant issued by the Denver Probate Court against Bernard on October 3, 2019 vacated; and (c) restraining and enjoining Dain, Goodwin and Joanne from taking or supporting actions or litigation activity in other forums to seek a turnover of the funds that are the subject of this interpleader action, including actions or litigation activity in other forums to punish, or seek to hold in contempt, Bernard or Samuel for not turning over such assets while this case remains pending. In support, Bernard and Samuel state:

1.     On August 23, 2019, Bernard and Samuel (collectively, the "Trustees") filed a motion for preliminary injunction. Rather than repeating the arguments set forth therein, copies

of the Trustees' motion and their reply brief in support of that motion are attached hereto as Exhibit A and B, respectively, and the arguments set forth therein are incorporated by this reference.

2.     On May 15, 2019, in response to a motion Plaintiffs JP Morgan Chase Bank, National Association and J.P. Morgan Securities, LLC (collectively, "Chase") filed, this Court ruled:

> The Court previously ordered [Chase] to post a bond of $4.2 million, which would be satisfied by a bond issued by [Chase's] surety, Travelers Casualty and Surety Company of America (Dkt. No. [26]). [Chase has] now filed an unopposed motion to waive renewal of the surety bond (Dkt. No. [66]). [Chase's] motion (Dkt. No. [66]) is granted. IT IS FURTHER ORDERED that [Chase] shall not allow any withdrawals of the interpleader assets from the accounts or execute any instructions with respect to the interpleader assets, without prior approval from the Court. Such approval shall be sought by written motion with due notice provided to all Defendants.

Under this order, attached as Exhibit C, Chase "shall not" allow any transfer of the interpleader assets, without first making a written motion seeking authority to do so, which Chase has not done.

3.     This court issued a clarifying order on June 12, 2019:

> The Court's prior order dated 5/15/2019 [68] is amended to preclude *any party* from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets from the accounts held by [Chase], *without first filing* a motion with this Court seeking approval for such withdrawal.

(See June 12, 2019 Minute Entry, emphasis added.)  Under the clear language of this order, if "any party," including Joanne, wishes to obtain or enforce any court order "seek[ing] to effectuate, any turnover or withdrawal of the interpleader assets," an initial *mandatory* step is for that party to file a motion with this court, seeking approval for that action. Instead, Joanne (through her counsel, Lisa DiPonio) ignored this express ruling by filing a motion in the Denver Probate Court, seeking remedial and punitive contempt against Bernard.

4.     In their motion for preliminary injunction, the Trustees sought relief authorized under 28 U.S.C.A. §2361, which grants this Court the ability to "enter [an] order restraining [all claimants to this proceeding] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court."

5.     On August 26, 2019, Chase filed a motion seeking similar injunctive relief under Section 2361.

6.     As explained in those motions, the "property" that is the subject of this interpleader action is the approximately $4 million held in bank and brokerage accounts at Chase for two trusts that Renata Black created prior to her death (the "Interpleader Assets"). Turnover of trust assets to the Denver Probate Court is the sole action by Bernard and Samuel  that the Denver Probate Court ordered on April 27, 2018.  It is the sole action that Joanne is seeking to enforce by pursing a contempt action to enforce that order in the Denver Probate Court.

7.     As also set out in the previously-filed injunction motions and in the interpleader complaint that Chase filed in this case, the Interpleader Assets, which are held in accounts at Chase, are, and have been, the subject of litigation in many forums around the country, including in two federal court cases in New York, multiple state court cases in Illinois, a case pending in the Denver Probate Court in Colorado, estate litigation in New York, and a Financial Industry Regulatory Authority (FINRA) arbitration between some of the parties.

8.     As previously explained, *Chase* filed this interpleader action because it was subject to contradictory court orders and an arbitration award in multiple forums, as well as future potentially contradictory orders, concerning the disposition of the Interpleader Assets. *Chase*, therefore, requested that this Court "[r]estrain Defendants from instituting or prosecuting

any proceeding in any State or United States court, or other forum, affecting the Property involved in this interpleader action until further order of Court." (Complaint at p. 19).

9.     Since that time, some of the claimants to the Interpleader Assets in this case – Bernard, Samuel, Olga Dal and Katherine Litvak – have complied with this court's orders, and have not sought turnover of the interpleader assets in other forums.

10.     Dain, Goodwin and Joanne, however, have ignored this Court's June 12, 2019 order and have sought to hold Bernard in contempt in the Denver Probate Court for not turning over the Interpleader Assets to that court in accordance with a prior order of that court.[1] (Complaint, Exhibit 1).  More specifically, on May 10, 2019, Joanne's Colorado attorney filed a Motion and Affidavit for Citation for Contempt of Court (the "Contempt Motion", a copy of which is attached hereto as Exhibit D) against Bernard in the Denver Probate Court, seeking to hold Bernard in contempt for "willfully, intentionally, and in bad faith violat[ing] th[at] Court's April 27, 2018 Order by refusing to return, or even make any effort to return, the funds ...." (Contempt Motion at ¶2).  After this motion expired, Joanne's counsel amended and renewed the motion on July 23, 2019, well after the dates when this Court entered specific orders against parties taking actions to seek a turnover of the Interpleader Assets without leave of court, and without informing the Denver Probate Court of this Court's June 12, 2019 order.  Dain and Goodwin have supported the Contempt Motion, as their attorney, Peter Stasiewicz, admitted at the recent September 27, 2019, court hearing on the Trustees' and Chase's injunction motions.

11.     At a hearing on September 27, 2019, this Court said, among other things:

THE COURT:  Why isn't Joanne Black in violation of my order for any of the claimants in this case not to take any steps to seek turnover of these assets without filing a motion here with notice so that could be resolved here? . . .

---

[1] As previously explained, the Trustees appealed the Denver Probate Court's order to the Colorado Court of Appeals. The bases for the appeal include lack of subject matter and personal jurisdiction.

My order that I entered here covers all of the claimants. It was entered without any opposition or objection and indicates that none of the claimants here are to try to effect a turnover of these assets without first providing notice by means of motion, written notice, or it says by means of motion in this case, which she did not do.

. . .

THE COURT: But somebody, somebody could come forward and say not -- that I want to increase the litigation on this issue -- but somebody could be filing a motion for her to find her in contempt of my order for trying to do this without first coming here, and filing written notice, and giving people an opportunity to be heard.

(See transcript of September 27, 2019 hearing at pp. 12-13. A copy of that transcript is attached hereto as Exhibit E.)

12.    Bernard then filed a motion in the Denver Probate Court to dismiss Joanne's motion for contempt (a copy of this motion is attached hereto as Exhibit F), arguing, among other things, that Bernard could not comply with the Denver Probate Court's order to turn over the Interpleader Assets based on this Court's orders. Bernard quoted the foregoing passages from the September 27, 2019 hearing transcript to provide notice to Joanne's counsel of this Court's view that Joanne appeared to be violating this Court's orders in pursuing contempt against Bernard in the Denver Probate Court.

13.    Nonetheless, on October 3, 2019, Joanne's counsel appeared before the Denver Probate Court to support her contempt motion, and the court entered an order granting the request of Joanne's attorney as follows:

FOR THE ISSUANCE OF A BENCH WARRANT FOR MR. BLACK'S FAILURE TO APPEAR IS GRANTED. ORDERED: A BENCH WARRANT SHALL ISSUE FOR THE ARREST OF BERNARD BLACK DUE TO HIS FAILURE TO APPEAR TO ANSWER THE CONTEMPT CITATION. CASH BOND IS ORDERED IN THE SUM OF $4,500,000.00, THE AMOUNT OF THE JUDGMENTS ENTERED AGAINST MR. BLACK. THE MOTION TO [DISMISS] IS DENIED.

A copy of the Denver Probate Court's order is attached hereto as Exhibit G.

14.     It is important to recognize that Joanne, supported by Dain and Goodwin, is seeking to have Bernard held in contempt, and the bench warrant was issued against him, solely because Bernard has not turned over the Interpleader Assets to the Denver Probate Court as that court ordered him to do.  No other grounds are asserted for seeking to hold Bernard in contempt other than his failure to turn over the Interpleader Assets to that court as ordered by that court.

15.     At bottom, despite the orders of this Court, an arbitration award, and citations to discover assets in Illinois, all of which freeze and prevent turnover of the Interpleader Assets, pending resolution by this Court of the competing claims to the Interpleader Assets, Joanne, supported by Dain and Goodwin, has continued to seek to hold Bernard in contempt in the Denver Probate Court for not turning over the Interpleader Assets to that court.  Moreover, those efforts have resulted in Bernard now being subject to arrest by order of the Denver Probate Court on October 3, 2019.

16.     As previously explained, 28 U.S.C.A. §2361 expressly grants this Court the ability to "enter its order restraining [all claimants to these proceedings] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court."  *See also, Executive Risk Indem. Inc. v. Speltz & Weis, LLC*, 2009 WL 3380972 (N.D. Ill.); *Construction Industry Retirement Fund of Rockford v. Kasper Trucking, Inc.*, 1991 WL 544259 (N.D. Ill.). The policy rationale behind §2361 is to recognize a federal court's power to enter an order whenever there are pending or threatened court proceedings that will destroy the effectiveness of the interpleader suit or the enforceability of the interpleader judgment.  Section 2361 reduces the possibility of inconsistent determinations or the inequitable distribution of the fund.  *New York Life Ins. Co. v. Apostolidis*, 841 F.Supp.2d 711 (E.D.N.Y. 2012); *U.S. v. Major Oil Corp.*, 583

F.2d 1152 (10th Cir. 1978); 4 Moore's Federal Practice, § 22.04[5][a] (Matthew Bender 3d Ed.) ("The utility of interpleader as a device for efficient, consistent resolution of a multi-sided dispute would be threatened if several courts could litigate the issues underlying the interpleader case simultaneously. Absent self-restraint of the parties, the only way to ensure that there will not be overlapping litigation is to have the interpleader court issue an injunction against other proceedings. In response, Congress empowered courts hearing statutory interpleader cases to enjoin other proceedings—in state courts or federal district courts—relating to the stake.").

17.     Emergency relief in the form of a temporary restraining order and preliminary injunction is necessary because Joanne, Dain and Goodwin have pursued action in Colorado in direct violation of this Court's orders, and in a manner inconsistent with the purpose of this case. As a matter of equity and to ensure that the purposes of this interpleader action are furthered, this Court should order Dain, Goodwin and Joanne to cease and desist from efforts to have Bernard held in contempt in the Denver Probate Court in Colorado for not turning over the assets that are the subject of this interpleader action and take such actions as are reasonable to have the bench warrant issued by the Denver Probate Court against Bernard on October 3, 2019 vacated.  This Court further should enjoin Dain, Goodwin and Joanne, and any of their agents or attorneys, from initiating or prosecuting any action in any court proceeding, including in the Denver Probate Court, to seek a transfer of the Interpleader Assets or to hold Bernard and/or Samuel in contempt of court or otherwise liable for any action or inaction regarding the Interpleader Assets, except after first seeking and obtaining leave of this court in compliance with this Court's June 12, 2019 order.

WHEREFORE, Bernard and Samuel respectfully request that this Court enter emergency injunctive relief, including a preliminary injunction, against defendants Dain, Goodwin and

Joanne: (a) directing Dain, Goodwin and Joanne to discontinue efforts to have Bernard held in contempt in the Denver Probate Court in Colorado for not turning over the Interpleader Assets; (b) directing Dain, Goodwin and Joanne to take such actions as are reasonable to have the bench warrant issued by the Denver Probate Court against Bernard on October 3, 2019 vacated; and (c) restraining and enjoining Dain, Goodwin and Joanne from taking or supporting actions or litigation activity in other forums to seek a turnover of Interpleader Assets, including actions or litigation activity in other forums to punish, or seek to hold in contempt, Bernard or Samuel for not turning over such assets while this case remains pending, and to enter such any other and further relief as equity and justice require.

Respectfully submitted,

BERNARD S. BLACK, individually and as Trustee of the 2013 Trust, the SNT and the Issue Trust, and SAMUEL BLACK, as Trustee of the 2013 Trust, the SNT and the Issue Trust

By: /s/Brad S. Grayson
     One of Their Attorneys

Benjamin N. Feder (ARDC# 6277452)
Brad S. Grayson (ARDC# 6196336)
Samantha E. Weissbluth (ARDC# 6244095)
Strauss Malk & Feder LLP
135 Revere Drive
Northbrook, IL 60062
(847) 562-1400 (Tel.)
(847) 562-1422 (Fax)
bfeder@straussmalk.com
bgrayson@straussmalk.com

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A. et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 18-cv-03447 |
| v. | ) | |
| | ) | Hon. Andrea R. Wood |
| BERNARD S. BLACK, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS AND COUNTER-PLAINTIFFS BERNARD S. BLACK**
**AND SAMUEL BLACK'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants and Counter-Plaintiffs, Bernard S. Black ("Bernard") and Samuel Black ("Samuel"), individually and as trustees of certain trusts, by their undersigned attorneys, move this Court for the entry of a preliminary injunction against defendants Anthony Dain ("Dain"), Jeanette Goodwin ("Goodwin"), and Joanne Black ("Joanne"), directing Joanne to withdraw her contempt motion against Bernard in the Denver Probate Court in Colorado, and enjoining Dain, Goodwin and Joanne from taking or supporting actions or litigation activity in other forums to seek a turnover of the funds that are the subject of this interpleader action, including actions or litigation activity in other forums to punish, or seek to hold in contempt, Bernard or Samuel for not turning over such funds while this case remains pending. In support, Bernard and Samuel state:

1.     On May 15, 2018, JP Morgan Chase Bank, National Association and J.P. Morgan Securities, LLC (collectively, "Chase") commenced these proceedings by filing a Complaint for Interpleader and Declaratory Relief. The "property" that is the subject of this interpleader action is the approximately $4 million held in bank and brokerage accounts at Chase for two trusts that Renata Black created prior to her death. One of those trusts, which the parties refer to by shorthand as the "Issue Trust", is for the benefit of Bernard and his children. The second trust, often referred

to by the parties as the "SNT", is a supplemental needs trust that was established for the benefit of Joanne during her lifetime. Then, upon Joanne's death, the assets of the SNT are directed to the Issue Trust for the benefit of Bernard and his children.

2.    As set out in the Complaint, the funds in the Issue Trust and SNT accounts at Chase are the subject of litigation in many forums around the country, including in two federal court cases in New York, multiple state court cases in Illinois, a case pending in the Denver Probate Court in Colorado, estate litigation in New York, and a Financial Industry Regulatory Authority (FINRA) arbitration between some of the parties.

3.    Chase filed this interpleader action because it was subject to contradictory court orders and an arbitration award in multiple forums, as well as future potentially contradictory orders, concerning the disposition of the funds held in the subject trust accounts. In its prayer for relief, therefore, Chase requested that this Court "[r]estrain Defendants from instituting or prosecuting any proceeding in any State or United States court, or other forum, affecting the Property involved in this interpleader action until further order of Court." (Complaint at p. 19).

4.    Although this Court initially ordered Chase to post a surety bond in lieu of depositing the assets in the trust accounts into this Court's registry, this Court later waived renewal of that surety bond on Chase's motion, subject to the expressed condition that: "[Chase] shall not allow any withdrawals of the interpleader assets from the accounts or execute any instructions with respect to the interpleader assets, without prior approval from the Court. Such approval shall be sought by written motion with due notice provided to all Defendants." (Minute Entry dated May 15, 2019).

5.    This Court then, after discussion with and between the parties in open court at a subsequent hearing, supplemented that order "to preclude any party from seeking to enforce any

court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets from the accounts held by [Chase] without first filing a motion with this Court seeking approval for such withdrawal." (Minute Entry dated June 12, 2019).

6.      The parties to this case include Katherine Litvak ("Litvak") and Olga Dal ("Dal"), who are judgment creditors of the two trusts. Since the inception of this case, they have not taken any actions to seek to enforce their judgments against the funds in the trust accounts held by Chase, and have confirmed to Bernard and Samuel that they intend to comply with this court's primacy and its orders of May 19 and June 12, 2019 and not take any actions with respect to the trust account funds while this case remains pending.

7.      The remaining defendants – Dain, Goodwin and Joanne - have ignored this Court's orders and have each taken or supported action in the Denver Probate Court seeking to hold Bernard in contempt for not turning over the trust assets to that Court. More specifically, on April 27, 2018, the Denver Probate Court had ordered that the trust assets at issue in this proceeding "shall be *immediately* returned and placed into the Registry of the Denver Probate Court pending further proceedings regarding disposition of said funds." (Complaint, Exhibit 1, emphasis added). This was one of the competing claims to the trust account assets that led to the filing of this interpleader case.

8.      Notably, Bernard and Samuel have appealed the Denver Probate Court's order to the Colorado Court of Appeals. The bases for the appeal include lack of subject matter and personal jurisdiction. The Colorado Court of Appeals has already vacated and remanded a prior order of the Denver Probate Court for failure to make jurisdictional findings. Bernard and Samuel believe that the April 27, 2018 order will be reversed as well. Their appeal has been fully briefed, and oral argument is expected in the first half of 2020, although no date has yet been set.

9.     In the meantime, prior the filing of this case, Litvak and Dal, as judgment creditors, had served Chase with citations to discover assets in two Circuit Court of Cook County, Illinois cases.  Those citations contain injunctive prohibitions against any transfer of those funds. Consequently, Chase cannot transfer funds in violation of those citations.

10.     Moreover, a freeze on the vast majority of the trust assets at issue in this proceeding was imposed by a March 23, 2018 award in a FINRA arbitration proceeding that involved some of the parties to this case.  Bernard and Samuel had sought to allow time for their challenge to the actions of the Denver Probate Court, including their challenges to the Denver Probate Court's jurisdiction.  The FINRA order applies until "final order of pending litigation in the Colorado Courts." (FINRA order ¶5, a copy of which is attached as Exhibit A).

11.     The funds in the trust accounts that are the subject of this interpleader action also are the subject of other litigation around the country which potentially could lead to further inconsistent orders with respect to the disposition of the trust assets held in the Chase accounts.

12.     On May 10, 2019, however, despite the pendency of this action, the effect of the Citations to Discover Assets in the Illinois state court proceedings and the FINRA arbitration award referenced above, each of which effectively has frozen the assets in the Chase trust accounts, Joanne's Colorado counsel filed a Motion and Affidavit for Citation for Contempt of Court (the "Contempt Motion", a copy of which is attached hereto as Exhibit B) against Bernard in the Denver Probate Court, seeking to hold Bernard in contempt for "willfully, intentionally, and in bad faith violat[ing] th[at] Court's April 27, 2018 Order by refusing to return, or even make any effort to return, the funds …." (Contempt Motion at ¶2).

13.     The Contempt Motion further states, "[a]s to the accounts on which [Bernard] is a holder and a signor, he has the immediate ability to effect transfer to the Court's Registry, directly

and/or through cooperation with other account holders, such as his son Samuel Black and Trustee Anthony Dain." (*Id.* at ¶3). That, however, was not true.[1]

14.     Dain and Goodwin have supported the Contempt Motion.  Movants are informed and believe that Joanne's counsel in Colorado is accepting advice from them and that Dain and Goodwin have supported her efforts in seeking to have the Denver Probate Court hold Bernard in contempt for not transferring the trust account funds held at Chase to the Denver Probate Court registry.

15.     Joanne, through counsel, as advised by Dain and Goodwin, renewed the Contempt Motion on July 23, 2019, without informing the Denver Probate Court of this Court's May 15, 2019 and June 12, 2019 orders.

16.     The renewed Contempt Motion is in direct violation of this Court's orders.  Yet, at a mediation conference held on May 21, 2019, Goodwin stated to Bernard that he would be served with the contempt citation if he appeared at the mediation in person.  Dain then caused Bernard to be served with the renewed Contempt Citation on August 7, 2019, following a deposition at a location in New York City known to Dain, but not known to any other party to this case.  The renewed Contempt Motion is now set to be presented to the Denver Probate Court on October 3, 2019.  (A copy of that contempt citation is attached hereto as Exhibit C.)

17.     Bernard cannot comply, and has not been able to comply at all relevant times, with the Denver Probate Court's April 27, 2018 Order because of the restrictions against transfer of the funds imposed in this case, by the aforementioned March 23, 2018 FINRA arbitration award, and

---

[1] Indeed, the Denver Probate Court has entered orders to the effect that only Dain may act for the SNT, not Bernard or Samuel.  Thus, Dain, not Bernard, is the one who, under the Denver Probate Court orders, would have to cause a transfer of any funds held in SNT accounts to the Denver Probate Court registry.

because of the injunctive prohibitions of pending Citations to Discover Assets served on Chase in two Illinois state court proceedings. (See Complaint at ¶¶10-11).

18.     However, all of those orders, awards and processes, including the orders entered by this Court, have not stopped Joanne from continuing to seek to hold Bernard in contempt in the Denver Probate Court for not turning over the funds held by Chase that are the subject of this interpleader action. Indeed, in August, 2019,

19.     While Joanne has not appeared in this action, she is a defendant and was served with process by Chase. (See Affidavit of Service attached as Exhibit D hereto.) More recently, Joanne was served with a copy of Bernard and Samuel's counterclaim in this action, as well as with this Court's May 15, 2019 and June 12, 2019 orders. (See Affidavit of Service attached as Exhibit E hereto.) Therefore, Joanne has been joined to these proceedings as a party, has been served with process in this case, and has been served with the relevant orders entered by this Court which both restrict the transfer of the trust assets held by Chase and restrict the parties from taking actions seeking to transfer or otherwise dispose of those assets.

20.     28 U.S.C.A. §2361 grants this Court the ability to "enter its order restraining [all claimants to these proceedings] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." *See also, Executive Risk Indem. Inc. v. Speltz & Weis, LLC*, 2009 WL 3380972 (N.D. Ill.); *Construction Industry Retirement Fund of Rockford v. Kasper Trucking, Inc.*, 1991 WL 544259 (N.D. Ill.).

21.     The policy rationale behind §2361 is to recognize a federal court's power to enter an order whenever there are pending or threatened court proceedings that will destroy the effectiveness of the interpleader suit or the enforceability of the interpleader judgment. Section

2361 reduces the possibility of inconsistent determinations or the inequitable distribution of the fund. *New York Life Ins. Co. v. Apostolidis*, 841 F.Supp.2d 711 (E.D.N.Y. 2012); *U.S. v. Major Oil Corp.*, 583 F.2d 1152 (10th Cir. 1978); 4 Moore's Federal Practice, § 22.04[5][a] (Matthew Bender 3d Ed.) ("The utility of interpleader as a device for efficient, consistent resolution of a multi-sided dispute would be threatened if several courts could litigate the issues underlying the interpleader case simultaneously. Absent self-restraint of the parties, the only way to ensure that there will not be overlapping litigation is to have the interpleader court issue an injunction against other proceedings. In response, Congress empowered courts hearing statutory interpleader cases to enjoin other proceedings—in state courts or federal district courts—relating to the stake.")

22. An injunction is necessary in this case because Joanne, Dain, and Goodwin, far from exercising self-restraint, have continued to pursue litigation in Colorado in direct violation of this court's orders, and in a manner inconsistent with the purpose of this case. Under these circumstances, issuance of an injunction under §2361 is entirely consistent with this Court's proper exercise of discretion. *Shell Pipe Line Corp. v. West Texas Marketing Corp.*, 540 F.Supp. 1155 (S.D.Texas 1982).

23. To further the purpose of this proceeding and the express powers granted to it under applicable law, this Court should order Joanne to withdraw her Contempt Motion. This Court further should enjoin Dain, Goodwin and Joanne, and any of their agents or attorneys, from initiating or prosecuting any action in any court proceeding, including in the Denver Probate Court in Colorado, to seek a transfer of the trust funds held by Chase that are the subject of this action or to hold Bernard and/or Samuel in contempt of court or otherwise liable for any action or inaction regarding the assets at issue in this case, except after first seeking and obtaining leave of this court in compliance with this Court's orders of May 15 and June 12, 2019.

WHEREFORE, Bernard and Samuel respectfully request that this Court enter an order directing Joanne to withdraw the Contempt Motion that she filed in the Denver Probate Court, enjoining Dain, Goodwin and Joanne, and any of their agents or attorneys, from initiating or prosecuting any action in any court proceeding, including in the Denver Probate Court, to seek recovery of, or a transfer of the funds held in the trust accounts at Chase that are the subject of this action and further from initiating or prosecuting any action in any other court to hold Bernard and/or Samuel in contempt of court or otherwise liable for any action or inaction regarding the assets at issue in these proceedings while this case remains pending, and to enter such any other and further relief as equity and justice require.

Respectfully submitted,

BERNARD S. BLACK, individually and as Trustee of the 2013 Trust, the SNT and the Issue Trust, and SAMUEL BLACK, as Trustee of the 2013 Trust, the SNT and the Issue Trust

By: /s/Brad S. Grayson
    One of Their Attorneys

Benjamin N. Feder (ARDC# 6277452)
Brad S. Grayson (ARDC# 6196336)
Samantha E. Weissbluth (ARDC# 6244095)
Strauss Malk & Feder LLP
135 Revere Drive
Northbrook, IL 60062
(847) 562-1400 (Tel.)
(847) 562-1422 (Fax)
bfeder@straussmalk.com
bgrayson@straussmalk.com

{5094/00005/00637317.DOCX/3 }

8

# EXHIBIT A

**Award**
**FINRA Office of Dispute Resolution**

---

In the Matter of the Arbitration Between:

Claimants
Bernard S. Black and Samuel H. Black,
as Trustees of the Irrevocable Trust
for the Benefit of the Issue of Renata Black

Case Number: 16-02822

 vs.

Respondents
JPMorgan Chase Bank, N.A. and
J.P. Morgan Securities, LLC

Hearing Site: Chicago, Illinois

Consolidated with:

Case Number: 16-03146

Claimants
Bernard S. Black and Samuel H. Black,
as Trustees of the Supplemental Needs Trust
for the Benefit of Joanne Black

 vs.

Respondents
JPMorgan Chase Bank, N.A. and
J.P. Morgan Securities, LLC

---

Nature of the Dispute: Customers vs. Member and Non-Member

This case was decided by an all-public panel.

### REPRESENTATION OF PARTIES

For Claimants Bernard S. Black and Samuel H. Black, as Trustees of both the Irrevocable Trust for the Benefit of the Issue of Renata Black and the Supplemental Needs Trust for the Benefit of Joanne Black ("Claimants"): Michael H. Schaalman, Esq., Halling & Cayo, S.C., Milwaukee, Wisconsin.

For Respondent J.P. Morgan Securities, LLC ("JPMS" or "Respondent"): Kenneth Berg, Esq., Ulmer & Berne, LLP, Chicago, Illinois.

Respondent JPMorgan Chase Bank, N.A. ("Chase Bank") did not submit to FINRA jurisdiction.

FINRA Office of Dispute Resolution
Arbitration No. 16-02822 (consol. w/ 16-03146)
Award Page 2 of 9

## CASE INFORMATION

**FINRA Case No. 16-02822:**
Statement of Claim filed jointly by Bernard S. Black and Samuel H. Black, as Trustees of the Irrevocable Trust for the Benefit of the Issue of Renata Black on or about September 23, 2016.
Bernard S. Black signed the Submission Agreement: September 23, 2016.
Samuel H. Black signed the Submission Agreement: September 23, 2016.

Statement of Answer filed by JPMS on or about: December 19, 2016.
JPMS signed the Submission Agreement: December 13, 2016.

**FINRA Case No. 16-03146:**
Statement of Claim filed jointly by Bernard S. Black and Samuel H. Black, as Trustees of the Supplemental Needs Trust for the Benefit of Joanne Black on or about October 26, 2016.
Bernard S. Black signed the Submission Agreement: October 26, 2016.
Samuel H. Black signed the Submission Agreement: October 26, 2016.

Statement of Answer filed by JPMS on or about: December 19, 2016.
JPMS signed the Submission Agreement: December 13, 2016.

## CASE SUMMARY

**FINRA Case No. 16-02822:**
Bernard S. Black and Samuel H. Black, as Trustees of the Irrevocable Trust for the Benefit of the Issue of Renata Black ("Issue Trust" or "IT") asserted the following causes of action: conversion, breach of contract, and breach of fiduciary duty. Bernard S. Black and Samuel H. Black, as Trustees of the Issue Trust alleged that JPMS impermissibly froze accounts of the Issue Trust and prevented the trustees from making necessary and proper disbursements of Issue Trust funds.

Unless specifically admitted in the Statement of Answer, JPMS denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

**FINRA Case No. 16-03146:**
Bernard S. Black and Samuel H. Black, as Trustees of the Supplemental Needs Trust for the Benefit of Joanne Black ("SNT") asserted the following causes of action: conversion, breach of contract, and breach of fiduciary duty. Bernard S. Black and Samuel H. Black, as Trustees of the SNT alleged that JPMS impermissibly froze accounts of the SNT, removed Bernard S. Black's access to the trust account statements for a period of five months, and prevented a majority of trustees from acting on behalf of the trust, including making necessary and proper disbursements of the SNT funds. Bernard S. Black and Samuel H. Black, as Trustees of the SNT further alleged JPMS knowingly permitted a single trustee to make withdrawals from the accounts without agreement or consent from his co-trustees, permitted this trustee to make withdrawals for purposes not authorized by the trust instruments, and permitted this

FINRA Office of Dispute Resolution
Arbitration No. 16-02822 (consol. w/ 16-03148)
<u>Award Page 3 of 9</u>

trustee to make withdrawals for purposes not authorized by an improperly obtained court order that this trustee purported to rely on.

Unless specifically admitted in the Statement of Answer, JPMS denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

## <u>RELIEF REQUESTED</u>

<u>FINRA Case No. 16-02822:</u>
In the Statement of Claim, Bernard S. Black and Samuel H. Black, as Trustees of the Issue Trust requested that the Panel:

1) require Respondents to unfreeze the Issue Trust accounts and restore Bernard S. Black's authority to make disbursements from the Issue Trust accounts;
2) award Claimants damages equal to the additional interest payments and other expenses incurred by the Issue Trust beneficiaries due to JPMS restricting disbursements from the Issue Trust accounts;
3) award Claimants costs and fees of this action, including reasonable attorneys' fees and costs of this action; and
4) grant such other and further relief as deemed just and proper.

In the Statement of Answer, JPMS requested that the Panel not adjudicate these claims because FINRA is an inappropriate forum. Alternatively, the Panel should dismiss these claims on the merits.

<u>FINRA Case No. 16-03148:</u>
In the Statement of Claim, Bernard S. Black and Samuel H. Black, as Trustees of the SNT requested that the Panel:

1) require Respondents to unfreeze the SNT accounts and restore Bernard S. Black's authority to manage and make disbursements from the SNT accounts;
2) bar Respondents from seeking or following Court Orders concerning the SNT from the Denver Probate Court or other courts that lack jurisdiction over the SNT and its assets;
3) award Claimants damages, in the amount of funds that JPMS allowed the alleged co-trustee A.D. to withdraw from the SNT accounts, plus interest thereon;
4) award Claimants costs and fees of this action, including reasonable attorneys' fees and costs of this action; and
5) grant such other and further relief as deemed necessary, just, and proper.

In the Statement of Answer, JPMS requested that the Panel not adjudicate these claims because FINRA is an inappropriate forum. Alternatively, the Panel should dismiss these claims on the merits.

At the close of the hearing, Claimants requested that the freeze on the Issue Trust and SNT Trust be modified to prohibit the withdrawal of any funds to pay litigation related expenses, but to allow withdrawals for the needs of the respective beneficiaries.

FINRA Office of Dispute Resolution
Arbitration No. 16-02822 (consol. w/ 16-03146)
Award Page 4 of 9

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and all other materials filed by the parties.

On or about November 17, 2016, Respondent JPMorgan Chase Bank, N.A. notified FINRA that it is not a member or associated person of FINRA and did not voluntarily submit to arbitration. Therefore, the Panel made no determination with respect to Claimants' claims against Respondent JPMorgan Chase Bank, N.A.

On or about December 20, 2016, JPMS filed a Motion to Decline Arbitration, or in the alternative, Motion to Consolidate. On or about January 6, 2017, Claimants filed a Response to Motion to Decline Arbitration, or in the alternative, Motion to Consolidate. On or about February 14, 2017, the Director of FINRA Office of Dispute Resolution denied JPMS' Motion to Decline Arbitration and referred JPMS' Motion to Consolidate to the Panel appointed in this matter. On or about April 19, 2017, a pre-hearing call was held with the Panel for oral arguments on JPMS' Motion to Consolidate. In its Order dated April 19, 2017, the Panel granted JPMS' Motion to Consolidate FINRA Case No. 16-02822 and FINRA Case No. 16-03146. FINRA Case No. 16-02822 was designated as the master case.

On or about July 25, 2017, Claimants filed a Motion for Preliminary Injunction. On or about August 1, 2017, JPMS filed its Objection to Claimants' Motion for Preliminary Injunction and a Motion to Stay. On or about August 28, 2017, Claimants filed a Reply in Support of their Motion for Preliminary Injunction. On or about August 31, 2017, JPMS filed a Reply in Support of its Motion to Stay. In its Order dated August 31, 2017, the Panel denied both parties' motions.

Prior to closing arguments on February 15, 2018, counsel for Claimants moved that the pleadings be amended to conform to the proof. Counsel for JPMS concurred. The Panel granted the request. For FINRA Case No. 16-02822: Claimants seek an Order requiring Respondents to unfreeze the Issue Trust to allow Claimants access to withdraw funds to pay graduate school-related costs for his issue. For FINRA Case No. 16-03146: Claimants waive any claim to damages and seek specific performance to prevent the withdrawal of funds from the SNT to pay litigation-related expenses until there is a final ruling on whether the Denver Probate Court has jurisdiction over the SNT.

The parties present at the hearing have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

FINRA Office of Dispute Resolution
Arbitration No. 16-02822 (consol. w/ 16-03146)
Award Page 8 of 9

## FINDINGS

1. On December 19, 1997, Renata Black set up two (2) trusts, a SNT for the benefit of her daughter Joanne Black into which two-thirds of her assets were to go, and an IT for the benefit of her son Bernard S. Black and his children into which one-third of her assets were to go. She named Bernard S. Black as Executor of her Estate. Renata Black died on May 1, 2012.

2. These Trusts are held at JPMS, pursuant to arrangements with Trustees of both Trusts.

3. Currently, Trustees of the SNT are: A.D., Bernard S. Black and Samuel H. Black; Trustees of the IT are: Bernard S. Black and Samuel H. Black.

4. Because of conflicting claims, instructions and directions to JPMS from Trustees of the SNT and Trustees of the IT, including but not limited to assets, the distribution of assets, the expenditures of assets and the ownership of assets, Respondent, pursuant to its account agreements with Trustees of the IT and the SNT, has frozen assets in both Trusts and seeks to continue this freeze pending court orders or mutual agreement of the Trustees of the SNT and the IT.

5. In the pleadings, Claimants allege Respondent has engaged in conversion, breach of fiduciary duty, and breach of contract; each of which allegations Respondent has denied, and which allegations are without merit.

6. At the hearing, the parties' motion to conform the pleadings to the proof was granted.

7. a) Claimants withdrew their request for monetary damages.

   b) Claimants requested that the freeze imposed upon the SNT be lifted, except continue for litigation matters.

   c) Claimants requested that the freeze imposed upon the IT be lifted, especially with regard to education expenses for the Bernard Black children beneficiaries, except continue to be imposed for litigation matters.

   d) Respondent requested that the freeze on both Trusts continue until final order of Colorado courts on jurisdictional matters, final turn-over orders from Illinois courts, or until the Trustees otherwise agree in writing.

8. Each party urged the Panel to exercise its equitable powers in resolution of the dispute between the parties.

9. Litigation matters involving the Trusts, the Trustees and persons involved in the Trusts are pending in various courts, including, inter alia:

FINRA Office of Dispute Resolution
Arbitration No. 16-02822 (consol. w/ 16-03146)
Award Page 8 of 9

*Black, et al. vs. Dain, et al.,* Civil Action No. 1238 (ED NY);
*Black, et al. v. Wrigley, et al.,* Case No. 16-cv-430 (ED NY);
*Litvak v. Wrigley, et al.,* Case No. 17-cv-101 (ND Ill.);
*In the matter of Joanne Black,* Case No. 12 PR 1772 (Denver);
*Renata Black Estate,* (Surrogate's Court) (NY); and
*Goodwin, as Conservator v. Black, et al.,* (Circuit Court, Cook County).

10. Thus far, approximately $1,000,000.00 has been expended in the SNT for purposes of litigation, and approximately the same amount has been expended in the IT for purposes of litigation, including approximately $200,000.00 owed in loans to the IT.

11. At the current time there remains approximately $1,500,000.00 in assets in the IT and $3,200,000.00 in assets in the SNT.

12. The use of assets in both Trusts to fund litigation against or involving Trustees, administrators, family members and individuals in connection with the Trusts has dissipated assets in each Trust and unless curtailed, will continue to do so to the detriment of the beneficiaries of the Trusts.

13. The freeze imposed by JPMS in both Trusts, prevents the use of trust assets for the benefit of the respective beneficiaries, i.e., Joanne Black in the SNT and Bernard S. Black and his children in the IT.

## ORDER

1. JPMS is directed and ordered to freeze and continue to freeze assets in both the IT and the SNT for use of and in connection with litigation expenses, costs or attorneys' fees in matters of any sort, including but not limited to matters involving or relating to each Trust, Trustee, administrator, conservator or family member.

2. JPMS is directed and ordered to freeze assets in the IT or the SNT for use or for purposes of paying for any monetary damages assessed against Bernard S. Black in other proceedings and for use or for purposes of repaying loans to Bernard S. Black and/or the IT or SNT.

3. JPMS specifically is authorized, directed and ordered upon request by SNT Trustee(s), except for litigation matters as referenced above, to expend SNT assets for the benefit of Joanne Black, including her personal needs, clothing, food, living arrangements, travel, and entertainment.

4. JPMS specifically is authorized, directed and ordered upon request by IT Trustee(s), except as referenced above, to expend IT assets for the benefit of Bernard S. Black's trust beneficiary children, for purposes of the beneficiary children's educational expenses.

FINRA Office of Dispute Resolution
Arbitration No. 16-02622 (consol. w/ 16-03146)
Award Page 7 of 9

5. Paragraphs 1, 2, 3 and 4 of this Order shall remain in effect until final order of pending litigation in the Colorado Courts, or unless and until Trustees of the IT and Trustees of the SNT in writing to JPMS mutually agree to withdrawals from the SNT or the IT, or both, which agreement(s) shall be honored by JPMS.

6. Claims against JPMS for conversion, breach of fiduciary duty and breach of contract are dismissed, and Claimants' request for attorneys' fees is denied.

## FEES

Pursuant to the Code of Arbitration Procedure, the following fees are assessed:

### Filing Fees
FINRA Office of Dispute Resolution assessed a filing fee* for each claim:

| | |
|---|---|
| Initial Claim Filing Fee | =$ 1,575.00 |

*The filing fee is made up of a non-refundable and a refundable portion.*

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the events giving rise to the dispute. Accordingly, as a party, JPMS is assessed the following:

| | |
|---|---|
| Member Surcharge | =$ 1,900.00 |
| Member Process Fee | =$ 3,750.00 |

### Postponement Fees
Postponements granted during these proceedings for which fees were assessed or waived:

| | |
|---|---|
| November 13-17 and 20-21, 2017, postponement requested by JPMS | =$ 1,125.00 |
| Total Postponement Fees | =$ 1,125.00 |

The Panel has assessed $1,125.00 of the adjournment fees to Respondent JPMS.

### Discovery-Related Motion Fee
Fees apply for each decision rendered on a discovery-related motion.

| | |
|---|---|
| Two (2) decisions on discovery-related motions on the papers with one (1) arbitrator @ $200.00/decision | =$ 400.00 |
| JPMS submitted two (2) discovery-related motions | |
| Total Discovery-Related Motion Fees | =$ 400.00 |

The Panel has assessed $200.00 of the discovery-related motion fees jointly and severally to Claimants.

FINRA Office of Dispute Resolution
Arbitration No. 16-02822 (consol. w/ 16-03146)
Award Page 8 of 9

The Panel has assessed $200.00 of the discovery-related motion fees to Respondent JPMS.

**Hearing Session Fees and Assessments**
The Panel has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Three (3) pre-hearing sessions with the Panel @ $1,125.00/session | | | =$ 3,375.00 |
| Pre-hearing conferences: | March 7, 2017 | 1 session | |
| | April 19, 2017 | 1 session | |
| | January 10, 2018 | 1 session | |
| Eight (8) hearing sessions @ $1,125.00/session | | | =$ 9,000.00 |
| Hearing Dates: | February 12, 2018 | 2 sessions | |
| | February 13, 2018 | 2 sessions | |
| | February 14, 2018 | 2 sessions | |
| | February 15, 2018 | 2 sessions | |
| Total Hearing Session Fees | | | =$12,375.00 |

The Panel has assessed $4,387.50 of the hearing session fees jointly and severally to Claimants.

The Panel has assessed $7,987.50 of the hearing session fees to Respondent JPMS.

All balances are payable to FINRA Office of Dispute Resolution and are due upon receipt.

FINRA Office of Dispute Resolution
Arbitration No. 16-02622 (consol. w/ 16-03148)
Award Page 9 of 9

## ARBITRATION PANEL

| | | |
|---|---|---|
| Robert S. Sugarman | - | Public Arbitrator, Presiding Chairperson |
| Pamela A. Kentra | - | Public Arbitrator |
| Elizabeth C. Simon | - | Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument, which is my award.

### Concurring Arbitrators' Signatures

/s/ Robert S. Sugarman                        March 22, 2018
Robert S. Sugarman                              Signature Date
Public Arbitrator, Presiding Chairperson

/s/ Pamela A. Kentra                             March 23, 2018
Pamela A. Kentra                                   Signature Date
Public Arbitrator

/s/ Elizabeth C. Simon                          March 22, 2018
Elizabeth C. Simon                                Signature Date
Public Arbitrator

March 23, 2018
Date of Service (For FINRA Office of Dispute Resolution office use only)

FINRA Office of Dispute Resolution
Arbitration No. 16-02822 (consol. w/ 16-03146)
Award Page 9 of 9

## ARBITRATION PANEL

| | | |
|---|---|---|
| Robert S. Sugarman | - | Public Arbitrator, Presiding Chairperson |
| Pamela A. Kentra | - | Public Arbitrator |
| Elizabeth C. Simon | - | Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein
and who executed this instrument, which is my award.

## Concurring Arbitrators' Signatures

Robert S. Sugarman
Public Arbitrator, Presiding Chairperson

03/22/2018
Signature Date

Pamela A. Kentra
Public Arbitrator

Signature Date

Elizabeth C. Simon
Public Arbitrator

Signature Date

Date of Service (For FINRA Office of Dispute Resolution office use only)

FINRA Office of Dispute Resolution
Arbitration No. 16-02822 (consol. w/ 16-03148)
Award Page 8 of 8

## ARBITRATION PANEL

| | | |
|---|---|---|
| Robert S. Sugarman | - | Public Arbitrator, Presiding Chairperson |
| Pamela A. Kentra | - | Public Arbitrator |
| Elizabeth C. Simon | - | Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument, which is my award.

## Concurring Arbitrators' Signatures


_____
Robert S. Sugarman
Public Arbitrator, Presiding Chairperson

Pan Kentra
_____
Pamela A. Kentra
Public Arbitrator


_____
Elizabeth C. Simon
Public Arbitrator

_____
Signature Date

_____3/23/18_____
Signature Date

_____
Signature Date


_____
Date of Service (For FINRA Office of Dispute Resolution office use only)

FINRA Office of Dispute Resolution
Arbitration No. 16-02822 (consol. w/ 16-03146)
Award Page 9 of 9

## ARBITRATION PANEL

| Robert S. Sugarman | - | Public Arbitrator, Presiding Chairperson |
| Pamela A. Kentra | - | Public Arbitrator |
| Elizabeth C. Simon | - | Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument, which is my award.

### Concurring Arbitrators' Signatures

_____
Robert S. Sugarman
Public Arbitrator, Presiding Chairperson

_____
Signature Date

_____
Pamela A. Kentra
Public Arbitrator

_____
Signature Date

_____
Elizabeth C. Simon
Public Arbitrator

22 March 2018
_____
Signature Date

_____
Date of Service (For FINRA Office of Dispute Resolution office use only)

# EXHIBIT B

| Probate Court<br>Denver County, Colorado<br>Court Address:<br>1437 Bannock Street<br>Denver, CO 80202 | FILED IN PROBATE COURT<br>CITY & COUNTY OF DENVER, CO<br><br>MAY 10 2019 |
|---|---|
| IN THE INTEREST OF:<br><br>JOANNE BLACK,<br><br>Protected Person. | ▲    COURT USE ONLY    ▲ |
| Lisa DiPonio, Esq., #22707<br>Court Appointed Counsel for Joanne Black<br>7931 S. Broadway, #348<br>Littleton, CO 80122<br>DiPoniolawfirm@comcast.net<br>(303) 955-2080*<br>Fax (303) 734-1088 | Case Number:<br><br>12PR1772<br><br>Division         Courtroom 230 |

## VERIFIED MOTION AND AFFIDAVIT FOR CITATION FOR CONTEMPT OF COURT

Lisa DiPonio, Esq. ("Counsel") on behalf of her client, Joanne Black, states Bernard Black has failed to comply with orders of this court as follows:

1. On April 27, 2018 this Court issued its Order Re: COA Remand, ordering Bernard Black to do the following: (Briefly describe what the Order says and attach a copy of the signed Order.)

   <u>Immediately return all funds that he disclaimed pursuant to the Amended Order issued March 5, 2013, and</u> <u>place them into the Registry of the Denver Probate Court. In that April 27,2018 Order, the Court affirmed,</u> <u>among other things, that via his disclaimer Bernard Black misappropriated Conservatorship assets and</u> <u>transferred them into the 1997 Supplemental Needs Trust for the benefit of Joanne Black, the 2013 SNT, the</u> <u>1997 Issue Trust and elsewhere. Mr. Black filed a motion in the Colorado Court of Appeals to stay this</u> <u>Court's Order; on June 29, 2018, the Court of Appeals issued an Order denying Mr. Black's motion to stay.</u> <u>Thus, the April 27, 2018 Order remains in effect and Mr. Black remains obligated to comply.</u>

   _____

   _____

   _____

   _____

2. As of this date, the other party owes me a total of $ _____ , for _____ (number of payments) payment(s) in the amount(s) of $ _____ that were ordered to have been made by the following date(s):_____.

   ☐and ☒or

   Other: (Identify exactly what the other party has done, or failed to do, in violation of the Order.)

Bernard Black has willfully, intentionally and in bad faith violated this Court's April 27, 2018 Order by refusing to return, or even make any effort to return, the funds he disclaimed and place them in the Court Registry. Mr. Black has ignored repeated requests that he comply with the Court's Order.

3. Describe any circumstances which may show that the other party has the present ability to comply with the Order: As the Court may recall from the evidence presented in the Conservatorship evidentiary hearings, including testimony from witnesses including Mr. Black, and the expert forensic report and attached exhibits of Pamela Kerr, Bernard Black is an account holder and signer of all accounts holding disclaimed funds, with the exception of the Roth IRA funds he disclaimed and transferred directly to accounts in the names of his seven children. As to the accounts on which he is a holder and signer, he has the immediate ability to effect transfer to the Court's Registry, directly and/or through cooperation with other account holders, such as his son Samuel Black and Trustee Anthony Dain. As to the accounts he set up holding the disclaimed Roth IRA funds, he can at a minimum seek the cooperation of his children in effecting return to the registry, and at a maximum, he can seek court assistance in ordering the return of the funds.

4. Describe any circumstances which may show that the other party willfully refused to comply with the Order: On May 15 and July 6, 2018, Anthony Dain e-mailed Bernard Black imploring him to comply with the Court's April 27, 2018 Order. These e-mails are attached. Mr. Black ignored both requests. Moreover, as recently as November 19, 2018, during his deposition in a Federal District Court case brought by his wife against Ms. Wrigley, Ms. Cohenson and Ms. Kerr, Mr. Black demonstrated his literal contempt for this Court's various orders including the April 27, 2018 order. During his testimony, Mr. Black was describing his October 2017 surreptitious electronic transfer of funds out of the Supplemental Needs Trust account at Chase Bank. As the Court may recall, it had authorized Mr. Dain to sell assets held in an SNT brokerage account at Chase to pay attorney's and professional's fees needed to protect Joanne Black from Mr. Black's depredations; the Court ordered Mr. Dain to hold the funds received from sale in a Chase SNT checking account pending the Court's resolution of Mr. Black's objections to reasonableness. However, just after the October 2017 hearing on his objections, when it was clear the Court was going to overrule them, Mr. Black surreptitiously went online and removed these funds. He first transferred the funds into a home equity line of credit account held by him and his wife, also at Chase. This paid off his line of credit. He then later drew on that home equity line of credit and transferred those funds out of Chase into an account he set up at Northview Bank. As the Court may recall it issued an emergency Order re: Motion for Injunction on November 3, 2017 ordering Mr. Black to return the funds to the Chase SNT account. In that Order, the Court stated unequivocally that it "Finds that this Court has continuing jurisdiction over this conservatorship matter and Bernard Black, who served as the former conservator as appointed by this Court."

However, continuing to thumb his nose at this and other orders of the Court, Mr. Black testified on November 15, 2018, "Mr. Diem has gone repeatedly to the Denver probate Court to seek approval to spend SNT money." 11 1 I believes that the S --- Denver probate Court has no jurisdiction over the SNT and has asked [unnames] in this and other ways. And it was available for me to move the money from Chase to Northview, and by doing that I was trying to slow down the depletion of the SNT accounts." A copy of the relevant portion of Mr. Black's November 19, 2018 Transcript, with the December 5, 2018 Reporter's Certification is attached hereto. This testimony is exemplary of Mr. Black's intent to defy this Court's orders, including the April 27, 2018 Order, and of Mr. Black's unwillingness to accept this Court's jurisdiction to enforce his compliance with its orders, including the April 27, 2018 Order.

5. There has not been a stay of execution or modification of the Order.

6. The actions of the other party are contrary to the Order of this court.

7. I request this court to issue an order to the other party to appear before the court at a specific date and time for a hearing to show cause why there has been a failure and/or refusal to comply with the Order of this court.

8. I hereby request:

☆[X] Remedial Contempt: I request that the Court find that the other party is in remedial contempt of this Court's Order. As described above, I attest that the responding party (1) did not comply with the Order, (2) knew of the Order, and (3) has the present ability to comply with the Order.

As a result, I request this court impose the following sanctions:

[X] payment of my costs and reasonable attorney's fees in connection with this contempt proceeding;

[X] payment of a fine and/or imprisonment until the other party, who has the present ability to comply, performs the act(s) ordered.

[ ] Other (be very specific)

_____
_____
_____

and/or

[X] Punitive Contempt: I request that the Court find that the other party is in punitive contempt of this Court's Order. As described above, I attest that, beyond a reasonable doubt, the responding party (1) had knowledge of the Order, (2) had the ability to comply with the Order; and (3) willfully refused to comply with the Order.

I request this court find that the conduct of the other party to be offensive to the authority and dignity of the Court, and, to vindicate the dignity of this court, to impose a fine or fixed sentences of imprisonment, or both.

Date: July 10, 2019    _Ina Dijour?_

Address: 7921 S. Broadway #348

City, State, Zip Code
Aurora Co 80122

(Area Code) Home Telephone Number

(Area Code) Work Telephone Number
(303) 955-2080

SCOTT BROOKS
NOTARY PUBLIC - STATE OF COLORADO
NOTARY ID 20194024177
MY COMMISSION EXPIRES JUN 11, 2022

Subscribed and affirmed, or sworn to before me in the County of _Arapahoe_, State of _Colorado_ this _11_ day of _May_, 20_19_.

My Commission Expires: _June 11, 2022_.

_____
Notary Public/Deputy Clerk

**It is important that the party accused of contempt read the following information.**

A party accused of remedial contempt has the following rights:

1. The right to be represented by a lawyer.
2. The right to a hearing before a judicial officer where the court must find that you were subject to a court order, that you had knowledge of that Order, that you did not comply with the Order, that you had the ability to comply with that Order, and that you have the present ability to comply with that Order.

If you are found to be in remedial contempt of court, the court may require you to pay the other party's court costs and attorney's fees connected with the contempt hearing, to pay a fine, and/or to serve an indefinite jail sentence until you comply with the original order.

A party accused of punitive contempt has the following rights:

1. The right to be represented by a lawyer. If you cannot afford a lawyer and if a jail sentence is contemplated, you may apply for a court-appointed lawyer.
2. The right to a jury if a jail sentence in excess of 180 days is contemplated.
3. If the judge initiated the proceedings, the right to have the contempt matter heard by a different judge.
4. The right to plead guilty or not guilty to the charge of contempt.
5. The right to be presumed innocent unless and until the allegation(s) in the motion for contempt is/are proven beyond a reasonable doubt.
6. The right to confront and cross-examine all witnesses against you.
7. The right to present relevant witnesses and evidence at the hearing.
8. The right to request the court to issue subpoenas to compel witnesses to appear and give testimony.
9. The right to remain silent.
10. The right to testify on your own behalf. If you testify, you waive your right to remain silent and the other party may cross-examine you.
11. The right to make a statement on your own behalf prior to the imposition of sanctions, if you are found in contempt of court.

If the court finds beyond a reasonable doubt that you were subject to a lawful court Order, that you had knowledge of that Order, that you had the ability to comply with that Order, that you willfully failed or refused to obey that Order, and that such conduct was offensive to the authority and dignity of the court, you may be sentenced to pay a fine or serve a jail sentence.

JDF 1816 R3/15   VERIFIED MOTION AND AFFIDAVIT FOR CITATION FOR CONTEMPT OF COURT   Page 4 of 5
© 2015 Colorado Judicial Department for use in the Courts of Colorado

# EXHIBIT C

Case: 1:18-cv-03447 Document #: 76 Filed: 08/23/19 Page 28 of 32 PageID #:793

Denver County Probate Court, Denver County, Colorado
Court Address:
1437 Bannock, Room 230
Denver, CO 80202

IN THE INTEREST OF:

JOANNE BLACK,

Protected Person.

▲ **COURT USE ONLY** ▲

Case Number:
12PR1772

Division          Courtroom

## ORDER TO ISSUE CITATION AND CITATION TO SHOW CAUSE

To: Bernard Black

The Court, having reviewed the Verified Motion and Affidavit for Citation for Contempt of Court filed on May 10, 2019, orders that the clerk issue a Citation to Show Cause to the party named to appear before the Court at a date and time certain.

Date: 5/10/2019                                        ☑ Judge ☐ Magistrate

## *ALIAS* CITATION TO SHOW CAUSE

You are ordered to appear before this Court at the place, date and time listed below to show cause, if any, for the failure and refusal to comply with the Orders of this Court entered on 3/5/13 and 4/27/18 and to show cause why sanctions and/or imprisonment should not be imposed.

You Bernard Black are hereby ordered to appear at:

Court Location: 1437 Bannock, Room ____ Denver, CO 80202

Date: October 3, 20__   Time: 1:30pm

If you fail to appear in Court at the time, date and place specified, a bench warrant will be issued for your arrest without further notice and you may be further sanctioned according to the law for your failure to appear.

Date: 7/23/19                          By: _____
                                          Clerk/Deputy Clerk

## RETURN OF SERVICE

I hereby certify that I am over the age of 18 years, and am not an interested party herein, and that I personally served a copy of the *Verified Motion and Affidavit for Citation for Contempt of Court and Order to Issue Citation and Citation to Show Cause* upon _____ (name) identified to me as the party in contempt herein, at _____ (location) on _____ (date) _____ (time) by _____ (method of service).

                                          _____
                                          Signature

Subscribed and affirmed, or sworn to before me by _____ in the County of _____, State of _____, this _____ day of _____, 20 ____.

My Commission Expires: _____

                                          _____
                                          Notary Public/Clerk

JDF 1817   R7/13   ORDER TO ISSUE CITATION AND CITATION TO SHOW CAUSE © 2013 Colorado Judicial Department for use in the Courts of Colorado

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

JP Morgan Chase Bank, National Association and J.P. Morgan Securities LLC,

    Plaintiff(s),

vs.

Bernard S. Black, Individually and as trustee, Samuel Black, individually and as trustee, Anthony Dain, individually and as trustee, Katherine Litvak, Olga Dal, and Jeannette Goodwin, as court appointed conservator and Joanne Black,

    Defendant(s).

Case No.: 18 CV 3447

**AFFIDAVIT OF SERVICE**

_Ricardo Delgrett_, being first duly sworn on oath, deposes and states the following:

I am over the age of 18 and not a party to this action. I am an agent of ATG LegalServe, Inc., Illinois Department of Financial and Professional Regulation number 117.001494. I attempted service of the within Summons in a Civil Case; Complaint for Interpleader and Declaratory Relief with Exhibits 1-13; Notice of Mandatory Initial Discovery with Standing Order to Joanne Black , located at 805 East New York Ave., #5-M, Brooklyn, NY 11203 resulting in the following:

**☑ PERSONAL SERVICE:** By leaving a copy of the Summons in a Civil Case; Complaint for Interpleader and Declaratory Relief with Exhibits 1-13; Notice of Mandatory Initial Discovery with Standing Order with Joanne Black personally. the _13_ day of _July_, 20 _18_ at _9:05_ P M

**☐ SUBSTITUTE SERVICE:** By leaving a copy of the Summons in a Civil Case; Complaint for Interpleader and Declaratory Relief with Exhibits 1-13; Notice of Mandatory Initial Discovery with Standing Order at the above address which is Joanne Black 's usual place of abode, with:
Name_____, Relationship_____, a person of his/her family, or other person residing there, over the age of 13 years who was informed of the contents of the Summons in a Civil Case; Complaint for Interpleader and Declaratory Relief with Exhibits 1-13; Notice of Mandatory Initial Discovery with Standing Order on the_____day of_____, 20____ at _____M
After substitute service, I mailed a copy of the listed documents via regular mail to the subject on the ____ day of _____, 20___

**☐ NON-SERVICE** for the following reasons with the DATE and TIME of each attempt listed along with a description of the attempt (attach a separate sheet if needed):

__/__/__ @ _____

__/__/__ @ _____

__/__/__ @ _____

A description of person with whom the documents were left is as follows:
Sex: _F_ Race: _White_ Approx. Age: _62_ Height: _5'5"_ Weight: _150_ Hair: _Brwn_

Noticeable Features/Notes _Glasses_____

The undersigned verifies that the statements set forth in this Affidavit of Service are true and correct.

Signed and sworn to before me on this _21_ day of _July_, 20 _18_

X _R. Delgrett_
_Ricardo Delgrett_
(Name)

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998571
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 28, 2022

# EXHIBIT E

Job #: 1439187

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
Attorney: Sharan Abraham
Address: 37 South Street Roslyn Heights, NY 11577

JP MORGAN CHASE BANK, NATIONAL ASSOCIATION and J.P. MORGAN SECURITIES LLC.,

vs

*Plaintiff*

BERNARD S. BLACK, et al.,

*Defendant*

| | |
|---|---|
| Case Number: 1:18-CV-03447 | |
| Client's File No.: | |
| Court Date: | |
| Date Filed: | |

STATE OF NEW YORK, COUNTY OF NASSAU, SS.:

**AFFIDAVIT OF SERVICE**

Dainon O. Ward, being sworn says:
    Deponent is not a party herein; is over the age of 18 years and resides in the State of New Jersey.

On 8/2/2019, at 6:05 PM at: 805 EAST NEW YORK AVENUE, #5-M, BROOKLYN, NY 11203 Deponent served the within Notice of Docket Entry for May 15, 2019, Notice of Docket Entry for June 12, 2019 and Answer and Counterclaim to Complaint For Complaint For Interpleader and Declaratory Relief Filed on 07/05/18
On: JOANNE BLACK, therein named.

☒ #1 SUITABLE AGE PERSON
    By delivering thereat a true copy of each to D. Long (Doorman) a person of suitable age and discretion who stated that he/she is authorized to accept service. Said premises is recipient's :[] actual place of business / employment [X] dwelling house (usual place of abode) within the state.

☒ #2 DESCRIPTION
    Sex: Male           Color of skin: Black        Color of hair: Bald      Glasses: No
    Age: 36-50          Height: 5ft 4inch - 5ft 8inch        Weight: 161-200 Lbs.        Other Features:

☒ #3 MILITARY SERVICE
    I asked the person spoken to whether defendant was in active military service of the United States or the State of New York in any capacity whatsoever and received a negative reply. The source of my information and the grounds of my belief are the conversations and observations above narrated.

☐ #4 WITNESS FEES
    Subpoena Fee Tendered in the amount of

☒ #5 OTHER
    The doorman called the Subject on the phone. She REFUSED/DENIED me entry up to Apt. 5-M to serve the documents and asked me to leave them with the doorman.

☒ #6 MAILING
    Dainon O. Ward being duly sworn, deposes and says:  that deponent completed service by depositing a copy of the said documents in a postpaid properly addressed envelope, bearing the words "Personal and Confidential" by first class priority mail on: 08/08/2019 to JOANNE BLACK at 805 EAST NEW YORK AVENUE, #5-M, BROOKLYN, NY 11203 in an official depository of the United States Postal Service in the State of New York. The envelope did not indicate on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served.
    :

Sworn to before me on 08/13/2019

Adriana Bartolotta
Notary Public, State of New York
Registration No. 01BA6377720
Qualified in Nassau County
Commission Expires 07/19/2022

Dainon O. Ward
DCA License # 2079049

*Court Support, Inc., 181 Hillside Avenue, Williston Park, NY 11596 License #1382542*

# Exhibit B

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A. et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 18-cv-03447 |
| v. | ) | |
| | ) | Hon. Andrea R. Wood |
| BERNARD S. BLACK, et al, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS AND COUNTER-PLAINTIFFS BERNARD S. BLACK AND SAMUEL BLACK'S REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

This Court should grant the motion of Bernard Black ("Bernard") and Samuel Black (collectively, "Trustees") to restrain the parties in this case from seeking, through legal proceedings in other courts, a turnover of the assets of two Black family trusts[1] held in accounts at plaintiffs JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC (collectively, "Chase") (the "Trust Assets"). Chase instituted this interpleader action because of competing claims to the Trust Assets and is seeking similar injunctive relief by motion, which the Trustees support. As part of the relief that this Court should grant in response to both the Trustees' and Chase's motions, this Court should direct Joanne Black ("Joanne") to withdraw her pending contempt motion against Bernard in the Denver Probate Court in Colorado as that contempt motion seeks to require Bernard to turn over the Trust Assets to that court and to punish him for not having already done so, which he has no power to do in any event.[2]

---

[1] The trusts are the Supplemental Needs Trust for the Benefit of Joanne Black ("SNT") and the Irrevocable Trust for the Benefit of the Issue of Renata Black ("Issue Trust"). The Trustees are the only trustees of the Issue Trust and are two of the three trustees of the SNT.

[2] The Trust Assets effectively are frozen by orders in this Court, by citations to discover assets obtained by lenders to the trusts in two state court proceedings in Illinois, and by a FINRA arbitration award.

1

Jeanette Goodwin ("Goodwin") and Anthony Dain ("Dain") are the only parties who object to the injunctive relief sought by Chase and by the Trustees in their separate injunction motions. Joanne, whose effort to seek both remedial and punitive contempt sanctions against Bernard for failing to turn over the Trust Assets to the Denver Probate Court prompted these motions, has not appeared in this case to contest any of the relief being sought in this case with respect to the Trust Assets.[3] Dain and Goodwin, however, fail to provide any justifiable reason why this Court should not restrain all party claimants, including Joanne, from instituting or prosecuting actions in other courts concerning the Trust Assets while this case is pending. They admit that the Trust Assets are subject to a "web of conflicting court orders." (Dain and Goodwin's Response to Trustees Motion for Preliminary Injunction at p. 7.) The contempt sanction that Joanne seeks will only expand that web, and complicate this court's resolution of the conflicts. Dain and Goodwin also fail to explain how they have standing to object to relief being sought against Joanne.[4]

Contrary to Goodwin and Dain's portrayal of the relief being sought in the pending motions, the Trustees and Chase are not seeking to enjoin any court, including the Denver Probate Court, from taking action. They merely are seeking to enjoin the *party claimants in this case* from instituting and prosecuting actions in other courts which directly affect or relate to the Trust Assets. Such an injunction is expressly authorized under the interpleader statute. 28 U.S.C. § 2361.

---

[3] Pursuant to this court's request, the Trustees notified Joanne's individual Colorado counsel, Lisa DiPonio, of the current motions. Despite this notice, Joanne has chosen not to respond. Joanne's counsel has also not responded to a request to postpone the contempt hearing, scheduled for October 3, to allow this court time to issue a written decision on the injunction motions.

[4] While Goodwin serves as a Conservator for Joanne in Colorado for certain purposes, the actions of Joanne in seeking contempt against Bernard which are, in part, the subject of the present motions, are not being taken through Goodwin, but rather by Joanne, individually, through her own counsel, Lisa DiPonio.

Finally, Dain and Goodwin, in their response to Trustees' motion and Chase's motion, effectively ask this Court to ignore the purpose of this interpleader proceeding and to have this Court defer to the Denver Probate Court with respect to matters the Trust Assets, notwithstanding the competing claims of other parties to this case which led Chase to institute this action. Although you would not know it from Dain and Goodwin's misleading presentation of the facts, Chase filed this action, not Bernard or the Trustees. Chase did so because it faced competing claims with respect to the Trust Assets, including claims by lenders to the trusts who hold judgments against the trusts, obtained in Illinois state court proceedings. Thus, there are directly conflicting court orders with respect to the disposition of the Trust Assets. There also is an arbitration award entered in a FINRA arbitration which prevents Chase from allowing dissipation of Trust Assets until final resolution of Bernard's challenges to the Denver Probate Court's jurisdiction over the trusts. Moreover, contrary to the picture Dain and Goodwin paint in their response, the Trustees did not initiate all of the other legal proceedings. The FINRA arbitration is the only proceeding the Trustees initiated concerning the Trust Assets. The arbitration panel granted the relief sought by the Trustees, which preserves the Trust Assets pending a resolution in Colorado of the Trustees' challenge to the Denver Probate Court's assertion of jurisdiction over the trusts and the Trustees.

With respect to the "web of conflicting court orders" concerning the Trust Assets, which Dain and Goodwin acknowledge exists, Chase, the Trustees, and the Lenders all are willing to let this Court resolve the competing claims to the Trust Assets, which is the entire purpose of an interpleader proceeding such as this, and to refrain from seeking a turnover of the Trust Assets in other courts. Dain and Goodwin, however, want this Court, instead of taking the time to resolve the claimants' competing claims to the Trust Assets, to allow another court, the Denver Probate

Court, to jump ahead of all others, even though the Denver Probate Court does not have all claimants and claims to the Trust Assets before it such that it could resolve the competing claims. An injunction is appropriate to ensure that this Court can decide which of these conflicting claims and orders take priority.[5]

This Court also should not be misdirected by Dain and Goodwin's efforts to demonize Bernard from the relevant inquiry, which involves only the Trust Assets, and how to protect them from dissipation while this Court decides on the competing claims to those assets. Bernard strongly disputes Dain and Goodwin's characterization of him and his conduct, and looks forward to addressing the merits of the underlying disputes in this action at the appropriate time.[6]

## I.     The Relief Being Sought is Consistent with 28 U.S.C. § 2361

The Trustees, and Chase in separate motions, are seeking relief specifically authorized under 28 U.S.C. § 2361. That statute provides in pertinent part that:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property ... involved in the interpleader action until further order of the court.

---

[5] Dain and Goodwin baldly assert that Bernard "manufactured" these orders. That is not true. Notably, the FINRA arbitration panel heard from not only the Trustees, but Chase and Dain as well, and granted the Trustees' requested relief – a freeze on the Trust Assets until challenges to the Denver Probate Court's jurisdiction over the SNT and the Issue Trust are finally resolved in Colorado. In addition, an Illinois state court recently held an evidentiary hearing on a challenge by Dain and Goodwin to the validity of a judgment entered in favor of claimant Olga Dal ("Dal") on loans she made to the trusts, and rejected the Dain and Goodwin's challenge. A second Illinois state court similarly rejected Dain and Goodwin's challenge to a judgment claimant Katherine Litvak ("Litvak") obtained with respect to loans to the trusts, insofar as they concerned the Issue Trust. Their challenge to the judgment Litvak obtained against the SNT remains undecided in that Illinois court case.

[6] As Dain and Goodwin recognize and point out, the Trustees are challenging on appeal the Denver Probate Court's orders concerning the relevant trusts, both on jurisdiction and substantive law grounds. They have strong grounds for expecting success in that appeal. Joanne, Dain, and Goodwin, however, would like to preempt not only this Court's jurisdiction, but also the appeal process in Colorado, the Lenders' claims to the Trust Assets by virtue of their state court judgments, and the FINRA arbitration award barring disposition of the Trust Assets until the Colorado appellate proceedings have run their course.

The Trustees, and Chase, are seeking precisely that relief in their motions. They are asking this court to restrain the party claimants in this case, including Joanne, from instituting or prosecuting any proceeding in any other court, including the Denver Probate Court, to affect the property – the Trust Assets - which is the subject of this interpleader action.

Dain and Goodwin argue, in effect, that this Court should allow the Denver Probate Court proceedings to continue, even though the Trust Assets are subject to competing claims in other courts and are the subject of this interpleader action, because they believe they will get favorable treatment in that court. But that court has no ability to consider, among other claims, the claims of Litvak and Dal, as judgment creditors of the trusts. Consequently, Dain and Goodwin fail to explain why the injunctive relief expressly authorized under Section 2361 is not appropriate.

While Dain and Goodwin might prefer that this Court simply ignore those claims based upon their one-sided and misleading presentation of some of the underlying litigation, there are legitimate competing claims to the Trust Assets. The Lenders' claims have been reduced to judgment and have withstood Dain and Goodwin's challenges. There is the potential from pending litigation in other states for further competing and inconsistent orders concerning the Trust Assets. The counterclaims filed by the claimants in this case (other than Joanne, who has ignored these proceedings and been defaulted) spell out the parties' respective competing claims to the Trust Assets. The disputed nature of those claims calls out the need for the injunctive relief that Chase and the Trustees now are seeking. Indeed, those competing claims are precisely why Chase instituted this proceeding in the first place and why Chase now is seeking an injunction against any of the claimants pursuing actions in other courts affecting the Trust Assets. Injunctive relief is needed now because Joanne, Dain and Goodwin are seeking to make an end run around this Court's primary role in resolving the conflicting claims.

As explained by the Trustees in their motion, the policy reasons behind the enactment of Section 2361 are consistent with the relief requested by both the Trustees and Chase. As courts have explained, relief under Section 2361 reduces the possibility of inconsistent determinations with respect to the property at issue or the inequitable distribution of the assets in question. *New York Life Ins. Co. v. Apostolidis*, 841 F.Supp.2d 711 (E.D.N.Y. 2012); *U.S. v. Major Oil Corp.*, 583 F.2d 1152 (10th Cir. 1978).

In short, based upon the interpleader statute, this Court has clear authority to restrain the party claimants from instituting or prosecuting proceedings in other courts with respect to the Trust Assets. Based upon the competing claims to the Trust Assets as set forth in parties' counterclaims, the pendency of numerous court proceedings around the country directly related to the Trust Assets, and the risk of inconsistent orders from various courts as to the validity of those claims to the Trust Assets, this Court should grant relief on both Chase's and the Trustees' motions and enjoin the parties from instituting or prosecuting proceedings in other courts, state or federal, with respect to the Trust Assets.

## II. There is No Motion Asking This Court to Enjoin Other State Court Proceedings.

Dain and Goodwin mischaracterize the nature of the relief being sought. The Trustees, as well as Chase, are not asking this court to enjoin actions by state courts or to restrain actions that are unrelated to the Trust Assets. Instead, they merely are asking this Court, as it is expressly empowered to do by 28 U.S.C. § 2361, to enjoin the parties to this case from instituting and prosecuting actions that affect the Trust Assets. Therefore, Dain and Goodwin's arguments about overbroad injunctive relief are inapposite to the relief being sought.

The cases Dain and Goodwin cite do not support their opposition to the relief being sought. In fact, those cases support the entry of the requested relief. In *State Farm Fire & Cas.*

*Co. v. Tashire*, 386 U.S. 523 (1967), the Supreme Court addressed an insurance company's request for a broad injunction which would compel "dozens of tort plaintiffs ... to press their claims – even those claims which are not against the [insurance company's] insured and which in no event could be satisfied out of the meager insurance fund [the subject of the interpleader action] in a single forum of the insurance company's choosing." *Id.* at 535. As the Supreme Court explained, that case involved a mere $20,000 policy issued to one defendant in multiparty litigation concerning an accident involving 35 passengers in which there could be claims by numerous parties against a variety of defendants, who were unconnected to the insurance policy at issue in the interpleader action. *Id.* at 534-35. Not surprisingly, the Supreme Court held that a blanket injunction against litigation in various forums was inappropriate, particularly insofar as that litigation was unrelated to the insurance policy fund in question. *Id.* at 534-37. The Supreme Court, however, held that a narrower injunction should be issued. *Id.* 537. That same logic was applied and followed in the other two cases that Dain and Goodwin cite in their response, *Buckeye State Mut. Ins. Co. v. Moens*, 944 F. Supp. 678 (N.D. Iowa 2013) and *Mid-Am Indem. Co. v. McMahan*, 666 F. Supp. 926 (S.D. Miss. 1987). In both, the courts held that narrow injunctions were appropriate, but not broad injunctions that would prohibit litigation and claims unrelated to the property at issue in the interpleader case. See, *Buckeye State Mut. Ins. Co.*, 944 F. Supp. at 702 ("movants are entitled ... to an order restraining the claimants ... from seeking to enforce any judgment ... except in the interpleader proceeding itself."); *Mid-Am Indem. Co.*, 666 F. Supp. at 929 ("it is ordered that the defendant claimants are hereby enjoined from instituting or prosecuting any proceeding in any court, state or federal, affecting the proceeds of [the insurance policy at issue] until such time as the proceedings ... by all claimants are finalized.")

The circumstances in the cases upon which Dain and Goodwin rely are very different from those here. Even so, the decisions in those cases support the relief sought here. The courts in those cases held that injunctions limited to precluding actions by parties affecting the funds that were the subject of the interpleader case were appropriate. That is the limited relief that the Trustees (and Chase) are seeking here.

The Trustees are asking this Court to restrain the parties only from instituting or prosecuting actions in other forums that affect the Trust Assets. The injunctive relief includes prohibiting Joanne from continuing to prosecute a contempt motion in Colorado, the direct purpose of which is to both compel Bernard to turn over the Trust Assets to the Denver Probate Court, and to punish him for having not already done so. In fact, the injunction requested here is necessary and appropriate because, as explained above, such relief, if entered by the Denver Probate Court, would conflict with the claims of other parties to the Trust Assets, including the Lenders' efforts to pursue collection of the judgments they obtained against the trusts in Illinois through the citations to discover assets that they have served on Chase. Bernard also respectfully suggests that this Court should protect Bernard from such action as a matter of equity because Bernard is unable to comply with the Denver Probate Court's order to turn over the Trust Assets. He is unable to do so in part because of this Court's prior orders in this case. Bernard also cannot turn over those Trust Assets to the Denver Probate Court because of the freezes imposed on those assets by the aforementioned citations to discover assets, as well as by the FINRA arbitration award described above and in the parties' pleadings.[7]

---

[7] As Dain and Goodwin note, the FINRA order allows Chase to release Trust Assets based on mutual agreement of the Trustees and Dain. FINRA Order ¶ 5. This refers to voluntary agreement, not compulsion under threat of contempt. The Trustees have attempted without success to settle their disputes with Dain and Goodwin, including making multiple settlement offers, both during and following the FINRA proceedings.

It is the existence of these multiple competing claims to the Trust Assets that led Chase to file this interpleader action. And, contrary to the impression that Dain and Goodwin would like to create about who is behind all of this litigation, Bernard did not file this case or direct Chase to file this case. Chase initiated this interpleader action to resolve competing claims to the Trust Assets in one forum with all competing claimants before one court. It is disingenuous for Dain and Goodwin to suggest otherwise.

To reiterate, the Trustees are not asking to have this Court shut down litigation around the country between the parties to this case and other parties, as in the cases upon which Dain and Goodwin rely in opposing an injunction. Instead, the Trustees merely are asking this Court for narrow relief which restrains solely the parties to this case from taking actions in other courts that will directly affect the disposition of the property at issue in this interpleader action, conflict with this court's prior orders, conflict with orders by other courts, and interfere with this Court's power to determine how the Trust Assets should be allocated given the claimants' various competing claims. As such, the requested relief expressly is a proper subject of a restraint order from this Court, under 28 U.S.C. § 2361 (quoted in fully above) ("[A] district court may ... enter its order restraining [claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property ... involved in the interpleader action until further order of the court.")

For the relief specifically directed against Joanne, she is both a party to this case and a claimant to the Trust Assets that are the subject of this action. She is a named defendant in Chase's complaint. She is a named counter-defendant in the Trustees' counterclaim. As proof of her position as a claimant, she is seeking in the Denver Probate Court to require Bernard to turn over the Trust Assets to that court for her own benefit. It is those very actions that led

*Chase*, not Bernard, to name her as a defendant in this interpleader action. And it is because of those actions that this Court should restrain Joanne from using her contempt motion to compel turnover of the Trust Assets.

**III.   Dain and Goodwin Lack Standing to Object to the Relief Sought Against Joanne**

Dain and Goodwin devote much of their response to arguing that the Trustees are not entitled to the relief they are seeking against Joanne. Dain and Goodwin, however, lack standing to object to that relief. Dain does not represent, or claim to represent, Joanne in any capacity. Goodwin, as Joanne's conservator, arguably has the power to act on Joanne's behalf in financial matters,[8] but has chosen not to do so with regard to Joanne's contempt motion, and has instead asserted that she is not responsible for that motion.[9]  Goodwin cannot have it both ways – she cannot both claim independence from Joanne (so as not to violate this court's June 19, 2019 order),[10] yet seek relief in this court on Joanne's behalf. As the court explained in *In re Estate of Burgeson*, 125 Ill.2d 477, 485 (1988), standing "is not simply a procedural technicality" but rather is a component of justiciability. The essence of a judicial inquiry regarding standing is whether the litigant is entitled to have the court decide the merits of a dispute on a particular

---

[8] The Trustees have challenged in their Counterclaim and in other court proceedings in Illinois the propriety of Goodwin's appointment by the Denver Probate Court as a conservator for Joanne in that Joanne has not lived in Colorado in years and more recently was found by a New York court, where she does reside, to not need a guardian, financial or otherwise.  That New York ruling was made after an evidentiary hearing concerning Joanne's competence and was made more recently than any ruling by the Denver Probate Court concerning Joanne's need for a conservator.

[9] This Court may recall that Dain and Goodwin's attorney, Peter Stasiewicz, explained at a recent hearing in this case that Goodwin, despite being Joanne's conservator in Colorado, does not stand in Joanne's shoes for purposes of this litigation.  That is presumably also his position with respect to the contempt motion against Bernard in the Denver Probate Court, which was brought by Joanne's personal Colorado counsel, Lisa Diponio, rather by Goodwin as Joanne's conservator.

[10] The June 19, 2019 order states: "The Court's prior order dated 5/15/2019 [68] is amended to preclude any party from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets from the accounts held by Plaintiff, *without first filing* a motion with this Court seeking approval for such withdrawal." (Emphasis added.)  Joanne's actions in violation of that order, through her contempt motion, led to the current motions by the Trustees and by Chase.

issue. *Helmig v. John F. Kennedy Community Consolidated School Dist. No. 129*, 241 Ill.App.3d 653, 658 (3rd Dist. 1993). Therefore, this Court should ignore Dain and Goodwin's arguments insofar as they pertain to the Trustees' motion for relief against Joanne.

Joanne is the only party with standing to defend her effort to pursue her contempt motion in Colorado. She is a party to this case, made so both by Chase and as a counter-defendant to the Trustees' Counterclaim concerning the Trust Assets. She has been served with this Court's orders of May 15 and June 19, 2019, restricting the parties' actions with respect to the Trust Assets. Her Colorado counsel, Lisa Diponio, was provided with copies of the pending motions and related pleadings, at this Court's direction. Yet, Joanne has not appeared in this case and has not objected to the relief against her being sought by the Trustees or by Chase. Dain and Goodwin have no standing to argue that issue in her place.

## IV. Conclusion

For all of the foregoing reasons, this Court should grant the Trustees' motion, restraining Joanne, Goodwin and Dain, from instituting or prosecuting actions in other courts, including in the Denver Probate Court that affect the Trust Assets, and in particular, restraining Joanne from prosecuting her contempt motion against Bernard in the Denver Probate Court. The Trustees do not object to Chase's broader motion for an injunction restraining all parties from this conduct.

Respectfully submitted,

BERNARD S. BLACK, individually and as Trustee of the 2013 Trust, the SNT and the Issue Trust, and SAMUEL BLACK, as Trustee of the 2013 Trust, the SNT and the Issue Trust

By: /s/Brad S. Grayson
One of Their Attorneys

Benjamin N. Feder (ARDC# 6277452)
Brad S. Grayson (ARDC# 6196336)
Samantha E. Weissbluth (ARDC# 6244095)
Strauss Malk & Feder LLP
135 Revere Drive
Northbrook, IL 60062
(847) 562-1400 (Tel.)
(847) 562-1422 (Fax)
bfeder@straussmalk.com
bgrayson@straussmalk.com

# Exhibit C

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.2.2
### Eastern Division

J.P. Morgan Securities LLC, et al.

                        Plaintiff,

v.                                        Case No.: 1:18−cv−03447
                                        Honorable Andrea R. Wood

Bernard S. Black, et al.

                        Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, May 15, 2019:

        MINUTE entry before the Honorable Andrea R. Wood: The Court previously ordered Plaintiffs to post a bond of $4.2 million, which would be satisfied by a bond issued by Plaintiff's surety, Travelers Casualty and Surety Company of America (Dkt. No. [26]). Plaintiffs have now filed an unopposed motion to waive renewal of the surety bond (Dkt. No. [66]). Plaintiffs' motion (Dkt. No. [66]) is granted. IT IS FURTHER ORDERED that Plaintiffs shall not allow any withdrawals of the interpleader assets from the accounts or execute any instructions with respect to the interpleader assets, without prior approval from the Court. Such approval shall be sought by written motion with due notice provided to all Defendants. Motion hearing set for 5/16/2019 is stricken; parties need not appear. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# Exhibit D

| | |
|---|---|
| Probate Court<br>Denver County, Colorado<br>Court Address:<br>1437 Bannock Street<br>Denver, CO 80202 | FILED IN PROBATE COURT<br>CITY & COUNTY OF DENVER, CO<br><br>MAY 10 2019 |
| IN THE INTEREST OF:<br><br>**JOANNE BLACK,**<br><br>Protected Person. | ▲ **COURT USE ONLY** ▲ |
| Lisa DiPonio, Esq., #22707<br>Court Appointed Counsel for Joanne Black<br>7931 S. Broadway, #348<br>Littleton, CO 80122<br>DiPoniolawfirm@comcast.net<br>(303) 955-2080°<br>Fax (303) 734-1068 | Case Number:<br><br>12PR1772<br><br>Division          Courtroom 230 |

## VERIFIED MOTION AND AFFIDAVIT FOR CITATION FOR CONTEMPT OF COURT

Lisa DiPonio, Esq. ("Counsel") on behalf of her client, Joanne Black, states Bernard Black has failed to comply with orders of this court as follows:

1. On April 27, 2018 this Court issued its Order Re: COA Remand, ordering Bernard Black to do the following: (Briefly describe what the Order says and attach a copy of the signed Order.)

   Immediately return all funds that he disclaimed pursuant to the Amended Order issued March 5, 2013, and place them into the Registry of the Denver Probate Court.  In that April 27, 2018 Order, the Court affirmed, among other things, that via his disclaimer Bernard Black misappropriated Conservatorship assets and transferred them into the 1997 Supplemental Needs Trust for the benefit of Joanne Black, the 2013 SNT, the 1997 Issue Trust and elsewhere.  Mr. Black filed a motion in the Colorado Court of Appeals to stay this Court's Order; on June 29, 2018, the Court of Appeals issued an Order denying Mr. Black's motion to stay.  Thus, the April 27, 2018 Order remains in effect and Mr. Black remains obligated to comply.

   _____

   _____

   _____

   _____

2. As of this date, the other party owes me a total of $ _____, for _____ (number of payments) payment(s) in the amount(s) of $ _____ that were ordered to have been made by the following date(s):_____.

   ☐ and ☒ or

   Other: (Identify exactly what the other party has done, or failed to do, in violation of the Order.)

Bernard Black has willfully, intentionally and in bad faith violated this Court's April 27,2018 Order by refusing to return, or even make any effort to return, the funds he disclaimed and place them in the Court Registry. Mr. Black has ignored repeated requests that he comply with the Court's Order.

3. Describe any circumstances which may show that the other party has the present ability to comply with the Order: As the Court may recall from the evidence presented in the Conservatorship evidentiary hearings, including testimony from witnesses including Mr. Black, and the expert forensic report and attached exhibits of Pamela Kerr, Bernard Black is an account holder and signor of all accounts holding disclaimed funds, with the exception of the Roth IRA funds he disclaimed and transferred directly to accounts in the names of his seven children. As to the accounts on which he is a holder and signor, he has the immediate ability to effect transfer to the Court's Registry, directly and/or through cooperation with other account holders, such as his son Samuel Black and Trustee Anthony Dain. As to the accounts he set up holding the disclaimed Roth IRA funds, he can at a minimum seek the cooperation of his children in effecting return to the registry, and at a maximum, he can seek court assistance in ordering the return of the funds.

4. Describe any circumstances which may show that the other party willfully refused to comply with the Order: On May 15 and July 6, 2018, Anthony Dain e-mailed Bernard Black imploring him to comply with the Court's April 27, 2018 Order. These e-mails are attached. Mr. Black ignored both requests. Moreover, as recently as November 19, 2018, during his deposition in a Federal District Court case brought by his wife against Ms. Wrigley, Ms. Cohenson and Ms. Kerr, Mr. Black demonstrated his literal contempt for this Court's various orders including the April 27, 2019 order. During his testimony, Mr. Black was describing his October 2017 surreptitious electronic transfer of funds out of the Supplemental Needs Trust account at Chase Bank. As the Court may recall, it had authorized Mr. Dain to sell assets held in an SNT brokerage account at Chase to pay attorney's and professional's fees needed to protect Joanne Black from Mr. Black's depredations; the Court ordered Mr. Dain to hold the funds received from sale in a Chase SNT checking account pending the Court's resolution of Mr. Black's objections to reasonableness. However, just after the October 2017 hearing on his objections, when it was clear the Court was going to overrule them, Mr. Black surreptitiously went online and removed these funds. He first transferred the funds into a home equity line of credit account held by him and his wife, also at Chase. This paid off his line of credit. He then later drew on that home equity line of credit and transferred those funds out of Chase into an account he set up at Northview Bank. As the Court may recall it issued an emergency Order re: Motion for Injunction on November 3, 2017 ordering Mr. Black to return the funds to the Chase SNT account. In that Order, the Court stated unequivocally that it "Finds that this Court has continuing jurisdiction over this conservatorship matter and Bernard Black, who served as the former conservator as appointed by this Court."

However, continuing to thumb his nose at this and other orders of the Court, Mr. Black testified on November 19, 2018, "Mr. Dain has gone repeatedly to the Denver probate Court to seek approval to spend SNT money. ¶ ¶ I believe that the S - - - Denver probate Court has no jurisdiction over the SNT and has acted improperly in this and other ways. And it was available for me to move the money from Chase to Northview, and by doing that I was trying to slow down the depletion of the SNT accounts." A copy of the relevant portion of Mr. Black's November 19, 2018 Transcript, with the December 5, 2018 Reporter's Certification is attached hereto. This testimony is exemplary of Mr. Black's intent to defy this Court's orders, including the April 27, 2018 Order, and of Mr. Black's unwillingness to accept this Court's jurisdiction to enforce his compliance with its orders, including the April 27, 2018 Order.

5. There has not been a stay of execution or modification of the Order.

6. The actions of the other party are contrary to the Order of this court.

7. I request this court to issue an order to the other party to appear before the court at a specific date and time for a hearing to show cause why there has been a failure and/or refusal to comply with the Order of this court.

8. I hereby request:
   ◆[X]Remedial Contempt. I request that the Court find that the other party is in remedial contempt of this Court's Order. As described above, I attest that the responding party (1) did not comply with the Order; (2) knew of the Order; and (3) has the present ability to comply with the Order.

   As a result, I request this court impose the following sanctions:
   [X]payment of my costs and reasonable attorney's fees in connection with this contempt proceeding;
   [X]payment of a fine and/or imprisonment until the other party, who has the present ability to comply, performs the act(s) ordered;
   [ ]other (be very specific) _____

   _____
   _____
   _____

   and/or

   [X]Punitive Contempt. I request that the Court find that the other party is in punitive contempt of this Court's Order. As described above, I attest that, beyond a reasonable doubt, the responding party (1) had knowledge of the Order; (2) had the ability to comply with the Order; and (3) willfully refused to comply with the Order.

   I request this court find that the conduct of the other party to be offensive to the authority and dignity of the Court, and, to vindicate the dignity of this court, to impose a fine or fixed sentence of imprisonment, or both.

Date: May 10, 2019 _____    _Tina DiRaio_____

                                  _7931 S. Broadway #348_____
                                  Address

Littleton CO 80122
**City, State, Zip Code**

_____
**(Area Code) Home Telephone Number**

(303) 955-2080
**Area Code) Work Telephone Number**

SCOT BROOKS
NOTARY PUBLIC - STATE OF COLORADO
NOTARY ID 20184024177
MY COMMISSION EXPIRES JUN 11, 2022

Subscribed and affirmed, or sworn to before me in the County of _Arapahoe_____, State of
_Colorado__, this _10_ day of _May____, 20_19_.

My Commission Expires: _June 11 2022_____          _S. Brooks_____
                                                      Notary Public/Deputy Clerk

---

**It is important that the party accused of contempt read the following information.**

**A party accused of remedial contempt has the following rights:**

1. The right to be represented by a lawyer.
2. The right to a hearing before a judicial officer where the court must find that you were subject to a court order, that you had knowledge of that Order, that you did not comply with the Order, that you had the ability to comply with that Order, and that you have the present ability to comply with that Order.

If you are found to be in remedial contempt of court, the court may require you to pay the other party's court costs and attorney's fees connected with the contempt hearing, to pay a fine, and/or to serve an indefinite jail sentence until you comply with the original order.

**A party accused of punitive contempt has the following rights:**

1. The right to be represented by a lawyer. If you cannot afford a lawyer and if a jail sentence is contemplated, you may apply for a court-appointed lawyer.
2. The right to a jury if a jail sentence in excess of 180 days is contemplated.
3. If the judge initiated the proceedings, the right to have the contempt matter heard by a different judge.
4. The right to plead guilty or not guilty to the charge of contempt.
5. The right to be presumed innocent unless and until the allegation(s) in the motion for contempt is/are proven beyond a reasonable doubt.
6. The right to confront and cross-examine all witnesses against you.
7. The right to present relevant witnesses and evidence at the hearing.
8. The right to request the court to issue subpoenas to compel witnesses to appear and give testimony.
9. The right to remain silent.
10. The right to testify on your own behalf. If you testify, you waive your right to remain silent and the other party may cross-examine you.
11. The right to make a statement on your own behalf prior to the imposition of sanctions, if you are found in contempt of court.

If the court finds beyond a reasonable doubt that you were subject to a lawful court Order, that you had knowledge of that Order, that you had the ability to comply with that Order, that you willfully failed or refused to obey that Order, and that such conduct was offensive to the authority and dignity of the court, you may be sentenced to pay a fine or serve a jail sentence.

# Exhibit E

<pre>
 1                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   J.P. MORGAN SECURITIES LLC,        )
     et al.,                            )
 4                                      )
                        Plaintiff,      )
 5                                      )
                                        )
            -vs-                        )   No. 18 C 3447
 6                                      )
     KATHERINE LITVAK, et al.           )   Chicago, Illinois
 7                                      )   September 27, 2019
                        Defendants.     )   9:30 a.m.
 8

 9                      TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE ANDREA R. WOOD
10

11   APPEARANCES:

12   For the Plaintiff:        ULMER & BERNE LLP
                               500 West Madison Street
13                             Chicago, Illinois  60661
                               BY:  MR. KENNETH FREDERICK BERG
14
     For Defendants
15   Bernard and Samuel
     Black:                    STRAUSS & MALK
16                             135 Revere Drive
                               Northbrook, Illinois  60062
17                             BY:  MR. BRAD STEPHEN GRAYSON

18   For Defendants Dain
     and Goodwin:              ARCTURUS LAW FIRM
19                             211 West Wacker Drive
                               Chicago, Illinois  60606
20                             BY:  MR. PETER STASIEWICZ

21

22              COLETTE M. KUEMMETH, CSR, RMR, FCRR
                      OFFICIAL COURT REPORTER
23                     219 South Dearborn Street
                            Room 1928
24                     Chicago, Illinois  60604
                          (312) 554-8931
25
</pre>

```
1    APPEARANCES:   (Continued)

2    For Defendants
     Katherine Litvak
3    and Olga Dal:            MURPHY LAW GROUP, LLC
                              161 North Clark Street, Suite 2550
4                             Chicago, Illinois  60601
                              BY:  MR. DAVID FELLER HYDE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1          (Proceedings heard in open court:)

 2               THE CLERK:  Calling case 18 CV 3447, J.P. Morgan

 3     versus Black.

 4               MR. GRAYSON:  Good morning, your Honor.  Brad

 5     Grayson for Bernard and Samuel Black.

 6               MR. BERG:  Kenneth Berg for the plaintiffs, J.P.

 7     Morgan.

 8               MR. STASIEWICZ:  Good morning, your Honor.  Peter

 9     Stasiewicz for Anthony Dain and Jeanette Goodwin.

10               MR. HYDE:  And good morning, your Honor.  David

11     Hyde for Olga Dal and Katherine Litvak.

12               THE COURT:  Okay.  Good morning.  So I think the

13     first thing I would like to do is kind of get an update on

14     what if anything has changed since the parties submitted

15     briefing.  I know it's just been a couple weeks, but it seems

16     like there might be something going on in Colorado.  I don't

17     know if there was any further progress or action taken with

18     respect to that action or any of the other actions that are

19     pending.

20               MR. GRAYSON:  As I understand it, my client's

21     Colorado counsel approached Joanne Black's Colorado counsel

22     and asked them to withdraw the contempt citation based on

23     these proceedings, and they refused to do that.  That's the

24     only thing that I know that's happened.

25               THE COURT:  Is there a hearing set on the contempt

1  proceeding?  How does that work procedurally?

2      MR. GRAYSON:  There's a -- I think it's equivalent

3  or maybe is a motion for rule to show cause that's set for

4  October 3rd in Colorado.  So it's effectively a presentation

5  of a start of a explain why you shouldn't be held in contempt

6  for not turning over this money hearing on October 3rd.

7      THE COURT:  I guess after reading through the

8  briefs I was still a little bit unclear.  Is all of the money

9  and/or assets that are the subject of the contempt motion

10  being held in the Chase accounts, or is it broader?

11      MR. GRAYSON:  I think they're all held in the Chase

12  accounts.  I'm not aware of any trust money that's not in the

13  Chase accounts.

14      MR. STASIEWICZ:  I think the language of the

15  contempt, which has some reference to funds held more

16  broadly, I don't know if any of those actually exist or not,

17  but I think there is a reference in the contempt motion.

18      MR. GRAYSON:  The one thing that may be, and I'm

19  not a hundred percent sure of this, but Chase is -- the money

20  held at Chase that I think is the subject of this action is

21  only in what's been called the SNT, the supplemental needs

22  trust, as well as the issue trust.  And there is also a 2013

23  trust.

24      I don't think that the 2013 trust has any assets

25  that are subject to this interpleader action, so I don't know

1    if the contempt thing may involve that.  I think it only
2    involves turning over the issue trust and supplemental needs
3    trust accounts at Chase to the conservatorship estate in
4    Colorado.

5        MR. BERG:  To simplify things, as I understand
6    it -- and we're not a party to that action -- the money we're
7    holding is at least equivalent to what's at issue in the
8    Colorado contempt proceeding, or it might be a subset.  But
9    everything we're holding is subject to the contempt, as I
10   understand it.

11       THE COURT:  So has the issue of -- has the probate
12   court been apprised of this action, and has, I guess
13   Mr. Black, raised with the probate judge one of the reasons I
14   can't comply with your order is because the assets are
15   subject to an interpleader, frozen because of a citation -- I
16   guess I'm a little confused as to why those issues wouldn't
17   be raised with the probate judge and why any reasonable
18   probate judge wouldn't say, okay, I understand, you shouldn't
19   be held in contempt because there are other court orders out
20   there that are preventing you from --

21       MR. GRAYSON:  That will be a defense.  It has been
22   raised in the past.  It hasn't stopped Joanne Black's counsel
23   from still seeking to hold Bernard in contempt for not
24   turning over the trust accounts, which, as you know, are
25   frozen many different ways.

1          And Bernard fears -- a lot of the judge in

2     Colorado's orders are up on appeal right now.  He fears that

3     effectively whatever Joanne asks the judge to do she will do

4     regardless of what may be going on elsewhere, because she

5     portrays the situation there, as I understand it, as a

6     situation where Bernard has simply manipulated ways that he

7     can't turn over the money.  Which is not true, there has only

8     been one action that Bernard started.  But she portrays it

9     that way to the judge, and Bernard is afraid that the judge

10    may accept that view of the world and hold him in contempt,

11    notwithstanding the fact that he's explained why there are

12    several reasons why he can't turn over the money.

13          MR. STASIEWICZ:  Your Honor, I think this goes --

14    you know, it's gotten close to the merits of the motion,

15    which is, as you know, Bernard is able to go to the judge and

16    explain the basis for why he should not be held in contempt.

17          I don't think that the reasons -- that it's not as

18    simple as counsel makes it out to be.  There are things that

19    Bernard could do and comply.  He could agree to turn over

20    some portion of the funds.  There is only --

21          THE COURT:  But I guess that was my first question.

22    Is there some portion of the funds that he could turn over

23    that aren't frozen --

24          MR. STASIEWICZ:  Right.

25          THE COURT:  -- as part the Chase accounts?

1    MR. STASIEWICZ:  Right.  Right now the Litvak and

2    Dal judgments, they -- they freeze I think effectively almost

3    all the issue trust money, but they only I think freeze

4    $60,000 out of about 2 million in the SNT.

5         So if Bernard agreed to turn over those funds to

6    the Denver probate court, my clients would be on board with

7    that, and that would take away one of the --

8         THE COURT:  But it would still have to come out of

9    the funds that are with Chase.

10        MR. GRAYSON:  Correct.

11        MR. STASIEWICZ:  That's right.

12        THE COURT:  So it would effectively resolve a

13   portion of this.

14        MR. GRAYSON:  Right.

15        MR. STASIEWICZ:  It wouldn't resolve this case

16   completely, but it would take it from three things to two

17   things.

18        MR. GRAYSON:  Right.  But there is a few problems

19   with that.  One is Bernard is contesting that the money

20   belongs in the conservatorship estate.

21        Secondly, there is also -- counsel is ignoring the

22   arbitration.

23        THE COURT:  The FINRA ruling.

24        MR. GRAYSON:  The FINRA ruling.  So there is more

25   to it than that.

1    THE COURT:  I'm sorry.  Is that cash, though?  Does
2    the FINRA ruling cover a cash account?
3         MR. BERG:  The FINRA ruling covers all of the
4    accounts, whether it's cash or securities.  But in our view,
5    the FINRA award is very narrow.  It just prevents us from
6    allowing withdrawals for litigation expenses.
7         THE COURT:  So I suppose that --
8         MR. STASIEWICZ:  There is a portion of the FINRA
9    order, your Honor, that states that the order shall remain in
10   effect until final order of pending litigation in the
11   Colorado courts, or unless and until trustees of the IT and
12   trustees of the SNT in writing to JPMS mutually agree to
13   withdrawals from the SNT or IT.
14        So there is a provision within the FINRA award --
15        THE COURT:  I guess what I'm trying to understand,
16   Mr. Stasiewicz, in terms of your argument, is why Mr. Black
17   should have to agree to that when this proceeding is going
18   on.  You're saying he could avoid the contempt by agreeing to
19   do these things.  Why should he have to?  Why should he be
20   required to do these things?
21        MR. STASIEWICZ:  I think we're going directly into
22   the purposes of what we're doing here.  The purpose of this
23   interpleader action is to protect Chase from multiple
24   liability --
25        THE COURT:  Mr. Berg --

1    (Indecipherable cross-talk.)

2         MR. HYDE:  Mr. Berg agrees.

3         MR. STASIEWICZ:  We get that, and I'm as

4    sympathetic as I've ever been to a financial institution

5    about it.  But the purpose of this proceeding is not to

6    protect Mr. Black, you know, but for this interpleader, you

7    know, he has the opportunity to -- and he has.  He has

8    appealed the ruling from the DPC that says he needs to turn

9    over these funds.  He's moved for a stay.  That stay was

10   denied.

11        So he's essentially using the opportunity of this

12   interpleader to come in and have another appeal after the

13   Colorado appeals court has already denied that stay.  You

14   know, without this interpleader, that, you know, proceeding

15   can go forward.  And he still has that right to go --

16        THE COURT:  I'm sorry.  Was the order denying the

17   stay an order denying the stay of the probate proceeding or a

18   stay specifically of the contempt order?  That was a little

19   unclear to me.

20        MR. GRAYSON:  A stay of the probate proceeding.

21   And it still doesn't -- that still doesn't address, with all

22   due respect to Mr. Stasiewicz's argument, it still doesn't

23   address Mr. Black's appeals in Colorado of the propriety of

24   the Colorado courts directing him to turn over the trust

25   funds, which he doesn't want to do, and which is an issue in

1    this case.  Who is entitled to the trust funds.

2           THE COURT:  To be clear, I don't view it as

3    appropriate to use the interpleader action as a way of

4    staying the probate proceedings more generally.  Clearly

5    there are lots of things at issue there that need to go

6    forward.

7           It seems to me it's actually a much more specific

8    issue of whether or not any party to this case, any claimant

9    to this pool of funds, can specifically ask for relief that

10   would require the turnover of funds.  As I understand it,

11   that's happened in the context of this contempt citation, but

12   the probate proceeding overall involves a whole bunch of

13   other stuff that it doesn't seem would be appropriate for me

14   to get involved in.

15          MR. STASIEWICZ:  I guess there's different options

16   -- there's purposes of contempt.  Right?  Some of it's to

17   enforce compliance, some of it's to punish noncompliance.  So

18   there is, to some extent, you know, if it's forcing

19   compliance then I understand, you know, your Honor's

20   position.  If it's, you know, punishing the failure to want

21   to comply, or taking any steps to try to comply, I'm not sure

22   that that's affecting, again, Chase's interest.  As Chase

23   says, they're not a party there.

24          I think the case I cite, Buckeye State, they take a

25   position there where they enjoin -- there is a -- litigation

1    that can go forward against not the interpleader claimant,

2    and there is -- you can get a judgment against other parties.

3    But you can't enforce that judgment against the interpleader

4    claim.

5            So I don't think anybody is trying to -- we're not

6    at the point where anybody is trying to enforce -- make Chase

7    do anything or subject them to any additional liability or

8    any court order that is going to -- that, you know, if Chase

9    was the subject of the contempt motion I would agree with

10   you.  That's what I'm saying.  But Bernard is not.

11           THE COURT:  So your point is he's being held in

12   contempt for not taking steps to turn over the assets.  The

13   steps he could take would be to agree with the other parties

14   that the assets were turned over, and that's why he should be

15   -- so my original question is why should he be required to

16   agree to turn over the assets.  I think if I'm hearing you

17   correctly your answer is because those are steps that would

18   satisfy the contempt order.

19           MR. STASIEWICZ:  What I really would -- what he's

20   required to do is whatever the Colorado court order says he

21   should do, which one of the things is to turn over those

22   funds.

23           The contempt motion that he's up on is why should

24   you not be held in contempt.  And he can go to the Colorado

25   court and say, listen, I have A, B, C, D, E reasons that I

1   can't do it if they ask why didn't you -- you know, maybe
2   he's got X and Y reasons.  I just don't think we should be
3   having the contempt hearing here now, and what he can and
4   can't do, or what could or could not be done.  There's
5   account books, and checkbooks, things like that that he was
6   ordered to turn over.  He hasn't done those things.
7           You know, we can get into all the details of that,
8   but it really seems like those are arguments that he should
9   be presenting to the Colorado court, but of course he thinks
10  he's not going to win there, so he's taking a shot here to
11  get it stopped first.
12          THE COURT:  Why isn't Joanne Black in violation of
13  my order for any of the claimants in this case not to take
14  any steps to seek turnover of these assets without filing a
15  motion here with notice so that could be resolved here?
16          MR. STASIEWICZ:  Again, I think that goes to who
17  the order is directed at.  This is about Bernard, not Chase.
18  If there was a turnover order to Chase, then I would agree
19  that --
20          THE COURT:  No.  My order that I entered here
21  covers all of the claimants.  It was entered without any
22  opposition or objection and indicates that none of the
23  claimants here are to try to effect a turnover of these
24  assets without first providing notice by means of motion,
25  written notice, or it says by means of motion in this case,

1   which she did not do.

2             MR. BERG:  The Court recalls that she's in default.

3             THE COURT:  She is in default.  However, she was

4   also served with the order.  Are you saying because she's in

5   default she's not covered by my order?

6             MR. BERG:  No, I'm not saying that.

7         (Laughter.)

8             MR. BERG:  I'm just saying there is no one here

9   to --

10            MR. GRAYSON:  And your Honor --

11            THE COURT:  But somebody, somebody could come

12  forward and say not -- that I want to increase the litigation

13  on this issue -- but somebody could be filing a motion for

14  her to find her in contempt of my order for trying to do this

15  without first coming here, and filing written notice, and

16  giving people an opportunity to be heard.

17            MR. GRAYSON:  Right.  And I want to make one point

18  because Mr. Stasiewicz, with all due respect, I think is

19  misrepresenting part of the purpose of an interpleader

20  action.  It's not solely to protect the holder of the

21  interpleader funds, it's to protect the funds themselves from

22  being turned over.

23            So when he says, well, we're not trying to do

24  anything to Chase:  No, but they're trying to take the funds,

25  which I have contested claims to them in this case, and allow

1   those funds to be turned over in Colorado, or force a party
2   to turn them over in Colorado.

3          And the cases that he cited, the courts talked
4   about an injunction affecting the funds.  It didn't affect
5   other litigation that didn't involve the funds, but it wasn't
6   just enjoining to protect the party holding the funds, it was
7   to protect the funds themselves.  And what they're trying to
8   do is make an end run here and have Bernard ordered or held
9   in contempt for not turning over the funds that are the
10  subject of this action.  And as your Honor noted, you entered
11  an order previously that said don't do this.

12         It's also interesting that Joanne Black is not
13  making these arguments.  This is counsel for Goodwin and Dain
14  making arguments about what Joanne Black should or shouldn't
15  be enjoined from doing.  He doesn't have standing to even
16  make any of these arguments objecting to the relief that both
17  my client and Chase are seeking.

18         THE COURT:  But isn't part of the problem here that
19  Joanne Black is acting independently even though she has a
20  conservator and -- does she have a conservator and a
21  guardian?

22         MR. STASIEWICZ:  No, just a conservator.  I don't
23  know if your Honor is familiar with in Colorado a
24  conservator, you know, has power over her properties.  Not
25  like a guardianship over the person of Joanne.

1    MR. BERG:  Judge, may I be heard for a second?

2    THE COURT:  Yes.

3    MR. BERG:  We have before the Court two motions for

4    preliminary injunction.  One is by Mr. Black, and one is by

5    Chase.  Separate motions.  I think all of the discussions so

6    far really has focused on the issues possibly relevant to

7    Mr. Black's motion.  But Chase's motion is very simple, and

8    that is if we meet the qualifications, the requirements under

9    Section 1335, we're supposed to be discharged.

10   THE COURT:  I'm smiling because I know that what

11   you really want is just the order saying that you can go home

12   and you don't have to come back for any more of these

13   hearings.

14   MR. BERG:  Right.  And the only thing that's

15   hanging up granting our motion is the fact that these funds,

16   before all this started, were invested in securities, which

17   cannot be deposited with the clerk of the court.

18   We were first dragged into litigation back in 2016.

19   And it continues.  We haven't asked for our legal fees up

20   till now, I can't say what might happen in the future, but

21   this has been expensive, it continues to be expensive, and as

22   my colleague said, the Court is supposed to be focused to

23   some extent with preserving the interpleader funds.  Those

24   funds are in mutual funds which hold equities.  And over the

25   last three years the point was made that they have

1   appreciated significantly.  But we all know the market

2   doesn't go up forever.

3         So we're asking the Court for authority to sell

4   those securities, reduce them to cash, and then that would

5   allow us to deposit the funds with the clerk and be

6   discharged like we're entitled to be discharged.

7         THE COURT:  And would your plan be to effect an

8   orderly sale rather than a fire sale in an effort to best

9   preserve the value, or are you planning the day I issue the

10   order they're just going to be sold?

11         MR. BERG:  Well, I think the answer is yes and yes.

12   We're planning to do an orderly sale, but because these are

13   highly liquid mutual funds, the sales would all take place at

14   the end of the trading day, which is what mutual funds do.

15         THE COURT:  So everything is highly liquid, there

16   is nothing that there is not an active market for.

17         MR. BERG:  There is an active market.

18         THE COURT:  There is.  There is nothing that there

19   is not one.  There is nothing that --

20         MR. HYDE:  No position to be unwound.

21         MR. BERG:  No.

22         THE COURT:  Nothing that's privately held.

23         MR. BERG:  There are, as I recall, some individual

24   securities.  But again, as I recall, they're blue chip,

25   big-name stocks.  It's all highly liquid.  So there really

1    isn't effectively a difference between an orderly liquidation
2    and a quick liquidation.

3         But I don't think the problem would be the way the
4    account is liquidated.  The argument was that they would
5    lose --

6         THE COURT:  And someone would have to pay taxes.

7         MR. GRAYSON:  That's really -- there would be a
8    significant capital gains tax as opposed to being able to
9    manage the funds as trustee in a way that minimized the tax
10   consequences to the beneficiaries of the -- if they're just
11   sold now as is, there will be a massive tax consequence as a
12   result of, as counsel said, they appreciated in value quite a
13   bit over the past few years, and there would have to be --
14   someone would have to pay the capital gains tax on that.

15        So we are totally on board with the concept of not
16   making Mr. Berg continue to appear in court, or file motions,
17   or whatever, we would just prefer to see the funds held in
18   their current form while the case proceeds rather than being
19   liquidated and deposited into the court.

20        MR. BERG:  Let me underscore one thing that was
21   just said.  Chase is not managing these funds.  So it's only
22   by sheer luck of inactivity that the market has gone up so
23   they increase in value.  The opposite could be true tomorrow.
24   They could decline in value, and nobody would be managing
25   these funds.

1    THE COURT:  Since Mr. Berg has re-focussed my

2  attention on his client's desire to be discharged, let me ask

3  a question about the briefing of that motion.

4    I'll let you make your point in a minute,

5  Mr. Stasiewicz.

6    The thing that jumped out at me in reviewing the

7  briefing on that issue is that the parties have arguments

8  about how everybody is concerned about the capital gains and

9  the tax consequences.  I didn't see much in the way of legal

10  authority suggesting that there is a statute, or regulation,

11  or some case law that says I shouldn't grant this request and

12  liquidate it and put the cash in the court's account.

13    MR. STASIEWICZ:  That was my point, your Honor.

14  After reading Chase's reply and the reference to not having

15  jurisdictional requirements to the interpleader statute, it

16  got me rethinking about stuff I should have been thinking

17  about before.

18    And I think there are some jurisdictional issues,

19  because apparently under the interpleader statute there is at

20  least one case that I found, which is out of the Western

21  District of Louisiana, 2010 WL 4068917, that you have to

22  deposit the money or property you have, whatever, and

23  essentially it's the same issue.  Can you sell it, you know,

24  there's going to be tax consequences, and just deposit the

25  cash.  The Court was reluctant to do that, said that's the

1    point of a surety bond.  You can have a bond instead of

2    depositing the actual physical whatever it is that is the

3    subject of the interpleader, not converting that to cash and

4    having a sale.

5              So I think there may have to be some additional

6    briefing on that, because as you say, we didn't really

7    address the jurisdictional aspect of that.

8              MR. BERG:  I think that was addressed, because we

9    originally paid the premium for a bond, as the Court will

10   recall, and then it came up for renewal after this case was

11   here for a year, and we filed a motion, which we think is in

12   the Court's discretion, to dispense with the bond, and there

13   was no objection to that.  So I think they've waived any

14   objection.

15             MR. GRAYSON:  Well, the objection, the reason we

16   waived the objection -- I don't regret doing that, waiving

17   the objection -- it was contingent on the order your Honor

18   was referring to earlier, which then prevented the parties

19   from doing anything with respect to the interpleader funds.

20   It was going to freeze them effectively at Chase pending the

21   outcome of the case, and then if anyone wanted to do anything

22   to affect the funds, which were now not secured by a bond,

23   they had to come to the Court and apply, which is what your

24   Honor was referring to earlier that Joanne did not do, she

25   just went ahead and filed a contempt proceeding in Colorado

1    to seemingly try to affect the funds.

2          And you're right, we could probably seek to hold

3    Joanne in contempt.  What we have been seeking instead, and I

4    think it's part of the relief Chase has been seeking, is to

5    just have a more clear order barring the parties from doing

6    anything to affect the interpleader funds while the case is

7    pending.  And at that point, yes, Mr. Stasiewicz is talking

8    about, oh, you're litigating who is right and who is wrong;

9    well, that's what's going to happen in the interpleader case,

10   is we are going to litigate who is ultimately entitled to

11   those funds or who might be entitled to a portion of those

12   fund.  And there are competing claims.  And that's why Chase

13   filed the interpleader action to begin with.

14          MR. BERG:  The problem is posting the bond doesn't

15   really achieve the results of the interpleader, because we

16   posted a bond for a year, and the parties continued to

17   litigate and continued to move close to that goal of getting

18   a turnover order until this Court intervened.  And as one of

19   the parties said in their briefs, the voluntary compliance

20   with your order has, you know, prevented anybody from making

21   any further demands on Chase.

22          But that's not the way the interpleader statute is

23   supposed to work.  The interpleader statute is supposed to

24   work that we get discharged.  And the only thing as a

25   mechanical operational obstacle to that is that we can't

1    deposit securities.  So in order to let the interpleader

2    statute work the way it's supposed to, we don't want to

3    depend on voluntary compliance with your court order,

4    including from Joanne, who isn't even here, we want to sell

5    those assets, deposit the assets with the clerk, and get out

6    of this.

7            And we think if you authorize us to do that, within

8    a short order we can do that, deposit the funds, all the

9    jurisdictional requirements not only will have been met, but

10   were admitted in the answers to the pleadings here, and we

11   believe we're entitled to discharge.

12           THE COURT:  Okay.  This Louisiana case, help me

13   understand why that supports your position, Mr. Stasiewicz.

14           MR. STASIEWICZ:  So I think in that case it was

15   clear that the bank wanted to sell and didn't want to post a

16   bond.  It ended up getting dismissed actually, because there

17   was a jurisdictional requirement.  So the judge actually

18   dismissed the whole interpleader, because he believed the

19   bank would not post the bond and wanted to sell and deposit

20   the cash.

21           THE COURT:  So you're saying that if the securities

22   were going to be sold and the cash deposited here, the only

23   way that could happen is if there were also a bond?

24           MR. STASIEWICZ:  No, no.  I think in this case, in

25   the Louisiana case, Merrill Lynch wanted to sell and the

1  court was saying I don't think I have the -- you know, I

2  don't think I can order, under the statute, that there is a

3  basis for you to sell that.  You're supposed to deposit with

4  the court what the funds are, not some, you know, you sell

5  them and transfer them and turn them into something else.

6  We're arguing about this money, whatever the tax consequences

7  are, whatever.  The funds as is are what needs to be

8  deposited with the Court.  And if it cannot be deposited with

9  the Court, then that's why the statute has --

10             THE COURT:  Provides for the surety bond.

11             MR. STASIEWICZ:  And these are jurisdictional

12  requirements, which are not waived.

13             THE COURT:  Does that then lead to the position

14  that I should dismiss the interpleader, is that what you're

15  saying?

16             MR. STASIEWICZ:  No.  In this case I think

17  basically he said normally they would give an opportunity to

18  cure, but the bank doesn't want to cure, so dismissed.  And I

19  don't think there is any reason you couldn't give Chase an

20  opportunity to post that bond again.

21             THE COURT:  So I understand, I know there hasn't

22  been briefing on it, but to the extent that you think that

23  that case from Louisiana, which of course doesn't have any

24  precedent for me here, to the extent you think that that's

25  persuasive, the reasoning of that court is persuasive, your

1    requested relief would be that I give Chase the option of

2    posting a bond, and if they say no, then the interpleader

3    should be dismissed.

4         MR. STASIEWICZ:  I think jurisdictionally that

5    might actually be the case.  There is also an Eighth Circuit

6    case I didn't pull because it was about stock certificates

7    specifically and it got into a decision on that, but that was

8    kind of a precursor in 1967.

9         THE COURT:  But given that --

10        MR. STASIEWICZ:  But I think as a jurisdictional

11   prerequisite to having an injunction, one of those things has

12   to happen.

13        THE COURT:  However, it would not be, I don't

14   think -- it would be an interesting academic question.  It

15   doesn't strike me as an issue of subject matter jurisdiction,

16   and given that it's not subject matter jurisdiction, the

17   parties could waive that jurisdictional requirement, and I

18   think what Mr. Berg's point is the parties did waive that

19   jurisdictional requirement by agreeing that Chase did not

20   have to continue to post a bond.

21        So why aren't we past that point?  So unless your

22   position is that this is somehow a matter of subject matter

23   jurisdiction, which parties can't waive, which strikes me

24   would not be the case here --

25        MR. STASIEWICZ:  In that case I think we're right

 1    where we are.  It doesn't necessarily mean that he has the

 2    right to sell.  I don't know that the waiver -- if indeed we

 3    have waived the right to demand the bond, whether that means

 4    he automatically gets to sell the securities and deposit the

 5    cash.

 6             THE COURT:  So your position is the interpleader

 7    mechanism does not provide for the sale of nonliquid assets

 8    in order to reduce them to a form that could be deposited

 9    with the court.

10             MR. STASIEWICZ:  Yeah.  Our position would be

11    option one, deposit the actual whatever it is with the court

12    and don't sell it; option B, surety bond; option C, the

13    parties have waived, you know, waived the requirement to do

14    that, but proceed the way we have been.

15             THE COURT:  Or option D, Chase dismisses their

16    interpleader action.  Which I take it they don't want to do,

17    because they're here.

18             MR. BERG:  Our response is that the cases say the

19    Court has the authority to protect the interpleader funds.

20    And we think that leaving the funds unmanaged in equitable

21    mutual funds, that value fluctuates, you know, poses market

22    risk to the funds, and the Court therefore has the authority

23    to order them changed into a form that wouldn't fluctuate in

24    value.  And that means cash, and we could deposit the cash,

25    want to deposit the cash with the clerk of the court.

1    THE COURT:  Do you have some authority to point to

2 other cases, for example, where the Court has directed the

3 liquidation of securities under an interpleader framework?

4    MR. BERG:  I have not researched that issue outside

5 this jurisdiction in other federal courts.

6    THE COURT:  And in this jurisdiction have you found

7 anything?

8    MR. BERG:  I haven't found anything.

9    THE COURT:  Okay.  One other sort of factual

10 question since, again, the other parties are very focused on

11 tax consequences here.

12    These assets are held as part of a trust.  Would it

13 not be the trust that would bear the tax liability here?  So

14 is the concern then that the tax liability is going to be

15 borne by the trust and that's going to reduce the value of

16 the holdings?

17    MR. GRAYSON:  Yes.  That reduces the value of the

18 holdings, which --

19    THE COURT:  But it's going to come out of the

20 trust.  It's not --

21    MR. GRAYSON:  It will come out of the trust, but

22 obviously there are beneficiaries of the trust who will have

23 less assets available to them.  The beneficiaries of the

24 trust are in one case Joanne, in another case Mr. Black and

25 his children.  And actually Mr. Black and his children

1  indirectly are beneficiaries of the trust for Joanne Black's
2  benefit.

3       MR. BERG:  The taxes are going to have to be paid
4  at some point, unless there is a market crash and it loses
5  all the value.  But the taxes are going to have to be paid.
6  And the Court is correct, it would come from the trust, and I
7  don't see any reason why the trust couldn't order, once the
8  proceeds are sitting with the clerk, that funds be released
9  to pay the taxes from the trust.  So I don't see that as an
10 obstacle.

11      There is one other complication that we allude to
12 in our pleadings, and that is there are obviously citation
13 liens from the State of Illinois.  And we have some concerns
14 that even if we were to have cash, we can't let the cash out
15 of the accounts without being in violation of the citation.

16      Our suggestion is that that, though, that the
17 parties who control those liens are before this Court, and
18 this Court could direct those parties to go to the Illinois
19 court and withdraw those liens.  But that would have to be
20 cleaned up.

21      THE COURT:  And would that be sort of voluntary --
22 would there be an objection to doing that?

23      MR. HYDE:  I don't know whether -- this is the
24 first time that issue has been raised to me.

25      THE COURT:  I'm not sure what you mean, Mr. Berg,

1    when you say clean up the liens.

2         MR. BERG:  Well, Ms. Dal and Ms. Litvak have

3    judgment liens, and they served a citation on Chase.  Also

4    the Dain Goodwin faction filed an action in Illinois, and

5    they have a citation lien that they served on Chase.

6         So those citations have frozen the funds

7    independently of Colorado, independently of the interpleader

8    and everything like that.  And we don't want to risk being in

9    violation of those liens by turning the funds over to the

10   federal court clerk.  But to resolve that issue, this Court

11   could direct Ms. Dal, Ms. Litvak, and the Dain Goodwin group

12   to just vacate those liens since they're really unnecessary

13   if the funds are going to be protected here by the clerk of

14   the court.

15        THE COURT:  I see head shakes, so let me start with

16   Mr. Hyde.

17        MR. HYDE:  I guess that I'm highly uncomfortable at

18   first impression with that arrangement.  So just taking Olga

19   Dal, she has a judgment that was confirmed by this state

20   court.  I've got citations that were served with perfected

21   judgment liens on these funds.  The amount of that judgment

22   is, I will readily admit, less than the total amount of

23   funds, is for roughly $400,000.  But that's my, you know,

24   that's my client's judgment.  And the priority of that

25   judgment within this conflict is part of this dispute.

1       And my clients are also subject to, you know, to

2   your Honor's order that if I wanted to try to go pursue a

3   motion for turnover, which under Illinois law I'm entitled to

4   do right now, as to Chase and the amount of the funds,

5   provided that I comply with your Honor's order to apply first

6   and get a blessing, or however that works, to then engage in

7   the state court process under the turnover statute to satisfy

8   the judgment.

9       My comment that your Honor raised earlier was going

10  to be I don't understand why Dain Goodwin and that camp

11  aren't subject to the same procedure here, that -- Dain and

12  Goodwin domesticated a judgment here in Illinois, and they've

13  got a citation lien that applies to that judgment that they

14  domesticated.  What they're also trying to do in Colorado is

15  to satisfy that judgment essentially through the citation

16  proceeding in front of the probate court.

17      MR. STASIEWICZ:  There is one I think big issue

18  with the difference, the judgment against Bernard that we

19  domesticated is personally against Bernard.

20      MR. GRAYSON:  It is different.  There are different

21  funds.  But the whole issue of the citations, and the

22  turnover, and all of the other orders, the whole point I

23  think that Chase filed the interpleader action is we're

24  getting orders from Colorado, we're getting orders from

25  Illinois, there is also a pending litigation, we don't know

1    what that might result in, in New York.  So the point is is

2    the interpleader funds, Chase filed an injunction and said

3    under 2361 please enter an order that enjoins the parties

4    from trying to get turnover of these funds until this Court

5    decides the priority issues of who is entitled to the funds

6    in the trust.

7              THE COURT:  It seems to me that the citation issue

8    is perhaps as clean as it needs to be in the sense that if I

9    were to grant the injunction that Bernard Black is asking

10   for, it would prevent any of the claimants from trying to get

11   at that money.

12             MR. GRAYSON:  Correct.

13             THE COURT:  And that would apply to the citation.

14             MR. HYDE:  It would apply to me and it would apply

15   to them.

16             THE COURT:  It would apply to everybody.

17             MR. BERG:  That would be true of the injunction

18   Chase asked for also.

19             MR. STASIEWICZ:  Well, I mean, so there is the very

20   broad injunction I guess that Chase wants, and then there is

21   the very narrow one that Bernard is asking for.  And I think

22   this really gets to one of the big problems is where, if an

23   injunction is granted, where are the --

24             THE COURT:  Why wouldn't the appropriate scope of

25   the injunction be an injunction that prevents claimants

1    specifically from instituting proceedings to affect -- I

2    mean, it's almost like the order I already entered, only it's

3    an injunction that says you just can't do it as opposed to

4    you can't do it without first applying to the court.  And

5    wouldn't that be both inconsistent with the interpleader

6    statute and the federal anti-injunction act, which does

7    permit me to issue injunctions that are necessary to aid in

8    this Court's jurisdiction, and if you put those two things

9    together, the interpleader statute and the anti-injunction

10   act, it would seem that the requested injunction that's

11   specifically focused on turnover-type proceedings would be

12   appropriate here.

13            MR. STASIEWICZ:  Again, so when you say

14   turnover-type proceedings, I think from what your Honor --

15            THE COURT:  It would -- excuse me.  It would

16   include the contempt proceeding, because it does appear that

17   the point of the contempt proceeding is to get at the assets.

18   Now, there are different types of contempt proceedings, as

19   you have pointed out; however, if the relief sought or

20   ordered in the contempt proceeding were Bernard Black is

21   fined because he just ignored our order, he should have done

22   something when he got the order and he didn't do it, and so

23   the Court could fine him a hundred thousand dollars.  That

24   would be personal to him, and he would have to pay it because

25   he didn't respond appropriately.  That wouldn't necessarily

1    be directed at these assets.

2              I think the concern here is it seems that the focus

3    of this contempt proceeding is specifically to get the

4    assets, and not to punish Mr. Black for noncompliance with

5    the Court's order.

6              MR. STASIEWICZ:  I think those are listed, it's

7    both remedial and punitive on the face of the contempt

8    motion.  If that fine had already been levied against

9    Mr. Black for punitive, I don't think this Court could go in

10   and undo that.  And I think all these arguments are arguments

11   that Mr. Black has and can raise with the Denver probate

12   court, and if they rule against him with the Denver appellate

13   court, or Colorado appellate court, there is -- you know, the

14   point is if there are state proceedings that can resolve

15   parts of these claims, that those should go forward.

16             THE COURT:  But at the end of the day what you want

17   also, if I'm understanding, you also want Mr. Black to

18   relinquish his right to the portion of the assets that are

19   the subject of the contempt proceeding.

20             MR. STASIEWICZ:  Yeah.  In their motion they say

21   that Dain and Goodwin support the contempt, and yeah, we

22   haven't joined it specifically, but we support it, yes.

23             THE COURT:  You support it because you want -- just

24   to be clear, your client's position is the relief you want is

25   to be able to get those assets.  So if the contempt

1    proceeding resulted in Mr. Black being find a hundred

2    thousand dollars because he didn't respond appropriately, but

3    the assets stayed where they are, that's not a desirable

4    result for your client.

5         MR. STASIEWICZ:  I don't know that it -- how much

6    it advances their interest, but it's just that's the

7    proceeding that's going on in front of the -- you know, let's

8    say everybody is enjoined here and the Denver probate court

9    still on its own authority says I'm still sanctioning you.

10        MR. GRAYSON:  Part of the problem here is if Joanne

11   Black had an articulated reason, other than wanting these

12   funds turned over, that she's pursuing contempt against

13   Bernard in Colorado, she ought to come into this case and

14   make that argument instead of having Dain and Goodwin come in

15   and carry her water for her in making the argument.

16        The contempt proceeding clearly is to put Mr. Black

17   under jeopardy of, including being imprisoned, fined,

18   whatever, for not turning over the assets that are the

19   subject of this proceeding.

20        THE COURT:  Okay.  So one more question for

21   Mr. Grayson, which -- and again, I feel like I'm going in

22   circles, because I'm going back to an original question that

23   I still don't feel like I have a complete answer to yet,

24   which is why hasn't your client raised the interpleader and

25   the court's existing order as a defense here?  So when it

1    went up on appeal, did somebody say, by the way, there is an

2    interpleader action, and Mr. Black is subject to restrictions

3    set by the District Court in Chicago?

4             MR. GRAYSON:  The appeal really is whether he

5    should have been ordered to turn over the funds in the first

6    place, not whether he violated the order to turn over the

7    funds.  What he's really appealed is the decision that the

8    court made to require the turnover of the trust funds.  He

9    will argue if necessary that he can't turn over the funds,

10   and he shouldn't be held in contempt for doing something that

11   he can't do.  He has made that argument to counsel and the

12   court -- sorry.

13            The proceeding is up for the first time on October

14   3rd.  I'm certain that his Colorado counsel, if Ms. Black is

15   not enjoined from proceeding to try to hold him in contempt

16   for not turning over the funds, I'm sure they'll make the

17   argument that he can't turn over the funds because of these

18   four or five different reasons.

19            THE COURT:  But the probate judge has not heard

20   those reasons yet.

21            MR. GRAYSON:  Has not heard those reasons yet

22   because the contempt proceeding is up for the first time on

23   October 3rd.

24            THE COURT:  There has sort of been a suggestion I

25   think from the papers that the probate judge is going to do

1    what the probate judge is going to do because the probate
2    judge has already decided that Mr. Black is in the wrong here
3    and is taking advantage of things; that strikes me as very
4    presumptuous given that the probate judge doesn't know about
5    all of these other reasons why the funds can't be released.

6            It also strikes me that the probate judge still
7    might be unhappy with Mr. Black for not complying with the
8    original order and not bringing the issue to his or her
9    attention and might still impose a contempt sanction that's
10   completely unrelated to these funds, which would be an option
11   as well.

12           MR. GRAYSON:  So again, we're not seeking -- we
13   can't, nor are we seeking, we understand, to enjoin the
14   probate proceedings altogether or to enjoin the probate judge
15   from doing whatever the probate judge feels is appropriate
16   she can do.  What we're seeking to do is enjoin, which is in
17   the interpleader statute 2361, which is enjoin the parties
18   from seeking to do things that effectively amount to trying
19   to affect the interpleader funds.

20           THE COURT:  Mr. Berg?

21           MR. BERG:  Judge, if I may step back and make one
22   observation.  One of the problems that the Denver court, the
23   Skokie court, the Daley Center court are having dealing with
24   this is that not all the parties are before them in any one
25   action.  And this Court has the advantage of being at the top

1    of the mountain.  You have before you, because of the

2    nationwide service process and the reach of the statutory

3    interpleader, all of the claimants to these funds.

4          In Colorado Mr. Black, one of the issues he

5    continues to contest is they have jurisdiction over him as a

6    person but not as a trustee, and some of the parties are

7    before the Skokie court, others of the parties are before the

8    Daley Center court.  Everybody is here.  That's why Chase is

9    asking this Court to take control of the situation and enter

10   the appropriate orders, and I'm sure you will.

11         THE COURT:  Okay.  Mr. Berg, at this point, from

12   your client's perspective, if I were now, or let's say prior

13   to October 3rd, going to enter an injunction that would

14   prevent any of the claimants from instituting or pursuing

15   legal proceedings to affect the funds, and it would

16   specifically -- it would be an injunction towards the

17   claimants, it would refer to turnover-type proceedings, et

18   cetera.  Would you view that as a preliminary injunction, or

19   is that a permanent injunction at this stage?

20         MR. BERG:  We think it would be a permanent

21   injunction, but without discharging us, I don't think my

22   client would think I've done my job.

23         THE COURT:  So until your client gets discharged it

24   wouldn't really be a permanent injunction.  The ultimate

25   relief your client is seeking is a permanent injunction and

1    discharge.

2           MR. BERG:  Right.  And let me just say, discharge

3    is different than dismissal.  We don't want to just be

4    dismissed from this action.  We want to be discharged from

5    liability related to these funds.

6           THE COURT:  I understand.  And so what I'm thinking

7    through in my mind is it seems to me like it may be

8    appropriate to enter injunctive relief that's narrowly

9    targeted to address the issue of actions taken to impact the

10    funds and the integrity of the assets, really, since they're

11    not liquidated funds.  However, the larger issue of whether

12    it's appropriate to direct Chase or allow Chase to liquidate

13    them, I'm not sure I'm in a position to resolve that yet.

14           And so I think where that would leave things is the

15    middle ground of a preliminary injunction with respect to

16    actions to effect a de facto turnover of assets in the

17    short-term without a discharge, and then once resolution on

18    depositing the funds is made, that is when it would be ripe

19    for a permanent injunction.

20           MR. GRAYSON:  And we could further brief the issue.

21    As your Honor noted, we didn't cite any cases, we just ask as

22    a matter of equity to not let them liquidate.  I don't know

23    what authority there is around the country.

24           THE COURT:  The market crashes tomorrow, and the

25    value of the stocks goes down, and you're still fighting over

1   this a year from now, so it has plenty of time to fall

2   precipitously.  I don't know what's held there.

3            MR. GRAYSON:  I think if we got the preliminary

4   injunction under 2361, and then if the parties want to brief

5   the issue, and Chase wants to brief the issue of whether it

6   should be allowed to sell the securities and deposit them in

7   the court, I think the parties could file supplemental briefs

8   on that issue, and then maybe that issue does get resolved

9   one way or the other after that briefing.

10           THE COURT:  Mr. Black, are you at all -- you're not

11  Mr. Black.  You're Mr. Grayson on behalf of Mr. Black.

12           MR. GRAYSON:  Thank you.

13           THE COURT:  Mr. Grayson, are you at all concerned

14  that when your client goes into that contempt proceeding on

15  October 3rd and says we just got this preliminary injunction

16  from the District Court in Chicago, that the probate judge is

17  going to say, you got this order to try to avoid this

18  contempt proceeding, and there will be negative

19  repercussions.

20           MR. GRAYSON:  Yes.  Quite honestly we are.  I think

21  my client is very nervous based on some of the jurisdictional

22  and other rulings that have been made in Colorado, which are

23  up on appeal, about what the judge might order, which is why

24  we would like the preliminary injunction to include enjoining

25  specifically Joanne from proceeding with this.  Because the

1   end game of what Joanne is effectively trying to do, we

2   believe, from this contempt, is to put pressure on Mr. Black

3   to somehow, I don't know how he would do it, turn over some

4   or all of these funds.

5          MR. STASIEWICZ:  I think if your Honor was granting

6   Chase's motion for preliminary injunction, and not Bernard's,

7   it would be clear from the face of the order that it was not

8   Bernard going into court getting that, to deal with

9   Mr. Grayson's concern.  The point is this is Chase's motion.

10         THE COURT:  I think there would need to be some

11  explanation.

12         Look.  It appears to me that the interested parties

13  on behalf of Joanne Black, including her conservator, and on

14  behalf of Bernard Black, his counsel, everybody is trying to

15  stake as strong a claim to these assets as possible, and so

16  everybody is really trying to get at the assets at the end of

17  the day, just in different ways.

18         It does seem to me, though, that under the current

19  order I could be entertaining a motion for contempt as to

20  Joanne Black.  If there is an injunction that's entered,

21  unless and until somebody says she's in violation of your

22  injunction, hold her in contempt, she may very well continue

23  to do whatever she's doing in front of the probate court.  So

24  it may be that the way to enforce things is to nonetheless

25  bring her in here.

1      Okay.  I'm going to take this under advisement.  I
2  appreciate that there is a hearing on the 3rd that has some
3  significance, but I want to give some thought to the
4  appropriate language here.  I'm not, as I said, in a position
5  I think at this point to rule on the issue of whether Chase
6  should be permitted to liquidate the assets over the
7  objections of the other claimants in order to comply with
8  that portion of the interpleader statute.  I suppose I'll
9  entertain additional briefing on that specific issue and on
10  the jurisdictional issue as it's been presented if the
11  parties want to weigh in, though I'd like to keep it focused.
12      So I'm going to direct two things today, because
13  we've now used up the time that I have allotted for this
14  hearing.  One, for the motions that are on file, do I have a
15  proposed preliminary or permanent injunction order in my
16  proposed order email box?
17          MR. GRAYSON:  We sent a proposed order.
18          MR. BERG:  We also did.
19          THE COURT:  I will take a look at those orders,
20  because I think the relief that I ultimately order is not
21  going to be on all fours with what either of the moving
22  parties requested, so I'll start there, and if I need another
23  submission I'll ask for it.  So I'm going to take that under
24  advisement.
25          With respect to the portion of Chase's motion that

1    asks for basically the ability to sell, an order that would

2    permit them to sell the assets, deposit with the Court, and

3    be discharged, I will ask the parties to submit position

4    papers, if you will, on the issues that we discussed here in

5    terms of what authority there is for me to enter such an

6    order, and what, if any, jurisdictional issues are presented,

7    including whether the parties have waived any jurisdictional

8    objection by agreeing to Chase not posting a surety bond.

9              How much time do you need to file something on

10   that?

11             MR. GRAYSON:  Two weeks, or three weeks.

12             THE COURT:  Today is the 27th.  Two weeks is

13   October 11th.  If you like, I'll give you until October 15th.

14             MR. GRAYSON:  That's fine.

15             MR. HYDE:  Thank you, Judge.

16             MR. BERG:  Thank you, Judge.

17             THE COURT:  October 15th for, again, I'm calling

18   them position papers, because I'm not at this point really

19   looking for arguments and responses to arguments.

20             MR. BERG:  Simultaneous submissions?

21             THE COURT:  Let's do a simultaneous submission.  I

22   think the parties know what the issues are.  They certainly

23   know what Chase's position is.  Chase wants to do it,

24   everybody else to varying degrees seems to oppose it, so I

25   think I just need to get some clarity on the authority for

1   it.

2         That's going to be October 15th.  I'll set a status

3   date in November to address that issue and to see where we

4   are overall at that point.

5         Enjoli, can we get a mid November status?

6         THE CLERK:  November 19th.

7         MR. GRAYSON:  That's fine.

8         THE COURT:  Do I have a trial going on then?

9         THE CLERK:  Well, Protho will be over, supposedly.

10  It's supposed to be two weeks.  Varma and Chatterjee is not

11  supposed to go.

12        THE COURT:  Excellent.  Can we set this then at

13  like 10:00 o'clock or 11:00 o'clock?  Put it at a separate

14  time.

15        THE CLERK:  What time you want to do it?

16        THE COURT:  Let's say 10:30.

17        MR. GRAYSON:  That's fine.

18        THE COURT:  November 19th.  Okay.  And the

19  preliminary injunction issue is taken under advisement.

20        MR. BERG:  I should mention to the Court we have a

21  motion to default, attempt to enter default judgment on

22  October 8th.

23        THE COURT:  That is noticed for October 8th.  So

24  given that that's a default motion, I'm not going to take it

25  up here just in case Ms. Black sends somebody to defend

1    against it because she sees that it's noticed for the 8th.

2             Did you provide her or her counsel with a courtesy

3    copy?

4             MR. BERG:  We provided counsel in Colorado with a

5    courtesy copy.  We are trying to serve her through certified

6    mail with the motion.

7             THE COURT:  I'm not going to address that here, I'm

8    going to leave it for the 8th, because she may decide to come

9    in at the hearing to oppose it.  And if not, then I'll

10   address that.

11            MR. BERG:  Thank you, Judge.

12            THE COURT:  So I guess that means I'll see the

13   parties before November in any case.

14            MR. STASIEWICZ:  Thank you, your Honor.

15            MR. GRAYSON:  Thank you, your Honor.

16            THE COURT:  Thank you.

17        (End of proceedings.)

18                    C E R T I F I C A T E

19

20        I certify that the foregoing is a correct transcript

21   from the record of proceedings in the above-entitled case on

22   September 27, 2019.

23

24   /s/Colette M. Kuemmeth
         Court Reporter

25

# Exhibit F

| | |
|---|---|
| DENVER PROBATE COURT<br>CITY AND COUNTY OF DENVER<br>STATE OF COLORADO<br>1437 Bannock Street, Room 230<br>Denver, Colorado 80202 | |
| **In the Interest of:**<br><br>**JOANNE BLACK,**<br><br>**Protected Person** | ^ COURT USE ONLY ^<br><br>Case No.: 2012 PR 1772 |
| Jane G. Ebisch<br>The Ebisch Law Firm<br>12600 W. Colfax Ave., Suite C-400<br>Lakewood, CO 80215<br>Phone (303) 233-1232 Fax (303) 672-9998<br>Atty. #15029      Email jebisch@ebischlaw.com | |
| **RESPONDENT BLACK'S MOTION TO DISMISS MOTION FOR CONTEMPT AND TO QUASH JULY 23, 2019 ORDER TO ISSUE CITATION AND CITATION TO SHOW CAUSE** | |

Respondent Bernard Black, in his capacity as former Conservator for Joanne Black (in that capacity, "Conservator Black"), as a co-trustee of the Supplemental Needs Trust ("SNT") for the Benefit of Joanne Black (in that capacity, "SNT Trustee Black") and as co-trustee of the Irrevocable Trust for the Benefit of the Issue of Renata Black (in that capacity, "Issue Trustee Black"), by and through his counsel, Jane G. Ebisch of The Ebisch Law Firm, submits the following Motion to Dismiss the Order to Issue Citation and Citation to Show Cause ("Citation"), issued on July 23, 2019. SNT Trustee Black maintains his prior objection to this court's jurisdiction over him as SNT Trustee and over the SNT. Issue Trust Trustee Black has not previously appeared in this matter, and appears solely to object to this court's jurisdiction over himself as Issue Trust trustee and over the Issue Trust.

As grounds therefor, Conservator Black states the following:

## I.    INTRODUCTION

On March 5, 2013, the probate court authorized Conservator Black to disclaim POD designations at Vanguard on Petitioner's Joanne Black's behalf.   Two years later, Joanne Black challenged the disclaimer, and the probate court concluded in its Hearing Order dated September 28, 2015 ("2015 Order") that Conservator Black provided inadequate notice to the court that the disclaimer would result in the disclaimed funds being included in the Estate of Renata Black, and that under her will, 2/3rds of the Estate would go to a Supplemental Needs Trust ("SNT") for the benefit of Joanne Black, and 1/3rd would go to a trust set up to benefit Renata Black's issue ("the Issue Trust). Rather than unwinding the disclaimer, however, the probate court held that "the appropriate remedy [was] surcharge."

The probate court surcharged Conservator Black in the amount of $1.5 million, the value of the allegedly improperly diverted assets, including a Roth IRA. Then, under the civil theft statute, it trebled the damages and entered judgment in the amount of $4.5 million against Bernard Black personally.

None of the proceedings before the probate court leading up to the 2015 Order concerned the SNT.  Neither the SNT nor SNT Trustee Black was a party to those proceedings.  The first action by the probate court directly implicating the SNT took place following a motion by SNT co-trustee Anthony Dain made in February 2016.  SNT Trustee Black objected based on lack of jurisdiction, appealed that decision on those grounds, among others, and the Colorado Court of Appeals issued a limited mandate to the probate court to address the issue of jurisdiction, which it had not previously done. The probate court did so in its Order: Re. Colorado Court of Appeals on April 27, 2018

2

("April 2018 Order"). The SNT trustees have appealed that decision, on jurisdiction and other grounds. That appeal is now pending in the Colorado Court of Appeals.

None of the proceedings before the probate court, including the remand leading to the April 2018 Order, concerned the Issue Trust or its trustees. There is not, and has never been, any motion before this court to which the Issue Trust and its trustees was a party, was sought be named as a party, or received notice.[1]

None of the proceedings before the probate court has concerned Samuel Black, in his capacity as SNT trustee, or Samuel Black, in his capacity as Issue Trust trustee. There is not, and has never been, any motion before this court to which the Issue Trust and its trustees was a party, was sought to be named as a party, or received notice.

The motion for contempt should be dismissed for multiple reasons.

First, the April 2018 Order went beyond the Court of Appeals' mandate in a number of respects, as discussed below, and therefore exceeded this court's jurisdiction. Petitioner's motion for contempt should be dismissed, at the least until the Court of Appeals has ruled on the pending appeals.

Second, the SNT and Issue Trust are the subject of an interpleader action in Illinois federal court, filed by JPMorgan Chase Bank and its securities affiliate, J.P. Morgan Securities (together, "Chase").[2] In this "Interpleader Action," the court has directed that no action can be taken to move the SNT and Issue Trust assets from Chase without a prior motion being made to and approved by the federal court hearing this

---

[1] Bernard Black, in his capacity as former Conservator, is considered a separate legal person from Bernard Black in his capacity as SNT Trustee, and from Bernard Black, in his capacity as Issue Trust trustee.

[2] *JPMorgan Chase Bank and J.P. Morgan Securities v. Bernard Black, Samuel Black, Anthony Dain, Katherine Litvak, Olga Dal, Jeanette Goodwin, and Joanne Black*, No. 18-cv-03347 (N.D. Ill.)

3

action. Neither Joanne Black, Anthony Dain, nor Jeanette Goodwin has brought such a

motion, likely because they recognize that doing so would be futile at this point in the

interpleader proceedings. The Interpleader Action is the proper forum in which to

resolve the multiple, conflicting claims, in multiple jurisdictions, to the SNT and Issue

Trust assets. The contempt motion should be dismissed both as a matter of comity with

the interpleader court, and because it violates that interpleader court's explicit orders, as

set forth more fully below.

Third, the April 2018 Order, to the extent it addressed the Issue Trust and its

trustees, was made without regard to nonparties to the entire proceedings before the

probate court, would improperly impact  a trust and trustees as to which this court lacks

jurisdiction, was made without any motion being filed that would have sought to include

the Issue Trust or its trustees as parties, without notice to the Issue Trust trustees or

beneficiaries, and without any determination of the basis for this court to exercise

personal jurisdiction over the Issue Trust trustees. The contempt motion improperly

implicates the same nonparties.

Fourth, the January and April 2018 orders, to the extent they addressed Samuel

Black in his capacity as SNT trustee and in his capacity as Issue Trust trustee, were

directed to a person over which this court lacks jurisdiction, were made without any

motion being filed that sought to include Samuel Black, in either of these capacities, as a

party, and were made without notice to Samuel Black.[3] Any action which would effect

assets in the Issue Trust, including that directed by the April 2018 Order, requires joint

---

[3] Samuel Black has appealed the January 2018 order, and Joanne Black's appellate counsel has declined to
defend the propriety of this court's order directed at him. *See* Reply Brief, in Nos. 2016CA2157,
2017CA2242, 2018346, and 2018CA1094 (May 16, 2019). at 49 (heading: "The Probate Court Didn't
Attempt to Exercise Personal Jurisdiction Over Samuel in its Order on Remand.")

action by both trustees.  It is improper to enter a contempt order against Conservator

Black for failing to obey an Order involving funds over which he does not have sole

control.

II.    **LEGAL ARGUMENT**

A. **CONSERVATOR BLACK CANNOT BE HELD IN CONTEMPT FOR VIOLATION OF A VOID ORDER.**

1. **The Trial Court Was Without Jurisdiction to Enter the April 2018 Order Because the Portion of The April 2018 Order Reversing the Disclaimer Exceeded the Relevant Mandate from The Court of Appeals.**

The basis for the contempt motion is the portion of the April 2018 Order that *sua*

*sponte* invoked C.R.C.P. 60 and reversed this court's prior decision in 2015 not to

unwind the disclaimer.  That order, tellingly, is titled "RE:  COA Remand."  Its only

proper subject was a decision on the specific issued contained in the remand.

Conservator Black appealed the 2015 Order and Joanne Black cross-appealed the

probate court's denial of her request that the disclaimer be unwound.  The Colorado

Court of Appeals affirmed the 2015 Order, *Black v. Black*, 422 P.3d 592 (Colo.App.

2018) ("Damages Decision").  In its decision, the Court of Appeals specifically denied

Joanne Black's request to unwind the disclaimer.  *Black v. Black, supra* at 612.  In doing

so, the Court of Appeals determined that the probate court's "decision to [elect a remedy

and] impose a surcharge rather than to order that the disclaimer transaction be unwound"

was a proper exercise of the probate court's discretion.

Conservator Black continued his appeal of the Damages Decision.  He filed a

petition for writ of *certiorari* with the Colorado Supreme Court.  The filing of this

petition continued the jurisdiction of the matter in the appellate courts.  Jurisdiction

5

remained in the appellate courts while this petition was pending. The Colorado Supreme Court considered the matter until it issued a decision on May 20, 2019 denying Respondent Black's petition for writ of *certiorari*.

The timeline establishes that all matters relating to the appeal of the 2015 Order, including unwinding of the disclaimer, were pending on appeal when the probate court issued its April 2018 Order. The probate court therefore had no jurisdiction to modify the 2015 Order. "Courts universally recognize the general principle that once an appeal is perfected, jurisdiction over the case is transferred from the trial court to the appellate court for all essential purposes with regard to the substantive issues that are the subject of the appeal." *Molitor v. Anderson*, 795 P.2d 266, 268 (Colo. 1990).

This transfer of authority is "essential to the efficient administration of appellate processes and is an important adjunct to the concept of the finality of judgments." *Id.* Thus, a trial court lacks jurisdiction to consider a Rule 60(b) motion, absent a timely order from the Court of Appeals remanding the case "for that purpose." *Id.* at 269-70; *see also State for Use of Dep't of Corr. v. Pena*, 837 P.2d 214, 215 (Colo. App. 1992) (no jurisdiction to hear Rule 60(b)(5) motion because "no remand was issued"). "Such policy emphasizes the central responsibility of appellate courts to control the course of an appeal." *Molitor*, 795 P.2d at 269.

In April, 2018, the probate court had before it only a "limited remand" by Bernard Black, in his capacity as SNT trustee, concerning SNT jurisdiction, in a *separate* unpublished case concerning this court's orders concerning the SNT, *Black v. Black*, (Colo. App. Case No. 2016CA625, January 25, 2018) ("SNT Decision"). That limited remand conferred no jurisdiction on the probate court to revisit the disclaimer, which was

6

the subject of the separate appeal by Bernard Black, in his personal capacity, of the damages award and Joanne Black's cross-appeal of this court's determination not to reverse the disclaimer, in the Damages Decision. The remand was solely in Case No. 2016CA625, and addressed only this court's jurisdiction over the SNT and its trustees. This remand was made only in the SNT Decision and had nothing to do with the Damages Decision or the disclaimer. The probate court did not have discretion to go beyond the plain language of the mandate in the SNT Decision. *See People v. Wise*, 348 P.3d 482, 487 (Colo. App. 2014) (*citing Briggs v. Penn. R. Co.*, 334 U.S. 304, 306 (1948) (A lower court "has no power or authority to deviate from the mandate of an appellate court").

### 2. A Party Cannot Be Held in Contempt of Disobeying A Void Order.

Because the 2015 Order remained on appeal as of April 2018, the probate court lacked jurisdiction on April 27, 2018 to enter Rule 60 relief. The Colorado courts have consistently held that a party who ignores or refuses to follow the directions of a void order or decree cannot be found guilty of contempt. "One cannot be convicted of contempt for respectfully declining to comply with an order which is beyond the court's authority." *See Thrap v. People*, 192 Colo. 341, 558 P.2d 576, 578-79 (1977), *citing Arkansas Valley Sugar Beet & Irrigated Land Co. v. Lubers*, 72 Colo. 513, 212 P. 848 (1923)(a party who ignores or refuses to follow the directions of a void decree is not guilty of contempt). *Also see Newman v. Bullock*, 23 Colo. 217, 47 P. 379 (Colo. 1896)(a refusal to obey a void writ does not constitute a contempt of court); *White v. Adamek*, 907 P.2d 735, 737 (Colo. App. 1995)(an order that exceeds the trial court's jurisdiction is void and cannot support a finding of contempt).

7

Though the Colorado appellate courts have not directly addressed the question in this procedural posture, at least two other state courts have held, given these circumstances, that a party is not guilty of contempt of court for disobeying an order made by a lower court after it had lost jurisdiction by appeal to a higher court. In *Arnal v. Fraser*, 371 S.C. 512, 522 (2007), the South Carolina Supreme Court held that an initial order in a divorce case which required Father to videotape the giving of medicine was void for lack of jurisdiction because the order modified the terms of Father's visitation, an issue which was being appealed. The Father could not be held in contempt for violating an order which was void *ab initio* for a lack of jurisdiction. Similarly, in an original proceeding, *State Ex Rel. O'Grady*, 61 Mont. 346, 202 P. 575, 576 (1921), the Montana Supreme Court ruled that an order of contempt against members of a board of county commissioners was annulled because the trial court lost jurisdiction after an appeal was perfected by the affected parties. The court held that the order of the trial court amending its original order, which original order was on appeal, was void since jurisdiction had been transferred to the appellate court. The parties ". . . could not be held in contempt for violation of or interference with that order . . .," since the court had no authority of law to issue the order. *O'Grady, supra* at 577.

The probate court's April 2018 Order was issued when it was without jurisdiction to reconsider the 2015 Order, while Respondent Black's appeal was pending. A challenge to the trial court's subject matter jurisdiction cannot be waived. A party may raise the issue at any stage of the proceedings. *Town of Carbondale v. GSS Properties, LLC*, 169 P.3d 675, 681 (Colo. 2007), *citing Triebelhorn v. Turzanski*, 149 Colo. 558,

8

561, 370 P.2d 757, 759 (1962) ("[T]he defense of lack of jurisdiction over the subject

matter can be raised at any time, even for the first time in this court.").

## B. THE CONTEMPT MOTION IMPROPERLY ATTEMPTS TO INTERFERE WITH THE JURISDICTION OF THE ILLINOIS COURT OVER FUNDS IN THAT COURT'S CUSTODY AND CONTROL.

A contempt motion is both improper at this time, and unnecessary to protect the

assets at issue. The assets in the SNT and the Issue Trust are subject to the Interpleader

Action, and are protected by court orders in that action. The conflict between the

Citation and the interpleader court's orders was addressed in a hearing in the Interpleader

Action held on September 27, 2019. The interpleader court expressed the view that once

this court was informed about the Interpleader Action (as this motion does), this court

would realize that there is no basis for the contempt motion (even apart from the

jurisdictional concerns raised above). *See* Interpleader Tr. at 5, Exh. A:

> THE COURT: So has the issue of -- has the probate court been apprised of this [interpleader] action, and has, I guess Mr. Black, raised with the probate judge one of the reasons I can't comply with your order is because the assets are subject to an interpleader, frozen because of a citation -- I guess I'm a little confused as to why . . . any reasonable probate judge wouldn't say, okay, I understand, you shouldn't be held in contempt because there are other court orders out there that are preventing you from --

> MR. GRAYSON (counsel to the SNT and Issue Trust trustees): That will be a defense. It has been raised in the past. It hasn't stopped Joanne Black's counsel from still seeking to hold Bernard in contempt for not turning over the trust accounts, which, as you know, are frozen many different ways.

In the Interpleader Action, both Chase and the SNT and Issue Trust trustees are

seeking an injunction that would bar Joanne Black's counsel from proceeding with a

contempt motion in this court. The interpleader court is aware of the October 3, 2019

return date for the contempt motion, and is expected to issue a decision on the injunction

9

motion before then. Pending that decision, the interpleader court expressed the clear

view that for Joanne Black to proceed with the contempt motion would violate that

court's prior orders, and expose her to contempt proceedings in the Interpleader Action:

Interpleader Tr. at 12-13.

> THE COURT: Why isn't Joanne Black in violation of my order for any of the
> claimants in this case not to take any steps to seek turnover of these assets without filing
> a motion here with notice so that could be resolved here? . . .
> My order that I entered here covers all of the claimants. It was entered without
> any opposition or objection and indicates that none of the claimants here are to try to
> effect a turnover of these assets without first providing notice by means of motion,
> written notice, or it says by means of motion in this case, which she did not do.
>     . . .
>
> THE COURT: But somebody, somebody could come forward and say not -- that
> I want to increase the litigation on this issue -- but somebody could be filing a motion for
> her to find her in contempt of my order for trying to do this without first coming here,
> and filing written notice, and giving people an opportunity to be heard.

In the interests of not further escalating litigation costs, and of not seeking a

remedy against Joanne Black for improper conduct by her counsel, the SNT and Issue

Trust trustees have chosen not to bring contempt proceedings against Joanne Black in the

Interpleader Action, based on the filing of the contempt motion in this court. Bernard

Black represents to this court that the trustees will not do so if the contempt motion is

dismissed, either by this court or voluntarily by Joanne Black's counsel.

The interpleader court refers to two orders previously issued confirming that the

trust assets cannot move without its consent. On May 15, 2019, in response to a motion

by Chase Bank, the interpleader court ruled:

> The Court previously ordered Plaintiffs [Chase] to post a bond of $4.2 million,
> which would be satisfied by a bond issued by Plaintiff's surety, Travelers Casualty
> and Surety Company of America (Dkt. No. [26]). Plaintiffs have now filed an
> unopposed motion to waive renewal of the surety bond (Dkt. No. [66]). Plaintiffs'
> motion (Dkt. No. [66]) is granted. IT IS FURTHER ORDERED that Plaintiffs
> shall not allow any withdrawals of the interpleader assets from the accounts or

10

execute any instructions with respect to the interpleader assets, without prior approval from the Court. Such approval shall be sought by written motion with due notice provided to all Defendants.

Under this order, attached as Exhibit "B," Chase "shall not" allow any transfer of the SNT and Issue Trust assets, without following these steps: (i) Chase must make a written motion to the interpleader court seeking authority to do so; (ii) all Defendants have an opportunity to respond; and (iii) the court rules on the motion. Chase has made no such motion.

The interpleader court issued a second clarifying order, attached as Exhibit "C," on June 19, 2019 (emphasis added):

> The Court's prior order dated 5/15/2019 [68] is amended to preclude *any party* from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets from the accounts held by [Chase], *without first filing* a motion with this Court seeking approval for such withdrawal.

Under the clear language of this order, if "any party," including Joanne Black, wishes to obtain or enforce any court order "seek[ing] to effectuate, any turnover or withdrawal of the interpleader assets," the first, *mandatory* step is for that party to file a motion with the interpleader court, seeking approval for that action. Instead, Joanne Black (through her counsel, Lisa DiPonio) ignored this express ruling by filing a motion in this Court, seeking remedial and punitive contempt against Conservator Black. Because Joanne Black has not alleged and could not prove one of the elements of punitive contempt – namely, that the alleged contemnor had the ability to comply with the April 2018 order given the status of the Interpleader Action -- any action seeking punitive contempt motion would fail. Additionally, any court order otherwise would

simply create conflicting results in separate states. *See In re. Marriage of Nussbeck*, 974 P.2d 493, 497 (Colo. 1999)(elements of punitive contempt).[4]

Moreover, as noted above, if Joanne Black continues to pursue the contempt motion in this court, the interpleader court has already stated that this will expose her to a contempt motion in the Interpleader Action.

Chase brought the Interpleader Action so that the interpleader court could resolve a web of conflicting court orders concerning the SNT and Issue Trust assets. The probate court's April 2018 Order is only one of those conflicting orders. The interpleader court has the power to decide among the competing claims. The purpose of the interpleader statute is to resolve conflicting claims over the same assets. It serves important state and private interests by efficiently resolving potential multiple actions in the same lawsuit, thereby conserving judicial and party resources. Interpleader provides a forum for resolution where there are competing claims to avoid the risk of double or multiple liability that could result from adverse determinations in different courts. *Benton v. Adams*, 56 P.3d 81, 86 (Colo. 2002).

The probate court, in contrast, cannot resolve those conflicts and cannot punish Conservator Black for being unable to abide by the probate court's April 2018 Order. A contempt order would improperly attempt to override outstanding Illinois court orders freezing the trust assets and determining that lenders to the trusts (Katherine Litvak and

---

[4] Petitioner's Motion further fails to meet the elements of contempt because it is not verified by an affidavit nor by any party to the case, C.R.C.P. 107(c). Although it references exhibits which supposedly support the argument, no exhibits were filed and none were served on Conservator Black, denying the Court and Conservator Black the ability to be informed of the basis for Petitioner's argument.

Olga Dal) hold valid claims to the funds held in the trusts.[5]  This court must honor the "citation" orders freezing the trust assets based on these lender claims, under the full faith and credit clause of the U.S. constitution.  The Full Faith and Credit Clause protects the final judgments of one state from collateral attack in another state. *See Marworth, Inc. v. McGuire*, 810 P.2d 653, 655–56 (Colo. 1991), *McClure v. JP Morgan Chase Bank NA*, 2015 COA 117, ¶ 26, *aff'd sub nom. JPMorgan Chase Bank, N.A. v. McClure*, 2017 CO 22, ¶ 26.  The interpleader court has the power to resolve priority between competing claims, including deciding whether Joanne Black's claims should take precedence over the lenders' claims.  This court does not have that power.  Chase is also bound to honor both the orders of the interpleader court, and the citations freezing the trust assets.  Thus, for multiple reasons, the trust assets cannot and will not move anywhere, until the Interpleader Action is decided.  Neither Conservator Black nor anyone else has the power to move them.

As a matter of prudence, and of comity with other courts, the probate court should respect the primacy of the interpleader court and dismiss the contempt motion, which will only add yet more complexity, conflicting orders, and legal cost to an already complex, costly situation.

### C. THE COURT HAS NO JURISDICTION OVER THIRD-PARTY FIDUCIARIES AFFECTED BY APRIL 2018 ORDER.

Besides ordering an unwinding of the disclaimer, the April 2018 Order purports to impact both the SNT and the Issue Trust.  The Issue Trust, its trustees and beneficiaries,

---

5 Katherine Litvak's loans have been found valid as to the Issue Trust; no decision has been made with regard to her loans as to the SNT.  Olga Dal's loans have been found valid as to both trusts. *See* Cook County Circuit Court Orders, attached as Exhibits "D" and "E."

13

received no notice of the proceedings on remand, particularly the court's April 2018 Order, were not represented by counsel, and did not appear.

The April 2018 Order purports to require that Samuel Black, in his capacity as SNT trustee and in his capacity as Issue Trust trustee, take action which would fulfill the court's April 2018 Order directed at Conservator Black. However, this court lacks personal jurisdiction over Samuel Black in any capacity. No motion was filed that sought to include Samuel Black as a party in the proceedings leading to this order as either SNT trustee or Issue Trust trustee. No notice was given to Samuel Black, and no evidence was presented as to any actions he might have taken that would support jurisdiction.[6] Indeed, in the appeal of the April 2018 order by Samuel Black, currently pending in the Colorado Court of Appeals, appellate counsel for Joanne Black has not defended this court's power to issue orders directed to Samuel Black.

Bernard Black does not have unilateral control over the Issue Trust. Any action concerning the Issue Trust, including that directed in the April 2018 Order, requires joint action by both trustees – by both Bernard and Samuel Black. Samuel Black continues to owe a fiduciary duty solely to the beneficiaries of the Issue Trust.

## III. CONCLUSION

The issuance of the citation for contempt, and the possibility of litigating whether Conservator Black was in contempt of the April 2018 Order hinges first on a legal determination on the scope of the probate court's jurisdiction, and whether the probate

---

[6] Samuel Black has appealed the January 2018 order, and Joanne Black's appellate counsel has declined to defend the propriety of this court's order directed at him. See Reply Brief, in Nos. 2016CA2157, 2017CA2242, 2018346, and 2018CA1094 (May 16, 2019). at 49 (heading: "The Probate Court Didn't Attempt to Exercise Personal Jurisdiction Over Samuel in its Order on Remand.")

14

court had authority to revisit its 2015 decision on the disclaimer when the Colorado appellate courts held, at the same time, exclusive jurisdiction over an appeal which had addressed the same subject matter.  Since the probate court's jurisdiction was absent, the Citation was void must be quashed.[7]  Further, Conservator Black cannot be held in contempt of a void order.

Additionally, the Motion and Contempt Citation should be dismissed since any action on this motion could result in further conflict with court orders in the Interpleader Action.  Indeed, Joanne Black is expressly barred by orders from the interpleader court from pursuing the relief she seeks here, and risks facing a contempt motion there, if she does not desist here.

Further, to the extent the April 2018 Order concerns either the Issue Trust or Samuel Black, as trustee of either the SNT or the Issue Trust, this court has no jurisdiction over either.

WHEREFORE, Respondent Black requests this Court quash or dismiss the Motion and quash the Order to Issue Citation and Citation to Show Cause issued on July 23, 2019.

Respectfully submitted on October 1, 2019

Signed Original on file at
The Ebisch Law Firm /s/ Jane G. Ebisch
_____

Jane G. Ebisch, #15029

---

7 Respondent Black reserves his right, if the Court denies this Motion to Quash to Dismiss Order to Issue Citation and Citation to Show Cause Based on Trial Court's Lack of Jurisdiction, to assert other substantive defenses to the Verified Motion and Affidavit for Citation for Contempt.

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2019, I served true and correct copies of the foregoing RESPONDENT BLACK'S MOTION TO DISMISS MOTION FOR CONTEMPT AND TO QUASH JULY 23, 2019 ORDER TO ISSUE CITATION AND CITATION TO SHOW CAUSE and proposed ORDER by E-service and first-class mail as indicated below and addressed as follows:

VIA E-SERVICE
Joanne Black
c/o Lisa DiPonio, Esq.
DiPonio & DiPonio, LLC
79 S. Broadway, Suite 348
Littleton, Colorado 80122

VIA E-SERVICE
Terry Ehrlich
Arnold & Arnold, LLP
7691 Shaffer Parkway, Suite A
Littleton, Colorado 80127
terryehrlich@arnoldarnold.com

VIA E-SERVICE
Steven W. Suflas, Esq.
J. Matt Thornton, Esq.
Ballard Spahr, LLP
1225 17th Street, Suite 2300
Denver, CO 80202
suflas@ballardspahr.com
thorntonj@ballardspahr.com

VIA U.S. MAIL
Anthony Dain, Esq.
13272 Capstone Drive
San Diego, CA 92130

VIA U.S. MAIL
Cherie Wrigley
1946 Roadrunner Ave
Thousand Oaks, CA 91320

VIA E-SERVICE
Gayle Y. Young, Esq.
Guardian ad Litem
Young and Zen, LLC
P.O. Box 307
Littleton, CO 80160

VIA E-SERVICE
Rebecca Klock Schroer
Matthew Steven Skotak
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, Colorado 80202
rkschroer@hollandhart.com
msskotak@hollandhart.com

Steven P. Mandell, Esq.
Mandell Menkes LLC
One North Franklin St., Suite 3600
Chicago, IL 60606
smandell@mandellmenkes.com

VIA U.S. MAIL
Ira W. Salzman, Esq.
Goldfarb, Abrandt, Salzman & Kutzin, LLP
350 Fifth Avenue, Ste 4310
New York, NY 10118

VIA E-SERVICE
Marco Chayet, Esq.
Tamara Trujillo, Esq.
Chayet & Danzo, LLC
650 South Cherry Street, Suite 710
Denver, CO 80246

*Signed Original on file at*
*The Ebisch Law Firm /s/ JoAnn Greff*

_____
JoAnn Greff, Legal Assistant

16

# Exhibit G

JUDGE: LEITH *REPORTER: FTR *CONTEMPT CITATION APPEARANCES: CAC
LISA DIPONIO. BOTH BERNARD BLACK AND HIS CNSL JANE EBISCH FTA. THE
COURT FINDS BERNARD BLACK WAS PERSONALLY SERVED WITH THE
CONTEMPT CITATION FOR TODAY'S DATE. MS. DIPONIO'S REQUEST FOR THE
ISSUANCE OF A BENCH WARRANT FOR MR. BLACK'S FAILURE TO APPEAR IS
GRANTED. ORDERED: A BENCH WARRANT SHALL ISSUE FOR THE ARREST OF
BERNARD BLACK DUE TO HIS FAILURE TO APPEAR TO ANSWER THE
CONTEMPT CITATION. CASH BOND IS ORDERED IN THE SUM OF $4,500,000.00,
THE AMOUNT OF THE JUDGMENTS ENTERED AGAINST MR. BLACK. THE
MOTION TO QUASH IS DENIED. /EDL