PROBATE COURT, CITY AND COUNTY OF DENVER, COLORADO

---

TRANSCRIBER'S TRANSCRIPT

---

CASE NO. 12 PR 1772

---

IN THE MATTER OF:

JOANNE BLACK, Protected Person

---

REQUEST FOR CONTEMPT CITATION

---

        This matter came on for hearing before THE HONORABLE ELIZABETH D. LEITH, Magistrate of the Denver Probate Court, on Thursday, October 3, 2019. The following is a transcript of the audible portions of that hearing as requested by the ordering party.

APPEARANCES:   LISA DIPONIO, Esq., Reg. No. 27707, Court
                Appointed Counsel for Joanne Black.

        Transcriber's Note:  (Inaudibles) due to static and poor quality of recording at Judge's microphone.

```
 1                    P R O C E E D I N G S
 2            THE COURT:  The record is on, and the Court will
 3   call 12PR1772, the interest of Joanne Black.
 4            Go ahead with your appearance for the record.
 5            MS. DIPONIO:  Thank you, Your Honor.  Good
 6   afternoon.  Lisa DiPonio, Registration 277077, court
 7   appointed counsel for Joanne Black, the protected person.
 8            Your Honor, I'd like the record to reflect that
 9   Mr. Black was served with this show cause related to a
10   contempt citation on August 7, 2019.  That notice, the
11   affidavit, was filed with this Court, and he has failed to
12   appear, as has his counsel.
13            THE COURT:  And I will also note for the record
14   that our office received a voice mail message this morning
15   from Ms. Ebisch saying that neither she nor Mr. Black
16   (inaudible) today.
17            MS. DIPONIO:  Thank you.
18            THE COURT:  And, of course, this is the first
19   appearance on the contempt citation, which is typically an
20   advisement, and he failed to appear after being personally
21   served.
22            MS. DIPONIO:  Yes.  Your Honor, if the Court
23   would allow, I have some statements that I would like to
24   make for the record.
25            (Inaudible) a clarifying purpose also that I'm
```

1    here today.  This hearing is not a request that the Court
2    hold Mr. Black in contempt right now.  As the Court
3    stated, this would be used as an advisement.
4         And there is currently an interpleader action
5    conducted in Federal Court in Illinois, which has to do
6    with the supplemental needs trust assets.
7         And so my understanding--even though I am not
8    personally involved in that action on behalf of Joanne, my
9    understanding is the Court has issued an order, and Ms.
10   Ebisch, who had filed a motion to quash today's hearing,
11   did file some excerpts from the transcripts.  Your Honor,
12   that is not a full transcript.  I have that.  If the Court
13   would like it filed, I'd be more than happy to do that.
14   But I believe maybe some of her statements have been taken
15   out of context of the entire order.
16        But the Court in the interpleader action did
17   issue an order which states that a party--the assets of
18   the interpleader action, which are the supplemental needs
19   trust assets, cannot be withdrawn or transferred without a
20   court order.
21        So Ms. Ebisch, if she were here today, would
22   argue that Mr. Black cannot possibly comply with this
23   Court's various orders, because those assets are, for all
24   intents and purposes, frozen for now.  But the Court in
25   the interpleader action did issue an order, which is

1    contained in her filing, Ms. Ebisch's filing, which said

2    that any party can file the motion with the Court,

3    requesting that a transfer (inaudible) be effectuated, and

4    the Court would entertain that motion.

5          Mr. Black has every opportunity to motion the

6    Court to withdraw, transfer, however he'd like to do it,

7    those assets into this Court's registry, but he has failed

8    to do that.  If he were to do that, parties we're

9    advocating on behalf of Ms. Black and her conservatorship

10   would be more than happy to join in, would not contest

11   such a motion, but he's not doing that.

12          So to back up for a minute, this Court issued

13   one of many orders back in January of 2018, which said

14   that Mr. Black was to personally appear in this Court for

15   any actions or hearings that have been scheduled.  As

16   we've already noted for the record, Mr. Black is not here;

17   so, in essence, he is in violation of that court order.

18          Mr. Black, counsel submits, is utilizing the

19   interpleader action as both a sword and a shield.  He is

20   relying upon that action in the continued attempt to

21   disregard this Court's various orders.  He is using the

22   orders from the interpleader action as a reason why he

23   cannot comply and as a reason to continue to ignore this

24   Court's order and his intentional indiscretion.

25          THE COURT:  Has he actually interpleaded any

1  (inaudible)?

2         MS. DIPONIO:  The assets of the--so Chase
3  brought this action--

4         THE COURT:  Okay.

5         MS. DIPONIO:  --and I don't know the ins and outs
6  of all of it.  Mr. Dane (phonetic) is ready to appear by
7  phone if he has to answer any questions.

8         But my understanding is that Kate Litvak, who is
9  Mr. Black's wife, and Olga Dal, who is a relative, of
10 hers--

11        THE COURT:  (Inaudible) Litvak?

12        MS. DIPONIO:  Right--have garnishments against
13 the S and T (phonetic).

14        THE COURT:  For what?

15        MS. DIPONIO:  Apparently they're claiming that
16 they loaned Mr. Black money for all these frivolous
17 lawsuits that he has in various states.  And so they have
18 liens against the S and T, which, Your Honor, belongs to
19 Joanne Black anyway.  But they have liens against the S
20 and T to be reimbursed for funds that have been loaned to
21 Mr. Black.

22        THE COURT:  And has anyone contested the
23 veracity of these loans?

24        MS. DIPONIO:  My understanding, Your Honor, is
25 that those are subjects of litigation in Chicago.  Your

```
 1   Honor, I'm not involved in those so--
 2            THE COURT:  (Inaudible) any money actually
 3   transferred between any of these people.
 4            MS. DIPONIO:  Right.  And there are also
 5   liens/garnishments against his property and his wages
 6   also, I believe.
 7            THE COURT:  From them?
 8            MS. DIPONIO:  By Ms. Dal and Ms. Litvak.  If I'm
 9   speaking incorrectly, I apologize.  That's just my
10   understanding, as I'm not involved in all the Chicago
11   litigation.
12            THE COURT:  And all of that is highly suspect.
13   But my other question has to do with his actions as a
14   trustee (inaudible).  How can he loan money out of a trust
15   to his relatives, his wife and her cousin?  How can that
16   possibly be--
17            MS. DIPONIO:  Your Honor, as you--
18            THE COURT:  --and not breach of his fiduciary
19   duties?
20            MS. DIPONIO:  Right.  And as you know and as the
21   Court has, I'm sure, wondered, why Mr. Black is still a
22   trustee of that trust.  If you'll recall, his son, Samuel
23   Black, is also a trustee, as is Mr. Dane.
24            THE COURT:  Right.
25            MS. DIPONIO:  Mr. Dane is the only one who has
```

1 authority by this Court to act on behalf of the trust.
2 But I believe the wording of the trust is that the
3 majority of the trustees have to agree to a certain action
4 compromising or having any dealings with the trust.
5 　　　　So what we'd like to do, Your Honor--when I say
6 "we", those who are advocating on behalf of Joanne--is
7 have the Court order or schedule an evidentiary hearing
8 where we can have Mr. Black come in as well as Samuel
9 Black to answer questions as to why they have acted or
10 inacted (phonetic) in ways which would comply with this
11 Court's various orders to make Ms. Black whole.
12 　　　　We could cross language and serve individual
13 notices on both Mr. Black and Samuel Black to have them
14 appear here for an evidentiary hearing where we can have
15 these questions answered as to why Mr. Black and with the
16 aid of his son, Samuel Black, has continued to violate
17 this Court's orders, which are still in effect.
18 　　　　THE COURT: So Mr. Dane (inaudible) petition for
19 removal?
20 　　　　MS. DIPONIO: Your Honor, that would be a
21 question posed to Mr. Dane. I know discussions have been
22 had regarding this. And as the Court is aware, Mr. Black
23 has so many (inaudible) against so many people right now,
24 and I think, quite honestly, prior to (inaudible) to put
25 out fires as they come. And I believe an action was filed

1  in New York.  But that wasn't the proper forum, so, again,
2  this--that's a question which should be posed to Mr. Dane
3  as to what the actions are going to be in the removal of
4  both Mr. Black and Samuel Black.
5          THE COURT:  Okay.
6          MS. DIPONIO:  Your Honor, also, I think it's
7  important to state for the record that counsel has
8  received a two- or three-page letter from Mr. Black's
9  attorneys in Illinois--
10         THE COURT:  You did?
11         MS. DIPONIO:  I did--claiming the interpleader
12 court issued clear orders which prevented me from pursuing
13 today's hearing when, in fact, it did not.  This is a
14 perfect example of Mr. Black's bullying and intimidation
15 tactics to prevent him from being exposed for his
16 indiscretions regarding Ms. Black's (inaudible).
17         Following briefing by the parties, the Federal
18 Court has not issued any final orders in the interpleader
19 action, which would prevent any hearings or actions from
20 being pursued in this matter, apart from an order issued
21 by this Court for Mr. Black to immediately turn over the
22 interpleader assets.
23         Again, this is not what I am here requesting
24 today.  I am simply requesting that an evidentiary hearing
25 be held where we can have Mr. Black, Samuel Black, other

1   interested parties and witnesses face this Court and
2   testify as to their actions or inactions where they
3   attempted to deprive or otherwise compromise Ms. Black's
4   rightful assets.
5          Mr. Black as well as Samuel Black hold the key
6   to the door through which answers of why compliance has
7   not occurred after all this time.
8          Your Honor, I can file supplemental pleadings,
9   bring in other orders of this Court which he has violated
10  other than the ones that have been referred to in the
11  contempt citation.
12         Counsel is, therefore, requesting a court order
13  and evidentiary hearing be held such that Mr. Black,
14  Samuel Black, and other parties testify in this Court in
15  an effort to either show whether Mr. Black is or is not in
16  contempt of this Court.
17         THE COURT:  Well, I'm fine with that, but what
18  do you want me to do about the failure to appear for
19  today?
20         MS. DIPONIO:  Your Honor--
21         THE COURT:  I mean, typically that's the
22  evidentiary hearing as to--
23         MS. DIPONIO:  That's right.
24         THE COURT:  --whether he should be held in
25  contempt or not.

1      MS. DIPONIO:  Right.  Your Honor, I'm fine with
2 the Court issuing a bench warrant, albeit it's only to the
3 borders of Colorado.  But, for the record, I'd like to
4 have that requested and put in the transcript that a bench
5 warrant may be requested and issued for his failure to
6 appear today, despite your order of January that says he
7 shall be physically present in the Court for any hearings.
8      THE COURT:  All right.  And then with respect to
9 bond, what (inaudible) at this point?
10      MS. DIPONIO:  4.5 million is the judgment here,
11 which has been, for the record, upheld by the Court of
12 Appeals and the Supreme Court.
13      THE COURT:  All right, well, I will issue--I'll
14 grant your request and issue a bench warrant for Bernard
15 Black's failure to appear, and I'll issue a cash bond in
16 the sum of $4.5 million.
17      MS. DIPONIO:  Thank you.
18      THE COURT:  You'll need to fill out the warrant
19 information sheet.  I will grant your request for the
20 evidentiary hearing.  Do you want to set that now, or do
21 you just want to wait and see what happens with the
22 warrant?
23      MS. DIPONIO:  Your Honor, why don't I wait on
24 setting it until I confer with other parties who would be
25 participating, the ones that are available.  But I would

1  ask again, at the (inaudible) of sounding repetitive, that
2  Samuel Black also be brought into this Court as--
3           THE COURT:  (Inaudible) service on him.
4           MS. DIPONIO:  Yes, which I will do.
5           THE COURT:  And Trustee Dane needs to determine
6  whether filing petitions for the removal of Samuel Black
7  and Bernard Black as trustees is warranted, and he needs
8  to act on that.
9           MS. DIPONIO:  I will communicate that to Mr.
10 Dane.
11          THE COURT:  With respect to the motion to quash,
12 the Court finds that there has never been a stay requested
13 by Mr. Black or a (inaudible) bond posted on appeal, as
14 you noted a moment ago, is completed.  The Court's orders
15 have been confirmed.  And there are a plethora of cases
16 that indicate that the refusal to comply with the order
17 (inaudible) appeal (inaudible) the issuance of a stay in
18 posting the bond (inaudible) comply with the order.  So--
19          MS. DIPONIO:  And, Your Honor, one other thing
20 I'd like to put on the record, as this transcript may
21 somehow be incorporated into the interpleader action, the
22 failure to comply with this Court's orders by Mr. Black
23 encompasses not only the assets of the absentee.  We're
24 talking about actions and orders which apply to all of Ms.
25 Black's assets, so--and punitary damages issued against

1  him, which, quite frankly, I don't care where he gets the
2  money from.  He's responsible.
3          So I just want to--I just wanted to make mention
4  that it's a broader scope than just the assets that are
5  part of the interpleader.
6          THE COURT:  Okay.  And, actually, this is the
7  first I'm hearing today about this motion to quash that
8  was filed by Mr. Dane the day before that in the
9  interpleader action.  This Court has not been kept
10 informed of any other civil actions that are pending in
11 any other state in the country about this case.
12         MS. DIPONIO:  And, Your Honor, I'm not involved
13 in those, so--
14         THE COURT:  Right, but I'm just saying that I
15 don't know if I'm not told and nothing is filed here
16 typically (inaudible).  I don't think (inaudible).  So I'm
17 always asking questions (inaudible) transcripts
18 (inaudible).  I'm always wondering what's going on.
19         So this transcript, this partial transcript,
20 that's been filed, it seems to indicate that the--whatever
21 Judge this is (inaudible) is kind of talking about the
22 Probate Court.  But I think what he doesn't understand is
23 that no one says anything to this Court about it ever.
24         MS. DIPONIO:  Right.  And it was just recently,
25 Your Honor, when I received that letter from Mr. Black's

1    attorneys.  The Court did state that it has knowledge that

2    I am court appointed counsel for Joanne Black, the

3    protected person, here in this Court in Colorado, and

4    mandated that they send me the pleadings, and I received a

5    stack about this big.

6          THE COURT:  (Inaudible) foot high?

7          MS. DIPONIO:  About that.  So that is what I

8    have about any of the matters that are happening in that

9    Court.  I don't know about any of the other actions apart

10   from hearsay that I, you know, catch wind of.

11         THE COURT:  Okay.  Well, Mr. Black is already

12   under orders to turn over all of the assets in the S and T

13   into this Court's registry.  He's been under that for

14   quite some time--

15         MS. DIPONIO:  Correct.

16         THE COURT:  --and he's never complied with that.

17         MS. DIPONIO:  That's right, Your Honor, and

18   that's a great point that I must make is, these were set

19   in place well before this interpleader action happened.

20         THE COURT:  Right, for years now.

21         MS. DIPONIO:  Exactly.

22         THE COURT:  Right.  And the other thing is, is

23   (inaudible) Chase Bank is that I issued a specific order

24   for funds that he had been identifying as two hundred and

25   some odd thousand dollars and that he managed to get Chase

1  Bank--

2        MS. DIPONIO: That's right.

3        THE COURT: --to transfer the funds out of the

4  account they were in to thwart my orders (inaudible)

5  action.

6        MS. DIPONIO: That's right. And he turned

7  around and improperly took those funds out of the account,

8  I think, the night of the issuance of your order. And it

9  just happened to be in the exact amount of your order.

10       THE COURT: Right.

11       MS. DIPONIO: So Chase, for whatever reason,

12 feels that it cannot appropriately disburse funds to

13 Joanne despite these orders.

14       THE COURT: But why wouldn't it be in Federal

15 Court (inaudible)?

16       MS. DIPONIO: I don't know. I don't know, Your

17 Honor.

18       THE COURT: That doesn't make a lot of sense,

19 but--all right, well, thank you, Ms. DiPonio.

20       MS. DIPONIO: Thank you.

21       THE COURT: If you will fill out the warrant

22 information sheet, and we will get that posted

23 (inaudible).

24       MS. DIPONIO: Thank you. I appreciate it.

25       THE COURT: And for the record, the motion to

```
 1   quash is denied.  I'll note that Ms. Ebisch has failed to
 2   appeal to defend her motion, that the contempt citation is
 3   (inaudible) based on orders issued by this Court.
 4            MS. DIPONIO:  Thank you.
 5            THE COURT:  All right, thanks.
 6            (The proceedings were concluded.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

```
-----------------------------------------------------------
CERTIFICATE
-----------------------------------------------------------

STATE OF COLORADO   )
                    :
COUNTY OF DENVER    )
```

      I, Sylvia Besel, Transcriptionist for the Denver Probate Court, in the State of Colorado, do hereby certify that the above and foregoing is a transcript of the recorded proceedings, based upon the quality of the recording and my ability to understand it, taken at the date and time set forth on Page One hereof.

      DATED at Denver, Colorado, this 7th day of October, 2019.


/s/Sylvia Besel

Sylvia Besel

Official Transcriber

Federal Reporting Service

17454 E. Asbury Place

Aurora, CO  80013