## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., et al | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-cv-03447 |
| | ) | |
| v. | ) | |
| | ) | Hon. Andrea A. Wood |
| BERNARD S. BLACK, et al | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS AND COUNTER-PLAINTIFFS BERNARD S. BLACK AND
## SAMUEL BLACK'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendants, Bernard S. Black ("Bernard") and Samuel Black ("Samuel"), individually and

as trustees, by their undersigned attorneys, pursuant to Rule 37(a)(3)(B)(iv) of the Federal Rules

of Civil Procedure,[1] move this Court to compel Defendants Anthony Dain ("Dain") and Jeanette

Goodwin ("Goodwin") to produce all documents responsive to Bernard and Samuel's production

requests, many of which have not been produced despite consistent promises that they will be

produced and many more of which have been withheld from production based upon specious

assertions of privilege. In support, Bernard and Samuel state as follows:

### I.    INTRODUCTION

Dain and Goodwin have been dragging their feet in responding to discovery requests with

empty promises that they will produce more documents. Worse yet, Dain and Goodwin not only

have failed to produce the additional documents they have promised to produce, they also

wrongfully assert that more than 7,000 documents responsive to Bernard and Samuel's requests

for production of documents are privileged under the common interest doctrine and have refused

---

[1] Pursuant to Local Rule 37.2, after consultation with Dain and Goodwin's counsel, good faith attempts on both sides to resolve this discovery dispute were unsuccessful.

to produce them. Dain and Goodwin's assertions of common interest privilege, however, are so facially absurd and overbroad as to demonstrate their complete disregard of the discovery process and their obligations thereunder.

First, there is no such thing as a common interest privilege. Common interest (sometimes called joint defense) is an exception to waiver of a privilege that would otherwise exist. There must be a separate basis for privilege. There is none here for most of what Dain and Goodwin have refused to produce.

Dain and Goodwin plainly have made no effort to confine assertions of privilege to communications that even arguably are privileged. As egregious examples, *they claim common interest privilege for communications with court personnel, with Bernard, with Bernard and Samuel's attorneys, and with Plaintiffs' counsel.* Dain and Goodwin also contend, without any cognizable legal basis, that communications not including any attorney representing any party in any litigation somehow are privileged. They further claim privilege for countless communications that do not involve either the solicitation of, or dissemination of, legal advice. In addition, they assert common interest privilege protection for communications that predate their joint defense agreement, which they did not enter into until May 2018. And, they assert that their joint defense agreement protects from disclosure communications with individuals who never signed that agreement, and who were not even aware of it. The most cursory review of the Dain's law firm's privilege log on its face reveals that most logged communications are not subject to privilege, not subject to the common interest exception, or both, for multiple reasons.

Given the specious nature of Dain and Goodwin's assertions of privilege, the only logical conclusions that can be reached are that Dain and Goodwin have made no effort to comply with

discovery rules and are trying to conceal relevant and responsive documents from Bernard and Samuel. This Court should not countenance such conduct.

Beyond the specious claims of privilege and common interest for the emails and attachments documents in the Procopio privilege log, Dain and Goodwin plainly have withheld relevant, responsive documents from production. They have produced no emails from Goodwin's email address, jeanettegoodwin1223@msn.com. Dain is known to sometime use his wife's personal email, dorothydain@yahoo.com, for emails relating to the Black family trusts, but they have not produced anything from that email address. They have not provided their own privilege log to show what they are withholding from production. This Court should order appropriate document production and a privilege log to be produced within 30 days.

## II.    **FACTUAL BACKGROUND**

Bernard and Samuel propounded their First Requests for Production of Documents to Dain and Goodwin in 2018. To date, Dain and Goodwin have produced a mere 489 documents in response to these requests, despite near constant promises by their counsel that their production will be supplemented by additional responsive documents, and further, despite clear evidence that they are withholding thousands of relevant, responsive documents from production through wrongful assertions of privilege.

Dain and Goodwin's counsel has confirmed that, in responding to Bernard and Samuel's requests for production, they are standing on the assertions of privilege in refusing to produce certain documents that are listed in a privilege log compiled by Dain's law firm, Procopio Cory, Hargreaves & Savitch LLP ("Procopio"). (A copy of the Procopio privilege log is attached hereto as Exhibit A). That privilege log was prepared in response to a subpoena Bernard and Samuel served upon Procopio in this case. This confirmation is is important because the subpoena served

upon Procopio effectively requests many of the same documents, including communications, that Bernard and Samuel requested of Dain and Goodwin. Notably, too, the Procopio privilege log lists more than 7,000 purportedly privileged communications involving Dain, and it asserts common interest privilege for every one of the logged communications.

As stated above, there are numerous communications that Procopio logged as privileged that are described in the log as communications with court personnel, with Bernard, with Bernard and Samuel's counsel and with Plaintiffs' counsel. (*See e.g.* Exhibit A, lines 80, 1184, 4988, 6876). There is no explanation of how such communications could be privileged.

In addition, most of the communications Procopio logged as privileged occurred before any of the individuals involved in the subject communications entered into any agreement to keep such communications confidential. Between May 1, 2018 and July 26, 2018, 10 individuals did sign a Privileged and Confidential Common Interest and Joint Defense Agreement ("Joint Defense Agreement") by which they agreed to keep communications involving pending litigation with Bernard and his wife Katherine Litvak and any of their relatives confidential. That agreement is at the center of those individuals' assertions of common interest for their communications. But, of the 7,155 communications listed in the Procopio privilege log, 6,405 of those communications occurred before *any* of those individuals signed the Joint Defense Agreement. (See Exhibit A lines 751-7155). In other words, the vast majority of the communications logged as subject to common interest privilege predate the entry by anyone into any agreement to keep their communications confidential.

The Procopio privilege log also asserts common interest privilege for communications with individuals who never signed the Joint Defense Agreement. For example, Cherie Wrigley ("Wrigley"), who received 1,148 communications listed on the privilege log (*see e.g.,* Exhibit A

4

lines 5, 9 and 11-12), is not a party to, and never signed, the Joint Defense Agreement. Others who were not party to, or who did not sign, the Joint Defense Agreement, but for whom communications with them regularly are listed on the privilege log as being subject to common interest privilege, include the law firm of Motschenbacher & Blattner, LLP, and Brian Raphan ("Raphan") and Melissa Cohenson ("Cohenson") from the law firm of Brian A. Raphan, P.C. . Cohenson and Raphan both testified in their depositions that they were not aware of any common interest or joint defense agreement. (An excerpt of Cohenson's deposition transcript with the relevant testimony is attached as Exhibit B; Raphan's sworn testimony is similar).

Additionally, the Procopio privilege log includes countless communications that, from their subject matter descriptions, do not involve either the solicitation of legal advice or the providing of legal advice. For example, emails relating to a conference call invitation are listed (see Exhibit A lines 44-45) and emails relating to fundraising for a mental health awareness walk (see Exhibit A line 4531) are listed as subject to common interest privilege. The privilege log is replete with other examples of emails that plainly have nothing whatsoever to do with obtaining, or the rendering of, legal advice.

In sum, the Procopio privilege log shows that nearly all of the communications for which common interest privilege has been asserted as a basis for refusing to produce the documents lack the inherent qualities that would make the communication protected from disclosure under any privilege, and the qualities that would make them potentially subject to the common interest exception to waiver of privilege. In most instances, there are multiple reasons appearing on the face of the privilege log why the logged communications cannot possibly be protected from disclosure.

Many of the documents that Dain and Goodwin have agreed to produce, and indeed been ordered to produce long ago by this Court, are the legal bills that they believe the trusts are or may be responsible for paying. Their counsel has provided some bills, but not others. Even those that are provided are absurdly redacted. For an extreme example, see Exhibit C, where one cannot tell the name of the billing party, let alone what work was being performed.

## III.    RELEVANT LEGAL STANDARDS FOR PRIVILEGE AND COMMON INTEREST

### A.    Choice of Law Analysis

Illinois law and Colorado law both should be considered in examining the subject claims of privilege. As explained below, documents cannot properly be withheld from production on privilege grounds unless they would be considered privileged under the laws of both states.

This interpleader action is in this Court based upon diversity jurisdiction. Therefore, because Illinois is the forum state, Illinois law on conflicts of law governs. *Aurora Gasoline Co. v. Coyle*, 174 F. Supp. 331, 336 (E.D. Ill. 1959).

Illinois courts apply the Restatement (Second) of Conflict of Laws to questions of privilege and which state's law applies. *People v. Allen*, 336 Ill. App. 3d 457, 459 (2d Dist. 2003). As the court explained in *Allen*, it is necessary to determine whether the privilege laws of the forum state, Illinois, or the state that has the most significant relationship with a communication, applies. *Id.* Under the Restatement (Second) of Conflict of Law, if there is a prior relationship between the parties communicating, the state of most significant relationship will be where the relationship is centered, unless the state where the communication took place has substantial contacts with the parties and the transaction. Restatement (Second) of Conflict of Laws comment (e).

Here, the individuals most frequently involved in the communications alleged to be privileged are: Dain, Goodwin, Wrigley, Lisa DiPonio, Pamela Kerr and Gayle Young. Four of

those six individuals reside in Colorado. Nearly all the purportedly privileged communications involve communication across state lines. Arguably, however, the state of most significant relationship to the subject communications is Colorado.

Pursuant to Section 139 of the Restatement (Second) of Conflict of Laws, unless a compelling public policy reason exists, evidence will be admitted if either: (1) it is not privileged under the law with the most significant relationship to it even if it is privileged under the law of the forum state or (2) evidence that is not privileged under the local law of the forum even if it is privileged under law of the state with the most significant relationship. Under this analysis, for a communication to be privileged, it must be privileged under both Illinois and Colorado law.[2]

### 1. In Illinois, the Common Interest Doctrine Requires a Common Interest in Defeating a Litigation Opponent and a Prior Agreement

Under Illinois law, the common interest doctrine is not an independent basis for privilege; it instead falls under the umbrella of attorney-client privilege. *Ross v. Illinois Cent. R.R. Co.*, 2019 IL App (1st) 181579, ¶ 38. A communication must satisfy all the requirements for attorney-client privilege for the common interest doctrine to apply. *Id.*

The definition of a communication subject to attorney-client privilege is as follows: (1) legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communication relates to that purpose, (4) is made in confidence (5) by the client, (6) is at his or her instance permanently protected (7) from disclosure by himself, herself or by the legal adviser, (8) except the protection may be waived. *People v. Adam*, 51 Ill. 2d 46, 48 (1972). The party asserting the privilege bears the burden of establishing the privilege. *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 119 (1982). It further is well-settled under Illinois

---

[2] The only other state which could have a significant relationship with the purportedly privileged communications is New York. However, Bernard and Samuel's counsel have no reason to believe the law on these privilege matters is materially different in New York than in Illinois and Colorado.

law that "attorney-client privilege ought to be strictly confined with its narrowest possible limits." *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill.2d 178, 190 (1991).

When a client discloses a privileged communication to a third party "that particular communication is no longer privileged and is discoverable or admissible in litigation." *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 35. However, the common interest doctrine provides a limited exception to waiver. Under this doctrine, a communication to a third-party remains privileged when (1) there is a common interest among parties in defeating a litigation opponent and (2) the communicating parties, at the time of disclosure, have an agreement that the receiving party will treat the information as privileged. *Ross v. Illinois Central Railroad Co.*, 2019 IL App (1st) 181579, ¶ 44; *Selby v. O'Dea,* 2017 IL App (1st) 151572, ¶ 35. The common interest doctrine protects communications between (1) the attorney of one party to the other party's attorney, (2) by one party to another party's attorney, (3) by one party to its own attorney, in the presence of the other party's attorney and (4) from one party to another party, with counsel present. *Selby*, 2017 IL App (1st) at ¶¶ 50-71. Thus, an attorney acting in a representative capacity must be involved in the communication for the common interest doctrine to apply. And the party asserting the privilege has the burden of showing that it applies. *Consolation Coal*, *supra*.

### 2. Under Colorado Law, the Common Interest Doctrine Applies when Communications Further a Common Legal Strategy

Just as in Illinois, under Colorado law, the common interest doctrine does not provide an independent basis for privilege, but is instead an exception to the general rule that attorney-client is waived when communicated to a third-party. *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 469 (Colo. App. 2003). In Colorado, "Attorney-client privilege extends only to matters (1) communicated by or to the client in the course of gaining counsel, advice, or direction about the client's rights or obligations; and (2) under circumstances giving rise to a reasonable expectation

that the statements will be treated as confidential." *Bjornsen v. Bd. of County Commissioners of Boulder County*, 2019 COA 59, ¶ 54. And, the common interest doctrine applies only to communications given in confidence and intended and reasonably believed to be part of an ongoing and joint effort to set up a common legal strategy. *Black*, 74 P.3d at 462. And, as in Illinois, under Colorado law, "statutory privileges are to be strictly construed, and the claimant of the privilege has the burden of establishing the applicability of the privilege in issue." *People v. Dist. Court, County of Adams, State of Colo.*, 797 P.2d 1259, 1262 (Colo. 1990).

## IV. DAIN AND GOODWIN'S COMMON INTEREST CLAIMS ARE IMPROPER AND OVERBROAD

Dain and Goodwin's assertion of common interest privilege as an exception to waiver of the attorney-client privilege for most of the communications listed on the Procopio privilege log is unfounded because most of the purportedly privileged communications: (1) occurred before parties agreed to keep communications confidential, (2) were sent to individuals who never agreed to keep communications confidential, (3) included individuals who did not have a common interest in defeating a common litigation opponent, (4) did not include an attorney acting in his or her capacity as counsel, and/or (5) did not involve a privileged communication (seeking to obtain or provide legal advice) to begin with. Given the foregoing, the common interest doctrine applies, at best, to very few of the communications listed on the Procopio privilege log and this Court should order Dain and Goodwin to produce all relevant and responsive documents for which common interest protection was wrongly asserted.

### A. Dain and Goodwin Improperly Claim Common Interest Privilege for Communications before any Joint Defense Agreement Existed

As set forth above, most communications listed on the privilege log occurred before the individuals involved in the subject communications agreed to keep communications confidential. Consequently, they are not privileged under the common interest doctrine.

As explained above, under Illinois law, for the common interest doctrine to apply, there must be an agreement *at the time of communication* that the parties to the communication will treat the communication as confidential for it to be privileged. *Ross v. Illinois Central Railroad Co.*, 2019 IL App (1st) 181579, ¶ 44. Because no one signed the Joint Defense Agreement until May 1, 2018, all prior communications must be produced. There was no agreement between any of the parties to the communications to keep them confidential prior to that date. In fact, some of the individuals who are party to the communications either did not sign the Joint Defense Agreement until a later date or never signed it at all. Under well-settled Illinois law, there can be no common interest privilege protection for communications with an individual that occurred prior to that individual's entry into the Joint Defense Agreement.[3]

**B.     Dain and Goodwin Improperly Claim the Common Interest Exception to Waiver of Privilege Applies to Communications Sent to Parties Who Did Not Sign the Joint Defense Agreement**

Dain and Goodwin also improperly assert the common interest doctrine with respect to communications sent to individuals who never entered into an agreement to keep communications confidential (*i.e.*, the Joint Defense Agreement). The only people to sign the Joint Defense Agreement were: Dain in an expressly *pro se* capacity, Ira Salzman for Goldfarb Abrandt Salzman & Kutzin LLP, Robert M. Fantone for Mancilla & Fantone, LLP, Christina Gomez for Holland & Hart LLP, Lisa DiPonio for The DiPonio Law Firm, LLC, Gayle Young (Joanne Black's guardian-ad-litem, who although an attorney did not represent anyone in any relevant proceeding),

---

[3] It should be noted that the Joint Defense Agreement makes no reference to any prior agreement on confidentiality, whether oral or written.

Goodwin, Robert A. Carson for Gould & Ratner LLP, Steven P. Mandell for Mandell Menkes LLC (who became counsel to Pamela Kerr beginning sometime in 2017), and Paul A. Ruscheinski for Litchfield Cavo LLP (who became counsel to Melissa Cohenson and Brian A. Raphan PC sometime in 2017).

As explained above, the common interest privilege does not apply if a communication is shared with someone who did not agree to keep the communication confidential. *Ross v. Illinois Central Railroad Co.*, 2019 IL App (1st) 181579, ¶ 44. However, there are 1,148 logged communications with Wrigley, who did not sign the Joint Defense Agreement, and also many entries for communications including Kerr, who did not sign the agreement. Those documents, therefore, should be produced. Likewise, all communications with Motschenbacher & Blattner, LLP, Raphan and Cohenson should be produced, as none of them signed the Joint Defense Agreement. In fact, as explained above, Cohenson and Raphan both testified under oath that they did not even know that any such agreement existed. (*See* Exhibit B).

### C. Dain and Goodwin Improperly Claim Common Interest Protection for Communications with Individuals Who do not Have a Common Interest in Defeating a Litigation Opponent

If one is to rely on the Procopio privilege log for assertions of privilege, as Dain and Goodwin's attorney say they are doing, Dain and Goodwin are claiming common interest protection for numerous communications with individuals with whom they have no common interest in defeating a litigation opponent. In fact, the parties to some communications are their litigation adversaries. For instance, the Procopio privilege log absurdly asserts privilege and common interest for communications with Bernard and Samuel's counsel and their counsel's office. (*See e.g.,* Exhibit A lines 80, 81 and 257). They further claim that communications with *Plaintiff's* counsel are subject to common interest privilege, even though they have no common

interest with Plaintiffs in any litigation. (*See e.g.,* Exhibit A lines 1184, 1417 and 1661). Dain and Goodwin even claim communications with Bernard are privileged and protected by common-interest. (*See e.g.,* Exhibit A lines 6876, 7029 and 7033). And they claim privilege for communications with court personnel. (*See e.g.,* Exhibit A lines 4988, 5365 and 6228).

Listing such communications on a privilege log and asserting that they are subject to common interest demonstrates that Dain's law firm, and Dain and Goodwin themselves, have not made a good faith effort to participate in the discovery process in good faith, and limit assertions of privilege to communications that are privileged, or at least arguably are privileged, and that qualify, even arguably, for the common interest exception to waiver. Procopio appears to have merely indiscriminately listed communications as being subject to common interest protection that plainly were not, and Dain and Goodwin have made no effort to evaluate what truly was subject to privilege and what was not in standing on the assertions of privilege in the Procopio privilege log.

### D. Dain and Goodwin Improperly Assert Privilege for Communications that Do Not Include Any Attorney Representing Any Party in Litigation

Dain and Goodwin assert both privilege and the common interest exception to waiver for communications that do not involve any attorney acting in his or her capacity as counsel for any party. The Procopio privilege log lists countless communications that do not include any attorney acting in his or her capacity as an attorney. For example, the Procopio privilege log includes communications between Dain and Goodwin, Dain and Wrigley, and Dain and Pamela Kerr.[4] (*See e.g.* Exhibit A lines 1, 4, 10, 13, 23 and 24).

---

[4] While Dain is an attorney, he does not represent any party in any of the subject litigation. Indeed, Dain expressly signed the Joint Defense Agreement in a *pro se* capacity, rather than as counsel for any other party.

As explained above, however, for the common interest doctrine to apply, all requirements for attorney-client privilege must first be met, including that the communication is with an attorney for the purpose of seeking or disseminating legal advice. *Ross v. Illinois Cent. R.R. Co.*, 2019 IL App (1st) 181579, ¶ 38.  For communications that do not involve an attorney acting in a representative capacity who is obtaining information to render legal advice, or who is rendering legal advice, there is no privilege to begin with, and one never reaches the question of whether, if there were privilege, the common interest exception to waiver would apply.  Most of the communications for which common interest privilege is asserted in the Procopio privilege log do not include any attorney acting in his or her capacity as counsel for another party.

### E.    Dain and Goodwin Improperly Assert Privilege and Common Interest for Communications Unrelated to Obtaining Legal Advice

Dain and Goodwin improperly claim common interest privilege for communications unrelated to seeking or providing legal advice.  For instance, as noted above, sending or accepting a conference call invitation does not involve legal advice.  Yet, such communications were logged as being subject to both privilege and common interest.  (*See* Exhibit A lines 44-45).  Likewise, fundraising for a mental health awareness walk does not involve legal advice.  Yet, such communications were logged as well.  (*See* Exhibit A line 4531).  The Procopio privilege log is replete with other examples of communications with identified subjects that have nothing to do with anyone seeking legal advice from an attorney or with an attorney providing such advice.

Once again, therefore, these absurd assertions of privilege show that Dain and Goodwin have not made any good faith attempt to comply with their discovery obligations.  Procopio simply logged thousands of communications as being subject to common interest privilege for which no good faith argument can be made for such an assertion, and Dain and Goodwin, in turn, have made

no effort whatsoever to determine what communications truly are subject to that privilege and what documents must be produced.

As further evidence of Dain and Goodwin's disregard of discovery rules, neither Dain nor Goodwin has produced anything at all from certain email accounts that they use in communicating with others about matters pertaining to this case. And they have failed to offer any explanation for this.

## V.     CONTINUED REFUSAL TO TURN OVER LEGAL BILLS

Production of legal bills by Dain and Goodwin has been subject to prior motion practice, including a motion to compel and a motion for rule to show cause. This Court has ordered their production (See Orders of April 30, 2019 and July 11, 2019 attached as Group Exhibit D).

Set forth below is a description of the bills that Bernard and Samuel believe to exist, but which have not been produced, and also bills that have been disclosed, but have been completely redacted. The last in a series of partial, dribble out productions by Dain and Goodwin was on August 1, 2019, which is now over six months ago. Any assertion that Dain and Goodwin do not possess these bills is frivolous – if they want to claim that these bills are or may be payable from the SNT, which they have done, they are under an obligation to request them from the persons or firms who prepared them.

The following production of bills is badly out of date (some are also completely redacted):

**Goldfarb, Abrandt, Salzman and Kutzin:** Counsel to Joanne Black in New York. Received payment by Dain from the SNT in **2016.** No bills have been provided for any date after July 2017. The bills that have been provided are completely redacted. (*See* Exhibit E).

**Lisa DiPonio:** Counsel to Joanne Black in Colorado. Received payment by Dain from the SNT in **2016.** No bills have been provided for any date after March 2017.

**Pamela Kerr:** Accountant for Joanne Black in Colorado and New York. Received payment by Dain from the SNT in 2016. No bills have been provided for any date after July 2017. Bills are also missing for January-March 2016, even though Kerr is known to have done work for Joanne Black during this time.

**Gayle Young, Esq.** Guardian ad litem to Joanne Black in Colorado. Received payment by Dain from the SNT in 2016. No bills have been provided for any date after April 2017.

The following invoice production is less out of date but completely or heavily redacted:

**Holland and Hart:** Appellate counsel to Joanne Black in Colorado. Received payment from the Conservatorship Estate of Joanne Black in 2016. Some bills have been received through March 2019, but the production is so disorganized that one cannot tell whether production through this date is complete. The bills are completely redacted.

**Motschenbacher & Blattner.** Counsel for Goodwin in Oregon. Received payment from the Conservatorship Estate of Joanne Black in 2019. Bills have been received through June 2019, but are completely redacted.

**Arcturus Law.** Counsel to Dain and Goodwin in Illinois, including in this case. Received payment from the Conservatorship Estate of Joanne Black in 2018. Bills have been received through June 2019, but are completely redacted.

**Gould and Ratner.** Former counsel to Dain and Goodwin in Illinois. Bills are heavily redacted.

**Terence Brennan, Esq.** Counsel to Joanne Black in this case. No bills have been received.

Given the history of slow production of such invoices or failure to produce them, with mere constant promises of updating such production by Dain and Goodwin's counsel, this Court should order Dain and Goodwin to turn over all legal bills to date with appropriate, limited redactions within 30 days.

## CONCLUSION

For the foregoing reasons, this Court should grant Bernard and Samuel's Motion to Compel, order Dain and Goodwin to produce all documents wrongful withheld from production on baseless assertions of privilege within 30 days and award such other relief as just and equitable, including Bernard and Samuel's costs, including reasonable attorneys' fees, in having had to bring this motion.

Respectfully submitted,

BERNARD BLACK and SAMUEL BLACK, individually and as Trustees of the SNT, 2013 Trust and Issue Trust


By: /s/ Brad S. Grayson
     One of Their Attorneys


Benjamin N. Feder
Brad S. Grayson
Strauss Malk & Feder LLP
135 Revere Drive
Northbrook, IL 60062
(847) 562-1400 (Tel.)
(847) 562-1499 (Fax)
bfeder@straussmalk.com
bgrayson@straussmalk.com

# Exhibit A

# Exhibit B

Katherine Black vs Cherie Wrigley, et al.

17-cv-00101

Transcript of the Testimony of:

# MELISSA COHENSON

August 28, 2018





08/28/2018                   MELISSA COHENSON                   Page 1

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   - - - - - - - - - - - - - - - - -x
     KATHERINE BLACK,                  :
 4                                     :
               Plaintiff,             : Case No.:
 5                                     : 17-cv-00101
        v.                             :
 6                                     :
     CHERIE WRIGLEY, MELISSA COHENSON, :
 7   BRIAN A. RAPHAN, P.C., and        :
     PAMELA KERR,                      :
 8                                     :
 9               Defendants.           :
                                       :
10   - - - - - - - - - - - - - - - -x

11

12           Oral deposition of MELISSA COHENSON, taken

13   pursuant to Notice, was held at the Law Offices of

14   LITCHFIELD CAVO LLP, 420 Lexington Avenue, New York,

15   New York, commencing August 28, 2018, 9:51 a.m., on

16   the above date, before Amanda McCredo, a Court

17   Reporter and Notary Public in the State of New

18   York.
                        - - -
19

20

21

22

23

24

25
```

08/28/2018                     MELISSA COHENSON                      Pages 50–53

---

**Page 50**

1  BY MR. SCHAALMAN:
2      Q    Did you create the document?
3      A    I don't even know what document we're
4  talking about here, to be honest. I know you said
5  it's a simple question. To me, it's not. This is
6  the first time I'm looking at Exhibit 3. I don't
7  know what this spreadsheet is. I'm looking at the
8  description here which says, "Property valuation,"
9  and you read the address and that rings a bell.
10         I don't know if this was something -- it
11  looks to me here as it's from Pamela Kerr -- it has
12  an email address -- sent it to me.
13         So in strictly just looking at this
14  description from Pamela Kerr to Melissa Cohenson, I
15  do not believe I created it. And I did not invoke
16  any privilege as I did not even create this.
17     Q    I understand. And I'm entitled to explore
18  whether the privilege was appropriately invoked and
19  I think you, as the recipient, are a fair target for
20  my questions about whether the privilege was
21  properly invoked.
22         MR. FANTONE: I would like to note for the
23     record, if Pamela Kerr was retained by counsel,
24     then her work would also constitute work
25     product. It doesn't necessarily mean because

**Page 51**

1      Melissa didn't create it, that it doesn't
2      constitute work product.
3            If Pamela Kerr was retained as counsel, the
4      documents she created would also constitute
5      work product.
6      Q    Ms. Cohenson, what is the common interest
7  you shared with Ms. Kerr regarding the email dated
8  February 18, 2016 addressed to you?
9      A    May I ask what you mean by "common
10  interest"?
11     Q    You can. But it's the privilege that's
12  being asserted on your behalf.
13         So I would first like you to answer that
14  question based on whatever understanding you have
15  about common interest.
16         MR. CRAWFORD: Before she answers, I'm
17     going to interject that these are legal
18     objections that were asserted by her counsel,
19     as is very common and you have done in your
20     discovery.
21         The objections are asserted by the
22     attorneys and the answers are provided by the
23     clients, the parties.
24         Subject to that, you can answer.
25     A    Am I allowed to ask --

**Page 52**

1      Q    You're really not allowed to ask any
2  questions of me. You're certainly allowed to ask
3  questions of your counsel.
4         In the hopes of getting through this as
5  expeditiously and as efficiently as possible, your
6  asking me questions would not be helpful.
7         I'll proceed with other questions.
8      A    Okay.
9      Q    Because that's my job, is to ask you
10  questions and your job is to give answers.
11     A    Yes.
12     Q    The next document, which is MCBR68 through
13  69, again, is identified as an email. This one
14  appears to be from Ira Salzman to a number of
15  persons and your email address is listed as someone
16  who received it.
17         Do you recall this email, which is
18  apparently dated March 10, 2016?
19     A    I recall having been sent emails from
20  Mr. Salzman with the group of people that are listed
21  here on a few occasions. And this description,
22  "Joanne Black, immediate next steps," I have no idea
23  what it involved, like, specifically.
24     Q    And you didn't create this document, to the
25  best of your recollection, did you?

**Page 53**

1      A    No.
2      Q    So it's not your work product, is it?
3      A    Well, I may have replied.
4      Q    Well, this isn't a reply that's being
5  identified here. It's a document and it appears to
6  be a document from Ira Salzman to a group of people
7  including you, correct?
8      A    Correct.
9           Can I ask my counsel a question?
10     Q    That's fine.
11         MR. CRAWFORD: She is asking me who
12     prepared this.
13         This is a privileged log that was prepared
14     by our firm of documents that we believe are
15     protected from discovery.
16         THE WITNESS: Okay.
17         MR. CRAWFORD: So these are documents that
18     would have been in the file that was provided
19     by Brian Raphan's office and, again, these are
20     what we believe are privileged documents and
21     that's why you haven't seen it.
22         MR. SCHAALMAN: Mr. Crawford, are you
23     willing to stipulate these documents were in
24     the file that Ms. Cohenson received from Brian
25     Raphan or her first attorney received from

---

# Exhibit C

**arcturus**
law firm

# INVOICE

Invoice # 187
Date: 09/12/2018
Due On: 10/12/2018

211 W Wacker, Ste 323
Chicago, Illinois 60606

Jeanette Goodwin

## 00051-Goodw-Conservato

## Conservatorship Estate of Joanne Black v. Bernard Steven Black

### Services

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Service | 08/23/2018 | ███████████████████████ | 0.60 | $300.00 | $180.00 |
| | | | Services Subtotal | | $180.00 |

### Expenses

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Expense | 08/23/2018 | ███████████████████ | 1.00 | $40.19 | $40.19 |
| Expense | 08/23/2018 | ███████████████████ | 1.00 | $9.29 | $9.29 |
| | | | Expenses Subtotal | | $49.48 |
| | | | Subtotal | | $229.48 |

## 00052-Goodw-Litvak v.

## Litvak v. Black et al

### Services

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Service | 08/03/2018 | ████████████████████████████ | 0.30 | $300.00 | $90.00 |

Page 1 of 4

D/G INT 000253

Invoice # 187 - 09/12/2018

| | | | | | |
|---------|------------|---|------|----------|----------|
| Service | 08/06/2018 | | 0.40 | $300.00 | $120.00 |
| Service | 08/13/2018 | | 1.40 | $300.00 | $420.00 |
| Service | 08/20/2018 | | 0.20 | $300.00 | $60.00 |
| Service | 08/23/2018 | | 3.00 | $300.00 | $900.00 |
| Service | 08/24/2018 | | 0.40 | $300.00 | $120.00 |
| Service | 08/24/2018 | | 0.70 | $300.00 | $210.00 |
| Service | 08/28/2018 | | 0.10 | $300.00 | $30.00 |
| Service | 08/28/2018 | | 0.60 | $300.00 | $180.00 |
| Service | 08/29/2018 | | 0.80 | $300.00 | $240.00 |
| Service | 08/30/2018 | | 0.20 | $300.00 | $60.00 |
| Service | 09/04/2018 | | 0.40 | $300.00 | $120.00 |
| Service | 09/07/2018 | | 0.50 | $300.00 | $150.00 |

**Services Subtotal**      **$2,700.00**

## Expenses

| Type | Date | Notes | Quantity | Rate | Total |
|---------|------------|-------|----------|----------|----------|
| Expense | 09/04/2018 | | 1.00 | $110.25 | $110.25 |
| Expense | 09/07/2018 | | 1.00 | $51.44 | $51.44 |
| Expense | 09/10/2018 | | 1.00 | $112.00 | $112.00 |

**Expenses Subtotal**      **$273.69**

**Subtotal**      **$2,973.69**

D/G INT 000254

Invoice # 187 - 09/12/2018

## 00053-Dain-Dal v. Ber

## Dal v. Bernard Black et al.

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Service | 08/13/2018 | | 1.40 | $300.00 | $420.00 |
| Service | 08/15/2018 | | 0.20 | $300.00 | $60.00 |
| Service | 08/16/2018 | | 0.80 | $300.00 | $240.00 |
| Service | 08/16/2018 | | 0.80 | $100.00 | $80.00 |
| Service | 08/20/2018 | | 0.10 | $300.00 | $30.00 |
| Service | 08/21/2018 | | 0.80 | $100.00 | $80.00 |
| Service | 08/21/2018 | | 0.80 | $100.00 | $80.00 |
| Service | 08/24/2018 | | 0.40 | $300.00 | $120.00 |
| Service | 08/24/2018 | | 0.70 | $300.00 | $210.00 |
| Service | 08/28/2018 | | 0.20 | $300.00 | $60.00 |
| Service | 08/28/2018 | | 0.60 | $300.00 | $180.00 |
| Service | 08/29/2018 | | 0.80 | $300.00 | $240.00 |
| Service | 08/30/2018 | | 0.20 | $300.00 | $60.00 |

|  |  |  | Subtotal | | $1,860.00 |

## 00054-Dain-Interplead

## Interpleader - Black litigation

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|

D/G INT 000255

Invoice # 187 - 09/12/2018

| | | | | | |
|---|---|---|---|---|---|
| Service | 08/16/2018 |  | 2.50 | $300.00 | $750.00 |
| Service | 08/17/2018 | | 3.00 | $300.00 | $900.00 |
| Service | 08/17/2018 | | 4.20 | $300.00 | $1,260.00 |
| Service | 08/28/2018 | | 0.20 | $300.00 | $60.00 |
| Service | 09/05/2018 | | 0.30 | $300.00 | $90.00 |

| | | |
|---|---|---|
| | **Subtotal** | **$3,060.00** |

| | | |
|---|---|---|
| | **Subtotal** | **$8,123.17** |
| | **Total** | **$8,123.17** |
| | **Payment (09/12/2018)** | **-$8,123.17** |
| | **Balance Owing** | **$0.00** |

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 187 | 10/12/2018 | $8,123.17 | $8,123.17 | $0.00 |

Please make all amounts payable to: Arcturus Law Firm

Please pay within 30 days.

D/G INT 000256

# Exhibit D

Case: 1:18-cv-03447 Document #: 63 Filed: 04/30/19 Page 1 of 1 PageID #:736

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.2
### Eastern Division

J.P. Morgan Securities LLC, et al.

                Plaintiff,

v.

Bernard S. Black, et al.

                Defendant.

Case No.: 1:18–cv–03447
Honorable Andrea R. Wood

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, April 30, 2019:

      MINUTE entry before the Honorable Andrea R. Wood: Motion hearing held. Pursuant to the discussion held in open court and for the reasons stated on the record, Defendants' motion to compel [61] is granted. Defendant Dain and Defendant Goodwin shall produce the documents discussed on the record by 5/14/2019. Status hearing set for 6/12/2019 [60] remains firm. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov.*

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.1
### Eastern Division

J.P. Morgan Securities LLC, et al.

                          Plaintiff,

v.                                        Case No.: 1:18-cv-03447
                                        Honorable Andrea R. Wood

Bernard S. Black, et al.

                          Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, July 11, 2019:

      MINUTE entry before the Honorable Andrea R. Wood: Motion and Status hearing held. Pursuant to the discussion held in open court, Defendants Dain and Goodwin shall produce the remaining documents in response to the Court's April 30, 2019 order [63], by 8/1/2019. Defendants Dain and Goodwin shall then respond to Defendants Black and Black's motion for rule to show cause [70] by 8/15/2019 and Defendants Black and Black shall reply thereto by 8/29/2019. The Court adopts the discovery schedule proposed in the parties' Joint Status Report [72]. Written discovery shall be completed by 10/11/2019; deposition and fact discovery shall be completed by 1/13/2020; initial expert disclosures shall be due by 2/13/2020; expert depositions and all expert discovery shall be completed by 4/13/2020; and any dispositive motions shall be filed by 5/29/2020. Status hearing set for 10/10/2019 at 9:00 AM. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# Exhibit E

**GOLDFARB ABRANDT SALZMAN & KUTZIN LLP**
The Empire State Building
350 Fifth Avenue - Suite 4310
New York, NY 10118


Ira Salzman
Goldfarb Abrandt Salzman & Kutzin
350 5th Ave.
Suite 4310
New York, NY 10118


July 20, 2017


Joann Black Litigation



| | | Hours | Amount |
|---|---|---|---|
| 8/19/2016 MSK | | 1.00 | 500.00 |
| 8/21/2016 MSK | | 0.25 | 125.00 |
| 8/22/2016 MSK | | 0.50 | 250.00 |
| 9/8/2016 MSK | | 0.25 | 125.00 |
| 11/8/2016 SZ | | 0.75 | 150.00 |
| 11/9/2016 SZ | | 0.50 | 100.00 |
| 11/10/2016 IS | | 5.00 | 2,500.00 |
| IS | | 5.50 | 2,750.00 |
| IS | | 4.00 | 2,000.00 |
| IS | | 2.00 | 1,000.00 |
| IS | | 0.70 | 350.00 |
| IS | | 3.00 | 1,500.00 |
| SZ | | 2.00 | 400.00 |

Ira Salzman

Page 2



| | Hours | Amount |
|---|---|---|
| 11/11/2016 SZ | 0.33 | 66.00 |
| 12/1/2016 SZ | 0.17 | 34.00 |
| 1/17/2017 SZ | 0.25 | 50.00 |
| For Professional Services Rendered | 26.20 | $11,900.00 |

Additional Charges :

| | Qty/Price | |
|---|---|---|
| 11/10/2016 SZ | 1<br>6.45 | 6.45 |
| SZ | 172<br>0.10 | 17.20 |
| DK | 1<br>45.00 | 45.00 |
| 12/5/2016 IS | 1<br>25.00 | 25.00 |
| Total costs | | $93.65 |

D/G INT 000506

**GOLDFARB ABRANDT SALZMAN & KUTZIN LLP**
The Empire State Building
350 Fifth Avenue - Suite 4310
New York, NY 10118

Joanne Black
Re: Estate of Renata Black

July 20, 2017



| | Hrs/Rate | Amount |
|---|---|---|
| 3/23/2016 IS | 2.00 $500.00/hr | 1,000.00 |
| APL | 1.25 $200.00/hr | 250.00 |
| 3/24/2016 IS | 0.50 $500.00/hr | 250.00 |
| 3/30/2016 APL | 2.50 $200.00/hr | 500.00 |
| 4/14/2016 MSK | 1.00 $500.00/hr | 500.00 |
| MSK | 0.25 $500.00/hr | 125.00 |
| MSK | 0.25 $500.00/hr | 125.00 |
| 4/29/2016 MSK | 5.75 $500.00/hr | 2,875.00 |
| 5/3/2016 MSK | 2.75 $500.00/hr | 1,375.00 |

D/G INT 000507

Joanne Black

| Date | | Hrs/Rate | Amount |
|---|---|---|---|
| 5/6/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| | MSK | 0.25 $500.00/hr | 125.00 |
| 5/9/2016 | APL | 0.50 $200.00/hr | 100.00 |
| | IS | 1.00 $500.00/hr | 500.00 |
| | MSK | 0.75 $500.00/hr | 375.00 |
| | MSK | 0.50 $500.00/hr | 250.00 |
| 5/11/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| | MSK | 0.50 $500.00/hr | 250.00 |
| | MSK | 2.25 $500.00/hr | 1,125.00 |
| 5/25/2016 | MSK | 0.50 $500.00/hr | 250.00 |
| 6/13/2016 | MSK | 1.50 $500.00/hr | 750.00 |
| | DJC | 0.50 $350.00/hr | 175.00 |
| | DJC | 1.50 $350.00/hr | 525.00 |
| 6/15/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 6/21/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 6/27/2016 | MSK | 0.75 $500.00/hr | 375.00 |

D/G INT 000508

Joanne Black                                          Page 3

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 7/5/2016 | MSK | 5.75 $500.00/hr | 2,875.00 |
| 7/6/2016 | MSK | 1.50 $500.00/hr | 750.00 |
|  | MSK | 0.25 $500.00/hr | 125.00 |
|  | MSK | 1.00 $500.00/hr | 500.00 |
|  | MSK | 2.25 $500.00/hr | 1,125.00 |
| 7/7/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 7/12/2016 | MSK | 1.50 $500.00/hr | 750.00 |
| 7/18/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 7/22/2016 | MSK | 2.25 $500.00/hr | 1,125.00 |
| 7/24/2016 | MSK | 0.75 $500.00/hr | 375.00 |
| 7/25/2016 | MSK | 0.50 $500.00/hr | 250.00 |
| 7/26/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 7/28/2016 | MSK | 0.50 $500.00/hr | 250.00 |
| 7/29/2016 | MSK | 3.25 $500.00/hr | 1,625.00 |
|  | MSK | 0.75 $500.00/hr | 375.00 |
| 8/1/2016 | MSK | 0.75 $500.00/hr | 375.00 |

D/G INT 000509

Joanne Black

Page 4

| Date | | Hrs/Rate | Amount |
|---|---|---|---|
| 8/3/2016 | MSK | 0.50 $500.00/hr | 250.00 |
| 8/5/2016 | MSK | 2.00 $500.00/hr | 1,000.00 |
| | MSK | 3.00 $500.00/hr | 1,500.00 |
| 8/8/2016 | MSK | 3.00 $500.00/hr | 1,500.00 |
| | MSK | 3.00 $500.00/hr | 1,500.00 |
| 8/9/2016 | MSK | 0.50 $500.00/hr | 250.00 |
| 8/10/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 8/11/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 8/12/2016 | MSK | 0.50 $500.00/hr | 250.00 |
| 8/15/2016 | MSK | 2.75 $500.00/hr | 1,375.00 |
| 8/16/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 8/23/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 10/5/2016 | MSK | 2.75 $500.00/hr | 1,375.00 |
| | MSK | 0.50 $500.00/hr | 250.00 |
| 10/6/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 10/7/2016 | MSK | 0.50 $500.00/hr | 250.00 |

D/G INT 000510

Joanne Black

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 10/11/2016 MSK | | 0.25 $500.00/hr | 125.00 |
| MSK | | 0.25 $500.00/hr | 125.00 |
| 10/20/2016 MSK | | 1.50 $500.00/hr | 750.00 |
| MSK | | 0.25 $500.00/hr | 125.00 |
| 10/21/2016 MSK | | 0.25 $500.00/hr | 125.00 |
| 11/4/2016 MSK | | 1.00 $500.00/hr | 500.00 |
| 11/5/2016 MSK | | 2.75 $500.00/hr | 1,375.00 |
| 11/6/2016 MSK | | 4.25 $500.00/hr | 2,125.00 |
| 11/7/2016 MSK | | 0.75 $500.00/hr | 375.00 |
| MSK | | 0.75 $500.00/hr | 375.00 |
| MSK | | 1.75 $500.00/hr | 875.00 |
| 11/8/2016 MSK | | 3.00 $500.00/hr | 1,500.00 |
| 11/9/2016 MSK | | 2.25 $500.00/hr | 1,125.00 |
| 11/15/2016 MSK | | 3.00 $500.00/hr | 1,500.00 |

D/G INT 000511

Joanne Black

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 11/16/2016 | IS | 0.50 $500.00/hr | 250.00 |
| | MSK | 4.50 $500.00/hr | 2,250.00 |
| 11/17/2016 | MSK | 2.75 $500.00/hr | 1,375.00 |
| | MG | 0.25 $450.00/hr | 112.50 |
| | SZ | 0.75 $200.00/hr | 150.00 |
| 11/21/2016 | MSK | 1.75 $500.00/hr | 875.00 |
| | SZ | 0.42 $200.00/hr | 84.00 |
| | MSK | 0.75 $500.00/hr | 375.00 |
| 11/22/2016 | MSK | 0.25 $500.00/hr | 125.00 |
| 11/23/2016 | MSK | 0.50 $500.00/hr | 250.00 |
| 11/24/2016 | MSK | 2.75 $500.00/hr | 1,375.00 |
| 11/25/2016 | MSK | 2.25 $500.00/hr | 1,125.00 |
| | MSK | 0.50 $500.00/hr | 250.00 |
| | MSK | 0.50 $500.00/hr | 250.00 |

Joanne Black

Page 7

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 11/27/2016 | MSK | 0.25<br>$500.00/hr | 125.00 |
| 11/28/2016 | MSK | 0.25<br>$500.00/hr | 125.00 |
| | MSK | 1.25<br>$500.00/hr | 625.00 |
| 11/29/2016 | MSK | 1.00<br>$500.00/hr | 500.00 |
| | MSK | 4.75<br>$500.00/hr | 2,375.00 |
| 11/30/2016 | MSK | 1.50<br>$500.00/hr | 750.00 |
| | MSK | 0.25<br>$500.00/hr | 125.00 |
| 12/1/2016 | MSK | 0.25<br>$500.00/hr | 125.00 |
| 12/2/2016 | MSK | 0.25<br>$500.00/hr | 125.00 |
| 12/5/2016 | MSK | 0.50<br>$500.00/hr | 250.00 |
| 12/6/2016 | MSK | 0.25<br>$500.00/hr | 125.00 |
| 12/8/2016 | MSK | 0.50<br>$500.00/hr | 250.00 |
| 12/14/2016 | MSK | 0.25<br>$500.00/hr | 125.00 |
| 12/15/2016 | MSK | 0.50<br>$500.00/hr | 250.00 |
| 1/4/2017 | MSK | 0.25<br>$500.00/hr | 125.00 |
| 1/30/2017 | MSK | 0.25<br>$500.00/hr | 125.00 |

D/G INT 000513

Page 8

Joanne Black



| Date | | Hrs/Rate | Amount |
|---|---|---|---|
| 2/1/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| 2/6/2017 | MSK | 1.25 $500.00/hr | 625.00 |
| 2/7/2017 | MSK | 1.25 $500.00/hr | 625.00 |
| 2/8/2017 | MSK | 0.50 $500.00/hr | 250.00 |
| 2/10/2017 | MSK | 0.50 $500.00/hr | 250.00 |
| 2/14/2017 | MSK | 0.75 $500.00/hr | 375.00 |
| 2/15/2017 | MSK | 1.50 $500.00/hr | 750.00 |
| 2/16/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| 3/14/2017 | MSK | 1.00 $500.00/hr | 500.00 |
| | MSK | 3.75 $500.00/hr | 1,875.00 |
| | MSK | 0.25 $500.00/hr | 125.00 |
| 3/15/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| 3/22/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| 3/23/2017 | MSK | 0.50 $500.00/hr | 250.00 |
| 4/19/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| | MSK | 0.25 $500.00/hr | 125.00 |

D/G INT 000514

Joanne Black

Page 9

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 4/30/2017 | MSK | 7.75 $500.00/hr | 3,875.00 |
| 5/1/2017 | IS | 5.00 $500.00/hr | 2,500.00 |
| | IS | 2.00 $500.00/hr | 1,000.00 |
| | MSK | 1.00 $500.00/hr | 500.00 |
| 5/3/2017 | MSK | 9.00 $500.00/hr | 4,500.00 |
| 5/4/2017 | MSK | 6.00 $500.00/hr | 3,000.00 |
| 5/5/2017 | MSK | 7.00 $500.00/hr | 3,500.00 |
| 5/6/2017 | MSK | 5.00 $500.00/hr | 2,500.00 |
| | MSK | 2.00 $500.00/hr | 1,000.00 |
| 5/7/2017 | MSK | 10.50 $500.00/hr | 5,250.00 |
| 5/9/2017 | MSK | 5.00 $500.00/hr | 2,500.00 |
| | MSK | 2.25 $500.00/hr | 1,125.00 |
| 5/10/2017 | MSK | 0.50 $500.00/hr | 250.00 |

Joanne Black

Page 10

| Date | | Hrs/Rate | Amount |
|---|---|---|---|
| 5/26/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| | SZ | 0.50 $200.00/hr | 100.00 |
| 6/1/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| 6/2/2017 | MSK | 3.00 $500.00/hr | 1,500.00 |
| 6/6/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| 6/15/2017 | SZ | 0.25 $200.00/hr | 50.00 |
| 7/5/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| 7/18/2017 | MSK | 0.25 $500.00/hr | 125.00 |
| | MSK | 0.25 $500.00/hr | 125.00 |
| 7/20/2017 | MSK | 2.50 $500.00/hr | 1,250.00 |

For Professional Services Rendered    205.92    $100,796.50

Additional Charges :

| Date | | Qty/Price | |
|---|---|---|---|
| 6/6/2016 | LA | 1 45.00 | 45.00 |
| 8/1/2016 | LA | 1 75.00 | 75.00 |
| 8/10/2016 | LA | 1 1,175.00 | 1,175.00 |
| 8/15/2016 | MSK | 1 120.00 | 120.00 |
| 8/17/2016 | LA | 3 12.45 | 37.35 |

D/G INT 000516

Joanne Black                                                                                    Page 11



|              |      | Qty/Price | Amount |
|--------------|------|-----------|--------|
| 8/17/2016    | LA   | 3<br>6.45 | 19.35 |
| 10/12/2016   | IS   | 1<br>100.00 | 100.00 |
| 11/17/2016   | SZ   | 43<br>0.10 | 4.30 |
| 12/5/2016    | MSK  | 1<br>21.43 | 21.43 |
|              | IS   | 1<br>50.00 | 50.00 |
| 12/12/2016   | IS   | 1<br>50.00 | 50.00 |
| 2/22/2017    | IS   | 1<br>40.40 | 40.40 |
| 3/27/2017    | MSK  | 1<br>58.81 | 58.81 |
| 4/12/2017    | IS   | 1<br>29.00 | 29.00 |
| 6/14/2017    | MSK  | 1<br>1,777.50 | 1,777.50 |
|              | MSK  | 1<br>900.00 | 900.00 |
| 6/15/2017    | SZ   | 266<br>0.10 | 26.60 |
| 6/19/2017    | MSK  | 1<br>67.58 | 67.58 |
| 7/17/2017    | IS   | 1<br>14.50 | 14.50 |
| Total costs  |      |           | $4,611.82 |

D/G INT 000517