## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, NA. et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 18-cv-03447 |
| | ) | |
| v. | ) | |
| | ) | Hon. Andrea R. Wood |
| BERNARD S. BLACK, et al, | ) | |
| | ) | |
| Defendants, | ) | |

### DEFENDANTS AND COUNTER-PLAINTIFFS BERNARD S. BLACK AND SAMUEL BLACK'S REPLY MEMORANDUM IN FURTHER SUPPORT SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS

This Court should grant Bernard and Samuel Black's ("Movants") motion to compel and order Anthony Dain ("Dain") and Jeanette Goodwin ("Goodwin") to produce all documents responsive to Movants' production requests. Dain and Goodwin have not met their burden of demonstrating a legitimate basis for withholding thousands of responsive communications on grounds of privilege. On the contrary, their response and the operative privilege log are both so patently deficient as to call into question their good faith, and make it appropriate for this court to charge them for the costs Movants have incurred in having to bring a motion to compel production of wrongly withheld documents.

Dain and Goodwin have not produced their own privilege log. They instead rely entirely on a log produced by Dain's law firm, Procopio Cory, Hargreaves & Savitch ("Procopio"). In relying upon the Procopio privilege log, Dain and Goodwin ignore their obligation to search their own personal records for documents and log what they believe is privileged.

Moreover, even for communications included in the Procopio privilege log, Dain and Goodwin, in their response to the motion to compel, ignore that they have the burden to

demonstrate that communications are privileged in the first place, and that, when they then rely on the common interest doctrine in asserting that privilege was not waived, to establish that all parties to each communication had a valid common interest agreement with the others involved in the communication and that the withheld communications fall within the common interest doctrine's protections against disclosure. This burden must be met for each withheld document. Dain and Goodwin have failed to meet their burden by:

(1) Failing to explain how privilege could apply to communications in which no attorney representing any party in litigation was involved;

(2) Failing to present any facts or evidence that withheld communications involved legal advice being procured or provided;

(3) Failing to present any facts or evidence of a common interest agreement, oral or written, to which all individuals included in specific communications were party at the time of each withheld communication;

(4) Failing to provide any facts or evidence of a common interest agreement, oral or written, in place at the time of the communications; and

(5) Failing to provide facts or evidence of an identifiable common interest with each party to each communication being withheld on common interest grounds.

Dain and Goodwin's claim of having relied in good faith on the Procopio privilege log is undercut by glaring defects in that log, which include:

(a) Assertions of common interest protection for communications with persons who were unaware of any common interest agreement;

(b) Assertions of common interest protection for communications with people such as a court-appointed forensic accountant, Pamela Kerr, and a court-appointed guardian *ad litem* for Bernard Black's minor children, Daniel and Jacob Black;

(c) Claiming common interest protection for communications with persons not parties to the written joint defense agreement that some individuals signed beginning in May 2018; and

(d) Claiming common interest protection for a communication with an attorney for the Chase entities that are the plaintiffs in this case.

Instead of providing factual support for their facially-overbroad, improper claims of privilege for thousands of communications, Dain and Goodwin rely on a discovery order entered in "the Litvak Defamation Case" to support their position. However, neither Movants nor Dain and Goodwin were parties in the Litvak Defamation Case and they did not litigate the common interest privilege issue that arose in that case. Therefore, the discovery order from that case has no preclusive effect in this case. *Sanchez v. City of Chicago*, 880 F.3d 349, 356-57 (7th Cir. 2018). Dain and Goodwin also fail to present any evidence of what email communications the Litvak Defamation Case ruling covered.[1] That makes it impossible to know what led the court to reach the conclusion it did with respect to whatever communications were the subject of the order.

The only other support that Dain and Goodwin offer is an affidavit from Jessica Duran, the Procopio attorney who prepared the Procopio privilege log. That affidavit, however, further reveals the bad faith of Dain, Goodwin and Dain's law firm in asserting privilege and the common interest exception to waiver. Nothing in the affidavit satisfies the burden of providing a basis for privilege for the specific withheld communications, nor the burden of showing the existence of a common interest agreement between the persons who received any specific communication, much less one in place at the time of each withheld communication.

Ms. Duran says in her affidavit that Dain was not involved in document review or preparation of the privilege logs, and that she alone performed those tasks. (Duran Affidavit at ¶¶ 3-5.) Although it is hard to believe that she would not confer with Dain about a subpoena directed to Procopio, of which he is a partner, in a case in which Dain is a party, if true, Ms. Duran's explanation admits that she did not consult with the only person in her firm who had the background and information to assist in evaluating what was privileged to begin with, and who

---

[1] Indeed, many of the communications over which Dain and Goodwin now claim privilege were disclosed in that litigation.

had entered into a common interest agreement, with whom, and when. Without speaking with Dain or getting information from him, Ms. Duran had no way to know who the parties were to any common interest or joint defense agreement, when any such agreement was reached, and what common legal interest they may have had. That hardly speaks to good faith.

Moreover, while there is a written "Common Interest and Joint Defense Agreement" signed by some parties in or after May of 2018 (attached as Exhibit B hereto), Ms. Duran does not rely on it in her affidavit or her prior communications with Movants' counsel about the Procopio privilege log. Regardless, that agreement was reached long after most of the withheld communications occurred and does not include many of the individuals who were supposedly parties to a common interest agreement. And Dain and Goodwin have provided no evidence of any prior oral agreement.[2] Therefore, the 2018 written agreement, even if valid as to its parties, does not support withholding most of the withheld communications.

Indeed, Ms. Duran could not, on her own, have had any basis to know of any supposed prior oral agreement which predated the written agreement involving certain individuals, nor could Ms. Duran have known of any oral agreement that covered individuals who were not parties to the written agreement. Yet, most of the communications Ms. Duran logged as subject to common interest protection predated the written joint defense agreement and/or included people who were not party to it. Neither Ms. Duran, nor Dain and Goodwin, have offered any factual basis for withholding communications from production under the common interest doctrine.

With regard to the initial question of whether communications were privileged, Ms. Duran expressly disavowed any review of individual documents to determine whether they contained

---

[2] The written agreement does not contain any recital or term referring to any prior oral agreement, which suggests that there was no prior agreement.

privileged information. In a letter to Movants' counsel, she stated that she had not done so, asserting that Procopio, as a nonparty to this case, had no obligation to do so.[3] Even if this is correct as to Procopio, Dain and Goodwin, as parties, must conduct such a review, to satisfy their burden of establishing privilege. Nothing in the record suggests that they have done so.

At bottom, Dain and Goodwin have failed to provide this Court with any basis for concluding that the communications they are withholding from production properly are privileged, let alone protected from waiver of privilege under the common interest doctrine, much less that they engaged in a good faith effort to make such determinations.

## I. The Operative Privilege Log and the Crux of this Dispute

Dain nor Goodwin have not produced a privilege log in this case. Instead, their counsel has advised that they are withholding documents from production based on the Procopio privilege log, which, if Ms. Duran is to be believed, neither Dain nor Goodwin had any involvement in preparing. Moreover, Dain and Goodwin must have responsive documents that Dain's law firm never received. That is particularly true of Goodwin, who must have communicated with people other than Dain. Those communications would not have been received by Procopio and be included in the Procopio privilege log. Yet, Dain and Goodwin have neither disclosed, nor claimed privilege for, any communications other than those that Procopio logged as privileged.

Movants' counsel concedes, as Dain and Goodwin's counsel pointed out, that Movants' counsel mistakenly referred in the motion to compel to the second of three Procopio privilege logs rather than to its most recent privilege log. Movants' counsel apologizes for that unintentional error. Movants' counsel further acknowledges that, in the third privilege log (Exhibit B hereto),

---

[3] See July 10, 2019 letter from Jessica Duran of Procopio Cory to Bryan Schumann of Strauss Malk & Feder at p. 3 (Procopio objects to [Movants' counsel's] request that it perform the overly burdensome task of manually reviewing each document . . . ."). A copy of that letter is attached as Exhibit A.

Dain's law firm finally withdrew some of its most specious assertions of privilege and common interest made in its first two privilege logs. Notably, however, Movant's counsel had to labor for months evaluating and disputing two prior lengthy privilege logs before Dain's law firm finally conceded that communications with Movants, with Movants' counsel, with plaintiffs, with plaintiffs' counsel and with court personnel were not privileged as previously logged. Even now, Dain's law firm continues to assert common interest protection for communications with plaintiffs' counsel, court personnel, and a court-appointed guardian for minor children Daniel and Jacob Black, which plainly are not privileged. (*See* Ex. B, at line 613 (email to cseps@ulmer.com);[4] at line 4576 (email to Nora Renzulli, nrenzulli@nycourts.gov); and at lines 476, 1039, 1181, 1183, 1189, 1195, 1198, 1200, 1201, 1205, 1207 (emails with Eve Markewich, the court-appointed guardian for Bernard Black's minor children, Daniel and Jacob Black, in estate proceedings in New York, in which Ms. Markewich is on the opposite side from Dain.)

However, the crux of this discovery dispute does not center on Movants trying to get Dain and Goodwin to produce communications with Movants' counsel or court personnel. Movants merely referred to those communications being withheld to show the utter lack of good faith that Dain, Goodwin and Dain's law firm have exhibited in responding to discovery.

Movants are trying to obtain in discovery the thousands of withheld communications between Dain, Goodwin and more than 50 other individuals. Dain and Goodwin must produce those documents unless they can meet their burden of showing for each withheld communication that it was protected by privilege in the first place and that any such privilege was not waived by

---

[4] See Duran Aff. ¶ 14 (asserting that an email to cseps@ulmer.com is "protected by the common-interest, attorney-client, and work-product privileges"). Counsel to Dain and Goodwin asserts in his response (at p. 7) that this email "was an inadvertent forward of otherwise privileged information to [plaintiffs'] counsel," citing the Duran affidavit as support. The Duran affidavit, however, says nothing about the email being inadvertently forwarded.

dissemination to other individuals. And those communications are not treated any differently in the third Procopio privilege log than they were in the prior two Procopio privilege logs.

## I. Dain and Goodwin Fail to Meet Their Burden of Showing a Basis for Withholding Most Communications They Assert are Privileged.

This Court should reject Dain and Goodwin's privilege claims for nearly all withheld documents. If Dain and Goodwin cannot demonstrate a communication was subject to attorney-client privilege in the first place, this Court need not consider whether the communication was subject to common interest protection against waiver of privilege.

Under well settled law, Dain and Goodwin have the "burden of showing the *facts* which give rise to the privilege. [A] mere assertion that the matter is confidential and privileged will not suffice." *Krupp v. Chicago Transit Authority*, 8 Ill.2d 37. 42 (1956) (emphasis added). See also, *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 119 (1982); *People v. Dist. Court, County of Adams, State of Colo.*, 797 P.2d 1259, 1262 (Colo. 1990). Dain and Goodwin have failed to meet their burden.

### A. Privilege Applies only to Legal Advice Communications for Which an Attorney is Involved in the Communication.

The common interest doctrine does not create privilege. Privilege must exist first. All that the common interest doctrine can do is protect a privileged communication from waiver of the privilege if the communication was shared merely with parties with a common legal interest who agreed to keep their communications confidential.

The common interest doctrine is an *exception* to waiver of attorney-client privilege. *Ross v. Illinois Cent. R.R. Co.*, 2019 IL App (1st) 181579, ¶¶ 38, 44; *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 469 (Colo. App. 2003). Therefore, it only applies to communications that are privileged in the first place: (i) between a lawyer and that lawyer's client, which (ii) involve legal

advice. *Selby v. O'Dea,* 2017 IL App (1st) 151572, ¶¶ 35, 50-71. Moreover, because of the public policy in favor of full disclosure in discovery, courts have held that the "attorney-client privilege ought to be strictly confined with its narrowest possible limits." *Waste Management, Inc. v. International Surplus Lines Ins. Co.,* 144 Ill.2d 178, 190 (1991).

Notably, one of the cases Dain and Goodwin cite in their response shows why their assertions of common interest are improper. In *Dexia Credit Local v. Rogan,* 231 F.R.D. 268 (N.D. Ill. 2004), the court stated that, "to assert the common interest doctrine as a shield to production, the parties asserting it must first establish that the underlying documents or communications withheld were otherwise privileged.... Thus, if a document is not already shielded from production by a privilege, then the common interest does not apply." *Id.* at 273-274 (internal citation omitted). Moreover, the common interest, with a shared legal goal, must predate the communication. "And, if a privilege is waived as to certain documents before the common interest arose, then those documents cannot be shielded by the common interest doctrine." *Id.* at 274.

Despite those clear standards, Dain and Goodwin make no effort to explain or demonstrate how any of the withheld communications involve an attorney-client privileged communication. Indeed, most of the logged communications do not include lawyers for any party, so it is hard to imagine how legal advice was being sought or conveyed. The subject matter descriptions in the privilege log also do not suggest that legal advice was being obtained or provided.

In *Dexia,* the court also confirmed that common interest, like privilege generally, must be established for each specific document. *Id.* at 273 ("Like the assertion of the attorney-client privilege, a common interest must be established by the parties asserting it; and, it is limited to those documents that fall within that interest, and thus must be asserted *on a document-by-document basis.*") (emphasis added). Yet Dain and Goodwin fail to present any facts to show that

any, much less all, of the withheld documents involved an underlying privileged communication with an attorney, nor that these communications were shared exclusively with others with a common legal interest, where the common interest group was created and defined by a prior common interest agreement.

Instead of meeting their burden of proof on either privilege or common interest with respect to specific communications, Dain and Goodwin merely refer to the court's decision in the Litvak Defamation Case, in which the court in that case concluded that, with respect to certain emails, Dain "was providing input as an attorney" to his sister, Cherie Wrigley ("Wrigley"). (Response at p. 9.) Again, however, Dain and Goodwin fail to explain what emails were involved in that ruling. And it strains credibility to believe that Dain was providing legal advice to his sister in every withheld communication, particularly since Wrigley has had her own independent counsel (not Dain) in every case related to this one in which she has been a party.[5] Moreover, many withheld communications included several people other than Wrigley (sometimes Wrigley was copied, but for many communications she was not). And Dain has never claimed to have acted as counsel to anyone but Wrigley.

Finally, while it is not Movants' burden to defeat Dain and Goodwin's assertions of privilege, there are many logged communications that, from the minimal information provided in the Procopio privilege log, do not appear to involve legal advice. For example, there are communications that merely involve Dain and Wrigley, Dain and Goodwin, and Dain and Kerr, without providing any indication from their subject matter descriptions that legal advice was being

---

[5] Indeed, the parties other than Dain in all related cases, including Wrigley, are all represented by their own independent counsel. Dain is not counsel of record for any other party in any case. Therefore, it is difficult to imagine that Dain was providing legal advice to those other parties who have their own attorneys in his communications with them, much less in every one of the thousands of communications between them withheld from production.

sought or disseminated. (See Ex. B, lines 2, 3, 13, 15, 49, 495- 497, 552, 971.) Indeed, some of

the descriptions would appear to belie any claim of privilege. For example:

(a) Line 2 on the Procopio privilege log is an email from a court-appointed forensic accountant, Pamela Kerr, to Dain, with the subject line of "FW: Kerr Forensic Accounting PC /Black ALA06862 446-12502." It is hard to see how a message from a court-appointed accountant to Dain would involve legal advice.

(b) Lines 13 and 15 are both emails from Wrigley to Dain, with the subject line "Re: Kate's interview w/ Dr." Nothing in that description suggests that any legal advice was being sought or provided.

(c) Line 49, another email from Wrigley to Dain, has the subject line "AMAZING". That description does not suggest any legal advice being sought or conveyed.

(d) Line 497 involves a voicemail that Wrigley left for Dain without any indication that the voicemail involves legal advice.

(e) Line 3 is an email from Goodwin to Dain, with subject line "Re: Draft Motion". It is hard to see how that communication involves legal advice, since Dain is not counsel to Goodwin.

(f) Line 495 (Wrigley to Dain) and line 496 (Dain to Kerr) contain subject lines suggesting merely that documents are being transmitted.

(g) Line 557, sent on June 8, 2018, shortly after Goodwin's and Dain's prior counsel withdrew for nonpayment of legal bills has the subject "RE: Attorney for Jeanette Goodwin and me in Chicago". There is no reason to believe that is anything other than a request for information about possible replacement counsel.

(h) Line 558 is an email from Dain's and Goodwin's former counsel, with subject "FW: Re: Withdrawal on Cases". That description fails to suggest that the communication involved legal advice, and the circumstances make it unlikely that advice was proffered.

Beyond those examples, the communications logged as privileged include ones concerning

the Northwestern University Dean (line 4379-83, 4386); regarding a call-in number for a telephone

conference (line 772); and emails on which Dain is not the sender, the recipient, nor copied, for

which we have no information on how Dain received them (e.g., line 4381). There are emails with

uninformative subject lines such as "Important" (lines 4418-4419), "Important Information" (line

1199), "VERY important additional information" (line 1880), "Important Conf. Call" (lines 2439-

2440, 3498-3499, 3501) or "REALLY IMPORTANT (line 139). Such descriptions provide no information about subject matter, nor any reason to believe that legal advice was conveyed or requested. There are messages from Dain to his secretary with no other recipient (line 3498); communications between Dain and an expert he hired in Colorado, where he was not counsel to anyone (lines 3900-3902, 3959-3967, 4032, 4052). And there are the emails with plaintiffs' counsel, with court personnel, and with the guardian for minor Black children, over which Dain and Goodwin continue to assert privilege, discussed above. Those are merely some of the examples which cast doubt on the good faith of Dain and Goodwin's assertions of privilege, let alone common interest protection against waiver of privilege. More examples are provided below in subsequent sections of this reply brief.

Perhaps some of the foregoing communications do contain privileged content. But their content is unknown, Procopio disavowed reviewing them, and there is no reason to believe that Dain and Goodwin's counsel did the work that Procopio failed to do. There are simply no facts from which it can be concluded that anything in them is subject to attorney-client privilege.

### B. Dain and Goodwin Have Failed to Establish a Common Litigation Interest with the Many People with Whom They Claim a Common Interest Agreement.

Dain and Goodwin concede, citing *Strougo v. NEA Assoc.*, 199 F.R.D. 515 (S.D.N.Y. 2001), that *they must demonstrate* that the individuals involved in the withheld communications are pursuing a common legal goal to justify withholding the communications from production under the common interest doctrine. (Response at pp. 4-5.) And, in the *Dexia Credit* case that Dain and Goodwin cite, the court explained that "the shared interest must be identical, not simply similar." *Dexia Credit,* 231 F.R.D. at 273.

Dain and Goodwin, however, fail to explain what identical legal goal all parties to the communications had or were pursuing at the time of the communications. In fact, most of the

litigation, which included or includes some individuals involved in the communications, did not arise until 2016. Some arose later. Yet, Dain and Goodwin have refused to produce hundreds of communications that predate any of that litigation. (*See, e.g.*, Ex. B, lines 4418-4769.)

Dain and Goodwin also fail to sustain their burden of providing evidence that each person with whom they claim common interest was party to a common interest agreement that included all other parties to the communication, much less evidence that this agreement predates the communication. On this crucial point, they provide no evidence whatsoever.

Dain and Goodwin wrongly try to shift the burden to Movants by saying that "[n]one of [Movants'] arguments defeat Dain or Goodwin's assertions of common interest privilege." (Response at p. 5.) But again, it is Dain and Goodwin's burden to establish, with facts and not just assertions, that each withheld communication was subject to attorney-client privilege in the first place and then that there was a common interest defense to waiver for every individual involved in the communication. It is not the Movants' burden to rebut Dain and Goodwin's unsupported assertions of privilege and common interest.

The Procopio privilege log reveals that Dain and Goodwin withheld communications involving more than 50 people. Dain and Goodwin have not shown how any, much less all, of them had identical legal interests or goals, much less that the communications involved legal advice concerning a common legal interest. Without that, Dain and Goodwin cannot demonstrate a basis for privilege, much less common interest protection against waiver of that privilege.

Indeed, to once again illustrate the lack of good faith on Dain and Goodwin's part in asserting privilege and common interest, this Court should consider that Dain's law firm logged communications with the guardian *ad litem* for Bernard's children, Daniel and Jacob Black, as both privileged and subject to common interest protection. (See Ex. B, lines 476, 1039, 1181,

1183, 1189, 1195, 1198, 1200, 1201, 1205, 1207.)  Plainly, however, the guardian *ad litem* for Bernard's children did not share a common interest with the other parties to those communications.

In sum, Dain and Goodwin have failed to meet their burden of showing that the withheld communications involve communications between individuals pursuing a common legal goal.

### C. Dain and Goodwin Have Failed to Show Any Agreement, Oral or Written, Prior to May 1, 2018, to Protect Communications from Disclosure on Grounds of Common Interest or Joint Defense.

Dain and Goodwin argue that a written agreement is not required for the common interest doctrine to apply.  Dain and Goodwin, however, cite authority for the proposition that some agreement or tacit understanding is required. (Response at p. 5.)  Nonetheless, they fail to present any evidence of any oral agreement or tacit understanding prior to May 1, 2018, much less when that agreement or understanding was reached and who was a party to it.  And, again, it is incumbent on Dain and Goodwin to demonstrate the existence of a common interest agreement, not Movants burden to disprove the asserted existence of such an agreement.

Given Dain and Goodwin's failure to demonstrate any agreement prior to May 1, 2018, this Court should order Dain and Goodwin to produce the thousands of communications that predate their written joint defense agreement, or that involve persons not party to that agreement. That would require production of most logged communications (Ex. B, lines 587-4579.)

### D. Dain and Goodwin Have Failed to Establish that Individuals involved in Many Withheld Communications Were Party to Any Common Interest Agreement.

In their motion to compel, Movants explained that Dain and Goodwin have asserted common interest privilege for communications with individuals who were not parties to the written joint defense agreement that Dain and some others signed beginning in May of 2018.  In response, Dain and Goodwin again argue that there need not be a written agreement for communications to be protected against waiver of privilege under the common interest doctrine.  While that may be

true, there must be an actual agreement between individuals involved in the communications for there to be common interest protection for their communications. *Ross v. Illinois Central Railroad Co.*, 2019 IL App (1st) 181579, ¶ 44; *Selby v. O'Dea,* 2017 IL App (1st) 151572, ¶ 35.

Dain and Goodwin, however, fail to present any facts or evidence to show any agreement or understanding of any kind at any time involving several individuals involved in many of the communications. Those individuals include Goodwin, Wrigley, Pamela Kerr, Melissa Cohenson ("Cohenson") and Brian Raphan ("Raphan"). None of them were parties to the May 2018 written joint defense agreement. The latter two, Cohenson and Raphan, did not even know, when asked in depositions, about any common interest privilege in the context of discovery and privilege assertions in related litigation. (Cohenson Dep. at pp. 50-53, attached as Exhibit C; Raphan Dep. at p. 20, attached as Exhibit D.) Absent that knowledge, it is difficult to conceive how they were part of a common interest agreement or understanding. Moreover, their counsel later withdrew assertions of common interest in responding to discovery. (See Exhibit E hereto.)

In addition, if there had truly been an oral agreement that predated the written joint defense agreement, one would expect the written agreement to include all parties to the prior oral agreement. In fact, that agreement does not include many involved in withheld communications.

At bottom, given the total absence of evidence demonstrating that everyone on a communication was a party to a prior oral agreement concerning joint defense or common interest confidentiality, the common interest defense to waiver cannot be sustained, for the thousands of communications with individuals who did not sign the May 2018 written joint defense agreement, or for all communications which predated that agreement.

## II.    **Other Document Production Deficiencies**

At the time the motion to compel was filed, Dain and Goodwin's counsel acknowledged that they had not produced all responsive documents, and produced some additional documents contemporaneous with their response. It remains unclear, however, if Dain and Goodwin now assert that their production is complete. That is concerning given Dain and Goodwin's failure to explain whether other documents are being withheld on grounds of privilege not logged by Dain's law firm because they never were sent or received by Dain at his law firm email address or because they involve communications after January 2019 when the Procopio privilege log was prepared.

This Court should direct Dain and Goodwin to confirm whether they have reviewed all documents for which privilege is asserted to confirm the basis for privilege, including basis for common interest protection against waiver, and whether they have now produced all responsive documents, not listed in the Procopio privilege log, that are being withheld from production on grounds of common interest privilege.[6] This Court should direct them to produce a separate privilege log if they claim privilege for any additional documents not on the Procopio log.

## III.    **Conclusion**

For the foregoing reasons, this Court should grant Bernard and Samuel Black's Motion to Compel, order Dain and Goodwin to produce all documents wrongful withheld from production on baseless assertions of privilege within 14 days, and award such other relief as just and equitable, including Bernard and Samuel's costs, including reasonable attorneys' fees, incurred in having had to bring and prosecute their motion to compel.

---

[6] To be clear, Movants are not asking this Court to require Dain and Goodwin to provide a privilege log with respect to privileged communications solely with their counsel in this case. Movants merely request that Dain and Goodwin separately log any other communications over which they are asserting common interest or attorney-client privilege.

Respectfully submitted,

BERNARD BLACK and SAMUEL BLACK, individually and as Trustees of the SNT, 2013 Trust and Issue Trust

By: /s/ Brad S. Grayson
      One of Their Attorneys

Benjamin N. Feder
Brad S. Grayson
Strauss Malk & Feder LLP
135 Revere Drive
Northbrook, IL 60062
(847) 562-1400 (Tel.)
(847) 562-1499 (Fax)
bfeder@straussmalk.com
bgrayson@straussmalk.com

# EXHIBIT A



PROCOPIO
12544 High Bluff Drive
Suite 400
San Diego, CA 92130
T. 858.720.6300
F. 619.235.0398

JESSICA T. DURAN
P. 858.720.6306
jessica.duran@procopio.com

DEL MAR HEIGHTS
LAS VEGAS
PHOENIX
SAN DIEGO
SILICON VALLEY

July 10, 2019

Bryan G. Schumann
Strauss Malk & Feder LLP
135 Revere Drive
Northbrook, IL 60062

Re: <u>JP Morgan Chase Bank v. Black, et al.</u>
Case No. 18-CV-03447

Dear Mr. Schumann:

This letter is Procopio, Cory, Hargeaves & Savitch's ("Procopio") response to Strauss Malk & Feder's ("Strauss") communication of June 4, 2019 and serves to outline Procopio's obligations under the Federal Rules of Civil Procedure and local authority. In addition, Procopio encloses its third amended privilege log and produces an additional 1,825 documents. The password to access the privilege log and document production is D@in_41720%.

As a non-party witness, Procopio is afforded protection from unduly burdensome and expensive tasks that fall outside the requirements of the Federal Rules of Civil Procedure. Fed. R. Civ. Proc. 45(d)(1).

> Fed. R. Civ. Proc. 45(d)(1), affords non-parties protection from undue burden. **A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party who fails to comply.** Fed. R. Civ. Proc. 45(d)(1). (emphasis added).



### A. Compliance Court:

At the outset, I direct you to Fed. R. Civ. Proc. 45(d)(2)(B)(i) which clearly requires that at any time, on notice of the commanded person, the serving party may move the court for the **district where compliance is required** for an order compelling production or inspection. (emphasis added). In the case of, In re Packaged Seafood Products Antitrust Litigation, Case No. 15-md-2670-JLS-MDD, 2018 WL 454440, (S.D. Cal. January 17, 2018), class action plaintiffs filed a complaint alleging a price-fixing conspiracy by the major manufactures of packaged seafood products and their parent companies. Non-party, Lion Capital, LLC ("Lion') was served with two subpoenas for the production of documents at its office in Los Angeles, CA which is located in the Central District of California. In response to the subpoenas, Lion served objections but agreed, without waiving its objections, to produce responsive documents on a rolling basis. Lion stopped production after plaintiffs named Lion as a defendant and plaintiffs moved to compel production. Plaintiffs filed their motion in the Southern District of California. Plaintiffs argued that because the case involved multi-district litigation the court of compliance would likely have transferred the matter to the Southern District of California under Fed. R. Civ. Proc. 45(f) and that the Southern District of California should ignore Fed. R. Civ. Proc. (d)(2)(B)(i). The court rejected plaintiff's argument and held that Fed. R. Civ. Proc. (d)(2)(B)(i) clearly and unequivocally requires that motions to compel compliance with Rule 45 subpoenas be brought in the court where compliance is required.

The Southern District of California steadfastly adheres to the requirement in Fed. R. Civ. Proc. (d)(2)(B)(i), even in the face of a complicated multi-district proceeding where the likelihood of a transfer may be greater. Strauss issued its subpoena to Procopio at its main office in San Diego, CA, therefore, the compliance court is the Southern District of California. Strauss' reliance on Northern District of Illinois law is simply improper and unfounded. The pertinent jurisdiction and applicable source of authority is the Southern District of CA.

Further, Fed. R. Civ. Proc. 45(f) provides that the transfer of a motion to compel to the court where the action is pending requires either consent of the subpoenaed party or exceptional circumstances. Fed. R. Civ. Proc. 45(f); In re Packaged Seafood Products Antitrust Litigation, Case No. 15-md-2670-JLS-MDD, 2018 WL 454440, (S.D. Cal. January 17, 2018).

### B. Procopio's Privilege Log:

Additional provisions of Fed. R. Civ. Proc. 45 unambiguously set forth Procopio's obligations in responding to Strauss' subpoena. Fed. R. Civ. Proc. 45(e)(B), states that if a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form (or forms) in which it is ordinarily maintained or in a reasonably useable form or forms. Here, Strauss did not specify a form for production in its subpoena, or rider thereto, to Procopio. Therefore, in accordance with Fed. R. Civ. Proc. 45(e)(B), Procopio produced 11,000+ pages of documents in exactly the form it is ordinarily maintained and utilized, which is in an electronically stored format ("ESI"). This production included uploading and populating the documentation metadata from Relativity into an Excel based privilege log.

Relativity document management software stores and maintains all of Procopio's ESI. As explained in previous correspondence, Procopio's privilege log is populated by extracting from Relativity each document's unique metadata and transferring it into an Excel spreadsheet which becomes the



privilege log. Metadata is described as the embedded content within ESI that includes information about each individual document such as author, recipient(s), subject, file name, CC recipient(s), BCC recipient(s), and date generated. Metadata is akin to a document's unique fingerprint. However, not all documents contain all metadata. For example, if a .PDF does not contain any or all metadata it is because at the moment the document was created the properties of the document were not populated. This may be due to user preferences or system default settings as well as the general principle that no child inherits the metadata of their parent. Here, the majority if not all of the privilege log entries lacking complete information are PDFs. The lack of metadata will cause information such as author, recipient(s), subject, file name, CC recipient(s), BCC recipient(s), and date generated to become unavailable on the privilege log.

Some of the privileged documentation identified in Procopio's privilege log lacks metadata and this is the reason some of these cells are not populated. There simply is no ESI information to extract in order to populate the fields within the privilege log. Fed. R. Civ. Proc. 45(e)(D) provides that, the person responding **need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.** (emphasis added). As such, Procopio objects to Strauss' request that it perform the overly burdensome task of altering the metadata of nearly 5,000 documents by manually reviewing each document and typing in any missing information that did not auto-generate. (In re Imperial Corp. of America, 174 F.R.D. 475, 479 (S.D. Cal. 1997); Fed. R. Civ. Proc. 45(e)(C) (person responding need not produce the same electronically stored information in more than one form).

Furthermore, Fed. R. Civ. Proc. 45(e)(2)(A) does not require that a party asserting a privilege disclose the capacities of the individuals identified in the log. This simply is not the law. The law requires that Procopio, (i) expressly make the claim; and (ii) describe **the nature of the documents, communications,** or tangible things **not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.** (emphasis added). Nevertheless, Procopio has amended its privilege log v.3 to provide a legend identifying individuals and their association to others. See bottom tab of privilege log entitled "legend."

### C. Attorney/Client Privilege:

The 9th Circuit has consistently upheld the requirements for identifying the attorney-client privilege within a privilege log. In, Skyline Wesleyan Church v. California Department of Managed Health Care, 322 F.R.D. 571, 584 (S.D. Cal. 2017), the church sued California Department of Managed Health Care and its director, challenging the Department's requirement that group health insurance plans provide coverage for all legal abortions. On appeal, the church moved to compel production of documents and the Department moved to seal documents. The court held that the attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation. Id. at 583, citing to United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996). The court stated that the party asserting the privilege must make a prima facie showing that the privilege protects the information the party intends to withhold. Id. at 584, citing to In re Grand Jury Investigation, 974 F.2d 1068, 1071, (9th Cir. 1992).



The court held that a privilege log which identifies the following is sufficient to establish the attorney-client privilege: (a) attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared or dated, (citing to In re Grand Jury Investigation, 974 F.2d at 1071. The Syline court held that Department submitted a privilege log and a declaration from their counsel regarding the confidential nature of the documents. The Third Amended Privilege Log contained the following categories: (1) Bates Beg[in]; (2) Bates End; (3) Date Sent; (4) Email To; (5) Email From; (6) Email CC; (7) Email BCC; (8) Description; (9) Privileged Designation; and (10) Basis for Privilege." After careful review of the Third Amended Privilege Log and the attorney's declaration, the court found that Department made a prima facie showing that the attorney-client privilege applied to the 261 documents designated as such. Skyline Wesleyan Church, 322 F.R.D. at 584.

Procopio's privilege log complies with the 9th Circuit requirements and includes all of the very same elements the court found sufficient in Skyline: author, recipient(s), subject, file name, CC recipient(s), BCC recipient(s), date generated, the asserted privilege and a description of the privilege which in conjunction with the subject description serves to identify the nature and general substance of the communication. The fields, from, CC and BCC provides Strauss with identification of individuals that have seen or been furnished with the communication Procopio has now attached a third amended version of its privilege log which includes a legend. The legend will assist Strauss in identifying the attorney(ies) and their clients. The amended log now also includes the control end and email BCC fields. Again, Procopio reiterates, this information is fully provided to the extent it is reasonably accessible via the documents' metadata. Fed. R. Civ. Proc. 45(e)(D).

In response to the assertion that Strauss is unable to ascertain which document is an attachment to another document, Procopio reiterates the following example: privilege log entry no. 2 (reference is to the number on the bottom of the cell entry) has a control beg number of PCHS_TDAIN0000000134.0001. This numerical sequence reveals that this particular document is attachment 1 (i.e. .0001) to the parent document identified as PCHS_TDAIN0000000134, located on Procopio's privilege log cell entry as no. 2, and so on. Each attachment will have the parent numerical sequence following a second numerical sequence. Attachments are in numerical order. Procopio's third amended privilege log also identifies each attachment(s) next to parent document by using "Ctrl Beg Attach and Ctrl End Attach."

### D. Common Interest Doctrine:

#### i. Attorney-Client Privilege:

Procopio is afforded the protection of the common interest exception as it applies to attorney-client privileged communication. The communications in Procopio's privilege log asserting the common interest are identified on the privilege log and meet the requirements of the Sothern District of California. More specifically, the communications were made by separate individuals all working together in furtherance of pursuing the best interests of Ms. Joanne Black and that privilege has not been waived by disclosure to others outside of the established common interest.



The common interest exception applies when (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived. Regents of University of California v. Affymetrix, Inc., 326 F.R.D. 275, 279 (S.D. Cal. 2018), citing U.S. v. Bergonzi, 216 F.R.D. 487, 495 (N.D. Cal. 2003), citing In re Mortgage Realty Trust, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997).

The [common interest] exception is available regardless of whether litigation has actually commenced. Continental Oil Co. v. United States, 330 F.2d 347, 350 (9th Cir. 1964). (emphasis added). Furthermore, in order to invoke the privilege of the common interest doctrine the 9th Circuit has held that no written agreement is required and that a joint defense agreement may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation. U.S. v. Gonzalez, 669 F.3d 974, 979 (9th Cir. 2012) (emphasis added), citing Cont'l Oil, 330 F.2d at 350 (privilege applies even "without an express understanding that the recipient shall not communicate the contents thereof to others"); In re Regents of University of California, 101 F.3d 1386, 1389 (Fed.Cir.1996) (emphasis added) (it may reasonably be inferred from consultation among clients and counsel allied in common legal cause that disclosures are confidential); Other district courts have also found that a written agreement is not necessary to establishing a common interest agreement. HSH Nordbank AG v. Swerdlow, 259 F.R.D. 64, 72 n. 12 (S.D.N.Y. 2009) (noting joint agreement need not be in writing to protect a communication); Avocent Redmond Corp. v. Rose Elecs., Inc., 516 F.Supp.2d 1199, 1203 (W.D. Wash.2007) (a written agreement is not required to invoke the joint defense privilege).

The existence of an express or implied joint defense agreement "is not necessarily an all-or-nothing proposition and may be created by conduct as well as an express agreement. Gonzalez, 669 F.3d at 981. (emphasis added). The separate parties "need not have identical interests and may even have some adverse motives," but must share a common interest in litigation. Id. at 980, citing Hunydee, 355 F.2d at 185. It is clear based on the law that Procopio is not required to establish an identical legal interest or provide a written agreement pre-dating May 2018.

The law unambiguously provides that a common interest may exist prior to litigation, a written agreement is not required to establish a common interest and the parties need not have identical interests. A common interest is gleamed by the circumstances surrounding the parties and their conduct in response to those circumstances. Strauss indicated that it is "aware of only one common interest agreement entered into in May 2018." It simply is of no consequence whether Strauss is only aware of one agreement because an "agreement" need not be in writing. The critical inquiry is whether a sufficient commonality of interests exists between the parties such that the privilege may be asserted. In re Imperial Corp. of America, 179 F.R.D. 286, 289 (S.D.Cal.1998).



### ii. Work-Product Privilege:

Similarly, the 9th Circuit has a more liberal application of the common interest doctrine as it applies specifically to work-product protection and has held that while the joint defense privilege is an extension of the attorney-client privilege, it also applies to the work-product doctrine. Western Fuels Assn. v. Burlington N.R.R., 102 F.R.D. 201, 203 (D. Wyo. 1984).

The doctrine provides that disclosure to a third party does not waive work-product protection where the third party shares a common interest with the disclosing party that is adverse to that of the party seeking the discovery. Bergonzi, 216 F.R.D. at 495. (emphasis added). Common interests in the work product realm are not construed so narrowly as to limit the exception only to co-parties. U.S. ex rel Burroughs v. DeNardi Corp., 167 F.R.D. 680, 685 (S.D. Cal. 1996), citing to Loustalet v. Refco, 154 F.R.D. 243, 247 (C.D. Cal. 1992). (emphasis added). In addition, opinion-work product enjoys a nearly absolute immunity and can be discovered only in rare and extraordinary circumstances. U.S. ex rel Burroughs, 167 F.R.D at 684, citing to Handgards, Inc. v. Johnson & Johnson, 413 F.Supp. 926 (N.D. Cal. 1976). (emphasis added).

Procopio is not required to provide any work-product protected during the course of common interest communications prior to May 2018, or thereafter.

### iii. Scope of Common-Interest As to Ms. Black and Mr. Dain Communications

Procopio is in receipt of Strauss' correspondence of June 18, 2019, which asserts to provide guidance on privilege and common interest claims made by Procopio. We have reviewed your letter and we agree with some of the assertions made and in response we have produced additional documentation to that extent.

Procopio, however disagrees with the over simplification of Strauss' assertion that a communication which includes Mr. Dain and Ms. Black may not assert an attorney-client privilege and common interest claim because Mr. Dain is a co-trustee to. In the email exchanges involving both Ms. Black and Mr. Dain, as well as others, at least one if not more of Ms. Black's, Mr. Dain's and/or Ms. Wrigley's attorneys are present and an integral participant of the communication. There are no communications in Procopio's privilege log wherein the communications involve only Mr. Dain and Ms. Black.

An agreement to set-up a common interest strategy may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are potentially or may be co-litigants or have common interests in litigation. Moreover, the communication is not waived by disclosure to others who are aligned in common interest for the same legal strategy and cause. In order for the common interest exception to a waiver of the attorney-client privilege to apply, the communications at issue must be designed to further the parties' joint strategy. The parties need not have identical interests, only that they share a common interest in the ligation at issue. Regents of University of California, 326 F.R.D. at 279; Bergonzi, 216 F.R.D. at 495.



Clearly, Mr. Dain, Ms. Black and their respective attorneys are allied in their efforts to seek justice concerning Mr. Black's administration of trust assets. Therefore, the communications at issue are protected by the attorney-client privilege and common interest doctrine.

### E. Testimony:

Strauss, brazenly pointed out that Cherie Wrigley's attorney, Melissa Cohenson testified that she never entered into a common interest agreement on behalf of her client. Yet, there is no citation or attachment containing Ms. Cohenson's testimony. As discussed above, a common interest agreement need not be written and may be implied form the circumstances and the parties' conduct. Further, Strauss states that Cherie Wrigley testified when asked about confidential communications that "[she] wasn't thinking of that." This tidbit of testimony does not mean that Ms. Wrigley did not enter into a common interest agreement. In fact, it does not appear to even be related to a question concerning a common interest agreement. It really fails to prove anything. Procopio suspects that these references may have been taken out of context. Please send the relevant testimony so that Procopio may make an evaluation of the testimony within the totality of the context in which it was provided.

### F. Cost-Shifting:

The privilege log now consists of 4,689 documents, of those, 247 documents do not have all of the metadata necessary to populate various fields within the privilege log, such as author, subject, CC etc. My hourly rate is $350 an hour and I have billed approximately 251 hours, totaling nearly $88,000 in attorney's fees. This does not include the staff time from our ESI department. Procopio has undoubtedly spent a significant amount of time and money complying with Strauss' subpoena in another party's lawsuit. I anticipate manual input of any missing data to take an additional 20 hours, to be billed at my rate of $350 per hour which would total an additional $7,000. If Strauss would like to have each field within the privilege log that is missing metadata to be manually populated, Procopio requests that Strauss share in the costs.

Pursuant to Fed. R. Civ. Proc. 45(d)(2)(B)(ii) which states that when a court orders compliance with a subpoena over an objection, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." In, Legal Voice v. Stormans, Inc., 738 F.3d 1178 (9th Cir. 2013), the court relied upon the holding in the leading case of Linder v. Calero-Portocarrero, 251 F.3d 178 (D.C. Cir. 2001) which held that cost-shifting is mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena. Id. at 182. The Linder court held that there are only two relevant considerations under Fed. R. Civ. Proc. (d)(2)(B)(ii): (1) whether the subpoena imposes significant expenses on the non-party, and (2) whether those expenses are significant. Legal Voice at 1184. If these two requirements are satisfied, the court must protect the non-party by requiring that the party seeking discovery to bear at least enough of the expense to render the remainder "non-significant." Id.; Linder, 251 F.3d at 182. The 9th Circuit holds that the relevant inquiry in whether to shift costs is whether the subpoena imposes significant expenses on the non-party, and if so, the district court must order the party seeking discovery to bear some of the cost of compliance. Linder, 251 F.3d at 182; Legal Voice, 738 F.3d at 1184.



The <u>Legal Voice</u> court had "no trouble concluding that $20,000 is significant." <u>Id.</u> at 1185. In <u>Linder</u> the court held that $9,000 may be sufficiently significant to justify cost-shifting. <u>Linder</u>, 251 F.3d at 182. See also, the matter of <u>Callwave Commc'n v. Wavemarket, Inc.</u>, No. C 14-80112 JSW (LB), 2017 WL 2918218 (N.D. Cal. June 26, 2014) which held that attorney's fees may also be appropriately granted as a reasonable cost of compliance. Surely, the $88,000 already accrued by Procopio in attorney's fees has surpassed the courts' notion of cost significance.

Please advise as to whether Strauss is interested in cost-shifting as it pertains to the manual input of any missing data in the privilege log.

G. <u>Conclusion</u>

Procopio complied with the subpoena request by producing over 11,000+ pages of documents with a comprehensive privilege log which provided information such as, author, recipient(s), subject, file name, CC recipient(s), BCC recipient(s), and date generated to the extent that the metadata was available. In response to your meet and confer of April 3, 2019, Procopio modified its privilege log on April 10, 2019. The modification included additional information as to the attachments, such as the privilege descriptions, author, recipient(s), subject, file name, CC recipient(s), and date generated to the extent that the metadata was available. In response to your meet and confer letter of May 8, 2019, Procopio replied on May 21, 2019 with an explanation of the ESI processes which goes into generating our privilege log.

Now, Procopio provides an additional 29,000+ pages of documents and a third amended version of its 9th Circuit compliant privilege log which also includes a legend. The legend identifies the names of individuals and their associations with others located within the documentation. The amended log also reflects newly added data fields such as Bates End and BCC (recipients). Lastly, the log only reflects documentation withheld based on a document-by-document analysis of privilege irrespective of the privilege designation of any family members. All non-privileged communications have been produced.

Kindest regards,

/s/ Jessica L. Thompson Duran

Jessica T. Duran
Attorney, of
Procopio, Cory, Hargreaves & Savitch LLP

# EXHIBIT B

# EXHIBIT C

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3    - - - - - - - - - - - - - - - - -x
      KATHERINE BLACK,                  :
 4                                      :
                  Plaintiff,            : Case No.:
 5                                      : 17-cv-00101
        v.                              :
 6                                      :
      CHERIE WRIGLEY, MELISSA COHENSON, :
 7    BRIAN A. RAPHAN, P.C., and        :
      PAMELA KERR,                      :
 8                                      :
                                        :
 9                Defendants.           :
                                        :
10    - - - - - - - - - - - - - - - - -x

11

12              Oral deposition of MELISSA COHENSON, taken

13    pursuant to Notice, was held at the Law Offices of

14    LITCHFIELD CAVO LLP, 420 Lexington Avenue, New York,

15    New York, commencing August 28, 2018, 9:51 a.m., on

16    the above date, before Amanda McCredo, a Court

17    Reporter and Notary Public in the State of New

18    York.
                         - - -
19

20

21

22

23

24

25
```

Page 50

BY MR. SCHAALMAN:
1  BY MR. SCHAALMAN:
2      Q    Did you create the document?
3      A    I don't even know what document we're
4  talking about here, to be honest.  I know you said
5  it's a simple question.  To me, it's not.  This is
6  the first time I'm looking at Exhibit 3.  I don't
7  know what this spreadsheet is.  I'm looking at the
8  description here which says, "Property valuation,"
9  and you read the address and that rings a bell.
10      I don't know if this was something -- it
11 looks to me here as it's from Pamela Kerr -- it has
12 an email address -- sent it to me.
13      So in strictly just looking at this
14 description from Pamela Kerr to Melissa Cohenson, I
15 do not believe I created it.  And I did not invoke
16 any privilege as I did not even create this.
17      Q    I understand.  And I'm entitled to explore
18 whether the privilege was appropriately invoked and
19 I think you, as the recipient, are a fair target for
20 my questions about whether the privilege was
21 properly invoked.
22      MR. FANTONE:  I would like to note for the
23      record, if Pamela Kerr was retained by counsel,
24      then her work would also constitute work
25      product.  It doesn't necessarily mean because

Page 51

1      Melissa didn't create it, that it doesn't
2      constitute work product.
3          If Pamela Kerr was retained as counsel, the
4      documents she created would also constitute
5      work product.
6      Q    Ms. Cohenson, what is the common interest
7  you shared with Ms. Kerr regarding the email dated
8  February 18, 2016 addressed to you?
9      A    May I ask what you mean by "common
10 interest"?
11      Q    You can.  But it's the privilege that's
12 being asserted on your behalf.
13      So I would first like you to answer that
14 question based on whatever understanding you have
15 about common interest.
16      MR. CRAWFORD:  Before she answers, I'm
17      going to interject that these are legal
18      objections that were asserted by her counsel,
19      as is very common and you have done in your
20      discovery.
21          The objections are asserted by the
22      attorneys and the answers are provided by the
23      clients, the parties.
24          Subject to that, you can answer.
25      A    Am I allowed to ask --

Page 52

1      Q    You're really not allowed to ask any
2  questions of me.  You're certainly allowed to ask
3  questions of your counsel.
4          In the hopes of getting through this as
5  expeditiously and as efficiently as possible, your
6  asking me questions would not be helpful.
7          I'll proceed with other questions.
8      A    Okay.
9      Q    Because that's my job, is to ask you
10 questions and your job is to give answers.
11      A    Yes.
12      Q    The next document, which is MCBR68 through
13 69, again, is identified as an email.  This one
14 appears to be from Ira Salzman to a number of
15 persons and your email address is listed as someone
16 who received it.
17          Do you recall this email, which is
18 apparently dated March 10, 2016?
19      A    I recall having been sent emails from
20 Mr. Salzman with the group of people that are listed
21 here on a few occasions.  And this description,
22 "Joanne Black, immediate next steps," I have no idea
23 what it involved, like, specifically.
24      Q    And you didn't create this document, to the
25 best of your recollection, did you?

Page 53

1      A    No.
2      Q    So it's not your work product, is it?
3      A    Well, I may have replied.
4      Q    Well, this isn't a reply that's being
5  identified here.  It's a document and it appears to
6  be a document from Ira Salzman to a group of people
7  including you, correct?
8      A    Correct.
9          Can I ask my counsel a question?
10      Q    That's fine.
11      MR. CRAWFORD:  She is asking me who
12      prepared this.
13          This is a privileged log that was prepared
14      by our firm of documents that we believe are
15      protected from discovery.
16      THE WITNESS:  Okay.
17      MR. CRAWFORD:  So these are documents that
18      would have been in the file that was provided
19      by Brian Raphan's office and, again, these are
20      what we believe are privileged documents and
21      that's why you haven't seen it.
22      MR. SCHAALMAN:  Mr. Crawford, are you
23      willing to stipulate these documents were in
24      the file that Ms. Cohenson received from Brian
25      Raphan or her first attorney received from

# EXHIBIT D

08/28/2018                          BRIAN RAPHAN                            Page 1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3      - - - - - - - - - - - - - - - - -x
        KATHERINE BLACK,                    :
 4                                          :
                    Plaintiff,              : Case No.:
 5                                          : 17-cv-00101
           v.                               :
 6                                          :
        CHERIE WRIGLEY, MELISSA COHENSON,   :
 7      BRIAN A. RAPHAN, P.C., and          :
        PAMELA KERR,                        :
 8                                          :
                                            :
 9                  Defendants.             :
                                            :
10      - - - - - - - - - - - - - - - - -x

11

12              Oral deposition of BRIAN RAPHAN and BRIAN

13      RAPHAN, P.C., by BRIAN RAPHAN, taken pursuant to

14      Notice, was held at the Law Offices of LITCHFIELD

15      CAVO LLP, 420 Lexington Avenue, New York, New York,

16      commencing August 28, 2018, 3:41 p.m., on the above

17      date, before Amanda McCredo, a Court Reporter and

18      Notary Public in the State of New York.

19
                            - - -
20

21

22

23

24

25
```

08/28/2018                      BRIAN RAPHAN                        Page 20

```
 1    counsel.
 2        Q    I'm going to show you some documents,
 3    Mr. Raphan, and hopefully that will stimulate some
 4    answers here.
 5             Did you have any role in preparing the
 6    privilege log in this case?
 7        A    No.
 8        Q    Have you ever seen the privilege log?
 9        A    No.
10        Q    Do you know the basis on which the common
11    interest exception to the attorney-client privilege
12    is being asserted in this case?
13        A    I don't understand the question.
14        Q    Do you know what a common interest
15    privilege is?
16        A    Other than guessing, no.
17             I didn't read the privilege log, but it was
18    in front of my lawyer when we were speaking.
19        Q    I appreciate that.
20             There are a pile of exhibits here.  Can you
21    pull out what's been marked as Exhibit 7?  They
22    should be in order.
23        A    I got it.
24                        (Exhibit 7 was shown to the
25                        witness.)
```

# EXHIBIT E

From: **Crawford, Thomas** <crawford@litchfieldcavo.com>
Date: Wed, Mar 6, 2019 at 6:29 PM
Subject: Black v. Wrigley, et al.
To: donald homyk <donaldhomyk@gmail.com>
CC: Ruscheinski, Paul <ruscheinski@litchfieldcavo.com>, Ameti, Dean
<ameti@litchfieldcavo.com>

Don,


I'm sorry for not getting back to you sooner about the privilege logs. We are extremely short-
staffed due to several recent associates departures and maternity leaves, and Paul and I are
preparing for a trial on Tuesday. Anyway, I've looked into this. I first started by looking at the
RFPs directed to Cohenson and Raphan P.C. I then looked at the complaints in this case and the
NY case. I think you will agree that the scope of this case is far narrower from the scope of the
NY case. The NY action involves 3 plaintiffs, none of which are Kate Black. My understanding
is that the three plaintiffs in that case (Sarah H. Black, Daniel L. Black and Jacob L. Black) are
Bernard Black's children. I do not know if they are also Kate Black's children, which I
understand are a blended family. In addition, the NY case involves 6 additional defendants that
are not parties in the Illinois litigation. My understanding is that the NY action does not involve
a defamation claim. As a natural result of the different parties and issues involved in the two
actions, the discovery requests in these actions are not identical. In summary, it appears that the
documents sought vary greatly from those sought so the universe of potentially responsive
documents is smaller in this action. As a result, the universe of potentially withheld documents
is smaller.


Further, your predecessor's RFPs served on my clients, a total of 11 requests, which attempt to
be tailored to this case. For example, four deal with your client's employer, which we presume is
limited to Northwestern Law School. There was no definition of "Plaintiff's employer". One is
for documents that related to our clients' affirmative defenses. Two more requests seek
documents related, in part, to the Estate of Renata Black's Trust. Out of the 695 paragraphs in
the operative pleading, there is not a single reference to Renata Black. We objected to those two
as overly broad and unduly burdensome. In addition, we asserted objections to many of the
Requests as to specific words or phrases used being vague and ambiguous, among other
objections, which made it difficult to determine what would be responsive, and thus what might
need to be withheld. Your predecessor did not attempt to clarify the phrases at issue.


I will note that our responses need to be supplemented due to the prior assertion of the Common
Interest Doctrine, which has since been withdrawn, and several responses which included

"investigation continues". I will supplement the responses and objections. Please feel free to contact me if you have any questions or would like to discuss any of this.


Tom

**Thomas M. Crawford**

Partner

Admitted in Illinois, Maryland and Iowa

D 312.781.6679 | F 312.781.6630 | M 847.840.4763

Crawford@LitchfieldCavo.com



303 West Madison | Suite 300 | Chicago, IL 60606

**www.LitchfieldCavo.com**