## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and J.P. MORGAN SECURITIES LLC | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-03447 |
| v. | ) ) | Honorable Andrea R. Wood |
| BERNARD S. BLACK, individually and as trustee, SAMUEL BLACK, individually and as trustee, ANTHONY DAIN, individually and as trustee, KATHERINE LITVAK, OLGA DAL, and JEANNETTE GOODWIN, as court appointed Conservator, and JOANNE BLACK, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### AMENDED MOTION FOR LEAVE TO PROCEED

Defendant Olga Dal, by and through her undersigned counsel, moves this Court for leave to proceed with supplemental proceedings in the Circuit Court of Cook County and to modify this Court's order dated May 15, 2019 as follows:

### Introduction

One discrete piece of this complicated, evolving case has come to rest. As a result, it is appropriate for the Court to decide, on the basis of a final appellate court order from the Illinois Appellate Court, that Defendant Olga Dal can proceed with collection on a judgment that she obtained in 2017. Anthony Dain and Jeanette Goodwin, two other defendants in this matter, intervened in that case and raised the same arguments against enforcement of Olga Dal's loan to the trusts that they advance in this matter. They were unsuccessful, and the Illinois Appellate Court has affirmed the trial court's judgment in full. This has a preclusive and final effect in this litigation

{00319234}

and clears the way for Ms. Dal to proceed to collection. We request that the Court modify an earlier order in the matter to permit collection to proceed, and grant further relief as detailed below.

## Background and Procedural History

1. Olga Dal obtained a judgment against certain of the other defendants in this matter, Bernard Black and Samuel Black, each as trustees of three trusts: the Supplemental Needs Trust for the Benefit of Joanne Black ("SNT"), the Irrevocable Trust for the Benefit of the Issue of Renata Black ("IT") and the Joanne Black 2013 Trust on October 12, 2017 ("Judgment").

2. The instant matter was filed on May 15, 2018 (the "Interpleader").

3. Certain of the other defendants in this action, Jeanette Goodwin as Court-Appointed Successor Conservator for Joanne Black and Anthony Dain (the "Intervenors"), petitioned to vacate the Judgment (the "Intervenor Petition").

4. In a minute entry on May 15, 2019, the Court ordered:

Plaintiffs shall not allow any withdrawals of the interpleader assets from the accounts or execute any instructions with respect to the interpleader assets, without prior approval from the Court. Such approval shall be sought by written motion with due notice provided to all Defendants.

Dkt. No. 68.

5. The Intervenor Petition was denied by the trial court in Cook County on June 3, 2019. Thereafter, the Intervenors timely appealed.

6. On November 30, 2020, the Illinois Appellate Court, in a Rule 23 order, affirmed the trial court's denial of the Intervenor Petition. See Exhibit A, Rule 23 Order of the Illinois Appellate Court dated November 30, 2020. Intervenors did not petition for rehearing, nor did they petition for leave to appeal to the Illinois Supreme Court, and the time to do so has expired.

7. On January 21, 2021, the mandate of the Illinois Appellate Court was filed. Exhibit B.

{00319234}

8.      The Complaint summarizes the dispute over Dal's judgment as follows:

> C.  **Dal's Claims as judgment creditor:** Dal claims some of the Property in the IT's and SNT's accounts based on the Illinois judgments agreed to by Bernard and Samuel, and her Illinois liens.
> i. Dal's claims/liens based on the Illinois judgments are adverse to **Goodwin's** claims/lien based on the Colorado judgments.
> ii. Dal's claims/liens based on the Illinois judgments are adverse to **Dain's** claim as co-trustee of the SNT. Goodwin and Dain have moved to vacate the agreed judgments and to void Dal's liens alleging they are fraudulent.

Dkt. No. 1, p. 16.

9.      Olga Dal's judgment of October 12, 2017 predates any other judgment or order regarding the disputed funds. In particular, this judgment predates any of the orders entered by the Denver Probate Court ("DPC") that affect the funds in the IT and SNT that are the subject of this interpleader action.[1]

10.     Crucially, Ms. Dal's judgment predates the April 27, 2018 order of the DPC that Intervenors rely upon in their Counterclaims to contest Ms. Dal's rights to the disputed funds. See Dkt. No. 32, ¶ 183.  That order was, in any case, subsequently vacated by the Colorado Court of Appeals.

11.     Thus, the Dal judgment is now clear of any of the claims raised by other defendants in this matter. All of the claims asserted against Dal by Dain and Goodwin in their Counterclaim have been foreclosed by the affirmation of that judgment by the Illinois Appellate Court. See Counterclaim (Dkt No. 32) ¶¶ 150 – 181, Prayer for Relief, (f), (g), and (h). Specifically, the prayer for relief seeks:

> f. Declare that the judgments obtained by Litvak and Dal against Bernard and Samuel are void and must be vacated.

---

[1]  Two prior orders of the Denver Probate Court authorized defendant Dain to withdraw specified amounts of funds from the SNT to pay professional fees.  Those funds have been withdrawn and spent, so these orders do not affect the disposition of the assets remaining in the IT and the SNT, which are the subject of this interpleader action.

g. Restrain Bernard, Samuel, Dal, and Litvak from initiating or prosecuting any further litigation regarding the Property.

h. Restrain Dal and Litvak from obtaining or enforcing any citation stemming from the judgments obtained against Bernard and Samuel.

12. The affirmation of Dal's 2017 judgment by the Illinois Appellate Court is *res judicata*, and conclusively defeats each of these requests for relief.

13. "As we recently noted in *Allen v. McCurry, supra,* 'though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482, 102 S. Ct. 1883, 1898, 72 L. Ed. 2d 262 (1982) citing and quoting *Allen v. McCurry*, 449 U.S., at 95, 101 S.Ct., at 415.

14. For *res judicata* to preclude a subsequent action, there must be: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies." *Markette v. HSBC Bank, USA, Nat'l Ass'n as Tr. for SG Mortg. Sec. Tr. 2006-FRE1, Asset-Backed Certificates Series 2006-FRE1*, No. 15-CV-05271, 2019 WL 1112264, at *3 (N.D. Ill. Mar. 11, 2019) (Wood, J.) citing and quoting *Hudson v. City of Chicago*, 889 N.E.2d 210, 215 (Ill. 2008).

15. All of the claims raised by Dain and Goodwin against Dal in this case were or could have been raised in the underlying state court lawsuit. Res judicata thus applies to defeat the claims here, as the parties are the same, there was a final adjudication on the merits, and there is an identity of causes of action. Specifically, in the state court matter, Dain and Goodwin raised all of the factual and legal claims they make here, including the claim that there were orders related to the trust assets issued by the Denver Probate Court that would vitiate Ms. Dal's rights to collect on

{00319234}

her judgment. Simply put, Dain and Goodwin's claims regarding Ms. Dal's judgment were fully adjudicated against them, on the merits, by a court of competent jurisdiction. They appealed, and lost again. No further appeal is available. There can be no further determination of rights, and Ms. Dal should be granted leave to proceed with collection proceedings in the Circuit Court of Cook County.

16. Dal has already been delayed for over three years in collecting on her judgment by claims by Intervenors, which were found to have no merit. She should not be delayed further. Thus, Dal respectfully seeks a ruling from this Court granting her leave to proceed with supplementary proceedings in the Circuit Court of Cook County and an order in this case that the Plaintiffs in this matter may release the funds that are found to be subject to turnover in those proceedings.

17. For the information of the Court, the value of the trust assets held by Plaintiffs is currently approximately $6 million. This motion concerns only the portion of those assets on which Dal has a claim. That amount will be determined by the Cook County Circuit Court, but should not exceed 15% of the overall amount of trust assets.

## <u>Conclusion</u>

The purpose of an interpleader is to allow a court to sort out the priority and effectiveness of competing claims to an identifiable pool of money. With respect to Dal's claims on the funds, and the competing claims raised by the Intervenors Goodwin and Dain, the underlying state court litigation has fully and finally resolved those issues. Any and all of the issues asserted here by Dain and Goodwin against Dal's claim to the disputed funds have been adjudicated against Goodwin and Dain. As result, res judicata applies and Dal should be allowed to proceed with collection on those claims in state court collection proceedings and the Court should enter an order

{00319234}

that allows her to do and also authorizes the Plaintiffs to distribute those funds in accordance with a future order received from the state court.

Wherefore, Olga Dal prays that the Court grant this motion and enter an order consistent with the relief requested herein and grant her any other relief that the Court deems just and merited.

Dated: March 10, 2021          Respectfully submitted,

OLGA DAL

By:    /s/ David Feller Hyde
One of Her Attorneys

Eugene E. Murphy, Jr.(ARDC # 6198863)
gmurphy@murphylitigation.com
David F. Hyde (ARDC # 6289799)
dhyde@murphylitigation.com
MURPHY LAW GROUP LLC
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone (312) 202-3200
FIRM ID: 42101

{00319234}

2020 IL App (1st) 191348-U

SIXTH DIVISION
November 30, 2020

No. 1-19-1348

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent
by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| OLGA DAL, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | Appeal from the |
| BERNARD S. BLACK and SAMUEL BLACK, as | ) | Circuit Court of |
| Trustees of the Supplemental Needs Trust for the Benefit | ) | Cook County. |
| of Joanne Black, Dated December 19, 1997; BERNARD | ) | |
| S. BLACK and SAMUEL BLACK, as Trustees of the | ) | |
| Irrevocable Trust for the Benefit of the Issue of Renata | ) | |
| Black, Dated December 19, 1997; and BERNARD S. | ) | No. 17 L 9744 |
| BLACK and SAMUEL BLACK, as Trustees of the | ) | |
| Joanne Black 2013 Trust Agreement, Dated March 22, | ) | |
| 2013, | ) | Honorable |
| | ) | Thomas E. Mulroy, |
| Defendants-Appellees, | ) | Judge Presiding. |
| | ) | |
| (JEANETTE GOODWIN, Court-Appointed Successor | ) | |
| Conservator for Joanne Black, and ANTHONY DAIN, | ) | |
| Trustee, | ) | |
| | ) | |
| Intervenors-Appellants). | ) | |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Harris and Griffin concurred in the judgment.

EXHIBIT A

No. 1-19-1348

O R D E R

¶ 1     *Held*: The judgment of the circuit court denying intervenors' petition, pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)), to set aside the parties' agreed judgment in this matter is affirmed. Intervenors failed to establish the existence of a meritorious defense, the circuit court did not err in refusing to draw an adverse inference against plaintiff for defendants' failure to appear at the hearing on the petition, and the judgment is not void as a matter of law, either as the product of presumptive collusion or for a failure to join necessary parties.

¶ 2     This is the most recent of three appeals to reach this court stemming from disputes between defendant Bernard Black and intervenors, who represent the interests of Mr. Black's sister, Joanne Black, following the death of Bernard and Joanne's mother in 2012. On June 28, 2019, we affirmed the denial of Bernard's motion to vacate the filing of a Colorado probate court's judgment ordering him to pay Joanne treble damages under that state's civil theft statute for wrongfully diverting Joanne's assets into a trust benefiting Bernard and his children. *Conservatorship Estate of Black v. Black*, 2019 IL App (1st) 181452, ¶¶ 1-2. And on November 22, 2019, we considered the validity of an agreed judgment between Bernard and his wife, Kathleen Litvak, pursuant to which trust funds were to be turned over to Ms. Litvak, who it was alleged had advanced her own funds for the payment of attorney fees incurred in the trust litigation. *Litvak v. Black*, 2019 IL App (1st) 181707, ¶ 3. Under the circumstances of that case—including the fact that Ms. Litvak was aware of the Colorado proceedings and knew that Bernard had been ordered not to use trust assets to pay his attorney fees—we held that the agreed judgment was void as the product of presumptive collusion and should have been vacated by the circuit court in its entirety. *Id.* ¶¶ 27, 33.

¶ 3     A similar loan for the payment of attorney fees was made in this case and a similar agreed judgment was entered. The lender, plaintiff Olga Dal, is Ms. Litvak's cousin. We must decide whether the facts of this case—including Ms. Dal's uncontroverted testimony that she relied on the advice of her lawyer, was unaware of the proceedings in the Colorado probate court or of any

No. 1-19-1348

restrictions on the encumbrance of trust funds, and did not know that Ms. Litvak had also loaned money to the trusts for the payment of Mr. Black's attorney fees—require a different result. For the reasons that follow, we find that they do and affirm the decision of the circuit court.

¶ 4                                          I. BACKGROUND

¶ 5        The events preceding this dispute have been set out in detail by this court twice before. We repeat them again here only to the extent necessary to decide the issues raised in this appeal.

¶ 6                                A. Distribution of Renata Black's Assets

¶ 7        Renata Black died in May 2012 and was survived by her two children, Joanne and Bernard. A significant portion of Renata's assets (totaling approximately $3.5 million at the time of her death) were held in accounts for which Joanne, who suffered from mental illness, was the payable-on-death beneficiary. These "POD assets" passed directly to Joanne and not through Renata's estate. The assets that did pass through Renata's estate according to her will were divided as follows: 2/3 to a "Supplemental Needs Trust" for Joanne's benefit and 1/3 to an "Issue Trust" for the benefit of Bernard and his children.

¶ 8        Bernard was the executor of Renata's estate. Following his mother's death, Bernard also sought appointment as Joanne's conservator in a Colorado probate court, arguing that Joanne, who was homeless and living in Colorado, was unable to manage her own financial assets. After appointing an attorney and a guardian *ad litem* for Joanne, the Colorado probate court agreed to appoint Bernard as her conservator. Bernard then convinced the court that he should be permitted to execute a disclaimer of Joanne's interest in the POD assets. According to the probate court, Bernard did not disclose that Joanne's POD assets would then pass through Renata's estate, with 1/3 going to him and his children by way of the Issue Trust. Upon learning of this, Joanne's counsel moved to void the disclaimer in early 2015.

No. 1-19-1348

¶ 9      The probate court ordered an independent accounting, held an evidentiary hearing, and ultimately concluded that Bernard had breached his fiduciary duties to Joanne by diverting over $1 million of the POD assets into the Issue Trust and transferring over $400,000 in additional funds to his children. In all, the court found Bernard had converted nearly $1.5 million of Joanne's assets to his own benefit. The court awarded Joanne treble damages under Colorado's civil theft statute and stated in its order that "all *** assets related to [Joanne Black] are frozen." The Colorado Court of Appeals affirmed that order in all respects on May 20, 2019. *Black v. Black*, 422 P.3d 592, 597 (Colo. App. 2018).

¶ 10      When Bernard then attempted to pay attorney fees with money from the Issue Trust, Chase Bank apparently refused to release the funds, citing both the Colorado probate court's freeze order and an order entered in a guardianship action in New York that prevented Mr. Black from making any distributions from the Issue Trust. In response, Bernard filed suit in the United States District Court for the Northern District of Illinois (Black v. Black, No. 1:16-cv-1763 (N.D. Ill.)), seeking a declaration that, because Joanne was not a named beneficiary of the Issue Trust and Bernard was one of its trustees, he should be free to administer the trust "without restraint." The federal case was, according to filings made in *Litvak v. Black*, dismissed with prejudice in July 2016, with the court determining that it did not have personal jurisdiction over Joanne.

¶ 11      When informed of these proceedings, the Colorado probate court characterized Bernard's federal complaint as "rife with inaccuracies," reiterated that he had "no rights to any of the funds contained within the Issue Trust that were transferred or derived from Renata Black's [POD] accounts" and stated that he was essentially asking the district court "to allow him to spend funds that he misappropriated from Joanne Black on his attorney fees and costs to maintain the litigation he [had] initiate[d] against her and his cousins." The court granted a request by Anthony Dain

No. 1-19-1348

(Joanne's cousin and a co-trustee, with Bernard and Bernard's son Samuel, of the Supplemental Needs Trust) to use funds from that trust to hire counsel to defend Joanne in the declaratory action. The court chastised Bernard and Ms. Litvak, as lawyers with an enhanced duty of candor to the court, for the way they had conducted themselves, stating "the inaccuracies in his pleadings before this court and Bernard's apparent refusal to accept the changes his mother made to her estate plan [were] absolutely appalling and [ ] not in keeping with his status as a law professor."

¶ 12                                  B. *Litvak v. Black*

¶ 13    In September 2017, Ms. Litvak brought a suit for repayment against, respectively, the Supplemental Needs Trust, the Issue Trust, and the 2013 Trust (a trust Bernard created while purporting to act as Joanne's conservator). She alleged that the trusts were jointly and severally indebted to her for several hundred-thousand dollars that she had loaned to Bernard to pay attorney fees. A week later, Ms. Litvak successfully moved for entry of an agreed judgment.

¶ 14    Learning of this, Mr. Dain and Joanne's successor conservator, Jeanette Goodwin, sought to intervene on Joanne's behalf and to vacate the agreed judgment pursuant to section 2-1301(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301(e) (West 2016)).

¶ 15    Following a hearing, the circuit court vacated the judgment as to the Supplemental Needs Trust and the 2013 Trust but not as to the Issue Trust, on the basis that Joanne was not a beneficiary and Mr. Dain was not a trustee of that trust. On appeal, we reversed in part, concluding that "[t]he motion to vacate and its various attachments, including the persuasive orders of other courts detailing the conduct of [Bernard] and Ms. Litvak in related litigation and Joanne's clear interest in all of the funds at issue," were "detailed allegations from which we [could] infer that the agreed judgment *** was improper" as to all three trusts. *Litvak*, 2019 IL App (1st) 181707, ¶ 27.

No. 1-19-1348

¶ 16                                    C. The Present Action

¶ 17    Ms. Litvak's cousin, Ms. Dal, also loaned several hundred-thousand dollars to Bernard and

Samuel for the payment of attorney fees. Like Ms. Litvak—and in fact while represented by the

same law firm—Ms. Dal sued the trusts for repayment in September 2017 and sought entry of an

agreed judgment for the full amount claimed just one week later.

¶ 18    Intervenors, Mr. Dain and Ms. Goodwin, were not served with a copy of the complaint or

informed of the agreed judgment. When they subsequently learned of these events, they

successfully moved to intervene and jointly filed the petition to vacate the agreed judgment

pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2018)) that is the subject of this

appeal.

¶ 19    An evidentiary hearing on that petition was held on June 3, 2019. Informing the court that

he had noticed Bernard and Samuel as witnesses but that they had indicated they would not appear

(Bernard was apparently living in Israel and Samuel was a medical resident at an out-of-state

hospital), intervenors' counsel requested an adverse inference. The trial court judge said "I do have

a right to draw an adverse inference. We'll have to play that by ear, I guess."

¶ 20    Mr. Dain then took the stand and testified that Renata Black was his aunt, and the Black

siblings were his cousins. Renata had appointed Mr. Dain, along with Bernard and Samuel, as a

co-trustee of the Supplemental Needs Trust. Mr. Dain stated that he used to also be a co-trustee of

the other two trusts but had asked to resign from those roles by e-mail on December 2, 2015.

¶ 21    Mr. Dain first learned of this litigation in late October or November of 2017, when Chase

Bank contacted him to make him aware of the agreed judgments that had been entered in this case

and in *Litvak v. Black*. Mr. Dain consulted with Ms. Goodwin and together they obtained the

Colorado probate court's permission to represent Joanne in both cases.

No. 1-19-1348

¶ 22    When asked why he was seeking to set aside the agreed judgment in favor of Ms. Dal, Mr. Dain explained that Bernard and Samuel had no right to encumber the trust assets in the way they did. According to him, the Supplemental Needs Trust was "a critical trust that [did] not allow trustees to encumber its assets," the Issue Trust "contained the assets that the Colorado courts ha[d] ordered were stolen from Joanne Black," and the 2013 Trust was "an unlawful trust that Bernard had set up without court approval." In Mr. Dain's view, "[t]hose were Joanne's conservatorship assets," and the loans made in this case and the resulting judgment constituted "a violation of multiple court orders that the assets were frozen"—orders that "[did] not allow Bernard to have any access, any control over those assets"—and that this was "one of many attempts to circumvent that order."

¶ 23    On cross-examination, Mr. Dain acknowledged that he had never spoken to Ms. Dal. Nor had he ever spoken to Bernard or Samuel about the loans Ms. Dal made to the trusts. He was aware of no conversations between Ms. Dal and defendants prior to those loans being made.

¶ 24    When asked by the court what evidence he had that the agreed judgment in this case was the product of fraud and collusion, Mr. Dain stated that Ms. Dal was Ms. Litvak's cousin and that both Bernard and Ms. Litvak were present in court when Bernard asked the Colorado probate court if he could pay his attorney fees from trust assets and was told unequivocally that he could not. Mr. Dain also noted that the trust document for the Supplemental Needs Trust specifically stated that the trust's assets could not be encumbered. Finally, Mr. Dain pointed out that he was not notified of the agreed judgment, even though the trust document made clear that he was a trustee.

¶ 25    Ms. Dal was also questioned at length during the hearing. She recalled her cousin Ms. Litvak asking her "to loan some money for legal fees"—around $320,000 or $330,000. She was "[g]enerally surprised" by this request but said "[l]et me see if I can." She called Ms. Litvak back

- 7 -

and said she would loan the money. The details were worked out by the parties' lawyers and Ms. Dal never spoke directly to Mr. Black or to Samuel about the loans. Nor did she inquire further about what the loans were for. As Ms. Dal explained, "I know it might sound strange, but we are family." Ms. Dal testified that she wrote her checks directly to the law firms to whom Mr. Black owed money and did not think about the loans again until a few years later, when she spoke to her lawyer about repayment. She could not remember if it was her idea to file suit but said she "wanted to get paid" and, "in conversation with my attorney, this was the route we took." Ms. Dal could not specifically recall reviewing the complaint in this matter or entering into the agreed judgment. When asked if she understood that was how she was going to be paid, Ms. Dal said "[n]ot necessarily."

¶ 26    Ms. Dal was not aware that Ms. Litvak had also loaned money to the trusts. She was not aware of the freeze order or the Colorado court proceedings. She had never spoken to or heard of Mr. Dain or Ms. Goodwin. When asked if she did anything to make sure that defendants were authorized to enter into the loans with her—besides following her lawyer's advice—Ms. Dal simply said "[w]hy would I?"

¶ 27    At the close of the hearing, intervenors' counsel again requested an adverse inference based on the fact that Bernard and Samuel had failed to appear and testify. The judge denied this request, stating: "I think you are entitled to [have them present to testify], but you have to follow, of course, the notice procedure, and it's usually preceded by a deposition. Especially if someone lives outside the country, you take an evidence deposition, use letters rogatory *** Here you didn't do any of that." Counsel stated that the depositions had been noticed by his predecessor counsel but could not say why they had never taken place.

¶ 28    The circuit court then denied the petition. The court's reasons for doing so are discussed in

No. 1-19-1348

our analysis.

¶ 29                              II. JURISDICTION

¶ 30     The circuit court denied intervenors' section 2-1401 petition in this matter on June 3, 2019,

and intervenors timely filed their notice of appeal on July 3, 2019. We have jurisdiction pursuant

to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing

appeals from final judgments entered by the circuit court in civil cases.

¶ 31                              III. ANALYSIS

¶ 32     Section 2-1401 of the Code establishes a statutory procedure for a party seeking to vacate

a final judgment entered more than 30 days prior. 735 ILCS 5/2–1401(a) (West 2018). Proceedings

under this section, though filed in the same case in which the judgment was entered, are viewed as

a collateral attack and not as a continuation of the underlying litigation. *Id.* at § 2-1401(b); *Warren*

*County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31.

¶ 33     Here, intervenors argue the circuit court should have granted their section 2-1401 petition

and vacated the agreed judgment in favor of Ms. Dal because they established the existence of a

meritorious defense—that the judgment was the product of fraud and collusion—by a

preponderance of the evidence. Intervenors argue that the circuit court erred in its assessment of

the evidence presented by refusing to draw an adverse inference in their favor as a result of Bernard

and Samuel failing to appear and testify. Intervenors alternatively argue that the circuit court

should have vacated the agreed judgment as a matter of law, either because a presumption of fraud

and collusion arose, or for the failure to join them as necessary parties. We address each argument

in turn.

No. 1-19-1348

¶ 34        A. Intervenors' Did Not Establish the Existence of a Meritorious Defense

¶ 35    "[A] section  2-1401 petition can present either a factual or legal challenge" to a final

judgment and "the nature of the challenge presented *** dictates the proper standard of review on

appeal." *Warren County*, 2015 IL 117783, ¶ 31. Where a fact-dependent challenge is raised, "the

petitioner must set forth specific *factual* allegations supporting each of the following elements:

(1) the existence of a meritorious defense; (2) due diligence in presenting this defense; and (3) due

diligence in filing the section 2–1401 petition for relief." *Id.* ¶ 51. Where the facts are disputed, "a

full and fair evidentiary hearing should be held." *Id.* To prevail, the petitioner must prove each of

the above elements by a preponderance of the evidence. *Id.* We review the circuit court's ultimate

decision on the petition for an abuse of discretion." *Id.*

¶ 36              1. Intervenors Failed to Present Evidence That, If Believed,
                      Would Establish Fraud and Collusion by Ms. Dal

¶ 37    We begin by considering what it means to prove "the existence" of a meritorious defense.

Intervenors repeatedly rely on *Pirman v. A&M Cartage, Inc.*, 285 Ill. App. 3d 993 (1996), for the

proposition that, in their words, a section 2-1401 petitioner "is not required to show the *validity* of

the meritorious claim or defense, but only its existence." (Emphasis added.) It is true, as this court

said in that case, that "[w]hether the defense of [the petitioner] would ultimately prevail at trial is

not at issue in section 2-1401 proceedings." (Internal quotation marks omitted.) *Id.* at 1001. But a

petitioner must still "assert sufficient facts which, if believed by the trier of fact, would defeat the

plaintiff's claim." *Id.* The plaintiff in *Pirman* was struck by a truck at a construction site and

secured a default judgment against the construction company and two of its employees, one or the

other of whom the plaintiff alleged had been the driver of the truck. *Id.* at 994. The defendants

succeeded, on a section 2-1401 petition, to set aside the default judgment and proceed to trial. *Id.*

at 999. In affidavits attached to the petition, the employee defendants denied any involvement in

- 10 -

No. 1-19-1348

or knowledge of the plaintiff's accident, statements that were corroborated by both the construction company's president and time sheets indicating that one of the employees had actually been more than five miles away at the relevant time. *Id.* at 1001. In affirming the circuit court's order setting aside the default judgment, this court noted that "[t]hese affidavits, if believed, would suffice to defeat the plaintiff's allegations of negligence." *Id.*

¶ 38    Here, all of the evidence intervenors marshalled in support of their petition concerned *defendants*' wrongdoing and improper motives, not those of Ms. Dal. This is evidence that, if believed, could certainly support claims against them for breaches of their fiduciary duties as trustees. But the record is devoid of any evidence demonstrating—or from which one could even reasonably infer—that *Ms. Dal* had any idea that the loan transactions were improper or that she colluded in any way with defendants to secure entry of an improper agreed judgment in this case. Intervenors' counsel himself at one point candidly summarized Ms. Dal's testimony, stating: "[s]o obviously the testimony showed that she had no idea what she was getting into. She loaned the money and that was the end of it and was following her attorney's advice."

¶ 39    Ms. Dal testified that she was asked to lend the money by her cousin, Ms. Litvak, that she consulted with a lawyer who handled the details, and that when she wanted to be made a demand for payment and ultimately sued to enforce the parties' loan agreement. Her unrebutted testimony was that she had no knowledge of the Colorado probate proceedings or any reason to believe that Bernard and Samuel, as trustees, were not authorized to enter into the loan transactions. She never spoke to them directly and did not even know that her cousin, Ms. Litvak, had also loaned the trusts money.

¶ 40    Essentially acknowledging that he had presented no affirmative evidence of fraud and collusion, intervenor's counsel argued in the circuit court that an *inference* of fraud could be drawn,

- 11 -

No. 1-19-1348

not just from the fact that Ms. Dal was cousins with Ms. Litvak, but also because she was "willfully ignorant," *i.e.*, she did nothing to investigate the circumstances of the loan, how the money came to be held in the trusts, or what the trust documents said. The circuit court judge was not persuaded by this. In his view, Ms. Dal hired a lawyer and followed that lawyer's advice. She had an agreement stating how she was to be repaid and she was entitled to rely on that agreement. In the judge's words, "[s]he did anything any reasonable person would do."

¶ 41    Although the credibility of witnesses is not at issue at this juncture, intervenors must establish more than the possibility of fraud and collusion. They have the burden of presenting evidence that, if believed, would *prove* fraud and collusion by Ms. Dal. The circuit court did not abuse its discretion by finding, on this record, that intervenors failed to meet that burden.

¶ 42    2. An Adverse Inference Against Defendants Would Have Made No Difference

¶ 43    Intervenors also fault the circuit court for failing to draw an adverse inference in their favor from the fact that Bernard and Samuel failed to appear at the evidentiary hearing, though each was served with a notice to appear pursuant to Illinois Supreme Court Rule 237(b) (eff. July 1, 2005). That rule provides that "[u]pon a failure to comply with [such a] notice, the court may enter any order that is just," and impose "any sanction or remedy provided for in Rule 219(c) that may be appropriate," (*id.*), including the entry of a default judgment against the offending party (Ill. S. Ct. R. 219(c)(v) (eff. July 1, 2002)). Although the circuit court judge entertained intervenors' request for an adverse inference, he ultimately denied it, admonishing their counsel that "if these two men were essential to your defense, you should have deposed them." Intervenors now argue this was an abuse of discretion.

¶ 44    Intervenors fail to explain, however, how an adverse inference against Bernard and Samuel would have aided them in their quest to vacate the agreed settlement in this matter. The specific

inference they sought was that, as trustees, defendants "knew that they couldn't do these things." But as the transcript from the evidentiary hearing makes clear, what prevented the court from finding that intervenors had established the existence of a meritorious defense was not their failure to prove that Bernard and his son had acted improperly as trustees. Rather, it was the complete lack of evidence that Ms. Dal, as the other party to the transactions, knew there was anything improper about the loans or the agreed judgment. As Ms. Dal correctly notes, an adverse inference based on the failure of a witness to appear is only warranted if the witness's testimony would not have been "merely cumulative of the facts already established." *Tuttle v. Fruehauf Division of Fruehauf Corp.*, 122 Ill. App. 3d 835, 843 (1984).

¶ 45    Intervenors cite no case supporting the proposition that the failure of Bernard and Samuel to appear at the hearing should have resulted in an adverse inference against *Ms. Dal*, who did appear and was thoroughly examined. Indeed, such an inference is generally only proper where a missing witness "was under the control of the party to be charged and could have been produced by reasonable diligence." (Internal quotation marks omitted.) *Simmons v. University of Chicago Hospitals and Clinics*, 162 Ill. 2d 1, 7 (1994). And intervenors have never contended that Ms. Dal had any control over whether Bernard and Samuel appeared at the evidentiary hearing

¶ 46    Nor are we persuaded by intervenors' argument, raised for the first time in their reply brief (see Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing")), that the circuit court not only failed to draw an adverse inference in their favor but drew one *against* them based on the fact that only Mr. Dain, and not Ms. Goodwin, appeared at the hearing. We find no support for this supposition. Although the circuit court noted that Ms. Goodwin had elected not to appear or testify, intervenors' counsel explained why her testimony was not needed. The trust documents and orders

of the Colorado probate court establishing that Joanne was the beneficiary of two of the trusts and entitled to funds held in the third were already admitted into evidence. Nothing more was said on the matter. Counsel for Ms. Dal requested no adverse inference based on Ms. Goodwin's absence and intervenors' suggestion that the court "appeared to draw an adverse inference against Jeanette Goodwin, who was not noticed for testimony by any party," is not supported by any citation to the record. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (instructing that "reference shall be made to the pages of the record on appeal where evidence may be found").

¶ 47   In sum, even if we were inclined to find that the circuit court abused its discretion by refusing to draw an adverse inference against Bernard and Samuel, this would not be a basis for reversing the court's denial of intervenors' petition.

¶ 48       B. The Agreed Judgment Was Also Not Void as a Matter of Law

¶ 49   Intervenors argue in the alternative that an evidentiary hearing was not even necessary in this case because the circuit court should have concluded on the pleadings that the agreed judgment was void as a matter of law. A petition seeking to vacate a void judgment presents "a purely legal issue," and the petitioner "does not need to establish a meritorious defense or satisfy due diligence requirements." *Warren County*, 2015 IL 117783, ¶ 48. Our review of the circuit court's ruling on such a challenge is *de novo*. *Id.* ¶ 47.

¶ 50       1. Fraud or Collusion by Ms. Dal Could Not Be Presumed

¶ 51   As we stated in *Litvak*, "agreed judgments entered into through litigation that is not truly adversarial but collusively brought for the purpose of having such a judgment entered by a court of law are presumed to be collusive and fraudulent and may be challenged as void by adversely affected third parties." *Litvak*, 2019 IL App (1st) 181707, ¶ 24 (citing *Green v. Hutsonville Township High School District No. 201*, 356 Ill. 216, 221-22 (1934)). Intervenors rely on this rule,

No. 1-19-1348

urging us to conclude that the loans Ms. Dal made to the trusts and the agreed judgment she entered into with the trustees for repayment of those loans are no different than the ones at issue in *Litvak*. We concluded that Ms. Litvak's lawsuit against her husband in that case was " 'an adversary proceeding only in form,' " the resulting judgment was " 'not entered on a hearing on the merits, but by the default, acquiescence and tacit consent' " of the parties, and the " 'necessary inference' " was that the judgment was collusive, fraudulent, and void. *Litvak*, 2019 IL App (1st) 181707, ¶ 26 (quoting *City of Chicago Heights v. Public Service Co. of Northern Illinois*, 345 Ill. App. 393, 400-01 (1952)).

¶ 52     Intervenors point out that here, as in *Litvak*, defendants never answered the complaint, an agreed judgment for the full amount claimed was quickly presented to the court, and neither Mr. Dain nor Ms. Goodwin were notified of the proceedings, despite the fact that Joanne was a named beneficiary of two of the affected trusts.

¶ 53     As the circuit court recognized, however, there is one significant difference between *Litvak* and this case: the identity and presumed knowledge of the plaintiff. Ms. Litvak was Bernard's wife. She was informed of and present for the Colorado probate court proceedings and presumably aware of both the judgment against Bernard and the Colorado probate court's prohibition on him paying attorney fees with funds that rightfully belonged to Joanne. Ms. Dal's uncontroverted testimony, by contrast, was that she made the loans at issue here simply as a favor to her cousin, she had no idea that Ms. Litvak had made similar loans to the trusts, and she was completely unaware of either the Colorado probate proceedings or any restrictions on the use of the trust assets.

¶ 54     Put simply, the well-pleaded allegations in intervenors' petition—including that Ms. Dal was Ms. Litvak's cousin and that they were represented by the same law firm—did not give rise to a presumption that the parties' agreed judgment was the product of fraud and collusion. In any

- 15 -

No. 1-19-1348

event, such a presumption would be rebutted by Ms. Dal's unrefuted testimony that she had no reason to know there was anything untoward about the loans, the lawsuit, or the agreed judgment. Unlike in *Litvak*, the facts presented here do not give rise to a legal presumption that the agreed judgment in this matter was the result of fraud and collusion.

¶ 55     2. The Agreed Judgment Was Not Void for Failure to a Join Necessary Party

¶ 56     Intervenors also contend that the agreed judgment was void as a matter of law for failure to join them as necessary parties. Mr. Dain is a co-trustee, with Bernard and Samuel, of the Supplemental Needs Trust, and Ms. Goodwin stands in the shoes of Joanne, who is a beneficiary of both the Supplemental Needs Trust and the 2013 Trust and whose wrongfully diverted conservatorship assets, intervenors maintain, are still held in the Issue Trust. It is undisputed that, prior to entry of the agreed judgment, neither Mr. Dain nor Ms. Goodwin received notice of this lawsuit.

¶ 57     "A necessary party is one whose participation is required to (1) protect its interest in the subject matter of the controversy which would be materially affected by a judgment entered in its absence; (2) reach a decision protecting the interests of the parties already before the court; or (3) allow the court to completely resolve the controversy." *Zurich Insurance Co. v. Baxter International, Inc.*, 275 Ill. App. 3d 30, 37 (1995), *aff'd as modified*, 173 Ill. 2d 235 (1996). "An order entered by a court without jurisdiction over a necessary party is null and void." *Emalfarb v. Krater*, 266 Ill. App. 3d 243, 247 (1994).

¶ 58     We agree with defendants that Mr. Dain, as one of three co-trustees of the Supplemental Needs Trust, was not a necessary party to this action. But we must reject their argument that he is barred by collateral estoppel from asserting this position. Although Mr. Dain's assertion, in *Litvak*, that he was a necessary party to any agreed judgment affecting the trusts was rejected by the circuit

No. 1-19-1348

court and Mr. Dain did not seek an appeal from that ruling, the agreed judgment in that case was vacated in its entirety. Collateral estoppel applies where "the issue decided in the prior adjudication is identical with the one presented in the suit in question, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 42. Without a final judgment, there can be no collateral estoppel.

¶ 59    As defendants go on to point out, however, Article VI, Section 3, of the trust document for the Supplemental Needs Trust, titled "Trustee's Powers," provides that "[t]he trustee shall have all powers granted fiduciaries under the New York Estates Powers and Trusts Law [(EPTL)] as amended to the date of this Trust [December 19, 1997]." That law provides, now as it did then, that "[u]nless contrary to the express provisions of an instrument affecting the disposition of property, a joint power *** conferred upon three or more fiduciaries, *** by the terms of such instrument, or by statute, or arising by operation of law, may be exercised by a majority of such fiduciaries." N.Y. Est. Powers & Trusts Law § 10-10.7 (McKinney).

¶ 60    Intervenors dispute that this is the rule in New York, citing *Georgius v. Village of Morrisville*, 90 A.D. 3d 1256, 1256 (N.Y. App. Div. 2011), a decision of New York's intermediate appellate court, for the contrary proposition that, unless the trust instrument provides otherwise, co-trustees must act unanimously. The courts in both *Georgius* and *In the Matter of Luckenbach*, 104 N.E.2d 870, 871-72 (1952), the case the *Georgius* court relied on, however, had no reason to apply such a rule because the trust instruments in those cases specifically provided that the trusts could be bound by the actions of a single trustee and a majority of trustees, respectfully. *Georgius*, 90 A.D. 3d at 1256; *Luckenbach*, 104 N.E.2d at 871-72. *Luckenbach* also preceded the incorporation of section 10-10.7 into the EPTL by over a decade. As the notes to that section make

clear, the rule requiring unanimity of action historically applied only to the executors of estates. Turano, Practice Commentaries, N.Y. Est. Powers & Trusts Law § 10-10.7 (McKinney). Wanting individuals serving in that role to be treated the same as trustees, the legislature drafted section 10-10.7 to extend the rule providing that binding action may be taken by a majority of fiduciaries to executors as well as trustees. *Id.* Mr. Dain does not dispute that the trust instrument for the Supplemental Needs Trust incorporates by reference this and all other provisions of the EPTL. Nor does he propose an alternative reading of section 10-10.7 that would not directly conflict with a rule requiring uniformity of action by trustees. As such, we are not persuaded that Mr. Dain, by virtue of his role as one of three trustees for the Supplemental Needs Trust, was a necessary party to this action.

¶ 61    Ms. Goodwin, standing in the shoes of Joanne, argues that she was a necessary party because Joanne is a named beneficiary of both the Supplemental Needs Trust and the 2013 Trust. The parties appear to agree that this issue is controlled by Illinois law. "The general rule," stated by our supreme court in *Illinois National Bank of Springfield v. Gwinn*, 390 Ill. 345, 356 (1945), is indeed that "in all suits respecting trust property, whether brought by or against a trustee, the beneficiaries are necessary parties. The trustee is a necessary party because he holds the legal title," and "[t]he beneficiary is a necessary party because he has the equitable and ultimate interest to be affected by the decree." *Id.* There are, however, "numerous and varied exceptions" to this general rule. Ill. L. and Prac. Trusts *Trusts* § 122 (collecting cases). As a practical matter, a trustee is presumed to represent the interests of a trust's beneficiaries, and "whether [the] beneficiaries should [also] be made parties to a suit affecting the trust rests in the sound discretion of the court," following consideration of "the facts and circumstances of each case." (Internal quotation marks omitted.) *Anderson v. Elliott*, 1 Ill. App. 2d 448, 453 (1954); see also *Chicago B. & Q. R. Co. v.*

No. 1-19-1348

*Illinois Commerce Comm'n ex rel. Board of R.R. Trainmen*, 364 Ill. 213, 223 (1936) (likewise noting that the rule "is not inflexible" and "oftentimes its application rests in the sound discretion of the court").

¶ 62    In the circuit court, intervenors insisted that they were necessary parties because property rightfully belonging to Joanne would be affected by the agreed judgment in this case. They argued that because Joanne's interests conflicted with those of Bernard and Samuel, the two of them were incapable of adequately representing her in this litigation. When pressed by the circuit court, however, intervenors' counsel seemed at a loss to explain how they could have protected Joanne's interests if they had known about the lawsuit sooner. The court held an evidentiary hearing at which Ms. Dal's knowledge of the underlying trust litigation and the long history of conflict between intervenors, on the one hand, and Bernard, Samuel, and Ms. Litvak, on the other, was fully explored. At the close of that hearing, the court concluded that intervenors had made no showing that Ms. Dal colluded with Bernard or Samuel to present a fraudulent agreed judgment to the court in this case. The court instead found that Ms. Dal dealt in good faith and at arm's length with Bernard and Samuel in their capacities as trustees and was entitled to enforce her contract for repayment against the trusts. In the court's view, evidence of wrongdoing by the trustees could support claims against them for breaches of fiduciary duties they owed to Joanne but provided no basis for a finding that the agreed judgment should be overturned as to Ms. Dal.

¶ 63    We agree with the circuit court's assessment. The applicable law in Illinois when Ms. Dal entered into her loan agreement with defendants was the Illinois Trusts and Trustees Act (Act) (760 ILCS 5/1 *et seq.* (West 2014) (superseded in January of this year by the Illinois Trust Code (760 ILCS 3/101 *et seq.* (West 2020)). Sections 4.03 and 4.12 of the Act provided, respectively, that a trustee had the power "[t]o borrow money and to mortgage, pledge or otherwise encumber

any part or all of the trust estate" (760 ILCS 5/4.03 (West 2014)) and "[t]o execute contracts, notes, conveyances and other instruments, whether or not containing covenants and warranties binding upon and creating a charge against the trust estate ***." (760 ILCS 5/4.12 (West 2014)). Section 4.11 of the Act further provided that a trustee had the power "[t]o compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." 760 ILCS 5/4.11 (West 2014). Intervenors have never disputed that, as trustees, Bernard and Samuel held these powers.

¶ 64    As the circuit noted, "the argument that you have to join a necessary party is based on the fact that the necessary party has an argument to be made to set aside the Judgement." In other words, a necessary party is not just one whose interest will be affected by a judgment entered in his or her absence, but a party who, if present, would have been able to *protect* that interest. See *Zurich*, 275 Ill. App. 3d at 37 ("[a] necessary party is one whose participation is required *to* (1) *protect its interest* in the subject matter of the ***" (emphasis added)). Following a full hearing in this case, intervenors were left with no evidentiary support for their argument that Ms. Dal colluded in the presentation to the court of a fraudulent agreed judgment and no legal support for their argument that she had a duty to inquire further regarding the history of the trusts she was dealing with. The circuit court clearly considered all of the facts and circumstances of this case, and we cannot say that it abused its discretion by concluding that intervenors, on Joanne's behalf, were not necessary parties to this action because they lacked an ability, under the law, to protect her from a judgment against the Ms. Dal's favor.

¶ 65    The cases intervenors rely on are cited primarily for their pronouncement of the general rule noted above. In *In re Barth*, 339 Ill. App. 3d 651, 665 (2003), the circuit court entered an agreed order voiding a trust amendment on the basis that the trustor lacked capacity to make the amendment. Noting that there was "no evidence on the record from which the court could have

No. 1-19-1348

made this determination," we remanded the case for the circuit court to decide whether each of the intervenors would have been a beneficiary under the voided amendment and, if so, whether they were also necessary parties. *Id.* at 665-67. In *Zurich*, 275 Ill. App. 3d at 41, we held that the circuit court erred by requiring the individual joinder of thousands of claimants to a mass tort settlement, where the parties seeking joinder and the parties already joined shared a unity of interests. And in *Emalfarb*, 266 Ill. App. 3d at 247-49, we held that a municipality, though it certainly shared an interest in a lawsuit determining whether a statutory dedication of park space had made it a trustee over the land in question, was not bound by the judgment, could relitigate the issue if it chose, and was thus not deprived of any material rights by its failure to be joined. None of these cases compels a different result here.

¶ 66                                    IV. CONCLUSION

¶ 67    For the foregoing reasons, the judgment of the circuit court denying intervenors' petition to vacate the agreed judgment in this matter is affirmed.

¶ 68    Affirmed.



CLERK'S OFFICE
**APPELLATE COURT FIRST DISTRICT**
STATE OF ILLINOIS
160 NORTH LASALLE STREET, RM S1400
CHICAGO, ILLINOIS 60601

January 21, 2021

Honorable Iris Y. Martinez
Richard J. Daley Center
Room 1001
Chicago, IL 60602

RE:  OLGA DAL v. BERNARD S. BLACK
     General No.: 1-19-1348
     County: Cook County
     Trial Court No: 17L9744

Dear Honorable Martinez:

Attached is the Mandate of the Appellate Court in the above entitled cause.

We are sending the attorneys of record a copy of this letter to inform them that the mandate of
the Appellate Court has been filed with you.


Thomas D. Palella
Clerk of the Appellate Court

c:    ARCTURUS LAW FIRM
      Murphy Law Group, LLC



                                                              EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and J.P. MORGAN SECURITIES LLC | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-03447 |
| v. | ) ) | Honorable Andrea R. Wood |
| BERNARD S. BLACK, individually and as trustee, SAMUEL BLACK, individually and as trustee, ANTHONY DAIN, individually and as trustee, KATHERINE LITVAK, OLGA DAL, and JEANNETTE GOODWIN, as court appointed Conservator, and JOANNE BLACK, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### AMENDED NOTICE OF FILING

TO:     All Counsel of Record

PLEASE TAKE NOTICE that on **March 10, 2021** we caused to be electronically filed with United States District Court for the Northern District of Illinois, Eastern Division, **Defendant Olga Dal's Motion for Leave to Proceed,** a copy of which is hereby served upon you.

MURPHY LAW GROUP, LLC

By:     */s/ David F. Hyde*
Attorneys for Olga Dal

Eugene E. Murphy, Jr. (ARDC # 6198863)
gmurphy@murphylitigation.com
David F. Hyde (ARDC # 6289799)
dhyde@murphylitigation.com
Murphy Law Group LLC
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
P: (312) 202-3200
F: (312) 202-3201
Firm ID: 42101

{00319242}

## CERTIFICATE OF SERVICE

I, David F. Hyde, an attorney in the above-captioned matter, do hereby certify under penalties of perjury as provided by 735 ILCS 5/1-109, that I electronically served the attached document upon all attorneys of record as stated below on this 10th day of March, 2021.

By: ___/s/ David F. Hyde_____

### SERVICE LIST

Brad S. Grayson
Benjamin N. Feder
Strauss & Malk LLP
135 Revere Drive Northbrook, IL 60062
bgrayson@straussmalk.com
bfeder@straussmalk.com


Peter M. Stasiewicz
ARCTURUS LAW FIRM (Atty No. 58629)
211 West Wacker Drive #323
Chicago, IL 60606
(312) 957-6194 *tel*
(312) 489-8307 *fax*
pete.stasiewicz@arcturuslaw.com

Kenneth F. Berg
Ulmer & Berne LLP
500 W. Madison St., Suite 3600
Chicago, IL 60661
kberg@ulmer.com

Terence D. Brennan
1437 North Park Ave.
Chicago, IL 60610
terry@terrybrennanlaw.com