**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-cv-03447 |
| v. | ) | |
| | ) | |
| BERNARD S. BLACK, et al. | ) | Hon. Andrea A. Wood |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS AND COUNTER-PLAINTIFFS BERNARD S. BLACK AND**
**SAMUEL BLACK'S SUPPLEMENTAL MOTION TO COMPEL PRODUCTION**

Defendants, Bernard S. Black ("Bernard") and Samuel Black ("Samuel"), individually and

as trustees, by their attorneys, pursuant to Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil

Procedure, move this Court to compel Defendants Anthony Dain ("Dain") and Jeanette Goodwin

("Goodwin") to produce all documents responsive to Bernard and Samuel's production requests.[1]

In support, Bernard and Samuel state as follows:

I.     **INTRODUCTION**

Dain and Goodwin continue to stonewall discovery. They refuse to produce documents

they previously agreed to produce. They also pretend the issues in this case are extremely narrow

to support specious relevance objections to document production, after this Court rejected their

baseless assertions of privilege. See September 29, 2021, Memorandum Opinion and Order (the

"2021 Order"). They assert the remarkable proposition that this Court should limit discovery based

on orders they hope the Denver Probate Court ("DPC") will enter in the future.

The scope of this litigation, and thus the appropriate scope of discovery, is defined by the

parties' claims and defenses. Dain and Goodwin ignore those claims and effectively assert that

---

[1] The parties' attorneys have had several telephone conversations aimed at trying to resolve their differences on
document production, beginning with a conversation on November 1, 2021. Those efforts were unsuccessful.

the issues raised therein already have been, or will be, resolved by the DPC. They ignore, however, that many parties to this interpleader action are not parties to the DPC proceedings, are not bound by DPC orders and rulings, and have the right to challenge those orders in this Court, and to pursue discovery to support their claims. Those parties include Samuel, a trustee of the subject trusts, Olga Dal ("Olga"), a creditor of the trusts, and Katherine Litvak ("Kate"), a creditor of the trusts. Even Bernard is not a party to the DPC proceedings in certain capacities. All those parties will challenge in this case the propriety and effect of any past or future DPC orders and rulings which affect their interests. Therefore, it is folly for Dain and Goodwin to base their refusal to produce documents in this case on grounds that certain matters have been, or will be, resolved by the DPC.[2]

Documents pertaining to all issues raised in the parties' pleadings should be produced. Bernard's and Samuel's discovery requests are proper in scope given the nature of the parties' claims, and this Court should order Dain and Goodwin to comply with them.

## II.     **Relevant Factual Background**

This case involves disputes over claims to the assets of the Supplemental Needs Trust for the Benefit of Joanne Black (the "SNT") and the Irrevocable Trust for the Benefit of the Issue of Renata Black (the "IT"), two trusts that Renata Black ("Renata") established as part of her longtime estate plan to benefit her children and grandchildren. Renata's plan, as set forth in her will, was for two-thirds of her assets to go into the SNT to benefit her daughter Joanne Black ("Joanne") during her lifetime (with any assets remaining in the SNT at Joanne's death to go into the IT), and

---

[2]  At present, neither Dain nor Goodwin have any viable legal basis for any claim to recover trust assets. They merely hope the DPC will enter an order at some time in the future to unwind a disclaimer under which funds in certain investment accounts reverted to Renata Black's estate to then be distributed under Renata Black's will into the subject trusts. Without the disclaimer being unwound, Goodwin has no basis for claiming that the assets in those trusts should not be in the trusts, but instead should be in Joanne's conservatorship estate in Colorado.

for one-third of her assets to go into the IT for the benefit of her son, Bernard, and Bernard's children (*i.e.,* Renata's grandchildren).

When Renata died in 2012, the bulk of her assets were held in investment accounts at Vanguard Group ("Vanguard"). However, shortly before her death, the beneficiary designations on the Vanguard accounts were mysteriously changed so that 95% of the Vanguard accounts' funds would go outright to Joanne upon Renata's death. Renata's entire extended family recognized this as a potential disaster. Not only were the changes in beneficiary designations inconsistent with Renata's longtime plan, they also more importantly put Joanne and others at risk. At the time, Joanne, who throughout her live suffered from severe mental illness, had run away from her longtime home in New York, was living on the streets of Denver, Colorado, and was suffering from severe delusions. She was a danger to herself and others and was incapable of caring for herself. Indeed, Joanne was making graphic death threats against numerous members of her family, including small children, was attempting to contact the mafia to pay ransom for an imaginary billionaire husband, and had been arrested for breaking into a hotel.

Renata's extended family, therefore, reached a consensus that the most effective way to protect Joanne and ensure her financial security and personal safety was to take steps to honor Renata's estate plan, under which assets for Joanne's benefit would be held in the SNT managed by its trustees. Pursuant to the family's plan, Bernard went to Colorado, where Joanne then was living, and petitioned the DPC to be appointed as Joanne's conservator. Once appointed, the DPC authorized Bernard, as conservator, to disclaim, on Joanne's behalf, Joanne's interests in the Vanguard accounts, thereby causing the disclaimed assets to revert to Renata's estate, where they were distributed under Renata's will to the SNT and IT in accordance with Renata's estate plan.

Soon thereafter, Joanne moved back to New York, where she was hospitalized for about 18 months in 2013 and 2014. Importantly then, in 2016, a New York court determined Joanne was not in need of either a financial guardian or a general guardian. Nonetheless, in 2017, knowing that Joanne was no longer living in Colorado, had no assets in Colorado, had returned to live in New York, and had been adjudged competent by a New York court to manage her own affairs, the DPC appointed Goodwin as a successor conservator for Joanne in Colorado without even bothering to conduct any hearing on Joanne's competence or continued need for a conservator.

In the meantime, disputes ensued among the members of Renata's family concerning the SNT's administration. Dain and DPC-appointed representatives of Joanne then pursued claims against Bernard, accusing him of misleading the DPC concerning the effects of the disclaimer. They sought to have the DPC set aside the disclaimer, which the DPC declined to do. But the DPC instead found Bernard liable for civil theft with respect to the assets that went through Renata's estate into the IT and entered a sizable judgment in Joanne's favor against Bernard.

Goodwin later filed litigation in Illinois and Oregon to try to collect on that judgment. In addition, at the request of Dain, Goodwin and others aligned with them, the DPC began entering orders against Bernard, and even against Samuel, who had never appeared in the Colorado proceedings and who was never served with process in connection with the DPC proceedings. In 2018, the DPC ordered SNT and IT assets to be turned over to Joanne's conservatorship estate. The DPC also entered an order purporting to revoke its prior approval of the disclaimer. The DPC's orders against Samuel were reversed on appeal by the Colorado Court of Appeals for lack of due process and the order revoking prior approval of the disclaimer was reversed for lack of subject matter jurisdiction. Nonetheless, it appears that the DPC again is entertaining the notion of trying to vacate the disclaimer.

4

Bernard and Samuel contend there are serious procedural, substantive, and jurisdictional impediments to the DPC revoking its long-ago approval of the disclaimer. They know of no precedent for a court to reverse, without any new law or evidence, its own prior decision of a decade earlier, much less where, as here, that decision previously was challenged years after it was made, was not reversed at that time and the decision to not reverse was upheld on appeal. Most importantly, even if the DPC were to now, a decade later, reverse prior decisions it made to approve and then to uphold the disclaimer, and even if that future decision were to be upheld on appeal, there is no bar to several parties in this case challenging the effect of any such order on their claims with respect to the interpleader assets, especially since an Illinois court recently held that the disclaimer is irrevocable as it pertains to, and affects, the IT.

## III. The Parties' Claims

### A. Bernard and Samuel's Claims

Bernard and Samuel seek a broad range of relief with respect to the interpleaded assets, including requests for the following declaratory relief:

a. That the funds held in SNT accounts are subject to the decisions and control of a majority of the SNT trustees;

b. That Bernard and Samuel have control of the funds held in IT accounts;

c. That Dain does not have the right to sole access or control over the SNT funds;

d. That IT assets are not available to pay the judgment that the DPC entered against Bernard because they are not personal assets of Bernard;

e. That Joanne does not have any interest in the IT or its assets;

f. That because Joanne has resided in New York since 2013 and was found competent to manage her financial affairs by a New York court in 2016, Goodwin is not a proper representative of Joanne and does not have the authority to act on behalf of Joanne;

g. That SNT and IT assets are trust assets and are not assets of Joanne's conservatorship estate in the DPC;

5

4879-9830-1211, v. 1

h.      That the DPC's orders with respect to SNT and IT assets are void and unenforceable because SNT assets are not assets of the conservatorship estate;

i.      That the DPC's orders with respect to SNT and IT assets are void and unenforceable because the DPC does not have jurisdiction over Samuel as a trustee of the those trusts;

j.      That the DPC's orders with respect to SNT and IT assets are void and unenforceable because the DPC does not have jurisdiction over all beneficiaries of those trust and they were not all made parties to the DPC proceedings;

k.      That Bernard, as Executor of Renata's Estate is entitled to recover from the SNT and IT the attorneys' fees and accounting expenses he has incurred to defend the assets of the Estate, the SNT and the IT given that, as Executor, Bernard had the Estate's assets to the SNT and IT pursuant to Renata's will;

l.      That Bernard and Samuel, as trustees of the IT and SNT, are entitled to recover the reasonable attorneys' fees they have incurred to defend the IT's and SNT's assets and that their claims for reimbursement are ahead of other claims to the assets of those trusts;

m.      That Samuel, as trustee of the SNT and IT, is entitled to recover from IT and SNT assets the legal expenses he has incurred, and may in the future incur, to defend efforts to wrongfully obtain relief from him in Colorado and that his claim to recover those expenses from IT and SNT assets has priority over other claims to those assets;

n.      That the Disclaimers that resulted in the Vanguard account assets being included in the Estate and then passing into the IT and SNT are valid and irrevocable;

o.      That payment of Joanne's or Goodwin's legal fees is not permitted under the SNT;

p.      That Samuel is not bound by any of the orders of the DPC, including as to the interpleaded assets, because the DPC lacks personal jurisdiction over him;

q.      That any orders of the DPC against Bernard in his capacity as trustee of the IT are void and unenforceable on the grounds that the DPC does not have personal jurisdiction over him in that capacity; and

r.      That the DPC lacks jurisdiction to enjoin Bernard or Samuel from acting as a trustee or co-trustee of the SNT and IT.

### B.  **Kate and Olga's Claims**

Kate and Olga have claims to the interpleaded assets arising from loans that they made to

the trusts.  Olga's claim has been reduced to a judgment which has been upheld on appeal.  Kate's

4879-9830-1211, v. 1

claim against the IT has been reduced to judgment as well, while her claim against the SNT is still being litigated in Illinois. Because Kate and Olga are not parties to the DPC proceedings and are not bound by the DPC rulings, they can be expected to not only assert their rights to collect on their claims from the interpleaded assets, but also contest any DPC ruling that the interpleaded trust assets belong in the DPC conservatorship estate, or that any future DPC ruling should take priority over their prior claims to the interpleaded assets. In that regard, it should be noted that their loan claims and judgments precede any valid order to undo the disclaimer, which would be the only basis for arguing that SNT and IT belong in the DPC conservatorship estate.

### C. Dain and Goodwin's Claims

Dain and Goodwin ask this Court to declare that Bernard and Samuel must comply with DPC orders, including future orders, even though Samuel is not a party to proceedings in the DPC and is not subject to personal jurisdiction in Colorado. They also ask this Court to declare that Dain, who is only one of three SNT trustees, has the sole right to control SNT assets. They further pray for this Court to declare that Goodwin is a proper representative of Joanne, even though a court in the state where Joanne resides (New York) declared Joanne competent to manage her own affairs in 2016. In addition, they seek to have this Court declare that the interpleaded assets should be deposited into the DPC registry pursuant to a future order that they hope the DPC will enter, reversing its 2012 approval of the disclaimer and its 2015 refusal to reverse that prior approval. In the alternative, they ask this Court to declare that funds held in trust in the IT can be accessed to pay an individual judgment against Bernard, despite the usual division between personal and trust assets and the interests of the other IT beneficiaries in those assets. They also ask this Court to declare that Joanne has an interest in the IT's assets even though she is not a beneficiary of the IT. In addition, they would like judgments obtained by Kate and Olga to be declared void, even though

7

the judgment Olga obtained was affirmed on appeal after challenges by Dain and Goodwin. And they seek to have this Court enjoin Kate and Olga from enforcing citations with respect to their valid judgments. They further seek to have this Court enjoin Bernard, Samuel, Kate, and Olga from further litigation concerning the interpleaded assets, even though they themselves plan further litigation in the DPC and elsewhere. Finally, they ask this Court to declare that the DPC has made final decisions on jurisdiction when it has not done so and that this Court modify a FINRA arbitration award long after the time for challenging that award in court has passed.

In sum, the scope of issues in this proceeding is extremely broad.

### D. **Problems with the DPC's Jurisdiction which Dain and Goodwin Ignore**

As a threshold matter, this Court should consider the propriety of the DPC's jurisdiction in continuing to maintain a conservatorship in Colorado over Joanne, who has not resided in Colorado since 2013 and who was adjudged in 2016 to be competent to manage her own affairs by a New York court where she does reside. That question hangs over this entire proceeding. There are serious questions as to whether DPC orders are jurisdictionally valid.

Indeed, under the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act, enacted in many states, including Colorado (Colo. Rev. Stat., Title 15, Art. 14.5), because Joanne has resided in New York since 2013, New York is the proper jurisdiction for any guardianship or conservatorship over Joanne, not Colorado. And, as set forth above, a New York court ruled that Joanne did not need a guardian. Moreover, there are additional questions as to whether it is proper for a Colorado court in a conservatorship proceeding to enter orders with respect to trust assets, which are properly under the control of the trustees of the trusts and not subject to the control of a conservator, who is appointed to manage personal, not trust, assets.

And again, most importantly, even if this Court chooses not to address the basis for the DPC to have appointed Goodwin as conservator in 2017, or for continuing the conservatorship today, DPC rulings simply are not binding on most parties to this proceeding.[3] As explained above, Samuel, Kate, and Olga are not parties to the DPC proceedings and have the absolute right to relitigate in this Court any issue decided by the DPC adverse to their interests.[4] Because DPC rulings are not binding on multiple parties to this interpleader action, discovery concerning all matters pertaining to the interpleaded assets and the claims to those assets is relevant and appropriate, regardless of DPC past or future decisions.

## IV.    The Current Dispute Concerning Document Production

Bernard and Samuel propounded their First Requests for Production of Documents to Dain and Goodwin (the "Requests") in 2018. (A copy of the Requests is attached hereto as Exhibit A.) Dain and Goodwin served a written response to the Requests (the "Response"). (A copy of the Response is attached hereto as Exhibit B.)

Dain and Goodwin objected to every single Request. Their principal objections were based upon the common interest doctrine exception to waiver of attorney-client privilege. Bernard and Samuel filed a motion to compel and, after briefing, this Court rejected Dain and Goodwin's privilege assertions. This Court, however, did not rule on actual production, and raised questions about proportionality and the scope of the document production being sought.

---

[3] Even for Bernard, who has appeared in the DPC individually and as SNT trustee, it is important to recognize that he may appeal any adverse future DPC decisions. Those decisions then have no collateral estoppel effect as to him until the appeal process is complete. Discovery should not be curtailed or limited in this case in the meantime.

[4] There also is no basis for subjecting them to personal jurisdiction in Colorado, nor have Dain and Goodwin identified any such basis. They are not residents of Colorado and have not done anything in Colorado to subject themselves to personal jurisdiction there. It even is questionable as to whether the DPC may exercise jurisdiction over Bernard as IT trustee in that he has not appeared before the DPC in that capacity and neither the IT, nor Bernard as IT trustee, are parties in the DPC proceedings. There also is no basis for the DPC to exercise jurisdiction over Bernard as Executor of Renata's Estate, which is being administered in New York.

Since that ruling, counsel for Bernard and Samuel and counsel for Dain and Goodwin have had multiple telephone discussions to try to resolve their differences on the proper scope of document production. They have been unsuccessful in resolving their differences. Even in the limited instances in which Dain and Goodwin previously agreed to produce documents (*i.e.*, legal bills), they now refuse to produce them.[5] They assert that the DPC has barred Bernard from seeing Goodwin's legal bills. There is, however, no such DPC order.[6] Nor would the DPC have the power to restrict discovery in this Court.

## V.     Applicable Legal Standards concerning the Proper Scope of Discovery

It is axiomatic that the scope of discovery is framed by the pleadings. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 486 (7th Cir. 2019) ("Pleadings shape the litigation, including the scope and cost of discovery. Based on the claims and defenses raised in the pleadings, the parties can discover information that is relevant . . . to the needs of the case."). Under Rule 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ...." Or, as stated in *Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020). "Relevance, for discovery purposes, is now gauged in relation to claims or defenses in the action." In *Doe v. Loyola University Chicago*, No. 18 C 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020), the court explained, "Because the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly. *Id.*, *citing, Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The court further

---

[5] In this Court's 2021 Order (at p. 27 n.12), this court noted with respect to production of legal bills that "Dain and Goodwin represented that they had made, or would make, appropriate responsive productions." Despite that representation, they have not done so and refuse to do so. Dain likewise has not answered this Court's inquiry into whether he has used another email address besides his law firm email address.

[6] The closest thing to such an order is when, after Bernard complained to the DPC that Goodwin understated the legal fees she had incurred on behalf of the conservatorship by at least $1.2 million, instead of requiring Goodwin to file a corrected report, the DPC denied Bernard access to her future reports, a ruling Bernard now is appealing.

observed, "If relevance is in doubt, courts should err on the side of permissive discovery." *Id.*, *quoting, Wiginlon v. CB Richard Ellis, Inc.*, 2299 F.R.D. 568, 577 (N.D. Ill. 2004). The court also noted that, "If discovery appears relevant, the burden is on the party objecting to a discovery request to establish the request is improper." *Id.* Moreover, as the court explained in *Shelak v. White Motor Co*., 581 F.2d 1155 (5th Cir. 1978), the discovery rules "are designed ... to give the parties mutual knowledge of all relevant facts, thereby preventing surprise. *Id.* at 1159, *citing, Hickman v. Taylor*, 329 U.S. 495 (1947).

## VI.    The Requests and Their Purpose

Request 1 seeks documents Dain and Goodwin may use at trial to avoid surprise at trial.

Request 2 seeks production of documents showing that Joanne has an interest in the IT. Dain and Goodwin made this an issue in their counterclaim.

Request 3 seeks production of documents concerning the facts and matters at issue in the case, including documents that support or refute any allegations, claims or defenses.

Request 4 asks for documents involving Dain's communications concerning the facts and issues in this case, while Requests 5 and 6 seek communications between Goodwin and Dain, respectively, and others about the facts and issues in this case or in related legal proceedings concerning the IT and SNT, the assets of which are the interpleaded assets.

Requests 7 and 8 ask for documents constituting or concerning agreements to which Dain or Goodwin, respectively, are parties involving the facts and issues in this case.

Requests 9 and 10 seek production of documents supporting any defense that Dain or Goodwin, respectively, are asserting.

Requests 11 and 12 seek documents pertaining to any financial benefit Goodwin or Joanne's conservatorship estate in the DPC received from Dain's conduct and from Goodwin's or

4879-9830-1211, v. 1

Joanne's conduct, respectively, while Requests 13, 14, 25 and 26 seek production of legal bills concerning the matters at issue between the parties. Such documents address issues that go to the heart of Dain, Goodwin, or Joanne's claims to recover legal fees from the interpleaded assets.

Request 15 seeks production of Goodwin's reporting to the DPC. Those documents are relevant in that Bernard and Samuel believe they will show that Goodwin has been failing to report certain information, or misreporting certain information, to the DPC to cause the DPC to rule the way it has. DPC rulings are, of course, the foundation of Dain and Goodwin's claims.

Request 16 seeks production of documents supporting Dain and Goodwin's claims that assets in the subject trusts belong to Joanne or that Bernard and Kate converted such assets. Such documents go directly to the heart of the claims and disputes in this action.

Request 17 seeks production of documents supporting any claim or contention that Bernard breached his fiduciary duties as trustee of the subject trusts. Those documents are directly relevant to Dain and Goodwin's claims in this case.

Request 18 asks for Dain and Goodwin to produce their communications relating to this action and the claims and issues in this action, while Request 19 is addressed to communications involving Dain and Goodwin and third parties concerning the claims and allegations in this action.

Request 20 asks for documents pertaining to communications between Dain and Melissa Schwartz, a Colorado attorney who was involved in the DPC litigation, concerning the facts, claims and issues in this action.

Requests 21 and 22 seek production of communications between Dain and/or Goodwin and the plaintiffs in this action concerning the facts, claims and issues in this action.

Request 23 seeks documents pertaining to any agreement between Dain and Goodwin concerning the matters at issue in this case.

4879-9830-1211, v. 1

And Request 24 asks for documents concerning any agreement between Dain and his sister, Cherie Wrigley, who has been actively involved in matters pertaining to this action, concerning the matters at issue in this litigation.

## VII.    This Court should Compel Production of All Responsive Documents

Bernard's and Samuel's requests all are addressed directly to the matters at issue in this case. This Court, therefore, should order Dain and Goodwin to produce all responsive documents.

In determining relevancy and proportionality, the proper scope of discovery in this case is extensive given the breadth and volume of claims and issues that will need to be resolved in this case for this Court to make decisions affecting claims and rights to the interpleaded assets. There are questions as to whether the interpleaded assets should be turned over to the DPC conservatorship estate and whether DPC orders on such matters are proper from a substantive law and jurisdictional standpoint, and whether those orders are subject to collateral attack by various parties (which they plainly are). There also are related questions as to whether the DPC can properly revoke the disclaimer at some point in the future. Bernard and Samuel respectfully suggest that it cannot. An Illinois court already has ruled that the disclaimer is irrevocable as to the IT, and a similar action with respect to the SNT is pending.[7] Dain and Goodwin, however, will argue that the DPC can revisit its prior authorization of the disclaimer and reverse that decision.

This Court also will face questions as to how to resolve conflicts between DPC orders and orders from other courts. Further, Bernard, Samuel, Dain, and Goodwin all are trying to recover attorneys' fees and related costs from the interpleaded assets, in which the propriety and reasonableness of those fees and the parties' actions in incurring them is at issue.

---

[7] See, *Bernard Black v. David Black*, Case. No. 2021 CH 02952, Cook County, Illinois Circuit Court, and October 4, 2021 order with respect to the IT; and Bernard Black and Samuel Black v. Joanne Black, Case No. 2021 CH 06049, Cook County, Illinois Circuit Court, case pending case with respect to the SNT.

Also, Kate and Olga have claims to the interpleaded assets, some of which already have been reduced to judgment and withstood challenges by Dain and Goodwin both in the lower courts and on appeal. Dain and Goodwin want this Court to honor DPC orders, but overturn Illinois court judgments. This Court will have to decide those issues as well.

Notwithstanding the broad range of claims and issues before this Court, Dain and Goodwin have asserted that the proper scope of discovery is very narrow, asserting that this Court need only resolve priority issues between a possible future DPC ruling that SNT and IT assets should be paid over to the DPC's registry versus claims against the trust assets that others, including Kate and Olga, have. As set forth above, Dain and Goodwin's position plainly is wrong.

The Requests all are appropriate and seek production of documents on facts and issues relevant to this interpleader action. As such, this Court should order their production forthwith.

There will be no undue burden on Dain and Goodwin, particularly since Dain's law firm already has located, compiled, and listed most of the documents being sought in a privilege log. Proportionality also should not be a concern in that there are millions of dollars at issue in this case and a need to resolve conflicts involving orders and decisions from courts in several related pending legal proceedings around the country. Now that this Court has rejected Dain and Goodwin's baseless privilege objections to production, responsive documents should be turned over to Bernard and Samuel right away in response to the Requests.

Bernard and Samuel also note that the 2021 Order instructs Dain and Goodwin "to confirm the status of their search for responsive documents and whether they are withholding any additional responsive documents [other than those listed in a privilege log from Dain's law firm] on any basis." (Order at p. 33.) They surely are, both because Dain's law firms privilege log would not have covered communications by Goodwin that did not include Dain, and because the

14

most recent entry in the privilege log is dated January 31, 2019 – more than three years ago. More than six months have passed since this Court's order was entered, but Dain and Goodwin have not complied with it. Bernard and Samuel request that this Court give them a deadline to comply.

This Court expressed concern as to whether "further inquiry into the communications targeted by Bernard and Samuel will produce a likely benefit that is outweighed by the costs and burdens of production." (*Id.* at p. 31.) In response, Bernard and Samuel do recognize the costs of expansive discovery, but respectfully suggest that the largest component of the cost of discovery in this case has been the legal fees incurred due to Dain and Goodwin's refusal to comply with standard discovery requests or at least discuss in good faith a potential narrowing of the requests. Producing the documents listed in Dain's law firm's privilege log should not be expensive. As to other documents, Dain and Goodwin bear the burden of explaining to this Court why Goodwin should not be ordered to search her own correspondence for responsive documents or why Dain cannot, at reasonable expense, bring his search for documents forward to the present.

WHEREFORE, Bernard and Samuel respectfully request that this Court grant their supplemental motion to compel and order Dain and Goodwin to comply with the court's prior order on discovery, to honor their own prior agreement to produce legal bills, to provide a privilege log for each of Dain and Goodwin, and to produce all responsive documents to the Requests within 30 days of the court's decision on this motion.

Respectfully, submitted,

BERNARD S. BLACK, individually and as Trustee of the 2013 Trust, the SNT and the Issue Trust, and SAMUEL BLACK, as Trustee of the 2013 Trust, the SNT and the Issue Trust

By: /s/Brad S. Grayson
    One of Their Attorneys

15

Benjamin N. Feder (ARDC# 6277452)
Brad S. Grayson (ARDC# 6196336)
STRAUSS & MALK LLP
135 Revere Drive
Northbrook, IL 60062
(847) 562-1400 (Tel.)
bfeder@straussmalk.com
bgrayson@straussmalk.com

16

# EXHIBIT A

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and J.P. MORGAN SECURITIES LLC | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-03447 |
| v. | ) ) ) | |
| BERNARD S. BLACK, individually and as trustee, SAMUEL BLACK, individually and as trustee, ANTHONY DAIN, individually and as trustee, KATHERINE LITVAK, OLGA DAL, and JEANNETTE GOODWIN, as court appointed Conservator, and JOANNE BLACK, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**BERNARD S. BLACK AND SAMUEL BLACK'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO ANTHONY DAIN AND JEANETTE GOODWIN**

Bernard S. Black ("Bernard") and Samuel Black ("Samuel"), individually and as trustees, through their undersigned counsel, request that Anthony Dain ("Dain") and Jeanette Goodwin ("Goodwin"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, produce the following documents to Bernard and Samuel's counsel within 30 days:

1.     All documents Dain or Goodwin expects or intends to use at any trial or evidentiary hearing in this case.

2.     All documents showing, or tending to show that Joanne has an interest of any kind in the Issue Trust.

3.     All documents reflecting, referring to, or relating to the facts and matters at issue in this case, including any and all documents that support, refute, or that may tend to support or refute, any of the allegations, claims and defenses at issue in this case.

4. All documents constituting, reflecting, referring to, or relating to any and all communications, whether oral or in writing, between Dain or anyone acting on Dain's behalf, and any other party or anyone acting on that party's behalf, concerning the facts and matters at issue in this case.

5. All documents constituting, reflecting, referring to, or relating to any and all communications, whether oral or in writing, between Goodwin or anyone acting on Goodwin's behalf, and any other party or anyone acting on that party's behalf, concerning the facts and matters at issue in this case, including without limitation, facts and matters relevant to any lawsuit, case, action or legal proceeding of any kind, including any arbitration proceeding, which involved or involves any of the parties to this case and in which the Issue Trust or SNT is at issue in, or the subject of, any aspect of such lawsuit, case, action or legal proceeding (the "Relevant Proceedings").

6. All documents constituting, reflecting, referring to, or relating to any and all communications, whether oral or in writing, between Dain or anyone acting on Dain's behalf, and any other party or anyone acting on that party's behalf, concerning the facts and matters at issue in this case, including without limitation, the Relevant Proceedings.

7. All communications and other documents constituting, reflecting, referring to, or relating to any contract or agreement, oral or written, between Dain and any other party concerning the facts and matters at issue in this case, including without limitation, any loan to the Black family trusts that is at issue in this case and any alleged oral or written common interest agreement to which Dain is a party.

8. All documents constituting, reflecting, referring to, or relating to any contract or agreement, oral or written, between Goodwin and any other party concerning the facts and matters

at issue in this case, including without limitation, any loan to the Black family trusts that is at issue in this case and any alleged oral or written common interest agreement to which Dain is a party.

9. All documents supporting, or tending to support, Dain's claims and/or defenses in this case.

10. All documents supporting, or tending to support, Goodwin's claims and/or defenses in this case.

11. All documents reflecting, referring to, or relating to, any benefit of any kind, financial or otherwise, received by, or which may be received by, Joanne or the Conservatorship Estate as the result of Dain's actions, in any case, proceeding or litigation matter.

12. All documents reflecting, referring to, or relating to, any benefit of any kind, financial or otherwise, received by, or which may be received by, Joanne or the Conservatorship Estate as the result of Goodwin's or Joanne's actions in any case, proceeding or litigation matter.

13. All legal and accounting bills, communications, and other documents reflecting, referring to, or relating to, money paid by, charged to or which may be charged to, or costs imposed against or which may be imposed against, Joanne, the Conservatorship Estate, or the Black family trusts, arising from Dain's actions in any case, proceeding or litigation matter, whether paid or unpaid.

14. All legal and accounting bills, communications, and other documents reflecting, referring to, or relating to, money paid by, charged to or which may be charged to, or costs imposed against or which may be imposed against, Joanne, the Conservatorship Estate, or the Black family trusts, arising from Goodwin's or Joanne's actions in any case, proceeding or litigation matter, whether paid or unpaid.

15.     All communications and other documents relating to Goodwin's reporting to the Denver Probate Court on her actions as Conservator.

16.     All documents supporting any claim or contention by Dain and/or Goodwin that any assets in the 2013 Trust, SNT or Issue Trust are the property of Joanne, or that Bernard or Kate converted certain of those assets for their own use and benefit.

17.     All documents supporting any claim or contention by Dain and/or Goodwin that Bernard has breached his fiduciary duties as trustee of the SNT, Issue Trust and/or 2013 Trust.

18.     All documents constituting, reflecting, referring to, or relating to, any communication, written or oral, between Dain and Goodwin concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case.

19.     All documents constituting, reflecting, referring to, or relating to, any communication, written or oral, between or including Dain and any other person, or between or including Goodwin and any other person, concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case, including without limitation (i) any person named in the Common Interest and Joint Defense Agreement dated in or about May 2018, among Dain, Goodwin, Cherie Wrigley, and the other parties named therein ("Joint Defense Agreement"), whether or not those parties or their counsel are signatories to this agreement.

20.     All documents constituting, reflecting, referring to, or relating to, any communication, written or oral, between Dain and Melissa Schwartz, or anyone acting or purporting to act on her behalf, concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case.

21.     All documents constituting, reflecting, referring to, or relating to, any communication, written or oral, between or including Dain or anyone acting on his behalf and

Chase or anyone acting on Chase's behalf concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case.

22.     All documents constituting, reflecting, referring to, or relating to, any agreement, written or oral, between Dain or Goodwin, on the one hand, and Chase on the other hand, concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case.

23.     All documents constituting, reflecting, referring to, or relating to, any agreement, written or oral, between or including Dain and Goodwin concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case, including but not limited to the Joint Defense Agreement and any engagement agreements between either of them and counsel involving this case or any Related Proceeding.

24.     All documents constituting, reflecting, referring to, or relating to, any agreement, written or oral, between Dain and Cherie Wrigley, or anyone acting or purporting to act on her behalf, concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case, including but not limited to the Joint Defense Agreement, and any engagement agreements between either of them and counsel involving this case or any Related Proceeding.

25.     All documents constituting, reflecting, referring to, or relating to, any legal or professional bills or invoices issued to, or paid by, Dain, Goodwin or Cherie Wrigley from funds or assets of Joanne, the Conservatorship Estate, or any of the Black family trusts.

26.     All documents constituting, reflecting, referring to, or relating to, any legal and professional bills or invoices issued to, or paid by, Dain, Goodwin or Cherie Wrigley arising from, or related to, any case, claim, matter, litigation or legal proceeding of any kind between or involving any two or more of the following parties, Dain, Goodwin, Cherie Wrigley, Samuel,

Bernard, Katherine, Olga, the Conservatorship Estate, the Estate of Renata Black, any of the Black family trusts.

## Definitions and Instructions

1.    For purposes of these discovery requests, the term "Bernard" shall mean Bernard and anyone acting or purporting to act on his behalf.

2.    For purposes of these discovery requests, the term "Samuel" shall mean Samuel and anyone acting or purporting to act on his behalf.

3.    For purposes of these discovery requests, the term "Katherine" shall mean Katherine Litvak and anyone acting or purporting to act on her behalf.

4.    For purposes of these discovery requests, the term "Olga" shall mean Olga Dal and anyone acting or purporting to act on her behalf.

5.    For purposes of these discovery requests, the term "Goodwin" shall include intervenor, Jeanette Goodwin, her predecessor as conservator for Joanne, Melissa Schwartz, and anyone acting of purporting to act on behalf of either one of them.

6.    For purposes of these discovery requests, the term "Dain" shall mean Anthony Dain, in his individual capacity and as trustee of the SNT, the Issue Trust and the 2013 Trust, and anyone acting or purporting to act on his behalf.

7.    For purposes of these discovery requests, the term "Conservatorship Estate" means the conservatorship estate for Joan, established in Colorado, for which Intervenor is the current conservator.

8.    For purposes of these discovery requests, the term "Chase" shall mean JP Morgan Chase Bank, N.A., J.P. Morgan Securities, LLC and anyone acting or purporting to act on behalf of either or both of those entities.

9.     For purposes of these discovery requests, the term "identify" as used with respect to individuals shall mean and include the individual's name, address or last known address, telephone number or last known telephone number, and email address or last known email address.

10.     For purposes of these discovery requests, "document" means any document or thing discoverable under Rule 34 of the Federal Rules of Civil Procedure, including information whether written, recorded, or electronically stored, including images and sound recordings, whether recorded, produced, or reproduced, and stored in any form, regardless of who authored or prepared the documents, or any portions thereof. "Document" includes both records and summaries of records, and includes original versions, drafts, and copies that differ in any respect from the original versions. The term "document" as used herein is intended to encompass all recorded information whatsoever that is responsive to these discovery requests.

11.     For purposes of these discovery requests, "communications" means all exchanges of information in any medium whether oral, written, or electronic. Each Request that seeks information relating in any way to communications to, from, or within a business or corporate entity is hereby designed to mean, and shall be construed to include, all communications by and between employees, agents, servants, or anyone else representing or acting on behalf of the business or corporate entity.

12.     "Reflecting," "referring to," "relating to," "constituting," "regarding," or "referencing" (whether capitalized or lowercase) means a statement about, referring to, discussing, describing, reflecting, dealing with, evidencing, consisting of, citing, comprising, summarizing, analyzing, recording, or in any other way pertaining to the matter discussed, in whole or in part, and directly or indirectly.

13.     Unless otherwise stated, these discovery requests seek information from January 1, 2013 through the present.

14.     In these discovery requests, the singular form of a word includes the plural and vice versa; "and" includes "or" and vice versa; all pronouns apply equally to all genders; the word "any" includes the word "all" and vice versa; and the use of any tense of any verb includes within its meaning all other tenses of the verb used.

15.     Documents, including Electronically Stored Information, shall be produced in the format in which they were created and are kept in the ordinary course of business.

16.     Provide a privilege log listing for each and every document withheld on grounds of privilege a description of the nature of the document and the exact privilege being asserted to justify withholding the document from production.

BERNARD S. BLACK and SAMUEL BLACK, as
Trustees of the SNT, 2013 Trust and Issue Trust


By: /s/Brad S. Grayson
    One of Their Attorneys



Benjamin N. Feder
Brad S. Grayson
Samantha E. Weissbluth
STRAUSS & MALK LLP
135 Revere Drive
Northbrook, IL 60062
(847) 562-1400 (Tel.)
(847) 562-1499 (Fax)
brayson@straussmalk.com
bfeder@straussmalk.com
sweissbluth@straussmalk.com

# EXHIBIT B

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and J.P. MORGAN SECURITIES LLC | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-03447 |
| v. | ) ) | |
| BERNARD S. BLACK, individually and as trustee, SAMUEL BLACK, individually and as trustee, ANTHONY DAIN, individually and as trustee, KATHERINE LITVAK, OLGA DAL, and JEANNETTE GOODWIN, as court appointed Conservator, and JOANNE BLACK, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ANTHONY DAIN AND  JEANETTE GOODWIN'S RESPONSES TO BERNARD S. BLACK AND SAMUEL BLACK'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Anthony Dain and Jeanette Goodwin ("Defendants"), for their responses to Bernard S.

Black ("Bernard") and Samuel Black ("Samuel") first request for production, state as follows:

### Preliminary Statement

1.      By providing the information requested, Defendants do not waive any objection to the admission into evidence of any information provided herein on the grounds of relevance, materiality, or on any other ground.

2.      The responses provided herein are made in good faith on the basis of present knowledge and without prejudice to Defendants' right to produce evidence or facts subsequently discovered or recalled. Further discovery, independent investigation, legal research, and analysis may supply additional facts and meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial modifications and/or additions to these responses.

3.      The word usage and sentence structure herein are those of the attorney assisting in the preparation of these responses and not the precise language of Defendant.

### General Objections To Requests

1. Defendants' General Objections apply to every portion of the Requests for Production of Documents ("Requests"). Defendants' General Objections are incorporated into every response to each individual Request set forth below, even though the General Objections may not be restated in each individual response. The fact that Defenants have provided information in response to a Request is not a waiver of any objection made to any Request.

2. Defendants' objections and responses to these Requests are made without waiving or intending to waive:

  a. All questions as to competency, relevancy, materiality, privilege, and admissibility of evidence for any purpose of the responses or subject matter thereof, in any subsequent proceeding in or the trial of this or any other action;

  b. The right to object on any ground to the use of said responses or the subject matter thereof, in any discovery directed to the subject matter of the Requests or response, subsequent proceedings, and in the trial of this or any other action;

  c. The right to make additional or supplementary objections;

  d. The right to revise, correct, supplement, or clarify these responses in accordance with the Federal Rules of Civil Procedure; and

  e. The right to object on any ground at any time to other requests for admission, interrogatories, document requests, or other discovery procedures involving or relating to the subject of these responses.

3. Defendants' investigation into this matter is continuing. These responses are based on and, therefore, necessarily limited by, the records and information in existence, presently recollected, and thus far discovered in the course of preparing these responses. Defendants reserve the right to make any changes in these responses if it appears at any time that omissions or errors have been made or that more accurate information is available.

4. Defendants object to each and every Request to the extent it seeks documents or other materials or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable law or privilege.

5. Defendants to each and every Request to the extent it seeks to impose requirements beyond those set forth in the Federal Rules of Civil Procedure and other applicable law.

6. Defendants object to each and every Request to the extent it seeks confidential or proprietary information.

7. Defendants object to each and every Request to the extent it calls for information which is not within the possession, custody, or control of Defendants.

8. Defendants object to each and every Request to the extent that it is vague, overly broad, unduly burdensome, harassing, or not reasonably calculated to lead to the discovery of relevant information or admissible evidence.

9. Defendants objects to each and every Request to the extent that it calls for information that may be derived or ascertained from information or records which are in possession

of the requesting parties, or that have been previously identified or produced to the requesting parties, as the burden of deriving or ascertaining the information is greater for Defendants than for requesting parties or substantially the same for requesting parties as for Defendants.

      10.    Without waiving any of its General Objections, which are applicable to all of the Requests, Defendants has set forth responses to these Requests to the extent that:

      a.   Information is presently known and available as a result of reasonable search and inquiry by Defendants.

      b.   Information is not subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable law or privilege; and

      c.   Defendants has not further objected to a particular Request.

## <u>RESPONSES</u>

      1.    All documents Dain or Goodwin expects or intends to use at any trial or evidentiary hearing in this case.

    <u>**RESPONSE**</u>: Subject to and without waiving the General Objections, Dain and Goodwin will produce any relevant and non-privileged documents in their possession, custody, or control.

      2.    All documents showing,or tending to show that Joanne has an interest of any kind in the Issue Trust.

    <u>**RESPONSE:**</u> Subject to and without waiving the General Objections, Dain and Goodwin will produce any relevant and non-privileged documents in their possession, custody, or control.

      3.    All documents reflecting, referring to, or relating to the facts and matters at issue in this case, including any and all documents that support, refute, or that may tend to support or refute, any of the allegations, claims and defenses at issue in this case.

    <u>**RESPONSE:**</u> In supplement to their General Objections, Defendants object to this Request for the following reasons: vague, and overly broad. Subject to and without waiving those objections, Dain and Goodwin will produce relevant and non-privileged documents in their possession, custody, or control.

      4.    All documents constituting, reflecting, referring to, or relating to any and all communications, whether oral or in writing, between Dain or anyone acting on Dain's behalf, and any other party or anyone acting on that party's behalf, concerning the facts and matters at issue in this case.

    <u>**RESPONSE:**</u> In supplement to their General Objections, Defendants object to this Request

for the following reasons: vague, overly burdensome and overly broad. Subject to and without

waiving the General Objections, Dain and Goodwin will produce relevant and non-privileged

documents in their possession, custody, or control.

5.      All documents constituting, reflecting, referring to, or relating to any and all communications, whether oral or in writing, between Goodwin or anyone acting on Goodwin's behalf, and any other party or anyone acting on that party's behalf, concerning the facts and matters at issue in this case, including without limitation, facts and matters relevant to any lawsuit, case, action or legal proceeding of any kind, including any arbitration proceeding, which involved or involves any of the parties to this case and in which the Issue Trust or SNT is at issue in, or the subject of, any aspect of such lawsuit, case, action or legal proceeding (the "Relevant Proceedings").

**RESPONSE:** In supplement to their General Objections, Defendants object to this Request

for the following reasons: vague, overly burdensome and overly broad. Subject to and without

waiving the General Objections, Dain and Goodwin will produce relevant and non-privileged

documents in their possession, custody, or control.

6.      All documents constituting, reflecting, referring to, or relating to any and all communications, whether oral or in writing, between Dain or anyone acting on Dain's behalf, and any other party or anyone acting on that party's behalf, concerning the facts and matters at issue in this case, including without limitation, the Relevant Proceedings.

**RESPONSE:** In supplement to their General Objections, Defendants object to this Request

for the following reasons: vague, overly burdensome, and overly broad. Subject to and without

waiving the General Objections, Dain and Goodwin will produce relevant and non-privileged

documents in their possession, custody, or control.

7.      All communications and other documents constituting, reflecting, referring to, or relating to any contract or agreement, oral or written, between Dain and any other party concerning the facts and matters at issue in this case, including without limitation, any loan to the Black family trusts that is at issue in this case and any alleged oral or written common interest agreement to which Dain is a party.

**RESPONSE:** In supplement to their General Objections, Defendants object to this Request

for the following reasons: vague, overly burdensome, and overly broad. Subject to and without

waiving the General Objections, Dain and Goodwin will produce relevant and non-privileged

documents in their possession, custody, or control.

8.     All documents constituting, reflecting, referring to, or relating to any contract or agreement, oral or written, between Goodwin and any other party concerning the facts and matters at issue in this case, including without limitation, any loan to the Black family trusts that is at issue in this case and any alleged oral or written common interest agreement to which Dain is a party.

**RESPONSE:** In supplement to their General Objections, Defendants object to this Request for the following reasons: vague, overly burdensome, and overly broad. Subject to and without waiving the General Objections, Dain and Goodwin will produce relevant and non-privileged documents in their possession, custody, or control.

9.     All documents supporting, or tending to support, Dain's claims and/or defenses in this case.

**RESPONSE:** In supplement to their General Objections, Defendants object to this Request for the following reasons: vague, and overly broad. Subject to and without waiving the General Objections, Dain and Goodwin will produce any relevant and non-privileged documents in their possession, custody, or control.

10.     All documents supporting, or tending to support, Goodwin's claims and/or defenses in this case.

**RESPONSE:** In supplement to their General Objections, Defendants object to this Request for the following reasons: vague, and overly broad. Subject to and without waiving the General Objections, Dain and Goodwin will produce any relevant and non-privileged documents in their possession, custody, or control.

11.     All documents reflecting, referring to, or relating to, any benefit of any kind, financial or otherwise, received by, or which may be received by, Joanne or the Conservatorship Estate as the result of Dain's actions, in any case, proceeding or litigation matter.

**RESPONSE:** In supplement to their General Objections, Defendants object to this Request for the following reasons: vague, and overly broad. Subject to and without waiving the General Objections, Dain and Goodwin will produce relevant and non-privileged documents in their possession, custody, or control.

12.     All documents reflecting, referring to, or relating to, any benefit of any kind, financial or otherwise, received by, or which may be received by, Joanne or the Conservatorship

Estate as the result of Goodwin's or Joanne's actions in any case, proceeding or litigation matter.

**RESPONSE:** In supplement to their General Objections, Defendants object to this

Request for the following reasons: vague, and overly broad. Subject to and without waiving the

General Objections, Dain and Goodwin will produce any relevant and non-privileged documents

in their possession, custody, or control.

13.     All legal and accounting bills, communications, and other documents reflecting, referring to, or relating to, money paid by, charged to or which may be charged to, or costs imposed against or which may be imposed against, Joanne, the Conservatorship Estate, or the Black family trusts, arising from Dain's actions in any case, proceeding or litigation matter, whether paid or unpaid.

**RESPONSE:**. Subject to and without waiving the General Objections, Dain and Goodwin

have produced all relevant and non-privileged documents in their possession, custody, or control.

14.     All legal and accounting bills, communications, and other documents reflecting, referring to, or relating to, money paid by, charged to or which may be charged to, or costs imposed against or which may be imposed against, Joanne, the Conservatorship Estate, or the Black family trusts, arising from Goodwin's or Joanne's actions in any case, proceeding or litigation matter, whether paid or unpaid.

**RESPONSE:** Subject to and without waiving the General Objections, Dain and Goodwin

have produced all relevant and non-privileged documents in their possession, custody, or control.

15.     All communications and other documents relating to Goodwin's reporting to the Denver Probate Court on her actions as Conservator.

**RESPONSE:** Subject to and without waiving the General Objections, Dain and Goodwin

will produce any relevant and non-privileged documents in their possession, custody, or control.

16.     All documents supporting any claim or contention by Dain and/or Goodwin that any assets in the 2013 Trust, SNT or Issue Trust are the property of Joanne, or that Bernard or Kate converted certain of those assets for their own use and benefit.

**RESPONSE:** Subject to and without waiving the General Objections, Dain and Goodwin

will produce any relevant and non-privileged documents in their possession, custody, or control.

17.     All documents supporting any claim or contention by Dain and/or Goodwin that Bernard has breached his fiduciary duties as trustee of the SNT, Issue Trust and/or 2013 Trust.

**RESPONSE:** Subject to and without waiving the General Objections, Dain and Goodwin

will produce any relevant and non-privileged documents in their possession, custody, or control.

18.    All documents constituting, reflecting, referring to, or relating to, any communication, written or oral, between Dain and Goodwin concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case.

**RESPONSE:** Subject to and without waiving the General Objections, Dain and Goodwin

will produce any relevant and non-privileged documents in their possession, custody, or control.

19.    All documents constituting, reflecting, referring to, or relating to, any communication, written or oral, between or including Dain and any other person, or between or including Goodwin and any other person, concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case, including without limitation (i) any person named in the Common Interest and Joint Defense Agreement dated in or about May 2018, among Dain, Goodwin, Cherie Wrigley, and the other parties named therein ("Joint Defense Agreement"), whether or not those parties or their counsel are signatories to this agreement.

**RESPONSE:** In supplement to their General Objections, Defendants object to this Request

for the following reasons: vague, overbroad, and overly burdensome. Dain and Goodwin further

object on the basis that the Joint Defense Agreement is privileged. Subject to and without waiving

the General Objections, Dain and Goodwin will produce relevant and non-privileged documents in

their possession, custody, or control.

20.    All documents constituting, reflecting, referring to, or relating to, any communication, written or oral, between Dain and Melissa Schwartz, or anyone acting or purporting to act on her behalf, concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case.

**RESPONSE:** Subject to this objection and the General Objections, Dain and Goodwin

will produce relevant and non-privileged documents in their possession, custody, or control.

21.    All documents constituting, reflecting, referring to, or relating to, any communication, written or oral, between or including Dain or anyone acting on his behalf and Chase or anyone acting on Chase's behalf concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case.

**RESPONSE:** Dain and Goodwin object to this Request to the extent that it seeks

documents created following the commencement of the instant action. Subject to this objection

and the General Objections, Dain and Goodwin will produce relevant and non-privileged

documents in their possession, custody, or control.

22.　　All documents constituting, reflecting, referring to, or relating to, any agreement, written or oral, between Dain or Goodwin, on the one hand, and Chase on the other hand, concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case.

**RESPONSE:** Dain and Goodwin object to this Request to the extent that it seeks

documents created following the commencement of the instant action. (for example, assenting to a

proposed agreed motion proposed by Chase's counsel in this matter). Subject to this objection and

the General Objections, Dain and Goodwin will produce relevant and non-privileged documents

in their possession, custody, or control.

23.　　All documents constituting, reflecting, referring to, or relating to, any agreement, written or oral, between or including Dain and Goodwin concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case, including but not limited to the Joint Defense Agreement and any engagement agreements between either of them and counsel involving this case or any Related Proceeding.

**RESPONSE:** Dain and Goodwin object to the production of the Joint Defense Agreement

as privileged. Subject to and without waiving this objection or the General Objections, Dain and

Goodwin will produce relevant and non-privileged documents in their possession, custody, or

control.

24.　　All documents constituting, reflecting, referring to, or relating to, any agreement, written or oral, between Dain and Cherie Wrigley, or anyone acting or purporting to act on her behalf, concerning this case or the allegations, claims, defenses, subjects and/or matters at issue in this case, including but not limited to the Joint Defense Agreement, and any engagement agreements between either of them and counsel involving this case or any Related Proceeding.

**RESPONSE:** Dain and Goodwin object to the production of the Joint Defense Agreement

as privileged. Subject to and without waiving this objection or the General Objections, Dain and

Goodwin will produce relevant and non-privileged documents in their possession, custody, or

control.

25.　　All documents constituting, reflecting, referring to, or relating to, any legal or professional bills or invoices issued to, or paid by, Dain, Goodwin or Cherie Wrigley from funds or assets of Joanne, the Conservatorship Estate, or any of the Black family trusts.

**RESPONSE:** Defendants object to this Request as confusing, as bills cannot be "issued

to…Dain, Goodwin or Cherie Wrigley from funds …" To the extent that this request is

duplicative of Requests 13 and 14, Defendants object on that ground as well.

    26.    All documents constituting, reflecting, referring to, or relating to, any legal and professional bills or invoices issued to, or paid by, Dain, Goodwin or Cherie Wrigley arising from, or related to, any case, claim, matter, litigation or legal proceeding of any kind between or involving any two or more of the following parties, Dain, Goodwin, Cherie Wrigley, Samuel, Bernard, Katherine, Olga, the Conservatorship Estate, the Estate of Renata Black, any of the Black family trusts.

    **RESPONSE:** Defendants object to Request 26 as duplicative of Requests 13 and 14.

Subject to and without waiving the General Objections, Dain and Goodwin will produce relevant

and non-privileged documents in their possession, custody, or control.

Dated: August 23, 2019

                ANTHONY DAIN, individually and as trustee, and JEANETTE GOODWIN as court-appointed Conservator for Joanne Black.

                By: /s/Peter Stasiewicz
                    *One of Their Attorneys*

                Peter Stasiewicz (ARDC # 6290832)
                ARCTURUS LAW FIRM
                211 West Wacker Drive Suite 323
                Chicago, IL 60606
                (312) 957-6194 (tel)
                (312) 489-8307 (fax)
                pete@arcturuslaw.com

## CERTIFICATE OF SERVICE

I, Peter Stasiewicz, an attorney, hereby certify that on August 23, 2019, I served the foregoing Defendants Anthony Dain and Jeanette Goodwin's Responses to Defendants' First Set of Requests for Production by email on the following parties:

Michael N. Ungar
ULMER & BERNE LLP
1660 W. 2nd Street
Suite 1100
Cleveland, OH 44113
mungar@ulmer.com

Kenneth F. Berg
ULMER & BERNE LLP
500 W. Madison St.
Suite 3600
Chicago, IL 60661-4587
kberg@ulmer.com

Benjamin N. Feder
Brad S. Grayson
STRAUSS & MALK LLP
135 Revere Drive
Northbrook, IL 60062
bfeder@straussmalk.com
bgrayson@straussmalk.com

Eugene E. Murphy, Jr.
David F. Hyde
MURPHY LAW GROUP, LLC
161 N. Clark Street, Suite 2550
Chicago, IL 60601
dhyde@murphylitigation.com
gmurphy@murphylitigation.com

By: /s/ Peter Stasiewicz

1(