**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and J.P. MORGAN SECURITIES LLC | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-03447 |
| v. | ) ) ) | |
| BERNARD S. BLACK, individually and as trustee, SAMUEL BLACK, individually and as trustee, ANTHONY DAIN, individually and as trustee, KATHERINE LITVAK, OLGA DAL, and JEANNETTE GOODWIN, as court appointed Conservator, and JOANNE BLACK, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS ANTHONY DAIN AND JEANETTE GOODWIN'S**
**FIRST AMENDED COUNTERCLAIMS AND CROSSCLAIMS**

Defendants Anthony Dain ("Dain"), individually and as trustee, and Jeannette Goodwin ("Goodwin") as court-appointed Conservator for Joanne Black, (together, "Defendants"), by their undersigned attorneys, for their First Amended Crossclaim and Counterclaim, state as follows:

**CROSSCLAIMS AND COUNTERCLAIM**

Counter-plaintiffs Anthony Dain ("Dain"), as trustee of the SNT, and Jeanette Goodwin ("Goodwin"), as court-appointed successor conservator for Joanne Black, for their Counterclaim against JPMorgan Chase Bank, National Association ("Chase Bank") and J.P. Morgan Securities LLC ("JPMS LLC"), Bernard Black, Samuel Black, Katherine Litvak, and Olga Dal, allege as follows:

1.      Counter-plaintiff Jeannette Goodwin is the successor conservator for Joanne Black ("Conservator"), as appointed by the Denver Probate Court, Denver County, Colorado ("DPC"), In the matter of Joanne Black, Case No. D201PR001772 (Hon. Elizabeth D. Leith). Conservator is an individual citizen of Colorado.

2.      Counter-plaintiff Anthony Dain is Renata's nephew and Bernard's and Joanne's cousin. Anthony was an original trustee (co-trustee with Renata) of the Supplemental Needs Trust for the Benefit of Joanne Black under agreement dated December 19, 1997 ("SNT"), the Joanne Black 2013 Trust Agreement executed on March 22, 2013 ("2013 Trust"), and the Trust for the Benefit of the Issue of Renata Black ("Issue Trust"). (Collectively, the foregoing trusts are referred to herein as the "Trusts.")

3.      Joanne Black ("Joanne") is an individual citizen of the State of New York. Joanne is Bernard's sister, Samuel's aunt, and Litvak's sister-in-law.

4.      Bernard Steven Black ("Bernard"), is an individual citizen of Illinois, residing in Cook County. Bernard is Joanne's sister, Renata's son, Litvak's husband, and Samuel's father.

5.      Katherine Litvak Black, also known as Katherine Valerie Litwak, Katherine Valerie Litvak, and Yekaterina Valerie Litvak, ("Litvak") is an individual citizen of Illinois, residing in Cook County. Litvak is the current wife of Bernard and stepmother of Sam.

6.      Litvak and Bernard are both licensed (non-Illinois) attorneys and are professors at Northwestern University Pritzker School of Law ("Northwestern").

7.      The POD assets are held by JPMorgan Chase Bank, N.A. ("Chase Bank"), J.P. Morgan Securities LLC ("JPMS LLC"), and/or their affiliates (collectively, "Chase").

8.      Upon information and belief, Defendant, Olga Dal ("Dal") is an individual citizen of the State of Washington. Upon information and belief, Dal is Litvak's cousin.

9.      Upon information and belief, Defendant, Samuel H. Black ("Sam") is an individual citizen of Maryland. Samuel is Bernard's son, Litvak's stepson, and Joanne's nephew.

10.     Renata Black ("Renata") now deceased, was Bernard's and Joanne's mother, Samuel's grandmother, and Litvak's mother-in-law. Renata passed away on May 1, 2012.

### The Trusts

11.     On December 19, 1997, Renata as Settlor established the SNT for Joanne's benefit.

12. Pursuant to the SNT, there were two Trustees of the SNT: Renata and Dain.

13. After Renata's death, Bernard became the successor trustee to Renata for the SNT.

14. Dain is and always has been a Trustee of the SNT.

15. During Joanne's lifetime, she is the sole beneficiary of the SNT.

16. On December 19, 1997, Renata as Settlor established the Issue Trust for the benefit of the Bernard and his descendants.

17. Before her death, Renata established Roth IRA and other accounts at Vanguard and Fidelity, which accounts by the time of Renata's death had a combined value exceeding $3.5 million.

18. Renata designated Joanne as the direct recipient of 95% of those accounts to be payable or transferable on death to Joanne (the "POD assets"), such assets valued at approximately $3.5 million in marketable securities.

19. The POD assets are held by Chase Bank and JPMS LLC, and/or their affiliates (collectively, "Chase").

20. Following her death, Bernard initiated the probate process for Renata's estate by filing a petition in the Surrogate's Court of the State of New York, County of Westchester ("NY Probate Court"), Probate Proceeding, *Will of Renata Black*, Case No. 2012-1209. Pursuant to will Bernard submitted, Bernard was appointed Executor.

21. Because they were payable on death to Joanne, the POD assets were not part of Renata's Estate, but instead were the property of Joanne, individually, upon Renata's death.

22. Pursuant to the terms of the will Bernard submitted to NY Probate Court, assets in Renata's estate would pass one-third to the Issue Trust for the benefit of Bernard and his descendants and two-thirds to the SNT for Joanne's benefit.

23. Bernard knew the POD assets had transferred to Joanne directly upon Renata's death and belonged to Joanne.

24. Bernard knew that, if he was able to obtain control of Joanne's POD assets, he would

funnel Joanne's POD assets through Renata's estate of which he was the Executor and direct one-third of Joanne's POD assets into the Issue Trust for his and his children's benefit.

25.     On October 16, 2012, Bernard initiated a suit in Denver, Colorado, where Joanne then resided, petitioning for appointment as Joanne's conservator, *In re Application of Bernie Black*, Case No. 2012 PR 1772 ("Colorado Case").

26.     Bernard represented to the DPC that he needed to safeguard Joanne's assets, including the $3.5 million POD assets which passed directly to Joanne, for Joanne's benefit.

27.     In pursuit of his appointment as conservator, Bernard represented that Joanne was schizophrenic and homeless in Denver; that Joanne had directly inherited the POD assets from Renata; and the POD assets would pass outright to Joanne, and not into the SNT.

28.     As part of his petition for appointment as conservator of Joanne's property Bernard stated to the DPC his intention transfer all of Joanne's POD assets into the SNT for her benefit.

29.     Understanding that Bernard would disclaim on behalf of Joanne the entirety of the POD assets and that Bernard would move all of the POD assets into the SNT for Joanne's sole benefit, the DPC granted Bernard's petition and appointed him conservator.

30.     In or about early 2013, while Bernard was continuing to portray himself as complying with his fiduciary duties and protecting his sister Joanne's best interests, Bernard prepared and requested Dain sign an amendment to the SNT adding Samuel as a "backup trustee" in the event of an urgency in the future where either Bernard or Dain was unavailable to act.

31.     In or about early 2013, upon obtaining control of Joanne's property from the DPC and contrary to his representations to the DPC, Bernard disclaimed Joanne's rights to the POD assets; transferred Joanne's POD assets to Renata's NY Probate Court estate; caused one-third of Joanne's POD assets (approximately $1.5 million) to be conveyed to the Issue Trust for himself and his descendants; placed just two-thirds of Joanne's POD assets into the SNT and 2013 Trust; and directed other assets belonging to Joanne into the SNT and 2013 Trust over which he exerted control.

32. In February 2013, as part of his scheme to steal from Joanne and control her assets, Bernard created the Joanne Black 2013 Trust Agreement (2013 Trust).

33. Bernard and Samuel appointed themselves, together with Dain, as co-trustees.

34. Bernard convinced Dain it was beneficial to include Samuel as a third trustee "just for backup for the future," in the event Dain was traveling overseas for work or unavailable at a time when Joanne may have an immediate need for care.

35. Contrary to the representation to Dain, by establishing themselves as co-trustees, Bernard and Samuel sought to assure their ability to act as the majority without Dain's agreement or knowledge, in order to access and convert Joanne's assets to their own use.

36. Among others of Joanne's assets, Bernard transferred into the 2013 Trust the Fidelity funds accounts Joanne obtained before Bernard persuaded the DPC to appoint him as Joanne's conservator.

### Bernard's Theft and Self-Dealing

37. At a time when he was required by DPC order to place assets belonging to Joanne into the SNT for Joanne's benefit as beneficiary of the SNT and while he was trustee of the SNT, Bernard converted to his own use and benefit $1.5 million of the assets which should have gone to the SNT.

38. Acting as a fiduciary relative to Joanne, Bernard disclaimed her $3.5 million POD inheritance from their mother; funneled Joanne's assets through accounts Bernard created in Renata's probate estate where he also owed fiduciary duties to Joanne; through this mechanism, converted one-third of Joanne's assets; and removed such assets to the Issue Trust for his and his children's benefit.

39. Bernard created a new trust purportedly for Joanne's benefit, the 2013 Trust, appointing himself, Samuel, and Dain as co-trustees such that Bernard and Samuel could control the 2013 Trust.

40. Bernard and Samuel used the 2013 Trust to manipulate funds to Joanne's detriment

and to engage in transactions with Joanne's 2013 Trust to cause Joanne and the 2013 Trust to bear the brunt of the tax burdens incurred relating to Renata's probate estate, transferring the tax benefits to himself and his children.

41.    Bernard charged to Joanne the significant attorneys' fees and costs of creating the 2013 Trust.

42.    Certain of Bernard's self-dealing was discovered and presented to the DPC, and on April 2, 2015, the DPC suspended Bernard's authority as conservator over Joanne's property.

43.    The DPC held 4 days of evidentiary hearings and (1) concluded Bernard had stolen approximately $1.5 million from Joanne; (2) found Bernard had breached his fiduciary duties as Joanne's conservator; (3) entered a judgment against Bernard in favor of Joanne; (4) appointed a new conservator for Joanne; and (5) enjoined Bernard from using Joanne's funds to pay his attorney or other fees.

**Bernard's and Samuel's Self-Dealing and Litigation Against Joanne's Interests**

44.    Bernard and Samuel instituted multiple suits and repeatedly litigated against Joanne's interest.

45.    In their positions as trustees of the SNT and 2013 Trust, Bernard and Samuel, in combination with Litvak and Dal, used and attempted to use Joanne's assets held in SNT and 2013 Trust to pay the attorneys' fees incurred while litigating against Joanne's interests.

46.    Bernard, Samuel, Litvak, and Dal did not make any effort to mitigate the amounts incurred in the litigation relating to Joanne, the SNT, the 2013 Trust, or Joanne's other interests, but instead significantly increased the cost to Joanne

47.    Significant expenses were incurred at Joanne's expense during the litigation before the DPC as a result of Bernard's misconduct.

48.    The DPC found:

Mr. Black transferred funds into an excessive number of different accounts,

which can only be likened to a shell game. It took an extraordinary effort by Ms. Kerr [the forensic accountant] to trace where funds were placed and the expenses paid by the funds... 25 different accounts were created to hold funds related to this case, encompassing Renata Black's original accounts at Vanguard and Fidelity and accounts opened by Mr. Black as Executor, Trustee and conservator. The Court finds 15 of these accounts appear to be completely unnecessary.

The Court finds Bernie Black has breached his fiduciary duties and has defended this action in bad faith for the reasons discussed above. The Court finds Bernie Black should personally bear the cost for these proceedings ...

All costs, fees and attorney fees incurred to prosecute this matter shall be paid by and chargeable to Bernie Black, including GAL fees and fees for Pamela Kerr's accounting and services. Any such fees and costs, including attorney fees paid by Joanne Black or her estate shall be reimbursed by Bernie Black with interest.

49.     The DPC recommended Bernard not be appointed as a fiduciary for Joanne in any capacity – especially not in any capacity involving Joanne's assets.

50.     The DPC entered judgment for treble the amount Bernard had stolen, awarding a total in excess of $4.5 million in favor of Joanne and against Bernard, personally.

51.     The DPC summarized its September 28, 2015 findings:

Bernie Black transferred funds from his deceased mother's accounts designated payable on death ("POD") to Joanne Black and his five eldest children to fund the Issue Trust ... Mr. Black perpetrated a scheme whereby he obtained an order from this Court to disclaim those POD funds and rather than place the funds into the SNT as he represented his intentions to be, he placed two-thirds of the disclaimed funds into the SNT and one-third into the Issue Trust, all without fully disclosing his intentions to this court. Mr. Black therefore has no rights to any of the funds contained within the Issue Trust that were transferred or derived from Renata Black's POD accounts and the amount surcharged to him speaks to this.

52.     With respect to Bernard and Litvak, the DPC also found:

Bernie Black and his current wife [Kate Litvak] both testified before this Court that they are law professors at Northwestern University in Chicago, Illinois. As such, each of these individuals has an enhanced duty for full and complete candor to the Court and to conduct themselves and this matter with dignity becoming judicial officers and professors. The taking of his sister's funds, the multiple suits initiated by Mr. Black against his family members, the inaccuracies in his pleadings before this Court and his apparent refusal to accept the changes his mother made to her estate plan are absolutely appalling and are not in keeping with his status as a law

professor.

53.     In its September 28, 2015 Order, the DPC held:

This Court remains extremely concerned that its orders and intentions will be misrepresented by Bernie Black and Counsel appearing on his behalf to New York Courts as has apparently been done previously. This Court hopes that any questions which may arise as a result of this Order or any clarifications deemed necessary will be quickly brought to this Court's attention for resolution.

54.     Dal conspired with Bernard to ensure her two children with Bernard obtained a share of Renata's assets.

55.     By March 2016, Bernard had used his fiduciary authority to spend at least $115,000 of Joanne's money to pay the lawyers he engaged to further his efforts to steal from Joanne and defend his actions in doing so.

56.     Bernard told the DPC, Joanne, and Dain that he had repaid Joanne the $115,000 using his own personal funds, which was false.

57.     In fact, Bernard caused the $115,000 spent on the lawyers he used to defend his theft from Joanne before the DPC to be deducted from assets belonging to Joanne.

58.     When Bernard's misconduct was discovered, Bernard told the DPC he had taken funds belonging to Joanne from the 2013 Trust and SNT (via Renata's probate estate) to pay the $115,000 to his lawyers.

59.     On March 17, 2016, the DPC entered its final order following its September 28, 2015 Hearing Order rendering its final judgment for Joanne against Bernard for over $4.5 million (the "Colorado Judgment").

60.     The March 17, 2016 order was subsequently upheld by the Colorado Court of Appeals on January 25, 2018. *In re the Interest of Black*, 2018 COA 07 (Col. Ct. of App.).

### November 2017 Colorado Injunction

61.     On November 3, 2017, the DPC ordered another injunction against Bernard, enjoining Bernard "from removing or moving any monies or other assets in which Joanne Black has any interest

from their present locations"; ordering Bernard to "return all monies which were in the Supplemental Needs Trust on September 28, 2015"; and "specifically enjoin[ing Bernard] from transferring any funds he controls which were in the Supplemental Needs Trust on September 28, 2015, except to return them to the Supplemental Needs Trust."

62.     On November 3, 2017, the DPC found:

[A]n emergency exists because there is imminent risk of substantial harm to the financial interests of this estate ... based on the allegations that Bernie Black has removed funds from the 1997 Supplemental Needs Trust without Court authorization; funds that were removed from the conservatorship and placed into the Supplemental Needs Trust; ... appropriate action is necessary in the form of the following ORDERS pending hearing, as the actions described in this Motion and Bernie Black's prior actions as adduced after hearing and described in this Court's previous Findings and Orders all shock the conscience of the Court.

63.     On January 4, 2018, the DPC held a hearing at which Bernard, through counsel, agreed to abide by the injunctions entered by the DPC on November 3, 2017.

## January 2018 Colorado Injunction

64.     At the January 4, 2018 hearing, with respect to Bernard, Litvak, Dal, and Samuel, the DPC found their actions "reprehensible" and:

The Court finds the actions of Bernard Black are shocking to the conscience of the Court, especially given Mr. Black's position as a professor of law at a respected law school in this country. Similarly, the Court finds the actions of Mr. Black's wife, also a law professor, are shocking as together their actions only serve to dramatically increase attorney fees and costs and otherwise reduce or eliminate the funds that are due to Joanne Black apparently for no reason ...

The Court finds it is unable to adequately express how shocking these actions taken by Joanne Black's brother and his family are to the conscience of the Court. The Court finds Bernard Black's apparent agreement to the entry of significant money judgments in favor of his wife and her family against the SNT is, if true, a flagrant breach of his fiduciary duties and his duty of loyalty to the beneficiary. Bernard Black has disregarded the Orders of this Court in both fact and in spirit.

65.     The DPC ordered another injunction against Bernard and an injunction against Sam:

1.  Bernard Black and Samuel Black are hereby SUSPENDED as co- trustees of the SNT and any other trusts which benefit Joanne Black, pending the removal proceedings referenced in the State of Illinois.

2. Neither Bernard Black nor Samuel Black shall have any authority or take any actions with respect to trust funds or funds that are ultimately meant for or to benefit Joanne Black. Similarly, neither Bernard Black nor Samuel Black shall make any decisions regarding the use or placement of trust funds or property. Both Bernard Black and Samuel Black are ordered to identify any and all trust documents, funds, or accounts to which they have access and which are meant to benefit Joanne Black, and to provide that information directly to Anthony Dain and to Joanne Black's attorney Lisa DiPonio.

## Defendants' "Loans" and Self-Dealing

66.     By January 2016, Bernard was enjoined by two separate courts from accessing any of Joanne's assets, regardless of where her assets were located, including that Bernard was specifically enjoined from using those assets to pay attorneys' fees.

67.     Further, the DPC had specifically ordered Bernard, personally and solely, to repay the attorneys' fees he had caused to be paid by the SNT and other trusts or entities over which Bernard had control in a fiduciary capacity relating to Joanne.

68.     Chase was aware of the orders enjoining Bernard and litigation involving Bernard, Joanne, and the Trusts, and implemented measures to prevent release of Trust assets to Bernard.

69.     In or about March 2016, pursuant to an order of the DPC, more than $250,000 was made available to agents and representatives at the time in an account Chase held on behalf of the SNT for the specific purpose of paying Joanne's legal expenses.

70.     Bernard discovered the money was in Joanne's SNT account at Chase and transferred that money out of Joanne's SNT account for the benefit of him and Litvak.

71.     Bernard transferred approximately $9,000 of Joanne's money to one or more of the attorneys representing him in litigating against Joanne's interests.

72.     Bernard transferred the remainder of Joanne's money to pay down a home equity line of credit ("HELOC") held jointly by Bernard and Litvak.

73.     Litvak was aware of and intended for Bernard to make the foregoing transfers.

**Defendants' Use of the Courts to Facilitate Theft, Fraudulent Transfers and
Other Self-Dealing**

74.     Bernard, Samuel, Litvak, and Dal conspired to convert Joanne's assets to their own use, and to prevent Joanne from collecting the Colorado Judgment against Bernard.

75.     In furtherance of their scheme, Bernard, Samuel, Litvak, and Dal conspired to and did file at least eight (8) lawsuits against Joanne's interest and sought to have Joanne foot the bill via the SNT and other vehicles.

**Bernard's Northern District of Illinois Lawsuit Against Joanne**

76.     On January 29, 2016, Bernard and Samuel filed suit against Joanne in the Northern District of Illinois, *Black v. Black*, Case No. 1:16-cv-01763 (Hon. Virginia M. Kendall)("Black NDIL Lawsuit").

77.     In the Black NDIL Lawsuit, Bernard and Samuel sought a declaration from the Northern District of Illinois that the orders imposed by the Colorado and New York courts did not restrain them from using Joanne's assets to pay, among other things, their attorneys' fees.

78.     Joanne had to hire attorneys to defend herself against Bernard's and Samuel's NDIL lawsuit against her.

79.     On July 13, 2016, Judge Kendall dismissed with prejudice Bernard and Samuel's NDIL Lawsuit against Joanne, because the Court did not have personal jurisdiction over Joanne.

**Cook County Suits to Collect Collusive "Loans"**

80.     Following the Colorado Judgment, Bernard, Samuel, Litvak, and Dal knew Joanne would seek to collect her Colorado Judgment from Bernard.

81.     Bernard, Samuel, Litvak, and Dal concocted a scheme whereby they created alleged "loans" to Bernard, Samuel, the SNT, 2013 Trust, and Issue Trust; caused Bernard, Samuel, the SNT, 2013 Trust, and Issue Trust to default on every "loan;" filed complaints to collect on the "loans"; entered into agreed judgments against Bernard, the SNT, 2013 Trust, and Issue Trust; issued citations

against Bernard, Chase Bank, and JPMS LLC to collect; and instituted garnishments of Bernard's wages to collect the money for their own benefit before Joanne could reach Bernard's wages to collect her judgment for Bernard's theft.

82.     Although they knew Dain was a trustee of the SNT, none of Bernard, Samuel, Litvak, and Dal notified Joanne, her conservator, or co-trustee Dain of any alleged "loan" between or among Bernard, Samuel, Litvak, Dal, the SNT, 2013 Trust, or Issue Trust.

83.     None of Bernard, Samuel, Litvak, and Dal named Joanne, her conservator, or co-trustee Dain of any of their lawsuits based on alleged "loans" between or among Bernard, Samuel, Litvak, Dal, the SNT, 2013 Trust, or Issue Trust, nor even notified Joanne, her conservator, or co-trustee Dain of the lawsuits.

### Dal's First Lawsuit

84.     On May 5, 2016, to obstruct Joanne's ability to collect her judgment against Bernard, Dal filed a lawsuit against Bernard, personally, based on an alleged "loan" alleged to be secured by Bernard's wages, *Dal v. Black,* Cook County Case No. 2016-L- 004367 (Hon. Patrick J. Sherlock), ("Dal's First Lawsuit").

85.     In Dal's First Lawsuit, filed in May 2016, Dal alleged that she and her father Eugene Mark Dal executed a "Secured Loan Agreement" purporting to be "Dated as of 15 May 2002."

86.     Dal alleged that pursuant to the "Secured Loan Agreement," she and her father were "willing to lend [$150,000 to Bernard], provided she receives a security interest in [Bernard's] income and financial assets."

87.     Dal does not allege when she and Bernard executed this alleged "Secured Loan Agreement."

88.     In Dal's First Lawsuit, Dal alleged: "As of April 30, 2016, there was principal of $150,000 and interest of $274,694.02 due and owing under the Note," for a total balance due from Bernard to Dal of $424,694.02, plus $91.33 per diem after April 30, 2016 – not including expenses,

costs, charges and fees.

89.     On May 2, 2016, the same day Dal filed Dal's First Lawsuit, Bernard agreed to a judgment against himself in the amount of $425,150.68, including payment of Dal's legal fees and costs.

90.     On May 3, 2016, Dal filed a Verified Emergency Motion for Entry of Agreed Judgment, in which she stated that other judgment creditors may initiate post-judgment proceedings against Bernard that may impair Dal's ability to collect the judgment Bernard had agreed to in favor of Dal.

91.     Neither Dal nor Bernard notified Joanne, her conservator, or Dain of Dal's First Lawsuit, Bernard's consent to a judgment in favor of Dal, or Dal's efforts to collect from Bernard.

92.     Three days after filing Dal's First Lawsuit, Bernard had agreed to and the court had entered judgment in the amount of $425,150.68, issued a citation to discover assets, and filed an affidavit for wage deduction against Bernard on May 5, 2016.

93.     By June 7, 2016, Dal had obtained a judgment against garnishee, Bernard, and his employer, Northwestern University.

**Bernard's and Samuel's Issue Trust FINRA Proceeding**

94.     On September 23, 2016, to drain the Issue Trust of the money Bernard stole from Joanne, to pay their legal fees in litigating against Joanne's interests, and otherwise use the funds for their benefit, Bernard and Samuel initiated a claim with the Financial Industry Regulatory Authority ("FINRA") against Chase Bank and JPMS LLC to gain access to Joanne's assets in the *Issue Trust, Black v. JPMorgan Chase Bank*, *NA*., *et al.* ("Issue Trust FINRA Proceeding").

95.     In the Issue Trust FINRA Proceeding, Bernard and Samuel alleged Chase was liable for conversion, breach of contract, and breach of fiduciary duties owed to Bernard and Samuel because Chase would not permit them access to the money held in the Issue Trust and sought to force Chase to allow them unfettered access to the Issue Trust accounts.

96.     In sum, Bernard and Samuel alleged that Chase could not consider the Colorado and New York orders enjoining Bernard from accessing the trusts' accounts or the Colorado judgment finding Bernard breached his conservatorship fiduciary duties to Joanne and stole $1.5 million from Joanne.

97.     Neither Bernard nor Samuel notified Joanne, her conservator, or Dain of their Issue Trust FINRA Proceeding or their efforts to access Joanne's assets.

98.     Bernard and Samuel actually complain in the Issue Trust FINRA Proceeding that Chase violated fiduciary duties because Chase notified co-trustee Dain of Bernard's and Samuel's efforts to obtain the money, which, per the Colorado court, belonged to Joanne.

### Bernard's SNT FINRA Proceeding

99.     On October 26, 2016, to access to Joanne's funds to pay their legal fees in litigating against her interests, Bernard and Samuel, in their capacity as trustees of the SNT, filed another claim and initiated a proceeding with the FINRA against Chase Bank and JPMS LLC to gain access to Joanne's assets in the SNT to pay Bernard's attorneys' fees, *Black v. JPMorgan Chase Bank, NA.*, *et al.* ("SNT FINRA Proceeding").

100.    In Bernard's and Samuel's SNT FINRA Proceeding, they alleged Chase was liable for conversion, breach of contract, and breach of fiduciary duties owed to Bernard and Samuel because Chase would not give them access to use the money held in accounts of the SNT.

101.    In Bernard's and Samuel's SNT FINRA Proceeding, Bernard and Samuel seek to force Chase to unfreeze the SNT accounts to allow them access to Joanne assets to pay their attorneys' fees and otherwise for their own benefit.

102.    In sum, Bernard and Samuel alleged that Chase could not consider the Colorado and New York orders enjoining Bernard from accessing the trusts' accounts or the Colorado judgment finding Bernard breached his conservatorship fiduciary duties to Joanne and stole $1.5 million from Joanne.

103.     Neither Bernard nor Samuel notified Joanne, her conservator, or Dain of their SNT

FINRA Proceeding or their efforts to access Joanne's assets.

### Dal's Second Lawsuit

104.     On December 7, 2016, Dal filed a second lawsuit against Bernard personally based

on alleged "loans" alleged to be secured by Bernard's wages, *Dal v. Black*, Cook County Case No.

2016-L-011947 (Hon. Margaret Ann Brennan), ("Dal's Second Lawsuit").

105.     In Dal's Second Lawsuit, Dal alleged that Bernard executed a "Promissory Note

(Secured)" and a "Loan and Security Agreement" as of April 26, 2016, that is, after the Colorado

Judgment against Bernard for stealing $1.5 million from Joanne.

106.     Pursuant to the "Loan and Security Agreement," at the time Dal and Bernard dated

"as of the 26th day of April, 2016," Bernard already was in default of another loan agreement with

Dal "dated as of May 15, 2002" and owed Dal $453,891.03 on the earlier dated loan.

107.     In addition, Bernard had purportedly borrowed over $600,000 from his wife and Dal's

cousin, Litvak, "to pay legal and accounting expenses for litigation in Colorado, New York, and

perhaps elsewhere related to [Bernard's] sister Joanne Black" pursuant to a "Senior Secured Credit

Agreement" "Dated as of 20 August 2015" and executed on some unidentified date, which

indebtedness was "senior to all other indebtedness of Bernard Black, other than any mortgage on

[Litvak's and Bernard's] family house located at 2829 Sheridan Place, Evanston IL 60201."

108.     Nonetheless, Dal allegedly loaned Bernard another $250,000 to pay Bernard's legal

fees relating to litigation against Joanne's interests.

109.     Among the provisions contained in the "Loan and Security Agreement":

    a.     Bernard borrowed more money from Dal "to pay for certain of his needed
expenses and/or obligations including, without limitation, legal and accounting
expenses for litigation that relates to his sister, Joanne Black, and/or his other
relatives, Anthony Dain and/or Cherie Wrigley."

    b.     Bernard's debt to Dal was secured by, among other things, "all Commercial
Tort Claims, including [litigation relating to Joanne and the Trusts]."

c.  Bernard told Dal of recent judgment entered against Bernard in the litigation relating to Joanne which constitutes a default under the loan agreement with Dal "dated as of May 15, 2002" and that he had "no unencumbered nonexempt assets to satisfy his obligations."

d.  Bernard agreed that he would consent to entry of and execute an agreed judgment in favor of Dal on the loan agreement with Dal "dated as of May 15, 2002."

e.  The events that could constitute a default on the "Loan and Security Agreement" excluded any then-existing events of default on the loan agreement with Dal "dated as of May 15, 2002."

110.  In Dal's Second Lawsuit, Dal alleged: "there was principal of $210,483.60 and interest of $2,606.97, and at least $2,500 of legal fees and costs, due and owing under the Note," for a total balance due from Bernard to Dal of $215,590.57, plus $69.20 per diem after November 30, 2016 - not including expenses, costs, charges and fees she also sought to collect by garnishing Bernard's wages.

111.  Dal further alleged Bernard was in default on this purported "loan" because a foreign judgment (the Colorado Judgment) entered against Bernard exceeding $4.3 million was registered in Cook County, Illinois on September 28, 2016.

112.  On December 9, 2016, two days after Dal's Second Lawsuit was filed, Bernard agreed to a judgment against him in the amount of $216,905.37, and Dal filed a Motion for Entry of Agreed Judgment.

113.  Neither Dal nor Bernard notified Joanne, her conservator, or Dain of Dal's Second Lawsuit, Bernard's agreement to a judgment in favor of Dal, or Dal's efforts to collect from Bernard.

114.  Two weeks after filing Dal's Second Lawsuit, Bernard had agreed to and the court had entered judgment in the amount of $216,905.37, including payment of Dal's legal fees and costs.

115.  By December 21, 2016, Dal had filed an affidavit for wage deduction summons directed to Northwestern University.

116.  Dal received her Agreed Wage Deduction Turnover Order by January 26, 2017 garnishing Bernard's wages from Northwestern University.

**Litvak's First Lawsuit**

117.    On December 7, 2016, the same day Dal's Second Lawsuit was filed, and through the same counsel as Dal's, Litvak filed a lawsuit against her husband Bernard based on alleged "loans" alleged to be secured by Bernard's wages, *Litvak v. Black*, Cook County Case No. 20161-011948 (Hon. Raymond W. Mitchell), ("Litvak's First Lawsuit").

118.    In Litvak's First Lawsuit, Litvak alleged that Bernard executed a "Secured Promissory Note" and a "Senior Secured Credit Agreement" which was "dated as of August 20, 2015", pursuant to which Bernard borrowed "up to $500,000" from his wife "to pay legal and accounting expenses for litigation in Colorado, New York, and perhaps elsewhere related to his sister Joanne Black," pursuant to the "Senior Secured Credit Agreement."

119.    Among the provisions contained in the "Senior Secured Credit Agreement":

    a.    Bernard's debt to his wife purported to be "senior to all other indebtedness of Bernard Black, other than any mortgage on [Litvak's and Bernard's] family house located at 2829 Sheridan Place, Evanston IL 60201.

    b.    the debt was also secured by "all current and future wages and bonuses from Northwestern University or any other employer;" " all consulting income;" "payments for any use of his assets, including rent;" and "interest payments on any loans that he makes."

    c.    Bernard's debt to Litvak was also secured by Litvak's own financial assets and "items located inside and around [Litvak's and Bernard's] house located at 2829 Sheridan Place, Evanston IL 60201, including the house, garage, yards, and driveway."

    d.    Litvak purportedly "has the right to enforce her demand for payment, including early repayment, ... [by] requiring [her husband] to change the location for direct deposit of his paycheck from Northwestern University to an account solely in the name of [Litvak];" "requiring Bernard ... to receive his paycheck in physical form, and then to promptly endorse the check to [Litvak];" and "establishing a garnishment order on the wages of Bernard."

    e.    Bernard agreed his wife could confess judgment against him by, upon any event of default, Litvak appearing in court and confessing judgment against Bernard for an unpaid amount evidenced by an affidavit signed by Litvak.

    f.    Bernard would have defaulted by "[a]ny attempt by any other party, whether or not successful, to challenge any transfer of assets from an account held jointly by Bernard Black and [his wife, Litvak] to an account held solely by [Litvak]."

120.    In Litvak's First Lawsuit, Litvak alleged she made a demand for repayment on

February 26, 2016.

121.    Despite demanding repayment, Litvak specifically noted in her in her "Demand for Repayment" that she "retains the discretion to provide further loans to [Bernard] under the [Senior Secured Credit Agreement]."

122.    In Litvak's First Lawsuit, Litvak alleged: "there was principal of  $313,511.89, interest of $48,169.65, and at least $27,824.00 of legal fees and costs, due and owing under the Note," for a total balance due from Bernard to Litvak of $389,505.54, plus $118.91 per diem after November 30, 2016 - not including expenses, costs, charges and fees she also sought to collect by garnishing Bernard's wages.

123.    On December 9, 2016, two days after Litvak's First Lawsuit was filed, Bernard agreed to a judgment against him in the amount of $394,631.74, and Litvak filed a Motion for Entry of Agreed Judgment.

124.    Neither Litvak nor Bernard notified Joanne, her conservator, or Dain of Litvak's First Lawsuit, Bernard's agreement to a judgment in favor of Litvak, or Litvak's garnishment of Bernard's wages and other efforts to collect from Bernard.

125.    Less than 2 weeks after filing Litvak's First Lawsuit, Bernard had agreed to and the court had entered judgment in the amount of $394,631.74, including payment of Litvak's legal fees and costs.

126.    By December 21, 2016, Litvak had filed an affidavit for wage deduction summons directed to Northwestern University.

127.    Litvak received her Agreed Wage Deduction Turnover Order by January 26, 2017 garnishing Bernard's wages from Northwestern University.

**Litvak's Second Lawsuit**

128.    On September 26, 2017, Litvak filed a lawsuit against Bernard and Samuel as co-trustees of the SNT, 2013 Trust, and Issue Trust, *Litvak v. Black*, Cook County Case No. 2017-L-

009743 (Hon. James E. Snyder), ("Litvak's Second Lawsuit").

129.    In Litvak's Second Lawsuit, Litvak alleged that, by October 1, 2016, Bernard and Samuel, on behalf of the SNT, 2013 Trust, and Issue Trust, jointly and severally, executed a Note in favor of Litvak in the amount of $601,321.00 to pay Bernard's, Samuel's and Litvak's attorneys' fees litigating against Joanne's interest.

130.    Litvak alleged that pursuant to a "Loan and Security Agreement," before October 1, 2016, the Trusts had borrowed from Litvak $101,321.00, that amount was due and owing, but the Trusts had not repaid Litvak.

131.    Nonetheless, Litvak agreed to "loan" the Trusts an additional $500,000 as of October 1, 2016.

132.    Pursuant to that "Loan and Security Agreement," Bernard and Samuel pledged to Litvak as security on behalf of the Trusts, among other things, the accounts and assets of the Trusts, and all tort and arbitration claims the Trusts, Bernard, and Samuel may have against court-appointed conservators, court-appointed guardian ad litem, and court-appointed legal counsel for Joanne, Dain, Chase, and others.

133.    The amounts which Litvak identified in Litvak's Second Lawsuit as amounts allegedly made on behalf of and "loaned" to the Trusts jointly and severally by Litvak were not for the benefit of the SNT, 2013 Trust, or Joanne.

134.    For example, Litvak claims she "loaned" money to the Trusts jointly and severally by way of a payment she made on June 25, 2016 in the amount of $20,000 to attorneys Halling Cayo from "HELOC1001" for "Pinto-Wrigley and Dain suits"; a payment on July 3, 2016 in the amount of $11,131.00 to attorneys Barnes and Thornburgh to "unfreeze Issue Trust"; a payment on July 17, 2016 in the amount of $15,000 to attorneys Halling Cayo for "Pinto-Wrigley and Dain suits"; a payment on September 2, 2016 in the amount of $1,275.00 to attorneys Barnes and Thornburgh to "unfreeze Issue Trust"; a payment on September 3, 2016 in the amount of $20,000 to New York

attorney Sharan Abraham for "Pinto Wrigley and Dain suits."

135.    The "First Amendment to Demand Note (Secured) and Loan and Security Agreement" attached to Litvak's complaint claims she "loaned" money to the Trusts jointly and severally made in the amount of $5,000.00 on November 24, 2016 to Attorney Arden Besunder; in the amount of $42,000.00 on August 8, 2016 and $33,056.89.00 on September 4, 2016 to attorneys Davis Graham; in the amount of $24,364.42 on August 8, 2016 to attorneys HarperHofer; in the amount of $3,650.00 on September 20, 2016 and $9,232.00 on November 16, 2016 to attorneys Adelman Gettleman.

136.    None of the foregoing payments were made for Joanne's benefit, but were for attorneys' fees incurred for litigation either unrelated to or directly contrary to Joanne's interest.

137.    In Litvak's Second Lawsuit, she alleged the SNT, 2013 Trust, and Issue Trust "are currently indebted, jointly and severally," to her pursuant to the "certain Demand Note (Secured) dated October 1, 2016" as amended by another purported "Demand Note Secured and Loan and Security Agreement dated as of December 21, 2016."

138.    Litvak alleged the SNT, 2013 Trust, and Issue Trust "are and have been in default," and that she "has made demand for payment under the terms of the Note, as is reflected in the demand email that is attached" to her complaint.

139.    The September 25, 2017 "demand email" attached to Litvak's complaint, was sent fewer than 24 hours before Litvak filed Litvak's Second Lawsuit, was sent by counsel with a copy to Litvak and her cousin, Dal.

140.    Neither Litvak nor Bernard or Samuel sent demand or other notice to Joanne, her conservator, or co-trustee Dain.

141.    Litvak sought an alleged $376,464.88 in principal, $18,431 in interest, and continuing interest.

142.    Litvak also sought "at least $13,671.05" in attorneys' fees and costs she claims to have spent by September 25, 2017, as well as those she incurred thereafter in obtaining the Agreed

Judgment from her husband Bernard and his son Samuel against the Trusts.

143.    By September 27, 2017 the day after she filed her complaint against Bernard and Samuel, Bernard had executed an Acknowledgement of Receipt of Summons and Complaint.

144.    Bernard and Samuel both signed an Agreed Judgment on October 2, 2017, only a week after filing her complaint, Litvak, filed a Motion for Entry of Agreed Judgment on October 3, 2017.

145.    On October 25, 2017, with no counsel appearing for the defendant trusts, the Court entered the Agreed Judgment.

146.    Having wrongfully obtained the Agreed Judgment from the court, Bernard, Samuel and Litvak attempted to use the Agreed Judgment to take the same assets (Joanne's) from the same sources (the SNT, 2013 Trust, and Issue Trust) which Bernard is prohibited from doing by orders of the DPC and in breach of their duties to Joanne.

147.    What remains of Joanne's POD assets and other inheritance that Bernard, Samuel, Litvak, and Dal have not yet been able to divert and convert to their own uses are currently held by Chase.

148.    On November 8, 2017, Litvak served on Chase Bank and JPMS LLC citation notices as supplemental proceedings to collect the judgment in the Litvak's Second Lawsuit.

149.    By obtaining an Agreed Judgment against the Trusts and issuing citations, Litvak, Bernard, and Samuel sought to force Chase, by Court order in favor of Litvak (rather than Bernard), to allow them to access the same funds in the Trusts which orders of other courts prohibited Bernard from accessing and in breach of fiduciary duties owed to Joanne, and which Chase may have considered in refusing to allow Bernard and Samuel to access the funds in the Trusts.

150.    After Goodwin intervened, the Illinois Appellate Court vacated the Agreed Judgment in Litvak's Second Lawsuit. *Litvak v. Black*, 2019 IL App (1st) 181707. The Appellate Court wrote:

The motion to vacate and its various attachments, including the persuasive orders of other

courts detailing the conduct of Mr. Black and Ms. Litvak in related litigation and Joanne's clear interest in all of the funds at issue, are detailed allegations from which we can infer that the agreed judgment in this case, like the judgment in *City of Chicago Heights*, [345 Ill. App. 393, 400 (1952),] was improper and that Joanne's interests were "adversely affected" by this judgment in Ms. Litvak's favor, as it concerned all three of the trusts.

*Litvak*, 2019 IL App (1st) 181707, ¶ 26.

### Dal's Third Lawsuit

151.    On September 26, 2017, Dal filed a third lawsuit against Bernard and Samuel as trustees of the SNT, 2013 Trust, and the Issue Trust, based on alleged "loans" made to pay Bernard's attorneys' fees, *Dal v. Black*, Cook County Case No. 2017-L-009744 (Hon. Thomas R. Mulroy) ("Dal's Third Lawsuit").

152.    155.    Dal did not name as a defendant or otherwise give notice of her lawsuit to Joanne, her conservator, or co-trustee Dain, nor had she given them notice of any alleged loan she entered into with Bernard and Samuel purporting to bind the Trusts.

153.    No attorney entered an appearance on behalf of the Trusts in Dal's Third Lawsuit.

154.    The complaint in Dal's Third Lawsuit is nearly identical to the complaint in Litvak's Second Lawsuit, filed by the same lawyers and relying on the same "demand" email to Bernard, Samuel, Litvak, and Dal.

155.    Both Litvak's and Dal's complaints were based on nearly identical "loans" they alleged to have made to Bernard and Samuel as trustees of the Trusts to pay the attorneys' fees Bernard, Samuel, and Litvak incurred in repeatedly litigating against Joanne's interests, as well as Litvak's and Dal's fees in suing the Trusts to use Joanne's money to pay for Bernard's, Samuel's, and Litvak's attorneys' fees.

156.    Both Litvak and Dal alleged that they had each, separately loaned money to the Trusts, which acted through Bernard and Samuel, to pay Bernard's, Samuel's and Litvak's attorneys' fees between May 11, 2016 and December 3, 2016, and each, separately alleged the Trusts "are currently indebted, jointly and severally, to the Plaintiff pursuant to that certain Demand Note (Secured) dated

October 1, 2016," as amended by another purported "Demand Note Secured and Loan and Security Agreement dated as of December 21, 2016."

157.    Dal alleged that, by October 1, 2016, Bernard and Samuel, on behalf of the SNT, 2013 Trust, and Issue Trust, jointly and severally, executed a Note in favor of Dal in the amount of $572,228.00 to pay Bernard's, Samuel's and Dal's attorneys' fees.

158.    The "Loan and Security Agreement," recites that before October 1, 2016, the Trusts had borrowed from Dal $72,228.00, that amount was due and owing, the Trusts had not repaid Dal, but nonetheless Dal agreed to "loan" the Trusts an additional $500,000 as of October 1, 2016.

159.    Pursuant to that "Loan and Security Agreement," Bernard and Samuel pledged to Dal as security on behalf of the Trusts, among other things, the accounts and assets of the Trusts and all tort and arbitration claims the Trusts, Bernard, and Samuel may have against court-appointed conservators, court-appointed guardian ad litem, and court-appointed legal counsel for Joanne, Dain, Chase, and others.

160.    The amounts which Dal identified in Dal's Third Lawsuit as amounts allegedly made on behalf of and "loaned" to the Trusts jointly and severally by Dal were not for the benefit of the SNT, 2013 Trust, or Joanne.

161.    For example, Dal claims she "loaned" money to the Trusts jointly and severally by way of payments she made to attorneys Halling Cayo on August 8, 2016 in the amount of $4,000, September 21, 2016 in the amount of $1,478.00, and September 22, 2016 in the amount of $25,000.00; and further that she "loaned" money to the Trusts jointly and severally by way of payments she made to attorney Sharan Abraham on May 11, 2016 in the amount of $17,000, June 26, 2016 in the amount of $17,000.00, August 13, 2016 in the amount of $8,000.00, and November 5, 2016 in the amount of $20,000.00.

162.    Halling Cayo and Sharan Abraham are some of a number of lawyers and law firms representing Litvak in her lawsuit pending in the Northern District of Illinois, *Katherine Black v.*

*Wrigley*, et. al, NDIL Case No. 1:17-cv 00101 (Hon. Matthew F. Kennelly).

163.    Halling Cayo and Sharan Abraham also represent Samuel, Sarah, Daniel, and Jacob Black in their ongoing lawsuit against Dain and others, *Samuel H Black, et. al v. Dain*, et al., U.S. Dist. Court for the Eastern Dist. of New York, Case No. 16-cv-01238 (Hon. Carol Bagley Amon).

164.    Dal further claims in Dal's Third Lawsuit that she "loaned" money to the Trusts jointly and severally by way of payments she made to attorneys HarperHofer on May 11, 2016 in the amount of $15,880.95 and a double payment on May 11, 2016 in the amount of$15,880.95.

165.    HarperHofer represented Bernard during the forensic accounting of his breach of fiduciary duties in the conservatorship suit he initiated in the DPC, which resulted in the Colorado Judgment against Bernard.

166.    Dal's complaint claims she "loaned" money to the Trusts jointly and severally by way of payments she made to attorneys Davis Graham in the amount of $50,965.29 on May 11, 2016, a double payment of $51,000.00 on June 26, 2016, in the amount of $70,000.00 on October 24, 2016, in the amount of $40,000.00 on November 5, 2016, and in the amount of $25,000.00 on November 24, 2016.

167.    Davis Graham also represented Bernard in the conservatorship suit he initiated in the DPC, which resulted in the Colorado Judgment.

168.    Dal's complaint claims she "loaned" money to the Trusts jointly and severally by way of payments she made in the amount of $8,601.55.00 on May 11, 2016 and $722.50 on September 21, 2016 to attorneys Barnes and Thornburg.

169.    Barnes and Thornburgh represented Bernard and Samuel in their lawsuit against Joanne, *Black v. Black*, Case No. 1:16-cv-01763 (Hon. Virginia M. Kendall).

170.    Dal's complaint claims she "loaned" money to the Trusts jointly and severally by way of payments she made in the amount of $516.75 on August 13, 2016 and $8,000.00 on October 16, 2016 to attorneys Arden Besunder.

171. Arden Besunder represents Bernard in his accounting lawsuit in New York, *In re Black*, Surrogate's Court of the State of New York County of Westchester File No. 20012/1209/A (Hon. Thomas P. Aliotta).

172. Dal's complaint claims the Trusts are jointly and severally for payment she made in the amount of $8,089.80 on November 11, 2017 to attorneys Adelman Gettleman.

173. Adelman Gettleman represents Litvak and Dal in their Cook County lawsuits against Bernard, personally, and against the Trusts, and in Litvak's lawsuit against Cherie and others pending in this District, *Katherine Black v. Wrigley*, et al., Case No. 1:l 7-cv-00101.

174. In Dal's Third Lawsuit, Dal sought an alleged $322,709.84 in principal, $13,160.98 in interest, and continuing interest.

175. Dal also sought "at least $6,658.00" in attorneys' fees and costs she claims to have spent by September 25, 2017, as well as those she incurred thereafter in obtaining the Agreed Judgment from her husband Bernard and his son Samuel against the Trusts.

176. By September 27, 2017 the day after Litvak and Dal filed their complaints against Bernard and Samuel as trustees of the Trusts, Bernard had executed an Acknowledgement of Receipt of Summons and Complaint on behalf of the Trusts.

177. Once Samuel executed an Acknowledgement of Receipt of Summons and Complaint on behalf of the Trusts and Bernard and Samuel both signed an Agreed Judgment on behalf of the Trusts on October 2, 2017, only a week after filing the complaint, Litvak and Dal each filed a Motion for Entry of Agreed Judgment on October 3, 2017.

178. On October 12, 2017, pursuant to Bernard's and Samuel's written agreement on behalf of the Trusts, the Court entered an Agreed Judgment against the Trusts in the amount of $348,936.93, plus accruing interest, in favor of Dal in Dal's Third Lawsuit.

179. Having wrongfully obtained the Agreed Judgment from the court, Bernard, Samuel Litvak, and Dal are using the Agreed Judgment to take the same assets (Joanne's) from the same

sources (the SNT, 2013 Trust, and Issue Trust) Bernard is prohibited from doing by orders of the DPC and in breach of their duties to Joanne.

180.    What remains of Joanne's POD assets and other inheritance that Bernard, Samuel, Litvak, and Dal have not yet been able to divert and convert to their own uses are currently held by Chase.

181.    On November 8, 2017, Dal and Litvak each served on Chase Bank and JPMS LLC citation notices as supplemental proceedings to collect the judgment in the instant lawsuit.

182.    By obtaining an Agreed Judgment against the Trusts and issuing citations, Dal, Litvak, Bernard, and Samuel seek to force Chase, by Court order in favor of Dal (rather than Bernard), to allow them to access the same funds in the Trusts which orders of other courts prohibited Bernard from accessing and in breach of fiduciary duties owed to Joanne, and which Chase may have considered in refusing to allow Bernard and Samuel to access the funds in the Trusts.

### Litvak's Third Lawsuit

183.    On January 25, 2021, with no notice to Dain or Goodwin, Litvak filed another lawsuit in the Circuit Court of Cook County, *Black v. Black*,  Case No.  21 L 817 ("Litvak's Third Suit"), based on the same loan documents as the Litvak's Second Suit.

184.    Litvak's complaint in Litvak's Third Suit was filed under the name "Katherine Black" instead of "Katherine Litvak." Katherine Litvak is the name she sued under in Litvak's Second Suit, and the name that appears on the purported loan documentation that underlies both cases.

185.    Unlike Litvak's Second Suit, the new suit does not name Bernard or Samuel in their capacities as trustees of the SNT or the 2013 Trust, but only as trustees of the Issue Trust.

186.    On March 1, 2021, counsel for Bernard Black and Samuel Black, as Trustees, signed an Acknowledgment of Receipt of Summons and Complaint. Litvak's counsel filed the Notice on March 3, 2021.

187.    Neither Bernard nor Samuel notified Dain or Goodwin, despite Bernard and Samuel

having the same counsel in both Litvak's Second Suit and this action Interpleader.

188.    On May 27, 2021, the Circuit Court granted Kate's motion for default judgment, in the amount of $1,521,120.18; representing a judgment far greater than what Kate was seeking in Litvak's Second Suit, even though she only named the Issue Trust in Litvak's Third Suit.

189.    The complaint in Litvak's Third Suit did not mention Litvak's Second Suit.

190.    The complaint in Litvak's Third Suit did mention the existence of the Appellate Court decision vacating the Agreed Judgment in Litvak's Second Suit as being procured by collusion or fraud.

191.    The complaint in Litvak's Third Suit did mention the pendency of this Interpleader Action, or its prohibitions on litigation affecting the disposition of the assets.

192.    The complaint in Litvak's Third Suit did not mention the intervention of Jeanette in Litvak's Second Suit, or for that matter, that Jeanette or Anthony existed at all.

193.    The complaint in Litvak's Third Suit did not advise the Court that Bernard had been suspended as acting as Trustee for all the Trusts by the Denver Probate Court.

**Subsequent Colorado Developments**

194.    The March 17, 2016 judgment against Bernard was subsequently upheld by the Colorado Court of Appeals on January 25, 2018. *In re the Interest of Black*, 2018 COA 07 (Col. Ct. of App.).  Separate unpublished orders directed the DPC to make certain additional findings on remand.

195.    On the same day, the Denver Probate Court entered an Order finding that it had jurisdiction of Bernard Black, Anthony Dain, and the assets held in the SNT and Issue Trust accounts at Chase Bank and JPMS LLC. The Order further vacated its prior order authorizing Bernard to disclaim Joanne's interest in the POD assets. Finally, the DPC ordered that "[a]ll funds disclaimed pursuant to this Order shall be immediately returned and placed into the Registry of the Denver Probate Court pending further proceedings regarding disposition of said funds." That includes the

assets currently in the IT and SNT accounts held at Chase Bank and JPMS LLC.

196. On June 29, 2018, a unanimous panel of the Colorado Court of Appeals issued an Order denying Bernard's Motion to Stay the April 27, 2018 Order of the Denver Probate Court.

197. On April 9, 2020, a unanimous panel of the Colorado Court of Appeals issued a ruling finding, among other things, that the Denver Probate Court had continuing jurisdiction over the funds that make up the Interpleaded Assets, as well as personal jurisdiction over Bernard Black in all his subject capacities – i.e., as trustee of all the trusts, as the former conservator, and personally. *Black v. Black*, 482 P.3d 460 (Colo. App. Ct. 2020)("*Black III*")

198. *Black III* also remanded the matter to the Denver Probate Court for further proceedings regarding the unwinding of the disclaimer of the POD assets made by Bernard in his capacity as conservator.

## **Request for Relief**

Wherefore, Defendants Dain and Goodwin respectfully ask this court to

a. Declare that Bernard and Samuel must comply, individually and as trustees, with the valid and enforceable orders entered by the DPC;

b. Declare that Dain alone has the right to access or control over the funds in the SNT, pursuant to the DPC's orders.

c. Declare that Goodwin is a proper representative of Joanne and that Goodwin has authority to act on behalf of Joanne;

d. Order Bernard and Samuel (or Chase Bank and JPMS LLC) to deliver the assets of the SNT and IT to the Denver Probate Court's Registry for further proceedings, pursuant to the DPC's orders; or, in the alternative, declare that the funds in the IT are available to pay the judgment that the DPC entered against Bernard, and that Joanne, via her Conservator, has an interest in the assets in the IT.

e. Declare that the judgments obtained by Litvak and Dal against Bernard and Samuel are void and must be vacated.

f. Restrain Bernard, Samuel, Dal, and Litvak from initiating or prosecuting any further litigation regarding the Property.

g. Restrain Dal and Litvak from obtaining or enforcing any citation stemming from the judgments obtained against Bernard and Samuel.

h. Declare that the Colorado courts have conclusively made a final ruling regarding jurisdiction over the Interpleaded Assets as required by the FINRA AWARD, or in the alternative, order Bernard and Samuel to request the FINRA Panel modify its Order to allow funds in the SNT and IT to be transferred to the DPC's Registry.

i. Award Dain, individually and as trustee, and Goodwin, as Conservator, such other and further relief as may be just and appropriate.

Dated October 4, 2022

ANTHONY DAIN, individually and as trustee, and JEANETTE GOODWIN as court-appointed Conservator for Joanne Black.

By: /s/Peter Stasiewicz
    One of Their Attorneys

Peter Stasiewicz (ARDC # 6290832)
ARCTURUS LAW FIRM
211 West Wacker Drive Suite 323
Chicago, IL 60606
(312) 957-6194 (tel)
(312) 489-8307 (fax)
pete@arcturuslaw.com