**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and J.P. MORGAN SECURITIES LLC | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-03447 |
| v. | ) ) | |
| BERNARD S. BLACK, individually and as trustee, SAMUEL BLACK, individually and as trustee, ANTHONY DAIN, individually and as trustee, KATHERINE LITVAK, OLGA DAL, and JEANNETTE GOODWIN, as court appointed Conservator, and JOANNE BLACK, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**<u>BERNARD S. BLACK AND SAMUEL BLACK'S AMENDED COUNTERCLAIM</u>**

Counter-plaintiffs, Bernard Black ("Bernard") and Samuel Black ("Samuel"), individually and as trustees of the Trust for the Benefit of the Issue of Renata Black (the "IT") and the Supplemental Needs Trust for the Benefit of Joanne Black (the "SNT"), for their Amended Counterclaim against JP Morgan Chase Bank, N.A. ("Chase Bank"), JP Morgan Securities LLC ("JPM Securities"), Anthony Dain ("Dain"), Joanne Black ("Joanne"), Jeannette Goodwin ("Goodwin") as Successor Conservator of Joanne Black, Katherine Litvak ("Litvak") and Olga Dal ("Dal"), allege as follows:

1.      Bernard is an individual who is a trustee of the IT and the SNT.

2.      Samuel is an individual and a trustee of the SNT and the IT.

3.      Chase Bank is a national banking association where IT and SNT accounts and funds are held.

1

4.      JPM Securities is an investment firm where IT and SNT accounts and funds are held.

5.      Dain is an individual who is a trustee of the SNT.  Dain resigned as a trustee of the IT.

6.      Joanne is an individual who resides in New York.

7.      Goodwin is an individual who was appointed by the Denver Probate Court ("DPC") in Colorado in 2017 to be a successor conservator for Joanne.

8.      Litvak is an individual who resides in Illinois.

9.      Dal is an individual who resides in Oregon.

10.     There is litigation around the country, including in New York, Colorado, Illinois, and Oregon, involving one or more of the parties in this case.  There are pending cases in New York, Colorado, Illinois, and Oregon concerning or involving the IT and/or the SNT and/or the assets of those trusts.

11.     Bernard and Joanne are siblings.  They are the only children of Renata Black ("Renata").  Renata died in 2012.

12.     Throughout her life, Joanne has suffered from severe mental illness, sometimes involving periods of profound delusion and paranoia.  Joanne has been hospitalized on multiple occasions.  She also has been at times deemed dangerous to herself and/or others and incapable of caring for herself.

13.     In 1997, Renata established an estate plan that included a simple, three-page will. In her will, Renata provided for her estate to be divided between two trusts, with two-thirds of her estate going to the SNT and the remaining one-third going to the IT, a trust for the benefit of Bernard

and his children. Joanne is the primary beneficiary of the SNT, and the IT is the remainder beneficiary of the SNT.

14.     Bernard is, and at all relevant times has been, the executor of Renata's estate.

15.     Renata died in 2012. At that time, the bulk of Renata's assets were held in several investment accounts with Vanguard Group ("Vanguard") with a then-value of approximately $3 million.

16.     Following Renata's death, it was discovered that shortly before Renata died, the payable on death beneficiary designation on her principal Vanguard accounts was changed to make Joanne the beneficiary of 95% of these accounts, with the remaining 5% going to Bernard's five oldest children, who are Renata's grandchildren (the "POD Designations").

17.     If effective, the POD Designations would prevent funds in those accounts from being included in Renata's estate and passing under her will into the SNT and IT. If effective, the POD designations would have instead conveyed 95% of the funds directly to Joanne.

18.     At the time of Renata's death, Joanne was not taking medication, was highly delusional, had run away from her home in New York, and was living essentially homeless on the streets of Denver, Colorado. At that time, Joanne was making graphic death threats against numerous members of her family, including small children, was attempting to contact the mafia to pay ransom for an imaginary billionaire husband, and had been arrested for breaking into a hotel.

19.     Because of Joanne's severe mental condition at the time of Renata's death and in the months thereafter, there was a consensus among Renata's family members, including Bernard, that, if given effect, the POD Designations would lead to disastrous financial and personal consequences for Joanne. In addition, the POD Designations would undermine Renata's prior,

3

careful provision of assets for Joanne in trust upon Renata's death. At that time, Bernard and other family members agreed that the POD Designations had to have been the result of mistake or fraud in the weeks before Renata, then an elderly woman, died.

20.     A consensus was reached among the members of Renata's extended family that the most effective way to protect Joanne against Joanne's own incapacity and mental issues, to ensure Joanne's financial security and personal safety, and to implement Renata's long-standing estate plan for the entire family, was for all beneficiaries of the POD Designations to disclaim their entitlement to receive the Vanguard account proceeds so that the assets of those accounts could pass through Renata's estate according to Renata's estate plan.

21.     As part of the family's plan, on October 16, 2012, because Joanne then was living in Denver, Colorado, Bernard petitioned the DPC to be was appointed by the DPC as Joanne's conservator. In December 2012, the DPC granted Bernard's petition and appointed him as Joanne's conservator.

22.     As conservator for Joanne, Bernard obtained specific authorization from the DPC to disclaim, on Joanne's behalf, Joanne's interest in Renata's accounts at Vanguard. As a result of that disclaimer, the assets in Renata's accounts at Vanguard flowed into Renata's estate, and were then distributed in accordance with her will, which reflected her longtime estate plan. A copy of the disclaimer (the "Disclaimer") is attached hereto as Exhibit A.

23.     In connection with the Disclaimer, Bernard arranged for his older children, who each stood to receive 1% of the Vanguard assets, to execute their own disclaimers to ensure that the assets disclaimed on Joanne's behalf did not flow to them and instead flowed to the Estate of Renata Black ("Child Disclaimers") to be distributed pursuant to Renata's estate plan. Copies of the Child Disclaimers are attached as Group Exhibit B.

24. Following the DPC's approval of the Disclaimer, the Disclaimer and the Child Disclaimers were carried out and the Vanguard assets reverted to the Estate of Renata Black ("Renata's Estate"). Two-thirds of Renata's Estate, which now included the disclaimed assets, was contributed to the SNT, and one-third were contributed to the Issue Trust, in accordance with Renata's will.

25. By 2016, Joanne had moved out of Colorado and was living in New York.

26. In 2016 and 2017, Joanne was living in New York.

27. In 2016, a New York court adjudicated a petition for guardianship filed with respect to Joanne. Following an evidentiary hearing, the New York court determined that Joanne did not need either a personal needs guardian or a property guardian. At the time of that 2016 ruling by the New York court, Joanne was living in New York.

28. A property guardian in New York is the legal equivalent to a conservator in Colorado. Thus, the New York court determined that Joanne did not need a conservator.

29. The DPC knew of the New York court's ruling in 2016 that Joanne did not need a guardian.

30. The DPC appointed Goodwin as a successor conservator for Joanne in 2017. At the time the DPC appointed Goodwin as successor conservator for Joanne, Joanne was living in New York. The DPC knew that Joanne was living in New York in 2017. The DPC knew that Joanne did not have any assets in Colorado in 2017.

31. The DPC did not hold a hearing concerning Joanne's need for a conservator or guardian when it appointed Goodwin as a successor conservator for Joanne.

4885-8195-6101, v. 1

32.     The DPC did not take evidence concerning Joanne's competence and ability to live on her own and manage her own financial affairs when it appointed Goodwin as a successor conservator for Joanne.

33.     The DPC appointed Goodwin as a successor conservator for Joanne in 2017 even though Joanne did not reside in Colorado at that time.  Joanne had moved out of Colorado in 2013. The DPC appointed Goodwin as a successor conservator for Joanne in 2017 even though it knew that Joanne had been adjudged to not need a guardian the prior year.

34.     The DPC lacked jurisdiction to appoint Goodwin as a successor conservator for Joanne in 2017 in that Joanne did not reside in Colorado.  The DPC lacked any reasonable basis for appointing Goodwin as a successor conservator for Joanne in 2017 in that it did not consider whether Joanne was in need of a conservator at that time.

35.     On information and belief, Joanne has not returned to Colorado to live at any time after 2013.  On information and belief, Joanne does not own any property in Colorado or have any assets there.

36.     Goodwin is not, and never has been, a proper representative of Joanne because Joanne has never lived in Colorado at any time since the time when Goodwin was appointed as her conservator.  Goodwin is also not a proper representative of Joanne because a court in New York, the state in which she resides, determined in 2016 after an evidentiary hearing, that Joanne did not need a property guardian.  The DPC has not since 2016 taken any evidence on the issue of Joanne's need for a conservator.  The DPC has not entered any finding since 2016 with respect to Joanne need, or continued need, for a conservator.

37.     The DPC had no proper basis for appointing Goodwin as a conservator for Joanne in 2017 in that Joanne no longer resided in Colorado, had no assets there, had no need for a

4885-8195-6101, v. 1

conservator in 2017, had not lived in Colorado since 2013, and was found in New York in 2016 not to need a property guardian.

38.     Under Illinois law, a disclaimer is irrevocable.

39.     Disclaimers are governed by statute in Illinois.  755 ILCS 5/2-7 provides, in pertinent part, that: "A disclaimer pursuant to this Section shall be irrevocable and shall be binding upon the disclaimant and all persons claiming by, through and under disclaimant."

40.     For purposes of 735 ILCS 5/2-7, Joanne, as the beneficiary of the SNT, is a person claiming by, through and under the disclaimant.

41.     Under Illinois law, once a disclaimer is executed, it relates back to the death of the person whose property is the subject of the disclaimer for all purposes and effectively prevents the disclaimant from ever acquiring an interest in the property, retroactively erasing any interest in the property in the beneficiary disclaiming.  *In re Atchison*, 925 F.2d 209 (7th Cir. 1991) (applying Illinois law).

42.     A disclaimer is irrevocable under Colorado law.  Pursuant to C.R.S.A. § 15-11-1205, "A disclaimer becomes irrevocable when it is delivered or filed …."

43.     The Circuit Court of Cook County, Illinois, in litigation concerning the IT, has determined that the Disclaimer is valid and irrevocable.  A copy of the Order declaring the Disclaimer valid and irrevocable is attached hereto as Exhibit C.

44.     There is now pending in the Circuit Court of Cook County, Illinois, a case in which the court is being asked to find that the Disclaimer, insofar as the SNT is concerned, is valid and irrevocable.  A copy of the Complaint in that case is attached hereto as Exhibit D.

45.     The DPC has never entered a valid and enforceable order unwinding the Disclaimer.

46. The DPC entered a judgment on March 17, 2016, which included an award in favor of Joanne of treble damages for civil theft against Bernard in the amount of $4,305,819.69. However, no complaint ever was filed against Bernard in the DPC asserting any claim against him for civil theft prior to the time the DPC entered judgment against him.

47. The DPC's judgment against Bernard for civil theft is void for lack of subject matter jurisdiction.

48. Prior to the DPC entering the civil judgment against Bernard, Joanne's attorney requested that the Disclaimer be unwound or declared void and unenforceable and the DPC rejected Joanne's attorneys request for the entry of such relief.

49. The Colorado Court of Appeals affirmed the DPC's decision to enter a civil judgment against Bernard, expressly holding that it was proper for the DPC to enter such relief instead of the alternative remedy of unwinding or voiding the Disclaimer.

50. Litvak loaned money to the IT and the SNT. Litvak loaned money to those trusts to enable Bernard and Samuel to pay legal fees to defend the trusts in litigation and to defend themselves as trustees in litigation.

51. The money that Litvak loaned to the trusts was not repaid. Therefore, Litvak commenced litigation in the Circuit Court of Cook County, Illinois to recover what was due and owing on the unpaid loans. Litvak has obtained a judgment against the IT for the amount due and owing on the unpaid loans.

52. Dal is an individual who resides in Oregon.

53. Dal loaned money to the IT and the SNT. Dal loaned money to those trusts to enable Bernard and Samuel to pay legal fees to defend the trusts in litigation and to defend themselves as trustees in litigation.

54.     The money that Dal loaned to the trusts was not repaid.  Therefore, Dal commenced litigation in the Circuit Court of Cook County, Illinois to recover what was due and owing on the unpaid loans.  Dal later obtained a judgment in her favor against both the IT and SNT.  That judgment was affirmed on appeal.

55.     The DPC entered an order suspending Bernard and Samuel from acting as trustees for the SNT.  Bernard and Samuel were never served with process in any proceeding in the DPC in their capacities as trustees of the SNT.

56.     Samuel never has appeared, or been served with process in any capacity, in any proceeding in the DPC.

57.     In all proceedings before the DPC involving the SNT, Bernard has objected to personal jurisdiction over himself as SNT trustee, and to the DPC's jurisdiction over the SNT.

58.     The DPC did not have any proper basis for acquiring or asserting jurisdiction over Samuel to make any ruling against him or to affect any of his legal rights.  The Colorado Court of Appeals vacated the DPC's order for relief against Samuel on grounds of lack of due process.

59.     The IT and its trustees were never served with process in any proceeding in the DPC, nor was any action or motion filed before the DPC against the IT or its trustees.

60.     The IT and its trustees have never filed an appearance, nor did they have an appearance filed on their behalf, in any proceeding in the DPC.

61.     The DPC did not acquire subject matter jurisdiction over the SNT.  The DPC did not have personal jurisdiction over its trustees.

62.     The DPC did not acquire subject matter jurisdiction over the IT.  The DPC did not have personal jurisdiction over its trustees.

63.     Bernard and Samuel are two of the three trustees of the SNT.

64.     Dain resigned in 2015 as a trustee of the IT.

65.     Bernard and Samuel are the only trustees of the IT.

66.     Joanne is not a beneficiary of the IT and has no interest of any kind in the IT.

67.     Bernard's children are beneficiaries of the IT.  None of Bernard's children have ever been served with process with respect to the conservatorship proceeding in the DPC.

68.     The DPC has entered orders concerning the IT.  The DPC has entered orders concerning the IT's assets and accounts.

69.     Most of the beneficiaries of the IT have never received any notice or been served with process of any kind concerning any of the proceedings in the DPC which concern or affect the IT and/or its accounts or assets.

70.     The DPC has entered orders concerning the SNT and IT without all necessary parties concerning those trusts whose interests are affected by the rulings having been made parties to any of the DPC proceedings concerning or affecting the SNT or IT or their accounts and assets.

71.     The DPC has entered orders concerning the assets and accounts of the SNT and IT, including the accounts that are the subject of this interpleader action, without all necessary parties who have an interest in those trust accounts having been made parties to the DPC proceedings.

72.     Chase Bank and JPM Securities are holding funds in accounts for the IT and the SNT.

73.     Dain does not have the authority to access to the funds in the SNT accounts without the agreement or consent of the other trustees of the SNT because he is only one of three trustees of the SNT.  Dain does not have the power to direct the use of any SNT account funds without the consent and approval of at least one of the other trustees of the SNT.

4885-8195-6101, v. 1

74.   Dain does not have any authority over the funds in the IT accounts because he is not a trustee of the IT.

75.   A decision with respect to the use of funds held in accounts for the SNT cannot properly be made without the consent or approval of a majority of the SNT's trustees.

76.   A decision with respect to the use of funds held in accounts for the IT cannot properly be made without the consent or approval of a majority of the IT's trustees.

77.   There is a dispute between the parties as to whether the DPC has jurisdiction over the SNT assets and accounts.

78.   The DPC does not have jurisdiction over the SNT assets and accounts.

79.   There is a dispute between the parties as to whether the DPC has jurisdiction over the IT assets and accounts.

80.   The DPC does not have jurisdiction over the IT assets and accounts.

81.   There is a dispute between the parties as to whether the DPC has jurisdiction to enter any orders concerning the SNT or IT accounts.

82.   The DPC does not have jurisdiction to enter any orders concerning the SNT or IT accounts.

83.   There is a dispute between the parties as to whether any of the DPC's orders are effective as to the SNT or its assets and/or accounts based upon various individuals with interests in the SNT and its assets and accounts having not received notice or process and not having been made party or parties to any of the DPC proceedings.

84.   There is a dispute between the parties as to whether any of the DPC's orders are effective as to the IT or its assets and/or accounts based upon various individuals with interests in

4885-8195-6101, v. 1

the IT and its assets and accounts having not receive notice or process and not having been made party or parties to any of the DPC proceedings.

85.     The DPC's orders are not effective as to the SNT or IT or the assets or accounts of either trusts because various individuals with interests in those trusts have never been made parties to any of the DPC proceedings, have never been served with process in any DPC proceeding, have not appeared in any DPC proceeding, and have not received notice of any DPC proceeding and an opportunity to be heard.

86.     The DPC's orders concerning the SNT assets and accounts are not binding on Samuel or Bernard's other children because Samuel and Bernard's other children have remainder interests in the SNT accounts through their interests as beneficiaries of the IT and they have not been made parties to, or received proper notice of process, with respect to the DPC proceedings which led to the DPC's orders concerning the SNT assets and accounts.

87.     The DPC's orders concerning the IT assets and accounts are not binding on Samuel or Bernard's other children because Samuel and Bernard's other children are beneficiaries of the IT and they have not been made parties to, or received proper notice of process, with respect to the DPC proceedings which led to the DPC's orders concerning the IT assets and accounts.

88.     There is a dispute between the parties as to ownership and control of the assets and funds in the IT accounts that are the subject of this action and whether the funds in those accounts are available to pay the Judgment entered by the DPC against Bernard.

89.     There is a dispute between the parties as to whether any of the DPC's orders are binding on Samuel.

90.     The DPC's orders are not binding on Samuel because he has not been served with process in any DPC proceeding and has not appeared in any DPC proceeding.

91.     There is a dispute between the parties as to whether the Disclaimer can or should be reversed at this time.

92.     The Disclaimer cannot properly be reversed, unwound, or declared void or invalid at this time.

93.     An Illinois court has resolved the dispute as to whether the Disclaimer is irrevocable insofar as the IT is concerned.  Pursuant to that judgment, the Illinois court has determined that the Disclaimer is valid and irrevocable.

94.     There is a dispute between the parties as to whether the assets in the IT and the SNT are available to Joanne or to Goodwin to satisfy the Judgment that the DPC entered against Bernard.

95.     The interpleaded funds are assets of the IT and the SNT, are not personal assets of Bernard, and are not available to pay the Judgment that the DPC entered against Bernard.

WHEREFORE, Counter-Plaintiffs Bernard Black, individually and as trustee of the SNT and the IT, as trustee of the SNT and the IT, pray that this Court enter the following relief:

A.      A declaratory judgment that funds held in SNT accounts are subject to the decisions and control of a majority of the trustees of such trusts;

B.      A declaratory judgment that the funds held in IT accounts are subject to control by Bernard and Samuel, as the trustees of the IT;

C.      A declaratory judgment that Dain alone, as a minority trustee of the SNT, does not have the right to sole access or control over the funds in any of the SNT accounts;

D.      A declaratory judgment that the funds in the IT are not available to pay the judgment that the DPC entered against Bernard because the funds in those accounts are trust funds,

not Bernard's funds personal funds, and not available to pay any judgment, even if valid, against Bernard;

E.     A declaratory judgment that Joanne does not have any interest in the IT or in any account held in the name of the IT;

F.     A declaratory judgment that, given that Joanne has resided in New York since 2013 and was found competent to manage her own financial affairs by a New York court in 2016, Goodwin is not a proper representative of Joanne and does not have the authority to act on behalf of Joanne;

G.     A declaratory judgment that the assets in SNT accounts are assets of the SNT and not assets of Joanne's conservatorship estate in the DPC;

H.     A declaratory judgment that the DPC's orders with respect to the SNT assets are void and unenforceable because the SNT assets are not assets of the conservatorship estate;

I.     A declaratory judgment that the DPC's orders with respect to the SNT assets are void and unenforceable because the DPC does not have jurisdiction over Samuel as a trustee of the SNT;

J.     A declaratory judgment that the DPC's orders with respect to the SNT assets are void and unenforceable because the DPC does not have jurisdiction over all beneficiaries of the SNT and they were not all made parties to any of the DPC proceedings;

K.     A declaratory judgment that the assets in IT accounts are assets of the IT and not assets of Joanne's conservatorship estate in the DPC;

L.     A declaratory judgment that the DPC's orders with respect to the IT assets are void and unenforceable because the IT assets are not assets of the conservatorship estate;

14

M.      A declaratory judgment that the DPC's orders with respect to the IT assets are void and unenforceable because the IT does not have jurisdiction over Samuel as a trustee of the IT;

N.      A declaratory judgment that the DPC's orders with respect to the IT assets are void and unenforceable because the DPC does not have jurisdiction over all beneficiaries of the SNT and they were not made all parties to the DPC proceedings;

O.      A declaratory judgment that Bernard, as Executor of the Estate is entitled to recover from the SNT and IT the attorneys' fees and accounting expenses he has incurred to defend the assets of the Estate and the trusts, which as Executor he had distributed to the trusts;

P.      A declaratory judgment that Bernard and Samuel, as trustees of the IT and SNT, are entitled to recover the reasonable attorneys' fees they have incurred to defend the assets of the IT and the SNT from the IT and SNT and that their claims for reimbursement are ahead of other claims to the assets of those trusts.

Q.      A declaratory judgment that Samuel, as trustee of the SNT and IT, is entitled to recover from the IT and SNT assets the legal expenses he has incurred, and may in the future incur, to defend efforts to wrongfully obtain relief from him in Colorado and that his claim to recover those expenses from the IT and SNT assets has priority over other claims to those assets.

R.      A declaratory judgment that the Disclaimers that resulted in the Vanguard account assets being included in the Estate and then passing into the IT and SNT are valid and irrevocable.

S.      A declaratory judgment that payment of Joanne's or Goodwin's legal fees is not a permitted purpose of the SNT;

T.      A declaratory judgment that Samuel is not bound by any of the orders of the DPC as to the SNT, the IT or the interpleaded assets because the DPC lacks personal jurisdiction over him;

4885-8195-6101, v. 1

U.     A declaratory judgment that any orders of the DPC against Bernard in his capacity as trustee of the IT are void and unenforceable on the grounds that the DPC does not have personal jurisdiction over him as trustee of the IT.

V.     A declaratory judgment that the DPC lacks jurisdiction to enjoin Bernard or Samuel from acting as a trustee or co-trustee of the SNT and IT.

> BERNARD S. BLACK, individually and as Trustee of the 2013 Trust, the SNT and the Issue Trust, and SAMUEL BLACK, as Trustee of the 2013 Trust, the SNT and the Issue Trust
>
>
> By: /s/Brad S. Grayson
>        One of Their Attorneys

Benjamin N. Feder (ARDC# 6277452)
Brad S. Grayson (ARDC# 6196336)
STRAUSS MALK & FEDER LLP
135 Revere Drive
Northbrook, IL 60062
(847) 562-1400 (Tel.)
(847) 562-1422 (Fax)
bfeder@smfllp.com
bgrayson@smfllp.com

16