**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JPMORGAN CHASE BANK, N.A. et al.,     )
    )
                  Plaintiffs,     )
    )     Case No. 18-cv-03447
     v.     )
    )     Hon. Andrea R. Wood
BERNARD S. BLACK, et al.,     )
    )
               Defendants.     )

**DEFENDANTS AND COUNTER-PLAINTIFFS
BERNARD S. BLACK AND SAMUEL BLACK'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF THEIR MOTION TO ENJOIN AND/OR
<u>FOR ENTRY OF RULE TO SHOW CAUSE AGAINST DEFENDANT JOANNE BLACK</u>**

This Court should enjoin defendant Joanne Black ("Joanne") from pursuing relief in the Denver Probate Court ("DPC") seeking a turnover of the interpleader assets, and/or issue a rule to show cause as to why Joanne should not be held in contempt for violating this Court's June 12, 2019, and September 29, 2021, Orders. As Bernard S. Black ("Bernard") and Samuel Black (collectively, "Movants") explained in their motion, Joanne blatantly is pursuing relief in the DPC that this Court expressly enjoined her from pursuing.

The dispute here can be simply framed. In its June 12, 2019, and September 29, 2021, Orders, this Court enjoined the parties from pursuing a turnover of the interpleader assets, which are the assets held in two trusts, without *"first"* obtaining approval from this Court. That "first" language is important and can expressly be found in both orders.

This Court's June 12, 2019, Order expressly states, in pertinent part, that: "This Court's prior order ... is amended to preclude any party from seeking ... to effectuate ... any turnover or withdrawal of the interpleader assets ... without *first* filing a motion with this Court seeking approval for such withdrawal." (Emphasis added.)

1

This Court later expressly repeated that same injunction in its September 29, 2021, Order, stating, in pertinent part, that: "no party may seek to effectuate any turnover or withdrawal of the Interpleaded Assets … without *first* filing a motion with this Court." (Emphasis added.) In the 2021 order, this Court expressly distinguished between an action before the DPC seeking to reverse the disclaimer that led to the interpleaded assets moving to the trusts, which it permitted, and an action seeking turnover of the trust assets, which it enjoined.

The distinction that the Court drew between the two actions (one permitted, the other not) was express. The sequencing that this Court ordered for an action seeking turnover was express as well and had a purpose. Joanne knew the express language of the 2019 and 2021 orders and their purpose when she decided to violate them.

More specifically, notwithstanding this Court's consistent orders with respect to seeking turnovers of the interpleader assets, on November 4, 2022, Joanne filed a motion in the DPC expressly seeking an order from the DPC to require "Bernard [to] return all of the [interpleaded] assets … to the [DPC] Conservatorship Estate." (Joanne Motion, a copy of which is attached hereto as Exhibit A, at ¶ 30.) Joanne sought that relief without first requesting approval from this Court to pursue that relief.

In her motion, Joanne says that if the DPC issues the order she seeks she "*then* [will bring that order] to the Interpleader Court for its approval." (*Id.* at ¶ 31, emphasis added.) In other words, she recognizes that she is seeking turnover relief for the interpleader assets in the opposite sequence of what this Court required.

Had the Court not issued its 2019 and 2021 orders, Joanne would still have to come to this Court for permission for actual transfer of assets. Thus, her statement that she will do so after the DPC takes action does not offer to do anything she would not otherwise have to do. Nor should

the statement as to what she will do be given any credence. In seeking to avoid a contempt order against Joanne, her counsel previously "repeatedly" represented to this Court that she would come to this Court first before seeking turnover.[1]  Joanne then violated that representation, and now offers thin justifications for doing so.

Joanne's manner of proceeding will, if allowed, multiply litigation costs. It will lead, at a minimum, to a proceeding before the DPC, followed (if she is successful) by an appeal to the Colorado Court of Appeals, followed by a trip to this Court. Multiplication of litigation costs was a principal reason why the plaintiffs in this proceeding sought the injunctive relief in the 2019 order that this Court ordered, and why Bernard and Samuel Black, as trustees of the subject trusts, sought similar injunctive relief from this Court. Joanne's response offers no explanation for why she ignored this Court's orders and has gone to the DPC first to seek a turnover of the interpleaded trust assets.

Joanne's argument to this Court that she should be allowed to first litigate the disposition of the interpleaded assets in the DPC is, in substance, a claim that this Court's 2019 and 2021 orders mean nothing at all -- that when this court said "first," it did not really mean it.  But in the same September 29, 2021, order that allowed her to litigate issues concerning the disclaimer of assets in the DPC, this Court expressly prohibited any party, including her, from seeking an order requiring a turnover of those assets without prior approval from this Court. This Court was clear in its 2021 order as to what relief Joanne could, and could not, seek before the DPC. Joanne's counsel also was clear to this Court, in promising not to seek turnover of assets before the DPC without coming to this Court first.  Joanne, however, has chosen to ignore that order, and her counsel's prior representations to this Court, instead effectively asserting that this Court did not

---

[1]  Sept. 29, 2021 Order, 2021 WL 4459482 at *10 ("Joanne's counsel later made clear—repeatedly—that she did not seek any turnover of the Trusts' assets").

5094\00005\4862-0827-5279.v1

really mean what it said in 2019, and said again in 2021; and that Joanne should not be held to her counsel's representation to this Court as to Joanne's plans with regard to seeking turnover before the DPC.

Joanne speciously accuses Bernard of wasting judicial resources with frivolous motions when he is merely seeking to have this Court require her to comply with this Court's orders. She is the one wasting judicial resources by pursuing relief in another Court that this Court enjoined her from pursuing without first coming to this Court for permission to do so.

One can speculate about Joanne's motives. One motive may be simply to impose litigation costs on Bernard and Samuel. Another may be that, if she obtains the order she seeks from the DPC, she will seek to use that to expose Bernard, Samuel, or both, to a contempt motion in the DPC if they do not comply with the DPC turnover order – notwithstanding that they have no ability to comply if such an order is entered. She has pursued this strategy in the past against Bernard.

Joanne knows that by getting the turnover order in another court before obtaining this Court's approval, she is putting Bernard (and possibly Samuel) in the untenable position of being forced to comply with a turnover order in another court with which he cannot apply, thereby exposing him to an order of contempt in that other court. The DPC has already demonstrated its willingness to enforce its prior turnover order with a contempt sanction, notwithstanding this Court's control over the interpleaded assets, and notwithstanding the voiding of that prior order by the Colorado Court of Appeals. Joanne's promise to belatedly seek later approval from this Court of an already-entered turnover order in the DPC would not protect Bernard and Samuel against possible contempt in the DPC. They would have no assurances that anything this Court might do thereafter would adequately protect them from the jeopardy that already would have attached in the DPC proceedings from non-compliance with an already-entered order.

4

For all the foregoing reasons, this Court should grant Movants' motion to enjoin Joanne from pursuing relief in the DPC seeking a turnover of the interpleader assets, or in the alternative, enter an order to show cause as to why Joanne should not be held in contempt for violating this Court's June 12, 2019, and September 29, 2021, Orders.

Respectfully submitted,

BERNARD S. BLACK, individually and as Trustee of the 2013 Trust, the SNT and the Issue Trust, and SAMUEL BLACK, as Trustee of the 2013 Trust, the SNT and the Issue Trust

By: /s/Brad S. Grayson
One of Their Attorneys

Benjamin N. Feder (ARDC# 6277452)
Brad S. Grayson (ARDC# 6196336)
Sarah M. Freund (ARDC# 6340828)
Strauss Malk & Feder LLP
135 Revere Drive
Northbrook, IL 60062
(847) 562-1400
bgrayson@smfllp.com
sfreund@smfllp.com

# EXHIBIT A

<table>
<tr>
<td>

PROBATE COURT, DENVER COUNTY, COLORADO
Court Address: 1437 Bannock Street, Denver, CO 80202

---

In the Interest of: JOANNE BLACK,

Protected Person.

---

Attorney:  Lisa DiPonio, Esq., #27707
7931 S. Broadway, #348
Littleton, CO 80120
(303) 955-2080
Counsel for Joanne Black

Gayle Y.L. Young, Esq. #17107
P.O. Box 307
Littleton, CO 80160
(303) 738-9546
Guardian ad Litem for Joanne Black

</td>
<td>

COURT USE ONLY

---

Case No.: 2012PR1772

Division:   1

</td>
</tr>
</table>

**PROTECTED PERSON JOANNE BLACK'S MOTIONS TO VACATE THIS COURT'S ORDER AUTHORIZING THE DISCLAIMERS AND/OR TO VOID THE DISCLAIMERS, TO SUSPEND BERNARD BLACK AS A TRUSTEE OF THE ISSUE AND 2013 TRUSTS, TO SUSPEND SAMUEL BLACK AS A TRUSTEE OF ALL THREE TRUSTS, AND TO SURCHARGE SAMUEL BLACK FOR THE DAMAGES HE HAS COST THE PROTECTED PERSON AND HER CONSERVATORSHIP ESTATE.**

NOW COMES Lisa DiPonio, Esq., Court Appointed Counsel on behalf of Protected Person Joanne Black, and Gayle Young, Esq., Court Appointed Guardian ad Litem, and submit the following motions to Vacate this Court's Order Authorizing the Disclaimers and/or to Void the Disclaimers, to Suspend Bernard Black as a Trustee of the Issue and 2013 Trusts, to Suspend Samuel Black as a

Trustee of all Three Trusts, and to Surcharge Samuel Black for the Damages he has Cost the Protected Person and her Conservatorship Estate. In support thereof, Counsel and the Guardian Ad Litem state as follows.

## BACKGROUND

**A.**     **This Court's Order Following Remand**

1.      On April 27, 2021, the Court of Appeals in *Black III*, "remanded to [this] court for further proceedings … including for a determination of whether the disclaimers should be voided." (*Black III, at* 488, ¶ 139).

2.      On May 10, 2021, this Court directed the Protected Person to file motions related to the Court of Appeals remand, and to other issues raised by the Protected Person.

**B.**     **The Interpleader Action**

1.      As the Court is aware, Ms. Black, Conservator Jeanette Goodwin, Trustee Anthony Dain, as well as Bernard and Samuel Black, are parties in an interpleader action filed in the Northern District of Illinois by Chase Bank titled JP Morgan Securities LLC et al. v. Black et al., Case No. 1:18-cv-03447.

2.      The Interpleader action was filed by Chase following Bernard's brazen diversion of, "$258,000 from the SNT to his personal home equity line

of credit, despite the April 2015 Order freezing the SNT's assets." *Black III*, 482 P.3d at 484, ¶ 110.

3.    While this Court maintains in rem jurisdiction over the Conservatorship assets Bernard Black stole and deposited in various Chase accounts, the District Court maintains custody over the interpleader assets.

4.    The assets are one and the same. The interpleader assets consist entirely of the Conservatorship assets over which this Court has in rem jurisdiction.

5.    The Interpleader Court issued an interim order that, in pertinent part: "preclude[s] any party from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets from the accounts held by Plaintiff, without first filing a motion with [the Interpleader] Court seeking approval for such withdrawal." After multiple motions, the Interpleader Court assured Ms. Black and Conservator Goodwin that they may proceed before this Court seeking the return of the stolen Conservatorship assets, subject only to Ms. Black and/or Conservator Goodwin filing a motion with the Interpleader Court for approval of any order this Court

issues which, "effectuate[s] any turnover or withdrawal of the interpleader assets from the accounts held by [Chase]."

**C.** **The Protected Person's Motions:**

1. Vacating **this Court's Order Authorizing the Disclaimers and/or Voiding the Disclaimers.** In its April 27, 2018 Order, this Court held that it would exercise its discretion under C.R.C.P. 60(b) to vacate its order authorizing Bernard to disclaim assets. The Court specifically stated as its reasoning: "The order granting Mr. Black's request for authority to disclaim the POD funds held in the Vanguard accounts, which he also used to disclaim funds in the Roth IRA without this Court's knowledge or permission is clearly inequitable in view of the on-going circumstances presented in this matter. The inequity is shown by the continuing litigation which continues to burden Joanne Black and which prevents her funds from being used for her care. The on-going litigation alone justifies relief from this judgment. The Court finds the hearing record and Hearing Order as well as this Court's subsequent orders support a determination that the disclaimer order should be vacated as does the on-going record developed in this matter."

4

2.      The Court of Appeals reversed, but only because this Court lacked jurisdiction to issue the order while the matter was on appeal. *Black III*, 482 P.3d 480, ¶ 88. The Court of Appeals remanded for this Court to rehear the issue. *Id.*, at 488, ¶ 139

3.      In fact, the Court of Appeals implored this Court that Joanne's Conservatorship has an, "'interest in attaining effective and convenient relief' from the probate court because the court has exclusive jurisdiction over it. (Citing *Archangel Diamond*, <u>123 P.3d at 1195</u>; *see* <u>§ 13-9-103(1)(f)</u>.) The Denver Probate Court is the only tribunal that can directly and conveniently remedy Bernard's misappropriation of Joanne's conservatorship assets. The New York and Illinois courts cannot void the disclaimers because they lack jurisdiction over the conservatorship. Even if those courts were to exercise jurisdiction over the Trusts and order Bernard to return the misappropriated assets to the conservatorship, such actions could involve significant additional litigation, adding to the time and expense of resolving the Black family's legal battles." (*Black III,* 482 P.3d at 479, ¶ 83).

4. The Colorado Court of Appeals had earlier affirmed that Bernard violated this Court's March 5, 2013, Order authorizing him to use disclaimers only for the purpose of transferring Joanne's POD assets into the Supplemental Needs Trust. The Court of Appeals held, "In its order appointing Mr. Black as conservator, the court directed that Joanne's "assets will be placed into a Supplemental Needs Trust" for her benefit. The order authorized Mr. Black to disclaim the POD assets, but did not authorize any diversion of those assets into a trust for the benefit of another person." (*Black I*, 422 P.3d *at* 604, ¶¶ 58-59)

5. Thus, the Court of Appeals has affirmed that this Court has jurisdiction and discretion to void the disclaimers.

6. In addition to the Courts' stated bases for vacating this Court's Order authorizing the disclaimers, this Court has additional support in that the disclaimers were never "effective" under New York law.

7. On December 29, 2012, Bernard executed forms he and his counsel prepared titled "Disclaimer and Renunciation, EPTL 2-1.11." [1]

---

[1] Colorado uses the term "disclaimer." New York uses the term "renunciation."

6

8.     The forms were under the heading of the "Surrogate Court, State of New York, Westchester County," carrying the case number for the Probate Estate of Renata Black.

9.     The disclaimers provided in pertinent part, pursuant to Section 15-11-1205 of the Colorado Probate Code, Section 2-1.11 of the New York Estates Powers and Trusts Law, and Section 6201 of the Pennsylvania Probate, Estates and Fiduciaries Code, the undersigned hereby irrevocably and unqualifiedly disclaims, renounces and refuses to accept the right the undersigned has in the accounts listed on Schedule A, attached.[2]  Schedule A contained the Vanguard and Fidelity Conservatorship POD accounts.  The disclaimers are attached to this Motion within a Complaint Bernard and Samuel filed, discussed more fully below, and attached hereto as Exhibit 1.

10.    One of the documents necessary to render the disclaimers effective under New York law is entitled "Notice of Disclaimer and

---

[2] Bernard and his counsel presumably denoted these states' laws because Colorado is where Joanne resided and where her Conservatorship is, New York is where Renata Black's Probate Estate is, and Pennsylvania is where Vanguard's headquarters are.

Renunciation." The form is intended to serve notice that Bernard had executed the disclaimers.

11.  Bernard did not sign this form.  This is very telling, as it concedes that Bernard did not serve notice on the Court or interested parties that Bernard had in fact executed disclaimers.

12.  Bernard also failed to file the disclaimers with the Clerk of the Surrogate Court as required by New York law.

13.  Bernard's failure to file the disclaimers with the New York Surrogate Court Clerk has been confirmed by one of his attorneys.  As this Court may recall, on April 5, 2021, attorney Lee A. Hoffman, Jr., filed a letter with this Court, explaining that he has been sued by Bernard for malpractice.  Attorney Hoffman explained that Bernard's suit alleges Hoffman failed to "file the disclaimers of Joanne Black's share in certain assets which vested in Joanne [at] the time of her mother's death."

14. Bernard's failure to file the disclaimers with the New York Surrogate Court rendered the them ineffective and, thus, invalid under New York Law. See, e.g., *Rackis v. Adelman*, 104 A.D.3d 927, 929 (2013).[3]

15. Under New York's Estate Powers and Trusts Law, notice of an heir's disclaimer/renunciation must be filed with the Clerk of the New York Surrogate Court within nine months of the decedent's disposition of the assets at issue. EPTL 2-1.11 (C)(2).

16. Because he never filed the disclaimers with the Clerk of the Surrogate Court, Bernard obviously did not meet that mandatory deadline.[4]

17. The requirement to file the disclaimer/renunciation with the Clerk within nine months is mandatory: "Such renunciation shall be in writing, signed and acknowledged by the person renouncing, and shall be filed in the office of the clerk of the ... surrogate's court provided by

---

[3] That Bernard blames Attorney Hoffman for the failure to file, is an issue only between Bernard and Hoffman; it does not alter that the disclaimers are invalid. In the end, as the New York Surrogate Court bluntly stated in *In re Estate of Overgard*, 785 N.Y.S.2d 662, 664 (2004), "the dilatory tactics responsible for his misfortune are his own. Petitioner was in a unique position to file the renunciation in a timely fashion. ... It is axiomatic that ignorance of the law is no excuse (*citing e.g. Matter of Kopp,* 2 N.Y.S. 495.)

[4] A party may, for good cause, seek an extension of the time to file. in *In re Estate of Overgard*, 785 N.Y.S.2d 662, 664 (2004) Irrespective of whether he could have made such a showing, Bernard did not move for an extension.

9

law as the place of probate or administration of the decedent's estate, within nine months after the effective date of the disposition."

18. The disposition of the Vanguard and Fidelity POD assets occurred, by operation of law, on May 1, 2012, the date of Renata's death.

19. Bernard, thus, was required to file the disclaimers with the Clerk of the New York Surrogate Court no later than February 1, 2013. The EPTL admonishes that, "[t]he time limited in this section for filing and serving such renunciation is exclusive, and shall not be suspended or otherwise affected by any other provision of law; such renunciation shall be effective as of the date of such filing" *Id.*

20. New York law does not permit *nunc pro tunc* filing. *Matter of Estate of Lee,* 589 N.Y.S. 753, 755 (1992). Bernard, thus, cannot attempt to file now and relate the filing back. And, in any event, having waited nine years after having employed the disclaimers fraudulently to further his theft of assets, no court would permit him to file a notice now.

21. Bernard's failure also puts the lie to his specious claim that the disclaimers are irrevocable and, thus, he is unable to comply with any court order requiring him to return the POD assets. Failure to file the disclaimers with the Surrogate Court rendered them not only

10

ineffective, but fully revocable. New York E.P.T.L. 2-1.11(h) ("A renunciation *filed* under this section is irrevocable." Italics added); *In re Estate of Overgard, supra*, 785 N.Y.S.2d at 664. Thus, in addition to the disclaimers being ineffective by operation of New York law, they were revocable *ab initio*.

22. Given that the disclaimers were never effective under New York law, this Court may simply add suspenders to the belt, so to speak, by vacating its order authorizing the disclaimers in the first place and/or simply voiding the disclaimers.

23. **Return of Conservatorship Assets as Previously Ordered by This Court**. Irrespective of what the Court does regarding the disclaimers, this Court may order Bernard to return the assets he stole to the Conservatorship Estate.

24. The Colorado Court of Appeals affirmed that this Court has *in rem* jurisdiction over the diverted Conservatorship assets irrespective of where they are, how they got there and how they are held. Additionally, the Court of Appeals has affirmed this Court has *in personam* jurisdiction over Bernard, irrespective of whether he wears his hat individually, as Conservator, or as Trustee.

25.   In *Black III,* this Court affirmed that this Court maintained continuing in rem jurisdiction over all of the conservatorship assets, irrespective of Bernard's diversion of those assets into out of state trusts. (*Black III, at* 474-475, ¶¶ 55-59).   This Court further "conclude[d] that Bernard personally submitted to the court's jurisdiction in his capacity as Joanne's conservator, individually, and as a trustee of the Trusts." (*Black III, at* 477, ¶ 72).

26.   In its April 27, 2018 Order, citing C.R.S. 15-16-201, this Court found, "The Probate Court has exclusive jurisdiction of proceedings initiated by interested persons concerning the internal affairs of trusts."

27.   In *Black III,* the Colorado Court of Appeals "agreed" with and affirmed this Court's analysis that it has jurisdiction over all of the assets in the SNT, Issue Trust and 2013 Trust: "The Court finds *all* of the funds Bernard Black transferred into the [Trusts] that are at issue in this action were sourced from the [POD] accounts naming Joanne Black as the sole or primary beneficiary.   As these funds were all held in the POD accounts on the date of Bernard Black's appointment as conservator, the funds were and remain a part of the conservatorship estate established by this Court." (*Black III, at* 474, ¶ 56).

28. The Court of Appeals affirmed that this Court, "may exercise in rem jurisdiction over the assets of Joanne's conservatorship that Bernard wrongfully diverted to the Trusts," … [b]ecause these assets are not the rightful property of the Trusts…" (*Black III, at* 480, ¶ 86).

29. Because this Court has continuing *in rem* jurisdiction over the POD assets and personal jurisdiction over Bernard, and because Bernard continues to violate this Court's March 5, 2013 Order, this Court has both the jurisdictional power and broad discretion to order Bernard to return all POD assets to the Conservatorship Estate. *O.R.L. v. Smith*, 996 P.2d *supra*, 790-791 (Colo. 2000), citing *Sweeney v. Summers*, 571 P.2d 1067, 1070 (Colo. 1977). (The Probate Court is vested with broad discretion in all matters involving a protected person.)

30. This Court, therefore, should order that Bernard return all of the POD assets he diverted to the Trusts and to his children directly, as currently constituted, to the Conservatorship Estate.

31. Such order issued by this Court will then be brought to the Interpleader Court for its approval.

32. **Suspend Bernard Black as a Trustee of the Issue and 2013 Trusts, and Suspend Samuel Black as a Trustee of all Three Trusts.** As

affirmed by the Court of Appeals in *Black II*, ¶ 25, 482 P.3d 460, this Court had personal jurisdiction over and properly suspended Bernard Black as Trustee of the "SNT and any other trusts which benefit Joanne" *Black II*, ¶ 60. However, Mr. Black also needs to be suspended as Trustee of the 2013 Trust and Issue Trust; the Issue Trust is funded entirely by Conservatorship assets Mr. Black stole. Likewise, as implicated by paragraphs 45, 60 and 75-77 of *Black II*, Samuel's tortious conduct against the Colorado Conservatee, Conservator and Conservatorship justify this Court exercising in personam jurisdiction against Samuel and hailing him to appear before this Court. Upon serving notice to satisfy due process, and a hearing, this Court should to suspend Samuel Black from acting as Trustee of the SNT, Issue and 2013 Trusts.

33. In its April 27, 2018 Order, this Court suspended Bernard as a trustee of the Supplemental Needs Trust. The Court of Appeals affirmed the suspension in *Black III*.

34. In its April 27, 2018 Order, this Court found that it also had personal jurisdiction over Samuel Black, "Samuel Black's actions as a co-trustee with respect to causing judgments to be entered against trust assets also

14

brings him within the ambit of this Court's jurisdiction. These actions have been addressed by this Court's Order entered January 4, 2018. Samuel Black is also under a duty to Joanne Black to use reasonable care to prevent a co-trustee from committing a breach of trust or to compel a co-trustee to redress a breach of trust. (Citing Restatement (Second) of Trusts§184). If Samuel Black has failed in his duty, he places himself under the jurisdiction of this Court pursuant to its continuing jurisdiction over the conservatorship assets which were misdirected by Bernard Black. As a co-trustee fiduciary, Samuel Black is obligated to assist Mr. Dain with return of all misappropriated conservatorship funds. Put another way, Samuel Black has an independent fiduciary obligation to Joanne Black to ensure the misappropriated conservatorship funds are returned."

35. The Court of Appeals likewise rebuked Samuel Black for his, "participation in litigation that seeks to deprive Joanne's conservatorship of the assets that Bernard misappropriated." *Black III* 482 P.3d, at 488, ¶135.

36.   The litigation Samuel Black had initiated at the time the Court of
      Appeals sounded the alarm was voluminous, frivolous and wasteful. It
      included multiple lawsuits in New York and Illinois.[5]

37.   Despite the Colorado Court of Appeals' holdings against Bernard and
      reprimand of Samuel, Bernard and Samuel continue to initiate litigation
      seeking to deprive Joanne's Conservatorship of the assets Bernard
      stole.

38.   For recent example, on December 29, 2021, Bernard and Samuel,
      purporting to act as trustees of the Supplemental Needs Trust, filed a
      Complaint in the Circuit Court of Cook County, Illinois County

---

[5] At that time, Samuel had not only participated in collusive Illinois state litigation
to enter judgments against the SNT, Issue and 2013 Trusts – the trusts holding the
assets Bernard stole from Joanne's Conservatorship Estate – but initiated federal
lawsuits in Illinois against the Protected Person and Conservator Goodwin. The
Protected Person, Conservator Goodwin and Trustee Dain had to hire counsel to
defend against Samuel's litigation. Samuel's collusive judgment litigation included
one trial, two appeals and continues to this date. The federal lawsuits were dismissed
after the Protected Person and Conservatorship Goodwin filed motions objecting to
personal and subject matter jurisdiction. Samuel also initiated federal lawsuits in
New York against the Protected Person's New York retained and Colorado
appointed attorneys, the GAL, the GAL's retained forensic accountant, Trustee
Dain, Ms. Wrigley and her attorneys, and Mr. Pinto. One of the lawsuits – filed
against Ms. Wrigley and Mr. Pinto - was dismissed on summary judgment, for
failure of proof, after lengthy and costly discovery and motion work. As to the other
lawsuit, filed against all of the above parties, Samuel eventually removed himself as
a plaintiff during discovery.

Department, Chancery Division (Case No. 2021CH06049), against Joanne and Trustee Dain, seeking declaratory judgment that the disclaimer(s) Bernard employed were valid under Illinois law.[6]

39. The Complaint, is attached to this Motion as Exhibit 1.[7]

40. Mr. Dain and Ms. Black were again forced to retain counsel. Counsel filed motions to dismiss the complaint as an improper attempt to litigate matters that were already before this Court. Just last month, on September 23, 2022, the Illinois Court agreed with Mr. Dain and Ms. Black and dismissed Bernard and Samuel's complaint.

41. Bernard Black's unmitigated refusal to accept the judgments against him and repeated failure to comply with this Court's orders, justifies

---

[6] While the form Bernard and his lawyers drafted included Colorado, New York and Pennsylvania as states with an interest in the disclaimers, and whose laws might therefore govern, they did not include Illinois. Bernard, of course, chose a state with no interest in the disclaimers in an attempt to end around Colorado's interest.

[7] The Complaint suffers from Bernard's quintessential employment of forum shopping, revisionist history and legal obfuscation. First, seeking to end around Colorado's jurisdiction over him and his actions, Bernard sued in Illinois, a state he specifically excluded as having governance over the disclaimer(s). The Complaint includes only Bernard's slanted version of events; it omits entirely the history of Bernard's breach of fiduciary duties and civil theft of Conservatorship assets, this Court's orders subsequent to appointing Bernard Conservator, and the multiple Colorado and Illinois Courts of Appeals Opinions. The Complaint also misrepresents the legal issues involved; it conflates the issue of whether Bernard can revoke the disclaimer(s) with the issues of whether the disclaimers are valid and/or can be voided by a Court.

further suspending him as a trustee of the Issue Trust and the 2013 Trust.

42. Samuel Black's continued filing of meritless lawsuits against the Protected Person in continuing attempts to deny her and her Conservatorship Estate of the assets Bernard stole, demonstrates the need to suspend Samuel Black as a trustee of the three trusts.

43. In its April 27, 2018 Order, this Court explained its ability to exercise personal jurisdiction over Samuel Black. It stated, "This Court entered orders freezing the accounts and prohibiting all trust activities absent the issuance of a court order. Samuel Black therefore has no authority over trust funds which originated as part of the conservatorship estate and any authority he has exercised over those funds brings him within this Court's jurisdiction pursuant to C.R.S. 13-1-124. Samuel Black's actions as a co-trustee with respect to causing judgments to be entered against trust assets also brings him within the ambit of this Court's jurisdiction. These actions have been addressed by this Court's Order entered January 4, 2018. Samuel Black is also under a duty to Joanne Black to use reasonable care to prevent a co-trustee from committing a breach of trust or to compel a co-trustee to redress a breach of trust.

18

(Citing Restatement (Second) of Trusts §184.) If Samuel Black has failed in his duty, he places himself under the jurisdiction of this Court pursuant to its continuing jurisdiction over the conservatorship assets which were misdirected by Bernard Black. As a co-trustee fiduciary, Samuel Black is obligated to assist Mr. Dain with return of all misappropriated conservatorship funds. Put another way, Samuel Black has an independent fiduciary obligation to Joanne Black to ensure the misappropriated conservatorship funds are returned." (Order, Apr. 27, 2018, pp. 9-10.)

44.     Simply put, because Samuel's continuing actions significantly impact the Conservatorship and the Conservatee/Protected Person under this Court's and Colorado's purview, this Court has jurisdiction to hail Samuel before this Court.

45.     Samuel Black will be served personally to assure he receives due process.

### D.     <u>Surcharge Samuel Black for the Damages he has Cost the Protected Person and Her Conservatorship Estate.</u>

1.     As detailed above, the Court of Appeals rebuked Samuel's opprobrious, "participation in litigation that seeks to deprive Joanne's

19

conservatorship of the assets that Bernard misappropriated." *Black II,* ¶ 135.

2. As also detailed above, Samuel has initiated multiple, specious lawsuits against the Protected Person, Conservator Goodwin and Trustee Dain. All were dismissed, but only after the retention of counsel and substantial attorney's fees.

3. Additionally, Samuel colluded with his father and step-mother to confess judgments against the Trusts holding the assets his father, Bernard, stole. The initial judgments were vacated as the subject of fraud and collusion, with a scathing affirmance by the Illinois State Court of Appeals. Undeterred by the Illinois Court's rebuke, Samuel again fraudulently colluded with his father and step-mother to confess judgments against the trusts. In an attempt to avoid detection, Samuel's step-mother Katherine Litvak filed the new lawsuit using her married name, Katherine Black. The complaint and judgment papers intentionally omitted any mention of the prior vacature of judgment and the Court of Appeal's affirmance. Conservator Goodwin has had to hire counsel to defend against this ongoing fraud and has incurred substantial attorney's fees.

4.      Moreover, Samuel filed frivolous motions in the Interpleader Court against the Protected Person, requiring her to retain separate counsel and incur attorney's fees.

5.      For example, Samuel sought and obtained a rule to show why the Protected Person should not be held in contempt for pursuing return of the stolen assets before this Court. Samuel further sought an injunction preventing the Protected Person from pursuing contempt against Bernard and forcing the Protected person to make attempts to have the bench warrant against him recalled.

6.      After hearings and briefings, the interpleader court denied Samuel's contempt and injunction motions. (*JP Morgan Chase Bank et al. v. Black et al.*, Case No. 1:18-cv-03447, Doc. 197). Moreover, the Court expressed its opprobrium at Samuel's behavior related to the issues before this Court: "Regarding the contempt proceedings, as discussed above, Bernard and Samuel have not shown that Joanne acted inappropriately before the DPC. The DPC issued a bench warrant because it ordered Bernard to appear before it, and he refused. Bernard had an obligation to follow that order even if he intended to assert a

21

defense. The warrant was justified by Bernard's failure to appear as duly ordered." (*Id.*, at p. 22.)

7.    As set forth above, this Court has detailed the fiduciary obligation Samuel owes to Joanne and the Trusts which hold her Conservatorship assets.    As this Court stated: "Samuel Black has an independent fiduciary obligation to Joanne Black to ensure the misappropriated conservatorship funds are returned."

8.    Samuel's litigation against Joanne, Conservator Goodwin and Trustee Dain, and his collusion to encumber the Trusts have all been in direct breach of his fiduciary duties.

9.    This Court should hold a hearing, and require Samuel to show cause why he should not be surcharged the damages, i.e., attorney's fees and costs, he has cost the Protected Person and the Conservatorship.

10.    The Protected Person will provide this Court with a schedule of fees and costs incurred in advance of the show cause hearing, and subject to the Court's previously affirmed orders as to who is, and who is not, entitled to receive this information.

WHEREFORE, Joanne Black requests a hearing in the above-referenced motions.

Respectfully submitted this 4th day of November, 2022.

DIPONIO & DIPONIO, LLC

*/s/ Lisa DiPonio*

_____
Lisa DiPonio, Esq., #27707
7931 S. Broadway, #348
Littleton, CO 80120
Counsel for Joanne Black

YOUNG & ZEN, LLC

*/s/ Gayle Y.L. Young*

_____
Gayle Y.L. Young, #17107
P.O. Box 307
Littleton, CO 80160
(303) 738-9546
Guardian ad Litem for Joanne Black

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November, 2022 I have electronically filed or mailed a true and correct copy of the within **PROTECTED PERSON JOANNE BLACK'S MOTIONS TO VACATE THIS COURT'S ORDER AUTHORIZING THE DISCLAIMERS/VOIDING THE DISCLAIMERS, TO SUSPEND BERNARD BLACK AS A TRUSTEE OF THE ISSUE AND 2013 TRUSTS, TO SUSPEND SAMUEL BLACK AS A TRUSTEE OF ALL THREE TRUSTS; AND SURCHARGE SAMUEL BLACK FOR THE DAMAGES HE HAS COST THE PROTECTED PERSON AND HER CONSERVATORSHIP ESTATE,** addressed to the following:

Joanne Black
805 E. New York Ave., Apt. #5M
Brooklyn, NY 11203
Protected Person

Cherie Wrigley
1946 Roadrunner Avenue
Thousand Oaks, CA 91320
Cousin

Anthony Dain, Esq.
13272 Capstone Drive
San Diego, CA 92130
Cousin/Trustee of Supplemental Needs Trust

Jane G. Ebisch, Esq.
Shaun Pearman, Esq
The Pearman Law Firm
4195 Wadsworth Blvd
Wheat Ridge, CO 80033
Counsel for Bernard Black

Jody Pilmer, Esq.
Wade Ash Woods Hill & Farley, P.C.
4500 Cherry Creek Drive South, Suite 600
Denver, CO 80246

Marco Chayet, Esq.
Tamara Trujillo, Esq.
Chayet & Danzo, LLC
650 South Cherry Street, Suite 710
Denver, CO 80246
Counsel for Conservator, Jeanette Goodwin

*/s/ Gayle Young*

25